Douglas G. Muehlhauser (SBN 179495)
doug.muehlhauser@knobbe.com
Mark Lezama (SBN 253479)
mark.lezama@knobbe.com
Alexander J. Martinez (SBN 293925)
alex.martinez@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile: 949-760-9502

Attorneys for Plaintiff
NOMADIX, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.,<br><br>Defendant. | Case No.<br>2:16-cv-08033<br><br>**COMPLAINT FOR BREACH OF CONTRACT**<br><br>**and**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nomadix hereby complains of Defendant Guest-Tek Interactive Entertainment Ltd. and alleges as follows:

### JURISDICTION, PARTIES, AND VENUE

1. Plaintiff Nomadix and Defendant Guest-Tek Interactive Entertainment Ltd. entered into a written license agreement with effective date December 30, 2010 (the "License Agreement"). This Complaint states a cause of action for breach of contract—specifically, for breach of the License Agreement. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a).

2. Plaintiff Nomadix is a Delaware corporation having its principal place of business at 30851 Agoura Road, Suite 102, Agoura Hills, California 91301.

3. Defendant Guest-Tek Interactive Entertainment Ltd. ("Guest-Tek") is an Alberta corporation having its principal place of business at Suite 600, 777 8 Ave SW, Calgary, Alberta T2P 3R5, Canada.

4. The amount in controversy exceeds $75,000, exclusive of interest and costs. Nomadix estimates that its damages exceed $11,000,000.

5. The License Agreement specifies that disputes arising under the contract shall be brought in the United States District Court for the Central District of California. Under the License Agreement, with respect to Nomadix's claim for breach of contract, Guest-Tek has consented to the Court's exercise of personal jurisdiction over Guest-Tek. Guest-Tek has also waived any objections to venue in the present judicial district and to the Court's exercise of personal jurisdiction over Guest-Tek.

6. Guest-Tek sells or uses network devices in connection with Internet-access services it provides to hotels and other properties. For example, Guest-Tek offers the OneView Internet solution and RendezView solution.

7. Guest-Tek owns and operates the website at www.guesttek.com.

8. On its website, Guest-Tek states: "GuestTek's OneView Internet solution (OVI) provides fast and reliable connectivity for your property, seamlessly

connecting your guests across all floors. Our High Speed Internet solution (HSIA) scales to help your property overcome increasingly complex internet and network challenges, with intelligent point of access designed to suit your guest's applications and bandwidth needs."

9. On its website, Guest-Tek states: "GuestTek's RendezView conferencing service platform extends your properties capabilities to improve efficiency, reduce costs and increase revenue. [¶] Turn your basic HSIA in your conference space into an a la carte menu of network provisioning options and captive portal page experiences." Guest-Tek's website also indicates that RendezView's features and functionality include "[b]andwidth dedication and shaping."

10. Guest-Tek provides services based on its OneView Internet solution to numerous properties, including several hotels within this judicial district, including the JW Marriott Los Angeles L.A. LIVE at 900 West Olympic Boulevard, Los Angeles, California 90015; the Extended Stay America – Orange County – John Wayne Airport at 4881 Birch St., Newport Beach, California 92660; and the Irvine Marriott at 18000 Von Karman Avenue, Irvine, California 92612. As a result, Guest-Tek owes Nomadix royalties under the License Agreement in connection with these properties but has failed to pay Nomadix the royalties it owes.

11. In connection with its royalty obligations under the License Agreement, Guest-Tek has sent reports to Nomadix in this judicial district; and although Guest-Tek has underpaid Nomadix overall, Guest-Tek has made payments under the License Agreement to Nomadix in this judicial district.

# FIRST CLAIM FOR RELIEF:
# BREACH OF CONTRACT

12. In 2009, Nomadix sued Guest-Tek in this judicial district for infringement of six Nomadix patents in a case captioned *Nomadix, Inc. v. Hewlett-Packard Co. et al.*, No. CV09-08441 (the "2009 Litigation"). Nomadix eventually added a claim against Guest-Tek for infringement of a seventh Nomadix patent. Guest-Tek filed counterclaims for declaratory judgment of noninfringement and invalidity of those seven Nomadix patents.

13. In late December 2010, Nomadix and Guest-Tek settled their claims against one another in the 2009 Litigation. As part of the settlement, Nomadix and Guest-Tek entered into the License Agreement. Exhibit 1 to this Complaint is a true and correct copy of the License Agreement as originally executed, excluding the original Schedule B.

14. The License Agreement is a valid and enforceable written contract binding on Nomadix and Guest-Tek.

15. Under the License Agreement, Nomadix granted Guest-Tek a royalty-bearing, limited, nonexclusive license under the patents involved in the 2009 Litigation and certain related patents. Starting in 2011, the license authorizes Guest-Tek to include functionality patented under the licensed Nomadix patents in Guest-Tek's OneView Internet devices and services, RendezView devices and services, and other devices and services, as long as those devices and services are used or provided as a result of, or in connection with, business or services provided by Guest-Tek to a particular hotel or other property located in the United States.

16. Nomadix has performed all or substantially all of its obligations under the License Agreement, and by granting Guest-Tek this license, Nomadix has satisfied all conditions precedent, if any, to Guest-Tek's performance of its payment obligations under the License Agreement. Nomadix has made a good-faith effort to comply with all its substantive obligations under the License

Agreement. Guest-Tek has not notified Nomadix of any alleged breaches by Nomadix of the License Agreement.

17. On information and belief: Since 2011, Guest-Tek's OneView Internet devices and services have been used as a result of, or in connection with, business or services provided by Guest-Tek to over 2,500 U.S. hotel properties.

18. On information and belief: During each quarter beginning with the third quarter of 2012, Guest-Tek's OneView Internet devices and services have been used as a result of, or in connection with, business or services provided by Guest-Tek to over 2,000 U.S. properties.

19. During each quarter beginning with at least the third quarter of 2012, Guest-Tek's OneView Internet devices and services have included functionality patented under at least one Nomadix patent licensed under the License Agreement. For example, the patented functionalities that Guest-Tek's OneView Internet devices and services have included relate to captive portals, authentication, integration with property management systems, and bandwidth management.

20. On information and belief: Guest-Tek has represented to one or more U.S. customers of its OneView Internet solutions that Guest-Tek has a license to Nomadix patents.

21. On information and belief: Guest-Tek has represented to one or more U.S. customers of its OneView Internet solutions that Guest-Tek has a license to Nomadix patents that protects Guest-Tek or its customers from a patent-infringement lawsuit by Nomadix in connection with the OneView Internet solution.

22. One of Guest-Tek's co-defendants in the 2009 Litigation was iBAHN Corporation. In the 2009 Litigation, Nomadix alleged that iBAHN Corporation had infringed six of the seven Nomadix patents that Nomadix had asserted against Guest-Tek. iBAHN General Holdings Corporation eventually intervened in the

2009 Litigation, and Nomadix alleged that iBAHN General Holdings Corporation infringed the same six Nomadix patents.

23. In September 2013, iBAHN Corporation and iBAHN General Holdings Corporation (collectively, "iBAHN") initiated bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware.

24. During the iBAHN bankruptcy proceedings, Nomadix filed papers highlighting its patent-infringement claims against iBAHN and arguing that those patent-infringement claims made Nomadix a creditor of the debtors. Nomadix also filed a new lawsuit against iBAHN General Holdings Corporation in 2014 seeking compensation for iBAHN General Holdings Corporation's patent infringement that had continued to occur during the bankruptcy proceedings as a result of iBAHN's provision of Internet-access services.

25. In the iBAHN bankruptcy proceedings, an auction or bidding process was conducted for the sale of substantially all of the debtors' assets. Nomadix's patent-infringement claims against the iBAHN debtors made the assets less attractive to most parties entertaining bids on iBAHN's assets; the bidders knew that if they bought iBAHN's assets and sought to continue providing Internet-access services based on iBAHN's network devices, they would likely be facing a patent-infringement lawsuit from Nomadix. Because of the patent license it had received under the License Agreement, Guest-Tek was able to submit a bid to acquire the iBAHN assets without the same exposure to a patent-infringement lawsuit as entities without a license to Nomadix patents.

26. In March 2014, the bankruptcy court approved Guest-Tek's bid as the best offer, and Guest-Tek accordingly purchased substantially all of the assets belonging to the iBAHN debtors' estates.

27. After the purchase of the iBAHN assets, Guest-Tek's website showed the following announcement:



28. As of October 27, 2016, Guest-Tek's website includes a "Company History" page. On that page, an entry for the year 2014 reads: "GuestTek Acquires iBAHN."

29. Like Guest-Tek, iBAHN provided Internet-access services to hotels and other properties. Among the most valuable iBAHN assets for sale in the bankruptcy proceedings were the rights to the contracts that iBAHN had negotiated with its customers under which iBAHN's customers owed iBAHN ongoing fees for its ongoing Internet-access services.

30. On information and belief: Guest-Tek's acquisition of iBAHN assets increased the number of U.S. properties with which Guest-Tek conducted business relating to Internet-access services by approximately 600 properties.

31. Despite the substantial benefit Guest-Tek has received as a result of the License Agreement, Guest-Tek has not lived up to its obligations under the License Agreement.

32. The License Agreement requires Guest-Tek to pay Nomadix royalties for each U.S. property that uses a network device or service that (1) includes functionality patented under at least one licensed patent and (2) is used or provided as a result of, or in connection with, business or services provided by Guest-Tek, as

- 6 -

long as any such network device is not made by Nomadix or a third party with an appropriate license to Nomadix's patents.

33. Guest-Tek has failed to pay all the royalties it owes Nomadix under the License Agreement.

34. The License Agreement requires Guest-Tek to submit quarterly reports with certain information concerning the U.S. properties it provides network devices or services to. Guest-Tek has failed to comply with all its reporting obligations under the License Agreement. Guest-Tek has thus prevented Nomadix from ascertaining the precise number of properties for which Guest-Tek owes royalties and the precise amount of royalties that Guest-Tek owes Nomadix. In certain instances, even when Guest-Tek has paid royalties in connection with a small number of properties, Guest-Tek's failure to comply with its reporting obligations has prevented Nomadix from ascertaining whether Guest-Tek has applied the correct royalty rates under the License Agreement. Under the License Agreement, Guest-Tek's inaccurate reports constitute misrepresentations and breaches of warranties.

35. Exhibit 2 to this Complaint includes the quarterly reports that Guest-Tek has submitted under the License Agreement.

36. On information and belief: During each quarter beginning with the third quarter of 2012, there have been more than 2,000 U.S. properties (1) that used Guest-Tek's OneView Internet devices and services as a result of, or in connection with, business or services provided by Guest-Tek and (2) for which Guest-Tek has failed to pay Nomadix any royalties under the License Agreement.

37. Guest-Tek owes Nomadix royalties under the License Agreement for each of those properties identified in paragraph 36.

38. On information and belief: Guest-Tek has taken the position with one or more customers that its OneView Internet solution for their U.S. properties is covered by the license it received under the License Agreement, yet Guest-Tek has

failed to report those customers' U.S. properties to Nomadix as being covered by the license and has failed to pay royalties for them under the License Agreement.

39. Guest-Tek also owes Nomadix royalties under the License Agreement in connection with the properties whose contracts Guest-Tek assumed as a result of its acquisition of iBAHN assets. Those properties have used either OneView Internet devices and services or iBAHN Head-End Processor ("HEP") devices as a result of, or in connection with, business or services provided by Guest-Tek. The HEP devices include functionality patented under several Nomadix patents licensed under the License Agreement.

40. Guest-Tek's RendezView solution also triggers royalties under the License Agreement. On information and belief: Guest-Tek has failed to pay Nomadix all the royalties it owes Nomadix in connection with its RendezView solution.

41. For each quarter beginning with the third quarter of 2012, Nomadix has notified Guest-Tek that Guest-Tek has breached the License Agreement at least by failing to perform its reporting and payment obligations. Guest-Tek's counsel sent Guest-Tek's original quarterly report for the third quarter of 2012 to Nomadix's counsel on October 30, 2012.

42. Under the License Agreement, upon Nomadix's written request, Guest-Tek must provide Nomadix's counsel with source code and configuration files so that Nomadix can evaluate whether Guest-Tek has removed patented functionality from its devices. Guest-Tek has breached this obligation. For each quarter beginning at least with the third quarter of 2012, Nomadix has requested in writing that Guest-Tek provide source code and configuration files corresponding to the software running on Guest-Tek's devices that quarter. For each quarter beginning at least with the first quarter of 2014, Guest-Tek has refused to provide any source code or configuration files.

*1*     43.    Under the License Agreement, Guest-Tek owes Nomadix late fees on its unpaid royalties.

*3*     44.    Under the License Agreement, Guest-Tek owes Nomadix its legal fees and costs to prepare for and conduct this action to enforce the License Agreement.

*5*     45.    As a direct, foreseeable, and proximate result of Guest-Tek's breaches of the License Agreement, Nomadix has suffered damages in an amount to be proven at trial. Excluding interest, fees, and costs, Nomadix estimates that, beginning with the third quarter of 2012, Guest-Tek owes Nomadix over $11,000,000 in royalties under the License Agreement.

## PRAYER FOR RELIEF

Nomadix respectfully prays for the following relief:

A.    an order adjudging Guest-Tek to have breached the License Agreement, including by having breached its royalty and reporting obligations;

B.    an award of general, compensatory, consequential, and special damages arising from Guest-Tek's breach, including an award of all royalties, interest, and late fees owed to Nomadix;

C.    an award of prejudgment and postjudgment interest;

D.    an award of all legal fees and costs, including attorneys' fees, that Nomadix incurs to prepare for and conduct this action against Guest-Tek;

E.    an order of specific performance of Guest-Tek's reporting, disclosure, and marking obligations under the License Agreement; and

F.    such other relief as the Court deems just and proper.

|   |   |
|---|---|
|   | Respectfully submitted, |
|   | KNOBBE, MARTENS, OLSON & BEAR, LLP |
| Dated: October 28, 2016 | /s/ *Mark Lezama* |
|   | Douglas G. Muehlhauser<br>Mark Lezama<br>Alexander J. Martinez |
|   | Attorneys for Plaintiff<br>NOMADIX, INC. |

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Nomadix hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: October 28, 2016

/s/ *Mark Lezama*
Douglas G. Muehlhauser
Mark Lezama
Alexander J. Martinez

Attorneys for Plaintiff
NOMADIX, INC.