Douglas G. Muehlhauser (SBN 179495)
doug.muehlhauser@knobbe.com
Mark Lezama (SBN 253479)
mark.lezama@knobbe.com
Alexander J. Martinez (SBN 293925)
alex.martinez@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile: 949-760-9502

Attorneys for Plaintiff
NOMADIX, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., <br><br> Defendant. | Case No. <br> CV16-08033 AB (FFMx) <br><br> **AMENDED COMPLAINT FOR BREACH OF CONTRACT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Honorable André Birotte Jr. |

Plaintiff Nomadix hereby complains of Defendant Guest-Tek Interactive Entertainment Ltd. and alleges as follows:

## JURISDICTION, PARTIES, AND VENUE

1.     Plaintiff Nomadix and Defendant Guest-Tek Interactive Entertainment Ltd. entered into a written license agreement with effective date December 30, 2010 (the "License Agreement"). This Amended Complaint states a cause of action for breach of contract—specifically, for breach of the License Agreement. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a).

2.     Plaintiff Nomadix is a Delaware corporation having its principal place of business at 30851 Agoura Road, Suite 102, Agoura Hills, California 91301.

3.     Defendant Guest-Tek Interactive Entertainment Ltd. ("Guest-Tek") is an Alberta corporation having its principal place of business at Suite 600, 777 8 Ave SW, Calgary, Alberta T2P 3R5, Canada.

4.     The amount in controversy exceeds $75,000, exclusive of interest and costs. Nomadix estimates that its damages exceed $11,000,000.

5.     The License Agreement specifies that disputes arising under the contract shall be brought in the United States District Court for the Central District of California. Under the License Agreement, with respect to Nomadix's claim for breach of contract, Guest-Tek has consented to the Court's exercise of personal jurisdiction over Guest-Tek. Guest-Tek has also waived any objections to venue in the present judicial district and to the Court's exercise of personal jurisdiction over Guest-Tek.

6.     Guest-Tek sells or uses network devices in connection with Internet-access services it provides to hotels and other properties. For example, Guest-Tek offers the OneView Internet solution and RendezView solution.

7.     Guest-Tek owns and operates the website at www.guesttek.com.

8.     On its website, Guest-Tek states: "GuestTek's OneView Internet solution (OVI) provides fast and reliable connectivity for your property, seamlessly

1   connecting your guests across all floors. Our High Speed Internet solution (HSIA)
2   scales to help your property overcome increasingly complex internet and network
3   challenges, with intelligent point of access designed to suit your guest's
4   applications and bandwidth needs."

5       9.    On its website, Guest-Tek states: "GuestTek's RendezView
6   conferencing service platform extends your properties capabilities to improve
7   efficiency, reduce costs and increase revenue. [¶] Turn your basic HSIA in your
8   conference space into an a la carte menu of network provisioning options and
9   captive portal page experiences." Guest-Tek's website also indicates that
10  RendezView's features and functionality include "[b]andwidth dedication and
11  shaping."

12      10.   Guest-Tek provides services based on its OneView Internet solution
13  to numerous properties, including several hotels within this judicial district,
14  including the JW Marriott Los Angeles L.A. LIVE at 900 West Olympic
15  Boulevard, Los Angeles, California 90015; the Extended Stay America – Orange
16  County – John Wayne Airport at 4881 Birch St., Newport Beach, California
17  92660; and the Irvine Marriott at 18000 Von Karman Avenue, Irvine, California
18  92612. As a result, Guest-Tek owes Nomadix royalties under the License
19  Agreement in connection with these properties but has failed to pay Nomadix the
20  royalties it owes.

21      11.   In connection with its royalty obligations under the License
22  Agreement, Guest-Tek has sent reports to Nomadix in this judicial district; and
23  although Guest-Tek has underpaid Nomadix overall, Guest-Tek has made
24  payments under the License Agreement to Nomadix in this judicial district.

25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FIRST CLAIM FOR RELIEF:

## BREACH OF CONTRACT

12.    In 2009, Nomadix sued Guest-Tek in this judicial district for infringement of six Nomadix patents in a case captioned *Nomadix, Inc. v. Hewlett-Packard Co. et al.*, No. CV09-08441 (the "2009 Litigation"). Nomadix eventually added a claim against Guest-Tek for infringement of a seventh Nomadix patent. Guest-Tek filed counterclaims for declaratory judgment of noninfringement and invalidity of those seven Nomadix patents.

13.    In late December 2010, Nomadix and Guest-Tek settled their claims against one another in the 2009 Litigation. As part of the settlement, Nomadix and Guest-Tek entered into the License Agreement. Exhibit 1 to this Amended Complaint is a true and correct copy of the License Agreement as originally executed, excluding the original Schedule B.

14.    The License Agreement is a valid and enforceable written contract binding on Nomadix and Guest-Tek.

15.    Under the License Agreement, Nomadix granted Guest-Tek a royalty-bearing, limited, nonexclusive license under the patents involved in the 2009 Litigation and certain related patents. Starting in 2011, the license authorizes Guest-Tek to include functionality patented under the licensed Nomadix patents in Guest-Tek's OneView Internet devices and services, RendezView devices and services, and other devices and services, as long as those devices and services are used or provided as a result of, or in connection with, business or services provided by Guest-Tek to a particular hotel or other property located in the United States.

16.    Nomadix has performed all or substantially all of its obligations under the License Agreement, and by granting Guest-Tek this license, Nomadix has satisfied all conditions precedent, if any, to Guest-Tek's performance of its payment obligations under the License Agreement. Nomadix has made a good-faith effort to comply with all its substantive obligations under the License

1  Agreement. Guest-Tek has not notified Nomadix of any alleged material breaches
2  by Nomadix of the License Agreement.

3          17.    On information and belief: Since 2011, Guest-Tek's OneView
4  Internet devices and services have been used as a result of, or in connection with,
5  business or services provided by Guest-Tek to over 2,500 U.S. hotel properties.

6          18.    On information and belief: During each quarter beginning with the
7  third quarter of 2012, Guest-Tek's OneView Internet devices and services have
8  been used as a result of, or in connection with, business or services provided by
9  Guest-Tek to over 2,000 U.S. properties.

10         19.    During each quarter beginning with at least the third quarter of 2012,
11 Guest-Tek's OneView Internet devices and services have included functionality
12 patented under at least one Nomadix patent licensed under the License Agreement.
13 For example, the patented functionalities that Guest-Tek's OneView Internet
14 devices and services have included relate to captive portals, authentication,
15 integration with property management systems, and bandwidth management.

16         20.    On information and belief: Guest-Tek has represented to one or more
17 U.S. customers of its OneView Internet solutions that Guest-Tek has a license to
18 Nomadix patents.

19         21.    On information and belief: Guest-Tek has represented to one or more
20 U.S. customers of its OneView Internet solutions that Guest-Tek has a license to
21 Nomadix patents that protects Guest-Tek or its customers from a patent-
22 infringement lawsuit by Nomadix in connection with the OneView Internet
23 solution.

24         22.    One of Guest-Tek's co-defendants in the 2009 Litigation was iBAHN
25 Corporation. In the 2009 Litigation, Nomadix alleged that iBAHN Corporation had
26 infringed six of the seven Nomadix patents that Nomadix had asserted against
27 Guest-Tek. iBAHN General Holdings Corporation eventually intervened in the

28

1    2009 Litigation, and Nomadix alleged that iBAHN General Holdings Corporation
2    infringed the same six Nomadix patents.

3         23.    In September 2013, iBAHN Corporation and iBAHN General
4    Holdings Corporation (collectively, "iBAHN") initiated bankruptcy proceedings in
5    the United States Bankruptcy Court for the District of Delaware.

6         24.    During the iBAHN bankruptcy proceedings, Nomadix filed papers
7    highlighting its patent-infringement claims against iBAHN and arguing that those
8    patent-infringement claims made Nomadix a creditor of the debtors. Nomadix also
9    filed a new lawsuit against iBAHN General Holdings Corporation in 2014 seeking
10   compensation for iBAHN General Holdings Corporation's patent infringement that
11   had continued to occur during the bankruptcy proceedings as a result of iBAHN's
12   provision of Internet-access services.

13        25.    In the iBAHN bankruptcy proceedings, an auction or bidding process
14   was conducted for the sale of substantially all of the debtors' assets. Nomadix's
15   patent-infringement claims against the iBAHN debtors made the assets less
16   attractive to most parties entertaining bids on iBAHN's assets; the bidders knew
17   that if they bought iBAHN's assets and sought to continue providing Internet-
18   access services based on iBAHN's network devices, they would likely be facing a
19   patent-infringement lawsuit from Nomadix. Because of the patent license it had
20   received under the License Agreement, Guest-Tek was able to submit a bid to
21   acquire the iBAHN assets without the same exposure to a patent-infringement
22   lawsuit as entities without a license to Nomadix patents.

23        26.    In March 2014, the bankruptcy court approved Guest-Tek's bid as the
24   best offer, and Guest-Tek accordingly purchased substantially all of the assets
25   belonging to the iBAHN debtors' estates.

26
27
28

27.    After the purchase of the iBAHN assets, Guest-Tek's website showed the following announcement:



28.    As of October 27, 2016, Guest-Tek's website includes a "Company History" page. On that page, an entry for the year 2014 reads: "GuestTek Acquires iBAHN."

29.    Like Guest-Tek, iBAHN provided Internet-access services to hotels and other properties. Among the most valuable iBAHN assets for sale in the bankruptcy proceedings were the rights to the contracts that iBAHN had negotiated with its customers under which iBAHN's customers owed iBAHN ongoing fees for its ongoing Internet-access services.

30.    On information and belief: Guest-Tek's acquisition of iBAHN assets increased the number of U.S. properties with which Guest-Tek conducted business relating to Internet-access services by approximately 600 properties.

31.    Despite the substantial benefit Guest-Tek has received as a result of the License Agreement, Guest-Tek has not lived up to its obligations under the License Agreement.

32.    The License Agreement requires Guest-Tek to pay Nomadix royalties for each U.S. property that uses a network device or service that (1) includes functionality patented under at least one licensed patent and (2) is used or provided as a result of, or in connection with, business or services provided by Guest-Tek, as

1  long as any such network device is not made by Nomadix or a third party with an
2  appropriate license to Nomadix's patents.

3      33.    Guest-Tek has failed to pay all the royalties it owes Nomadix under
4  the License Agreement.

5      34.    The License Agreement requires Guest-Tek to submit quarterly
6  reports with certain information concerning the U.S. properties it provides network
7  devices or services to. Guest-Tek has failed to comply with all its reporting
8  obligations under the License Agreement. Guest-Tek has thus prevented Nomadix
9  from ascertaining the precise number of properties for which Guest-Tek owes
10 royalties and the precise amount of royalties that Guest-Tek owes Nomadix. In
11 certain instances, even when Guest-Tek has paid royalties in connection with a
12 small number of properties, Guest-Tek's failure to comply with its reporting
13 obligations has prevented Nomadix from ascertaining whether Guest-Tek has
14 applied the correct royalty rates under the License Agreement. Under the License
15 Agreement, Guest-Tek's inaccurate reports constitute misrepresentations and
16 breaches of warranties.

17     35.    Exhibit 2 to this Amended Complaint includes the quarterly reports
18 that Guest-Tek has submitted under the License Agreement.

19     36.    On information and belief: During each quarter beginning with the
20 third quarter of 2012, there have been more than 2,000 U.S. properties (1) that used
21 Guest-Tek's OneView Internet devices and services as a result of, or in connection
22 with, business or services provided by Guest-Tek and (2) for which Guest-Tek has
23 failed to pay Nomadix any royalties under the License Agreement.

24     37.    Guest-Tek owes Nomadix royalties under the License Agreement for
25 each of those properties identified in paragraph 36.

26     38.    On information and belief: Guest-Tek has taken the position with one
27 or more customers that its OneView Internet solution for their U.S. properties is
28 covered by the license it received under the License Agreement, yet Guest-Tek has

1    failed to report those customers' U.S. properties to Nomadix as being covered by

2    the license and has failed to pay royalties for them under the License Agreement.

3         39.    Guest-Tek also owes Nomadix royalties under the License Agreement

4    in connection with the properties whose contracts Guest-Tek assumed as a result of

5    its acquisition of iBAHN assets. Those properties have used either OneView

6    Internet devices and services or iBAHN Head-End Processor ("HEP") devices as a

7    result of, or in connection with, business or services provided by Guest-Tek. The

8    HEP devices include functionality patented under several Nomadix patents

9    licensed under the License Agreement.

10        40.    Guest-Tek's RendezView solution also triggers royalties under the

11   License Agreement. On information and belief: Guest-Tek has failed to pay

12   Nomadix all the royalties it owes Nomadix in connection with its RendezView

13   solution.

14        41.    For each quarter beginning with the third quarter of 2012, Nomadix

15   has notified Guest-Tek that Guest-Tek has breached the License Agreement at least

16   by failing to perform its reporting and payment obligations. Guest-Tek's counsel

17   sent Guest-Tek's original quarterly report for the third quarter of 2012 to

18   Nomadix's counsel on October 30, 2012.

19        42.    Under the License Agreement, upon Nomadix's written request,

20   Guest-Tek must provide Nomadix's counsel with source code and configuration

21   files so that Nomadix can evaluate whether Guest-Tek has removed patented

22   functionality from its devices. Guest-Tek has breached this obligation. For each

23   quarter beginning at least with the third quarter of 2012, Nomadix has requested in

24   writing that Guest-Tek provide source code and configuration files corresponding

25   to the software running on Guest-Tek's devices that quarter. For each quarter

26   beginning at least with the first quarter of 2014, Guest-Tek has refused to provide

27   any source code or configuration files.

28

43.     Under the License Agreement, Guest-Tek owes Nomadix late fees on its unpaid royalties.

44.     Under the License Agreement, Guest-Tek owes Nomadix its legal fees and costs to prepare for and conduct this action to enforce the License Agreement.

45.     As a direct, foreseeable, and proximate result of Guest-Tek's breaches of the License Agreement, Nomadix has suffered damages in an amount to be proven at trial. Excluding interest, fees, and costs, Nomadix estimates that, beginning with the third quarter of 2012, Guest-Tek owes Nomadix over $11,000,000 in royalties under the License Agreement.

**ALTERNATIVE DISPUTE RESOLUTION**

46.     Clause 7.2 of the License Agreement states that, if Nomadix and Guest-Tek disagree over "whether a feature or functionality is not present at a Guest-Tek property according to clause 2.5.2," then Nomadix and Guest-Tek shall mediate their disagreement before a mediator acceptable to both parties. Clause 7.2 also states that, if Nomadix and Guest-Tek fail to agree to a mediator or fail to resolve their disagreement through mediation, they shall seek to resolve their disagreement through nonbinding arbitration.

47.     In January 2013, Nomadix requested mediation in accordance with clause 7.2 of the License Agreement. Nomadix requested that Guest-Tek identify acceptable mediators. Guest-Tek did not identify any mediators; Guest-Tek requested that the parties instead discuss their positions. In response to Guest-Tek's request, Nomadix agreed to discuss the parties' positions to attempt in good faith to reduce the cost of resolving the disagreement. The parties' discussions extended throughout 2013, with Guest-Tek requesting information about Nomadix's positions without meaningfully responding in kind. In particular, at Guest-Tek's request, Nomadix identified sample patent claims for Guest-Tek to consider. Later, and again at Guest-Tek's request, Nomadix provided sample claim charts and discussed those claim charts with Guest-Tek. Nomadix requested that

Guest-Tek respond with its substantive positions, but Guest-Tek delayed and never satisfactorily responded.

48.    In February 2014, Nomadix requested that Guest-Tek identify an arbitrator for nonbinding arbitration in accordance with clause 7.2 of the License Agreement. In March 2014, Guest-Tek responded, refusing to identify an arbitrator; Guest-Tek maintained that the parties were obligated to mediate. Nomadix disputed whether the License Agreement required mediation at that juncture; but as a courtesy and demonstration of good faith, Nomadix identified acceptable mediators, including Antonio Piazza of Mediated Negotiations.

49.    On April 16, 2014, in San Francisco, California, Nomadix and Guest-Tek appeared before Mr. Piazza to resolve at least their disagreement over whether Guest-Tek had removed patented features or functionality from its devices at Guest-Tek properties. For most of the proceedings, Nomadix's representatives were not in the same room as Guest-Tek's representatives. Rather, except for a brief period at the beginning of the proceedings, Mr. Piazza spoke with each party separately in their separate rooms.

50.    Late in the day on April 16, 2014, Guest-Tek drafted a "Guest-Tek – Nomadix Confidential MOU 4/16/2014" (the "2014 MOU") that Nomadix and Guest-Tek both signed. Of its own volition, Guest-Tek took the initiative to draft and propose the 2014 MOU. Guest-Tek drafted the 2014 MOU entirely in its separate room. Exhibit 3 to this Amended Complaint is a copy of the 2014 MOU.

51.    The 2014 MOU discharged any obligation to arbitrate any portion of the present litigation in accordance with clause 7.2 of the License Agreement. In particular, the 2014 MOU states: "The parties stipulate that this satisfies the arbitration provision of the settlement and license agreements." Guest-Tek inserted this language while in its separate room, and after this language was inserted and presented to Nomadix, neither party communicated to the other any understanding

1   about this language before signing the 2014 MOU; nor did either party
2   communicate any such understanding upon or immediately after signing.

3          52.    The 2014 MOU is a valid and enforceable written agreement binding
4   on Nomadix and Guest-Tek.

5          53.    Since Nomadix filed the present suit, Guest-Tek has taken the position
6   that the stipulation in the 2014 MOU of satisfaction of the License Agreement's
7   arbitration provision would not be effective until the parties complied with a
8   different provision of the 2014 MOU stating that the parties would retain a
9   mutually agreeable expert to evaluate Guest-Tek's devices and provide a
10  nondiscoverable, inadmissible, and nonbinding expert report.

11         54.    Although Nomadix disagrees with Guest-Tek's reading of the 2014
12  MOU, to moot Guest-Tek's argument Nomadix requested that the parties retain an
13  expert in accordance with the 2014 MOU. Guest-Tek has since refused to retain an
14  expert in accordance with the 2014 MOU. Exhibits 4–6 to this Amended
15  Complaint are letters that counsel for Nomadix and Guest-Tek have exchanged.

16         55.    In light of the 2014 MOU, clause 7.2 of the License Agreement does
17  not require arbitration of any portion of Nomadix's breach claim against Guest-
18  Tek: in the 2014 MOU, the parties stipulated to the satisfaction of the arbitration
19  provision in the License Agreement, which discharged any obligation for further
20  arbitration; in the alternative, Guest-Tek's refusal to retain an expert in accordance
21  with the 2014 MOU, combined with the stipulation in the 2014 MOU, removes any
22  requirement for, or otherwise excuses, any further arbitration.

23                             **PRAYER FOR RELIEF**

24         Nomadix respectfully prays for the following relief:

25         A.     an order adjudging Guest-Tek to have breached the License
26  Agreement, including by having breached its royalty and reporting obligations;

27

28

B.     an award of general, compensatory, consequential, and special damages arising from Guest-Tek's breach, including an award of all royalties, interest, and late fees owed to Nomadix;

C.     an award of prejudgment and postjudgment interest;

D.     an award of all legal fees and costs, including attorneys' fees, that Nomadix incurs to prepare for and conduct this action against Guest-Tek;

E.     a declaration of Guest-Tek's royalty, reporting, disclosure, and marking obligations under the License Agreement;

F.     an order of specific performance of Guest-Tek's reporting, disclosure, and marking obligations under the License Agreement; and

G.     such other relief as the Court deems just and proper.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: March 23, 2017        /s/ *Mark Lezama*
                             Douglas G. Muehlhauser
                             Mark Lezama
                             Alexander J. Martinez

                             Attorneys for Plaintiff
                             NOMADIX, INC.

1

**DEMAND FOR JURY TRIAL**

2          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

3    Nomadix hereby demands a trial by jury on all issues so triable.

4

5                              Respectfully submitted,

6                              KNOBBE, MARTENS, OLSON & BEAR, LLP

7

8    Dated: March 23, 2017       /s/ *Mark Lezama*
                                  _____
9                                 Douglas G. Muehlhauser
                                  Mark Lezama
10                                Alexander J. Martinez

11                                Attorneys for Plaintiff
                                  NOMADIX, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28