Michael R. Matthias, SBN 57728
Email: mmatthias@bakerlaw.com
Matthew D. Pearson, SBN 294302
Email: mpearson@bakerlaw.com
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859

Steven J. Rocci (Admitted *Pro Hac Vice*)
Email: srocci@bakerlaw.com
**BAKER & HOSTETLER LLP**
2929 Arch Street, 12th Floor
Philadelphia, PA 19104-2891
Telephone: 215.568.3100
Facsimile: 215.568.3439

Michael J. Swope (*Pro Hac Vice* Application Pending)
Email: mswope@bakerlaw.com
**BAKER & HOSTETLER LLP**
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: 206.332.1380
Facsimile: 206.624.7317

*Attorneys for Defendant*
GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.,<br><br>    Defendant. | Case No.: 2:16-cv-08033-AB-FFM<br><br>[*Honorable André Birotte, Jr.*]<br><br>**DEFENDANT GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Date:**     June 5, 2017<br>**Time:**     10:00 a.m.<br>**Place:**    Courtroom 7B |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

Defendant GUEST-TEK INTERACTIVE ENTERTAINMENT LTD. ("Guest-Tek") hereby submits its Reply in support of its Motion to Dismiss Plaintiff NOMADIX, INC.'S ("Nomadix") First Amended Complaint ("FAC").

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND FROM PLEADINGS ..................................... 3

    A. NOMADIX'S BREACH OF CONTRACT ALLEGATIONS IN THE FAC. ............................................................................................ 3

    B. NOMADIX'S ALLEGATIONS IN THE FAC THAT IT COMPLIED WITH THE MOU AND DISPUTE RESOLUTION PROVISION. ........................................................................................ 4

III. ARGUMENT ................................................................................................. 5

    A. NOMADIX'S FAILURE TO ABIDE BY THE MOU'S TERMS RENDERED THE STIPULATION INEFFECTIVE. ........................... 5

    B. NOMADIX'S OFFER TO RETAIN AN EXPERT AFTER FILING SUIT DID NOT SATISFY THE MOU'S TERMS. ............. 10

    C. THE DISPUTE RESOLUTION PROVISION REQUIRES DISMISSAL OF NOMADIX'S ENTIRE FAC. ............................... 11

    D. STAYING THE CASE IS INAPPROPRIATE BECAUSE NOMADIX HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. .............................................. 13

    E. ANY PREJUDICE RESULTING FROM THE DISMISSAL OF NOMADIX'S FAC WAS CAUSED BY NOMADIX'S OWN ACTIONS. ......................................................................................... 14

IV. CONCLUSION ............................................................................................ 15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alanis v. Nelson*,
  No. CV 11-02583-JEM, 2011 WL 13130698 (C.D. Cal. Oct. 3, 2011) ................................................................................................................ 7, 8, 11

*Centaur Corp. v. ON Semiconductor Components Indus., LLC*,
  No. 09 CV 2041 JM BLM, 2010 WL 444715 (S.D. Cal. Feb. 2, 2010) .................................................................................................................... 14

*Enger v. Allstate Ins. Co.*,
  682 F. Supp. 2d 1094 (E.D. Cal. 2009), *aff'd*, 407 F. App'x 191 (9th Cir. 2010) ............................................................................................................. 14

*Fireman's Fund Insurance Co. v. Sizzler Real Property, Inc.*
  169 Cal. App. 4th 415 (2008) ................................................................................ 8, 9

*Harris v. Tap Worldwide, LLC*,
  248 Cal. App. 4th 373 (2016) .................................................................................. 8

*Heidlebaugh v. Miller*,
  126 Cal. App. 2d 35 (1954) ..................................................................................... 6

*Johnmohammadi v. Bloomingdale's, Inc.*,
  755 F.3d 1072 (9th Cir. 2014) ............................................................................... 14

*Lemm v. Stillwater Land & Cattle Co.*,
  217 Cal. 474 (1933) ............................................................................................... 10

*Judicial Council of California v. Jacobs Facilities, Inc.*,
  239 Cal. App. 4th 882 (2015), *as modified on denial of reh'g* (Sept. 15, 2015), *review denied* (Nov. 18, 2015) ............................................................. 6

*Perdue v. Crocker Nat'l Bank*,
  38 Cal. 3d 913 (1985) .............................................................................................. 8

*Prudential Ins. Co. of Am. v. Brimberry*,
  No. CV 13-07429 RSWL, 2014 WL 3502671, at *7 (C.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 561 (9th Cir. 2016) ................................. 5, 6

*RCR Plumbing & Mech., Inc. v. ACE Am. Ins. Co.*,
   No. EDCV 10-00995 VAP, 2011 WL 2412556 (C.D. Cal. June 3,
   2011) ................................................................................................................ 14

*Starlight Ridge S. Homeowners Ass'n v. Hunter-Bloor*,
   177 Cal. App. 4th 440 (2009) ............................................................................ 5

*Third Story Music, Inc. v. Waits*,
   41 Cal. App. 4th 798 (1995) .............................................................................. 8

*Ticor Title Ins. Co. v. Rancho Santa Fe Assn.*,
   177 Cal. App. 3d 726 (1986) ............................................................................. 5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -
DEFENDANT GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO.: 2:16-CV-08033-AB-FFM

Case 2:16-cv-08033-AB-FFM   Document 46   Filed 05/22/17   Page 6 of 20   Page ID #:2287

## I. INTRODUCTION

Guest-Tek's Motion to Dismiss ("Motion") focuses on a simple legal issue: Whether the Dispute Resolution Provision, as modified via the Memorandum of Understanding ("MOU"), requires Nomadix to seek arbitration as a condition precedent to seeking judicial intervention in connection with the present dispute ("Issue"). It does. Hence, Nomadix's failure to arbitrate the Issue bars Nomadix's First Amended Complaint ("FAC").

Nomadix twice agreed to follow the Dispute Resolution Provision, originally on December 10, 2010, when it signed the License Agreement, then again on April 16, 2014, when it agreed through the MOU to follow a modified version of the Dispute Resolution Provision. Charles Reed, who was then Nomadix's Chairman, signed each of these agreements on behalf of Nomadix. However, Nomadix has since had a change of management, including a new Chairman, who apparently doesn't like the deals that Nomadix previously struck with Guest-Tek. Rather, for unspecified reasons, Nomadix's new management is bent on pursuing federal litigation.

Nomadix's Opposition is a transparent attempt to muddy the waters and obfuscate the Issue through rambling arguments that side-step the Issue and by the presentation of inappropriate and irrelevant alleged "facts." Only about three pages of the twenty-five-page Opposition address the Issue. But Nomadix's tactics are not limited to obfuscation. Nomadix's assertion that the Dispute Resolution Provision is inapplicable to the bandwidth management technology and the reporting and disclosure provisions of the License Agreement is flat wrong. Rather, key provisions of the License Agreement, that Nomadix conveniently neglects to mention, demonstrate otherwise.

In hopes of gaining the Court's sympathy, Nomadix then villainizes Guest-Tek by accusing it of bad-faith conduct and stalling. The correspondence between Guest-Tek and Nomadix paints a much different picture (*see* Dkt. No. 40-1 at p. 5).

DEFENDANT GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO.: 2:16-CV-08033-AB-FFM

In fact, it's Nomadix dilatory conduct that's at fault here. Long after the mediation was completed, Nomadix filed this suit. Had Nomadix immediately following the mediation followed through with expert review (or arbitration), any dispute regarding royalty payments would now be resolved.

The Dispute Resolution Provision, as modified by the MOU, provides an expedient, efficient and cost-effective method of resolving Nomadix's dispute with Guest-Tek. That method included the use of an expert to review Nomadix's claims, but Nomadix repudiated expert review for well over thirty-one months. At this stage of the dispute, and now that the period for expert review has long since expired, arbitration is the procedure called for by the modified Dispute Resolution Provision. But now Nomadix repudiates arbitration. Why has Nomadix—the party who claims to want nothing more than to reach a resolution as soon as possible— repudiated expert review, and now arbitration panel review? Guest-Tek knows that answer, but Nomadix won't acknowledge it. Nomadix knows that none of the Guest-Tek technology is covered by the patents addressed in the License Agreement, and Nomadix does not want a neutral expert or an arbitration panel (which must include a technical expert – Dkt. 32-1, License Agreement at ¶ 7.2) evaluating the technical merit of its claims.

Nomadix's wandering Opposition covers a lot of ground, most of it irrelevant. This Reply focuses on why Nomadix's noncompliance with the MOU and Dispute Resolution Provision precluded it from filing suit when it did.

In a nutshell:

The plain language of the MOU refutes Nomadix's argument that the arbitration requirement was waived simply by signing the MOU;

California law contradicts Nomadix's argument that compliance with the MOU as a condition precedent to the arbitration waiver contained therein would render the MOU illusory;

Nomadix's offer to select an expert *after* it filed the original Complaint is belied by its pre-Complaint conduct, and, at this late date, does not satisfy the MOU anyway;

All of the claims asserted by Nomadix in its FAC fall squarely within the purview of the Dispute Resolution Provision; and

Any prejudice that Nomadix now complains would befall it if the MOU is enforced is a product of Nomadix own making.

Accordingly, Guest-Tek respectfully requests that the Court should grant the Motion.

## II. FACTUAL BACKGROUND FROM PLEADINGS

### A. NOMADIX'S BREACH OF CONTRACT ALLEGATIONS IN THE FAC.

Nomadix's FAC asserts a single cause of action, breach of contract, based on Guest-Tek's alleged failure to comply with certain provision of the Confidential License Agreement ("License Agreement"). (*See* Dkt. No. 32, Complaint.) Specifically, the FAC asserts that Guest-Tek breached the License Agreement by failing to pay all the royalties it owes Nomadix and by failing to comply with its reporting obligations. (*Id*. at ¶¶ 33, 34.) Guest-Tek's reporting obligations, according to Nomadix, include submitting "quarterly reports with certain information concerning selected U.S. properties that Guest-Tek provides network devices or services to" and, upon written request, providing "Nomadix's counsel with source code and configuration files" corresponding to the software running on Guest-Tek's devices. (*Id*. at ¶¶ 34, 42.) Although Nomadix relies upon the audit provision in the Opposition (Dkt. No. 42, Opposition to Motion to Dismiss ("Opp."), 18:11-28), the FAC does not allege breach of the audit provision, much less reference, cite, or discuss it. (*See* Dkt. 32, Complaint.)

### B. NOMADIX'S ALLEGATIONS IN THE FAC THAT IT COMPLIED WITH THE MOU AND DISPUTE RESOLUTION PROVISION.

Nomadix admits that the MOU is a "valid and enforceable written agreement binding on Nomadix and Guest-Tek." (Dkt. No. 32, FAC, ¶ 52.) The MOU sets forth a resolution process different than that contained in the Dispute Resolution Provision of the License Agreement. (*Id.* at ¶ 53; *see also* Dkt. 32-3, MOU.) Nomadix's representative, Charles Reed, and Guest-Tek's representative, Arnon Levy, each freely and voluntarily signed the MOU.[1] (Dkt. 32, FAC, ¶ 50; *see also* Dkt. 32-3, MOU.)

Under the MOU, Nomadix and Guest-Tek agreed that "neither party w[ould] pursue any claims it may have with respect to its patents, the settlement agreement, and/or the [L]icense [A]greement" for twelve months following the mediation and that the statutes of limitation applicable to any such claims would be tolled during this twelve-month period. (Dkt. 32-3, MOU.) Nomadix and Guest-Tek also agreed that they would "retain [a] mutually agreeable expert to evaluate Guest-Tek[']s design arounds" and that they would not "dispute [the] expert conclusions for purpose of settlement discussions." (*Id.*) Finally, Nomadix and Guest-Tek stipulated that "this satisfies the arbitration provision of the settlement agreement and [L]icense [A]greement" ("Stipulation"). (*Id.*)

Nomadix does not dispute that it did not comply with the MOU or the Dispute Resolution Provision before filing suit. (*See* Dkt. No. 32, FAC.) Instead,

---

[1] Nomadix states that Guest-Tek "drafted" the MOU and that, therefore, any inferences should be directed against Guest-Tek. (Dkt. No. 42, Opp., 11:4-12.) Both the statement that Guest-Tek "drafted" the MOU, and any suggestion that Guest-Tek had a hand in its language or grammar, are wrong, and, in any event, immaterial to the Motion. Guest-Tek is prepared to demonstrate that, at the direction of the mediator, Guest-Tek's representative merely wrote down the terms of the MOU as they were being dictated by the mediator. Moreover, no Nomadix representative was in the room when the mediator dictated these terms to Guest-Tek, so Nomadix is in no position to state what occurred.

Nomadix claims that because Guest-Tek refused to accept Nomadix's post-Complaint "offer" to retain an expert, Nomadix is excused from complying with the MOU. (*Id.* at ¶¶ 54-55.) Nomadix made this "offer" thirty-one months after the mediation, nineteen months after the MOU's twelve-month standstill expired, and one month after Nomadix filed its Complaint. (*Id.* at ¶ 49; *see also* Dkt. 32-3, MOU; Dkt. 32-4, November 18, 2016 Letter from Mr. Lezama to Mr. Swope.) Moreover, the "offer" contained caveats, including that Nomadix would continue with its lawsuit. (Dkt. 32-6, December 12, 2015 Letter from Mr. Lezama to Mr. Swope.)

Guest-Tek advised Nomadix that the time to select an expert had passed and that Nomadix should follow the process dictated in the Dispute Resolution Provision. (Dkt. 32-5, December 2, 2016 Letter from Mr. Swope to Mr. Lezama, ¶ 3.). In fact, Guest-Tek offered its choice of arbitrator to get the arbitration process moving. (*Id.*) Nomadix did not respond to that offer and continued to refuse to follow the Dispute Resolution Provision. (Dkt. 32-6, December 12, 2015 Letter from Mr. Lezama to Mr. Swope.)

## III. ARGUMENT

### A. NOMADIX'S FAILURE TO ABIDE BY THE MOU'S TERMS RENDERED THE STIPULATION INEFFECTIVE.

"The principles governing construction of written instruments are well settled." *Starlight Ridge S. Homeowners Ass'n v. Hunter-Bloor*, 177 Cal. App. 4th 440, 447 (2009). "[T]he meaning is to be obtained from the entire contract, and not from any one or more isolated portions thereof." *Id.* The court must "not use a disjointed, single-paragraph, strict construction approach." *Ticor Title Ins. Co. v. Rancho Santa Fe Assn.*, 177 Cal. App. 3d 726, 730 (1986). Instead, the court must consider, among other things, the location of the provision in question and its surrounding terms. *Prudential Ins. Co. of Am. v. Brimberry,* No. CV 13-07429 RSWL, 2014 WL 3502671, at *7 (C.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 561

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(9th Cir. 2016) (noting on which page of the contract the provision appears). Moreover, "[a]n interpretation which renders part of the instrument to be surplusage should be avoided." *Id.*

Despite these "well-settled" principals, Nomadix asks this Court to ignore certain words in the Stipulation and to interpret the twelve words of the Stipulation in a vacuum, separate and apart from the surrounding language in the MOU. First, Nomadix argues that because the Stipulation is written in the present tense, the parties intended the Stipulation to take immediate effect. (Dkt. No. 42, Opp., pp. 6-7.)[2] But, in doing so, Nomadix completely ignores the existence of the word "this" in the MOU, and hence its import and connotation when juxtaposed with the remaining words. Nomadix acts as though the Stipulation reads: "The parties stipulate that the arbitration provision in the settlement and license agreement **is** satisfied." It does not. Instead, it says: "The parties stipulate that **this** satisfies the arbitration provision of the settlement and license agreement." (Dkt. 32-3, MOU (emphasis added).) "This" is the operative word, and the word Nomadix wants the Court to ignore.

The question is thus: what is the meaning of the word "this" as it is used in the MOU? "The words employed [in]…a writing must be ascertained solely from a common sense meaning of them as a whole." *Heidlebaugh v. Miller*, 126 Cal. App. 2d 35, 38 (1954). Merriam-Webster defines "this" as "the person, thing, or idea that is present or near in place, time, or thought **or that has just been mentioned**." (https://www.merriam-webster.com/dictionary/this (last visited: March 17, 2017) (emphasis added).) The terms that immediately precede the Stipulation are the

---

[2] Nomadix's reliance on *Judicial Council of California v. Jacobs Facilities, Inc.*, 239 Cal. App. 4th 882 (2015), *as modified on denial of reh'g* (Sept. 15, 2015), *review denied* (Nov. 18, 2015), is completely misplaced. There, the defendant argued that the assignment of a contract pre-dated the execution of the assignment. *Id.* at 906. The Court disagreed, finding that the terms "hereby…assigns and transfers the Contract" and "hereby assumes the Contract" indicated that the assumption occurred upon execution of the assignment, not before. *Id.* at 907. No such language is present here.

mutual obligations of the parties, including (1) not pursuing for twelve months any claims against one another with respect to patents in the settlement agreement and/or the License Agreement; (2) mutually retaining an expert to opine on Guest-Tek's design-arounds; and (3) refraining from disputing the expert's findings for the purpose of settlement discussions. (Dkt. 32-3, MOU.) There can be no dispute that the "this" in the Stipulation referred to these mutual obligations and that it was the performance of these duties that satisfied the arbitration provision in the settlement and License Agreement.

Nomadix gratuitously, and with no support whatsoever, offers the following statement as a backdoor attempt to bolster its argument that the MOU satisfied the arbitration provision: "In particular, treating the arbitration provision as satisfied was the only incentive for Nomadix to postpone any action on its breach for 12 month." (Dkt. No. 42-1, Opp., 6:24-26.) Through this unsupported statement (which is also irrelevant to the Motion), Nomadix attempts to introduce Nomadix's alleged intent when it entered into the MOU. But the law is clear on this issue: "[o]n a motion to dismiss pursuant to Rule 12(b)(6), the Court must limit its review to the operative complaint and may not consider facts presented in briefs or extrinsic evidence." *Alanis v. Nelson*, No. CV 11-02583-JEM, 2011 WL 13130698, at *2 (C.D. Cal. Oct. 3, 2011). Nowhere in the FAC does Nomadix allege that satisfaction of the arbitration provision was the only incentive for Nomadix to agree to the 12-month standstill. (*See* Dkt. No. 32, FAC.) Therefore, the Court cannot consider the statement now.[3]

Recognizing the weakness of its argument, Nomadix next claims that the Stipulation could not have been premised on the performance of the mutual duties

---

[3] Even if the Court were inclined to consider the statement, the sworn testimony of Charles Reed, former Chairman of Nomadix, directly refutes Nomadix's claim. Mr. Reed affirmed: "I did not believe when I signed the Memorandum of Understanding on behalf of Nomadix that my signature and the signature of Arnon Levy, Guest-Tek's CEO, satisfied the arbitration provision in the License Agreement." (Dkt. No. 28-4, Declaration of Charles Reed.)

in the MOU because, if it were, the stipulation would be illusory. (Dkt. No. 42, Opp., 8:8-15.) According to Nomadix, under Guest-Tek's interpretation, Guest-Tek could have unilaterally "frustrate[d] the stipulation by never agreeing to an expert or by disagreeing with the expert's conclusions." (*Id.* at 8:9-11.) Nomadix's argument ignores the law.

While it is true that a court should not interpret a contract in a manner that renders it illusory, the MOU is not illusory under Guest-Tek's interpretation. A contract is illusory "when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder" or "where one party provides no legal consideration." *Harris v. Tap Worldwide, LLC*, 248 Cal. App. 4th 373, 385 (2016). But contrary to Nomadix's claims, Guest-Tek's discretion was not unfettered, nor did it have the arbitrary right to modify or terminate the MOU.

Where, as here, "a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." *Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 923 (1985). And "[a]n implied obligation to use good faith is enough to avoid the finding of an illusory promise." *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 806 (1995). Therefore, Guest-Tek's interpretation of the MOU does not render it illusory.[4]

As a last-ditch effort to avoid the plain language of the MOU, Nomadix argues that the Stipulation cannot be conditioned on the performance of the parties' mutual obligations because "the MOU does not contain any conditional language." In support of its claim, Nomadix relies upon *Fireman's Fund Insurance Co. v.*

---

[4] Nomadix's theory is also inconsistent with the actual post MOU facts. Guest-Tek proffered two experts. Nomadix ignored that and seemingly intended to frustrate the purpose of the MOU by stonewalling.

*Sizzler Real Property, Inc.* 169 Cal. App. 4th 415, 421 (2008). Nomadix's reliance, again, is completely misplaced.

In *Fireman's Fund*, Fireman's Fund Insurance Co. ("Fireman's") brought suit against Sizzler USA Real Property, Inc. ("Sizzler"), the tenant of one of Fireman's insureds, to recover the cost of defending against and settling a lawsuit against the insured. *Id.* at 418. Sizzler argued that the "Release and Waiver of Subrogation" provision ("Release") contained in its lease with Fireman's insured barred Fireman's from seeking repayment. *Id.* at 419. Fireman's claimed that the Release was ineffective because Sizzler had not obtained the full $1 million in insurance coverage required by the lease. *Id.* The Court of Appeal disagreed with Fireman's. *Id.* at 423.

The Court found that Sizzler's obtaining $1 million dollars could not be read as a condition precedent to the Release "absent language plainly requiring such construction." *Fireman's Fund Ins. Co. v. Sizzler USA Real Prop., Inc.*, 169 Cal. App. 4th 415, 421 (2008). Moreover, the Court held that although such releases "are necessarily premised on the procurement of insurance," "there was such insurance (plaintiff's), and that was sufficient to engage the written waiver." *Id.* at 719–20.

The situation in *Fireman's Fund* is completely different than the situation here. In *Fireman's Fund*, the insurance requirement that Fireman's wanted the court to interpret as a condition precedent to the Release and the actual Release were in entirely different sections. *Id.* at 417. Here, the Stipulation is directly beneath the parties' mutual obligations. (Dkt. 32-3, MOU.) In *Fireman's Fund*, the Release in no way referenced the insurance requirement on which it was allegedly conditioned. *Id.* Here, the word "this" in the Stipulation directly refers to the parties' mutual obligations. (Dkt. 32-3, MOU.) And in *Fireman's Fund*, the court found that even if the existence of insurance was a condition precedent to the release, there was such insurance. *Id.* at 421. Here, Nomadix never selected an

expert, or even engaged in the process of doing so, before filing suit. (*See,* Dkt. No. 32, Complaint, ¶¶ 46-55.)

Despite its numerous efforts, Nomadix cannot avoid the only reasonable interpretation of the Stipulation. The Stipulation became effective only after Nomadix and Guest-Tek mutually selected an expert (which, despite Guest-Tek's invitation, Nomadix never did) and accepted the expert's findings for settlement purposes. Any other interpretation would ignore and contradict the plain language of the Stipulation.

### B. NOMADIX'S OFFER TO RETAIN AN EXPERT AFTER FILING SUIT DID NOT SATISFY THE MOU'S TERMS.

Nomadix's argument that its belated offer to retain an expert satisfies the MOU's terms and, therefore, excuses its nonperformance defies logic. As before, Nomadix asks this Court to ignore the readily apparently purpose of the MOU—facilitating settlement before engaging in expensive and time consuming litigation—something the Court cannot do. *Lemm v. Stillwater Land & Cattle Co.,* 217 Cal. 474, 480 (1933).

The MOU set forth certain mutual obligations that, if complied with, would satisfy the arbitration requirement of the Dispute Resolution Provision. (Dkt. 32-3, MOU.) Under the License Agreement, arbitration was and is a condition precedent to filing suit. (Dkt. 32-1, License Agreement, at §§ 7.2, 8.10.) Therefore, the clear purpose of the MOU was to supplant one condition precedent to filing suit (arbitration) with another (mutually retaining an expert and not contesting his or her findings for settlement purposes).

If Nomadix's post-Complaint offer to retain an expert could satisfy the terms of the MOU, the MOU's clear purpose would be thwarted. Guest-Tek would be forced to incur the cost of an expert evaluation while, at the same time, incur the costs of defending against the pending litigation that the expert evaluation was intended to avoid.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### C. THE DISPUTE RESOLUTION PROVISION REQUIRES DISMISSAL OF NOMADIX'S ENTIRE FAC.

The Dispute Resolution Provision applies to, and requires arbitration of, each and every claim asserted in Nomadix's FAC. Nomadix's argument to the contrary is incorrect and misleading.

First, Nomadix claims that "the parties did not agree to arbitrate whether Guest-Tek uses Nomadix's bandwidth management technology." (Opp. at 16:11-12.) Nomadix is flat wrong. Next, Nomadix argues that "the parties did not agree to arbitrate Guest-Tek's compliance with its reporting and disclosure requirements." (*Id*. at 17:14-15.) Flat wrong again. Finally, Nomadix states that "the parties did not agree to arbitrate Guest-Tek's compliance with its audit obligations." This claim need not and cannot be considered by the Court, as nowhere in the FAC does Nomadix allege that Guest-Tek breached such obligations. (*See* Dkt. No. 32, Complaint). *See also Alanis,* 2011 WL 13130698, at *2.

Both the bandwidth management technology and the disclosure and reporting requirements fall squarely within the Dispute Resolution Provision. This is clearly demonstrated by the License Agreement's own roadmap.

The Dispute Resolution Provision applies "in the event that [Nomadix and Guest-Tek] are unable to reach mutual agreement on…(2) whether a feature or functionality is not present at a Guest-Tek property according to clause 2.5.2…" ("Dispute Resolution Provision"). (Dkt. No. 32, Ex. 1, § 7.2.). Thus, the Dispute Resolution provision directs the reader to section 2.5.2.

Section 2.5.2 of the License Agreement consists of eight separate subsections. (*Id.* at § 2.5.2.) Subsection 2.5.2.8 states: "Subject to clause 2.5.2.6, any dispute between [Nomadix and Guest-Tek] regarding whether a particular feature or functionality is not present in a Guest-Tek Network Device or Network Service shall be resolved in accordance with the provisions of clause 7.2" (*Id.* at §

2.5.2.8.)[5] Clause 7.2 is the Dispute Resolution Provision. Subsection 2.5.2.8 does not limit its application to any specific type of feature or functionality (*i.e.,* covered by the "Property Management System," "Static IP," "Redirection," "Authentication," or "Bandwidth Management" patent families.) (*Id.*) It applies to <u>any</u> dispute regarding the presence of a feature or functionality in a Guest-Tek "Network Device" or "Network Service."

The terms "Network Device" and "Network Service" used in subsection 2.5.2.8 are both defined in the License Agreement. (*Id.* at § 1.25-1.26.) A "Network Device" is a "device, whether hardware, software, firmware or any combination thereof, capable of sending or receiving data packets." (*Id.* at § 1.25.) A "Network Service" is a "service, whether provided locally, remotely, virtually, or any combination thereof, capable of sending or receiving data packets." (*Id.* at § 1.26.) Neither term is limited to or excludes devices or services that contain a specific type of feature or functionality (*i.e.*, bandwidth management technology). And all of the technologies covered by the License Agreement send and receive data packets.

Taken together, these provisions dictate that Nomadix and Guest-Tek must comply with the Dispute Resolution Provision if either party disputes whether a feature or functionality is present in a Guest-Tek device or service that is capable of sending or receiving data packets. Nomadix's FAC is based solely on such a dispute. Therefore, every claim in the FAC is arbitrable.

The Dispute Resolution Provision also applies to Nomadix's reporting and disclosure requirements under the License Agreement. Section 2.7.1 of the License Agreement states that Guest-Tek shall submit, no later than thirty days after the end of each License Quarter, reports specifying the addresses of the "Guest-Tek

---

[5] Subsection 2.5.2.6 is narrowly drawn and only relates to calculating royalties on "version v.5.4.03 and older versions of the OneView System that were installed at hotels as of May 2010." It does not affect the determination of whether the Dispute Resolution Provision applies to Nomadix's FAC.

- 12 -

Properties" in the United States, the number of rooms at said "Guest-Tek Properties," the type of software used at each "Guest-Tek Property," and the type of functionality at each "Guest-Tek Property." (*Id*. at § 2.7.1.) "Guest-Tek Property" is defined as: "a physical property that either (a) uses a Licensed Network Device or a Licensed Network Service; or (b) is one for which the Guest-Tek Entities agree to pay a royalty without completing an analysis as to whether or not it uses a Licensed Network Device or Licensed Network Service." (*Id*. at § 1.13.) "Licensed Network Device" and "Licensed Network Service" are those devices and services that fall within the scope of "at least one claim of the Licensed Patents" of Nomadix. (*Id*. at §§ 1.21-1.22.)

Therefore, whether and to what extent Guest-Tek was obligated to submit quarterly reports depended on whether and to what extent Guest-Tek's properties contained a device or service that possessed a particular feature or functionality that fell within the scope of at least one claim of the Nomadix's patents, which is the exact question the parties agreed to arbitrate under the License Agreement. (*Id*. at § 2.5.2.8.)

The Dispute Resolution Provision applies to each claim asserted by Nomadix in its FAC. As such, Guest-Tek respectfully requests that the Court grant its Motion.

### D. STAYING THE CASE IS INAPPROPRIATE BECAUSE NOMADIX HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Nomadix admits that "if [its] entire claim were subject to arbitration the Court would have discretion to dismiss the case." (Dkt. No. 42-1, Opp., 21:2-5.) As demonstrated above, all of the allegations contained in the FAC are subject to arbitration; therefore, the Court has the power to dismiss the FAC.

But Nomadix's admission does not go far enough. The Court is not simply *empowered* to dismiss the FAC, it is compelled to do so. A motion to dismiss for

- 13 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

failure to comply with conditions precedent to filing suit is "a motion to dismiss for failure to state upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Centaur Corp. v. ON Semiconductor Components Indus., LLC*, No. 09 CV 2041 JM BLM, 2010 WL 444715, at *2 (S.D. Cal. Feb. 2, 2010). Guest-Tek has not found, and Nomadix has not cited, any case in which a court stayed an action because the plaintiff's complaint failed to state a cause of action upon which relief could be granted. (*See, generally*, Dkt. No. 42-1, Opp.)[6] There are, however, numerous cases in which a court dismissed such an action. *See, e.g., Centaur Corp.*, 2010 WL 444715, at *4; *Enger v. Allstate Ins. Co.*, 682 F. Supp. 2d 1094, 1099 (E.D. Cal. 2009), *aff'd*, 407 F. App'x 191 (9th Cir. 2010). Accordingly, Nomadix's request to stay the action should be denied.

### E.  ANY PREJUDICE RESULTING FROM THE DISMISSAL OF NOMADIX'S FAC WAS CAUSED BY NOMADIX'S OWN ACTIONS.

In its final attempt to avoid dismissal, Nomadix argues that the Court should not grant Guest-Tek's Motion because doing so "would unfairly prejudice Nomadix." (Opp. at 12:25-28.) In support of its claim, Nomadix asserts that dismissal "would risk allowing the statute of limitations to run for certain portions of Nomadix's breach claim." (*Id*. at 22:1-2.)

Nomadix has no one to blame but itself for this possibility. Nomadix could have complied with the terms of the MOU. Nomadix could have mutually selected an expert prior to filing suit. Nomadix could have initiated an arbitration. But Nomadix chose not to. Nomadix cannot now claim to be the victim of prejudice it freely brought upon itself. Guest-Tek's Motion should be granted.

---

[6] Both cases cited by Nomadix in support of its claim that the Court may stay this case are inapposite. *Johnmohammadi v. Bloomingdale's, Inc.,* 755 F.3d 1072, 1077 (9th Cir. 2014), involved a motion to compel arbitration, not a motion to dismiss. And in *RCR Plumbing & Mech., Inc. v. ACE Am. Ins. Co.*, No. EDCV 10-00995 VAP, 2011 WL 2412556, at *11 (C.D. Cal. June 3, 2011), the defendant actually requested that the Court stay the action.

## IV. CONCLUSION

For all of the foregoing reasons, Guest-Tek respectfully request that the Court dismiss Nomadix's FAC. Guest-Tek also requests that the Court award it its "fees and costs incurred…in preparing for and conducting" the proceeding, pursuant to § 8.10 of the License Agreement.

Dated: May 22, 2017

Respectfully Submitted,

BAKER & HOSTETLER LLP

By: */s/ Michael R. Matthias*
Michael R. Matthias
Matthew D. Pearson
F. Lucas Paule

*Attorneys for Defendant*
GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.