1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC., | Case No. CV16-08033 AB (FFMx) |
| Plaintiff, | |
| v. | [~~PROPOSED~~] **STIPULATED DISCOVERY ORDER** |
| GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., | |
| Defendant. | |

Pursuant to Rule 29 of the Federal Rules of Civil Procedure, the parties have stipulated to the following:

**A.     Production of Documents Originating in Paper Format**

1.     For documents that are available only in paper format:

(a)     The producing party shall provide Concordance load files (.DAT and .OPT) containing unique field delimiters and the following fields:

(i)     Beginning Production Number;

(ii)    Ending Production Number;

(iii)   Beginning Group Range (for documents stored in a group in the ordinary course of business, such as a group of separate documents collected in a binder);

(iv)    Ending Group Range; and

(v)     Confidentiality Designation.

(b)     The producing party shall scan such documents and provide the corresponding scanned images in black-and-white, single-page TIFF format. If a substantial or important portion of a document is in color, the producing party shall scan at least that portion in color and provide the corresponding scanned images in single-page JPEG format. In general, each image will be 8.5 inches by 11 inches with resolution of at least 300 pixels per inch; however, reasonable deviations from this format are allowed in special cases.

(c)     The producing party will also provide corresponding document-level text as separate multipage text files, which shall contain optical character recognition (OCR) data representing the text of the document. For documents Nomadix produced in a previous litigation, if the document-level text is available as a field in a Concordance load file, Nomadix may produce such text as a load-file field without exporting to a separate text file.

(d) A parent document (i.e., a document with attachments, enclosures, exhibits, or other subordinate documents) and its subordinate documents shall be produced as a group and in the order and form in which they are kept. More specifically, each discrete document in the group will be assigned its own production numbers and will be identified as a separate document in the load files; but the documents within a group will be produced consecutively, and all documents in the group will have the same group range (as indicated by the Group Range fields), which will begin with the beginning production number of the first document in the group and will end with the ending production number of the last document in the group.

**B.   Production of Documents Originating In Electronic Format**

2. For electronically stored information and documents originating in electronic format (collectively, "electronic documents" or "electronic files"):

(a) The producing party shall provide Concordance load files (.DAT and .OPT) containing unique field delimiters and the following fields:

(i) Beginning Production Number;

(ii) Ending Production Number;

(iii) Beginning Group Range (e.g., for e-mails with attachments); and

(iv) Ending Group Range.

(b) The producing party will also provide the following additional metadata fields for electronic mail (e-mail) messages, if such metadata is electronically available to the producing party:

(i) Author or Sender;

(ii) Recipient(s);

(iii) Carbon Copy (CC) Recipient(s);

(iv) Blind Carbon Copy (BCC) Recipient(s);

    (v) Date Sent;

    (vi) E-mail Subject; and

    (vii) Confidentiality Designation.

  (c) The producing party will also provide the corresponding images in black-and-white, single-page TIFF format. If a substantial or important portion of a document is in color, the single-page images corresponding to at least that portion shall be in color and in single-page JPEG format. In general, each image will be 8.5 inches by 11 inches with resolution of at least 300 pixels per inch; however, reasonable deviations from this format are allowed in special cases.

  (d) The producing party will also provide corresponding document-level text as separate multipage text files, which shall contain text extracted directly from the electronic document or, if such direct extraction is not feasible, OCR text. For documents Nomadix produced in a previous litigation, if the document-level text is available as a field in a Concordance load file, Nomadix may produce such text as a load-file field without exporting to a separate text file.

  (e) Parent documents and their subordinate documents shall be produced in the same manner as specified in paragraph 1(d).

    (i) Specifically, with respect to e-mail messages with attachments, the e-mail message is the parent document and its attachments are subordinate documents that shall be produced as separate documents immediately following their parent e-mail.

  (f) Subject to alternative arrangements agreed to by the producing and receiving parties, the Author or Sender, Recipient(s), Carbon Copy (CC) Recipient(s), and Blind Carbon Copy (BCC) Recipient(s) fields need not include e-mail addresses if names are supplied instead. Nothing in this joint

stipulation shall prevent a party from seeking a court order compelling discovery of e-mail addresses stored as metadata in e-mail messages.

3. To the extent that complying with paragraph 2 is unduly burdensome for a particular electronic file or would be less convenient for the receiving party than producing in native format, the producing party may instead produce the electronic file in native format, in which case it will label the production with a unique production number and appropriate confidentiality designation, if any, in the file name or on the hard drive or other media containing such electronic file.

4. Paragraph 2 does not preclude a party from seeking discovery of specific electronic files (or specific categories of electronic files) in native format. Moreover, a producing party will honor the other party's reasonable request that the producing party produce in native format electronic files identified by the requesting party when TIFF images prevent access to important functionality or are otherwise not reasonably usable (e.g., in some cases, when the electronically stored information is an Excel spreadsheet, a CAD file, a video, or input to or output from a computer program). Any such production will be labeled with a unique production number and appropriate confidentiality designation, if any, in the file name or on the hard drive or other media containing such electronic file.

5. To the extent it is reasonably possible to do so, the parties shall preserve all metadata of documents originating in electronic format. If a party believes, knows, or learns that it cannot reasonably preserve any such metadata or that it has lost or otherwise not preserved some such metadata, it shall promptly inform the other party, and the parties shall discuss an appropriate remedy.

**C.     Production of Source Code and Files Related To Source Code**

6. "Exhibit 1" refers to Exhibit 1 to the parties' Confidential Amendment to License Agreement with effective date September 29, 2011. Exhibit 1 shall govern production and treatment of source code and files related to source code. The Stipulated Protective Order that the parties are submitting simultaneously shall

not apply to any Highly Confidential – Source Code – Restricted Access Only Material produced under Exhibit 1. Conversely, Exhibit 1 shall not apply to any Protected Material produced under the Stipulated Protective Order (as "Protected Material" is defined in section 2.14 of the Stipulated Protective Order). One portion of a document may be Highly Confidential – Source Code – Restricted Access Only Material under Exhibit 1 and another portion of the same document may be Protected Material under the Stipulated Protective Order; but no portion of any document will be (a) both Highly Confidential – Source Code – Restricted Access Only Material and Protected Material or (b) otherwise subject to the restrictions of both Exhibit 1 and the Stipulated Protective Order.

7. For purposes of Exhibit 1 as it is used in this litigation:

(a) The term "Highly Confidential – Source Code – Restricted Access Only Material" shall refer to any material designated "Highly Confidential – Source Code – Restricted Access Only," to any copies thereof, and to the information contained in such material or such copies, including summaries of such information.

(b) Material may be designated "Highly Confidential – Source Code – Restricted Access Only" if and only if one of the following two conditions exists:

(i) it is, or it contains, non-public source code; or

(ii) it is, or it contains, public source code used in a Producing Party's product (whether commercially released or developmental) and such use of such public source code in the Producing Party's product is (a) not publicly known; or (b) a trade secret.

(c) "Producing Party" shall mean the party producing material pursuant to Exhibit 1.

(d) "Receiving Party" shall mean the party receiving material pursuant to Exhibit 1.

(e) "Related Action" shall mean any litigation, arbitration, mediation, audit, or other enforcement action or proceeding to enforce the terms of the parties' Confidential License Agreement with an effective date of December 30, 2010 (the "License Agreement"), including the present litigation.

**D. General Provisions**

8. Archives stored on computer servers, external hard drives, or personal computer hard drives that are created for disaster-recovery purposes and not used as reference materials in the ordinary course of a party's business operations; and voicemail are hereby identified by the party as not reasonably accessible for purposes of Federal Rule of Civil Procedure 26(b)(2)(B). Nothing in this paragraph precludes discovery of such items pursuant to Federal Rule of Civil Procedure 26(b)(2)(B).

9. Each party shall provide a privilege log complying with Federal Rule of Civil Procedure 26(b)(5) for documents or information withheld on the grounds of attorney–client privilege, work-product or trial-preparation immunity, or any other privilege, immunity, or nonwaiver doctrine. For each withheld item, the privilege log will include the following information (to the extent applicable): production number(s) (e.g., for redacted documents) or applicable discovery request (for information withheld from written discovery response, such as an interrogatory response); date; author; recipient(s); carbon copy recipient(s); a description sufficient to identify the contents of the withheld or redacted document; and the basis or bases for withholding. However, a party does not need to list on a privilege log any items that (a) are disclosed only among the party, its attorneys, and its experts and (b) were generated on or after October 28, 2016, or were generated in connection with another litigation involving a Nomadix patent.

10. When a party produces documents or information in redacted form, all redactions must be clearly labeled with the legend "REDACTED" or a substantially similar legend.

11. The parties will not seek and are not entitled to discovery of: communications between counsel and expert witnesses, drafts of Rule 26(a) expert disclosures, or notes or records of experts relating to their expert opinions or their work as an expert, unless the information sought was relied upon by the expert in forming his or her opinion (including any opinions expressed while testifying at any proceeding, including a deposition) but was not explained or otherwise disclosed in material part in the expert's Rule 26(a) disclosure.

12. Each party shall, at least initially, bear the costs of its own collection, processing, and production of documents and materials, including electronically stored information. To the extent that a discovery dispute arises because a party believes that complying with specific production requests will require a significant cost expenditure, the parties will work in good faith to resolve or narrow the issue, if possible. Nothing in this paragraph limits a party's ability to seek to shift discovery costs, to seek costs as a sanction, to seek costs as a prevailing party, or to otherwise seek reimbursement of its costs.

13. Any deposition of a party employee or a party's Rule 30(b)(6) representative will take place at the offices of the party's counsel of record.

14. U.S. law shall govern all questions of privilege.

15. A party that inadvertently produces a document or information that it believes is subject to the attorney–client privilege, work-product or trial-preparation immunity, or any other privilege, immunity, or nonwaiver doctrine (e.g., the common-interest doctrine) may, in writing, promptly upon discovery of such inadvertent disclosure, so advise the other party and request that the pertinent items be returned or destroyed. Within five (5) court days of receiving said written notice and request from the producing party, the receiving party shall return,

destroy, or sequester the inadvertently disclosed items, including all copies and any notes or summaries referring to or relating to any of the inadvertently disclosed items. The receiving party's counsel of record may prepare a summary record of the date, author, address(es), and topic of the inadvertently disclosed item and such other information that is not privileged or otherwise protected as is reasonably necessary to identify the item and describe its nature in a motion to compel. Such a record of the identity and nature of the inadvertently disclosed item may not be used for any purpose other than preparing a motion to compel in this civil action. After returning, destroying, or sequestering the inadvertently disclosed item, the receiving party may challenge the producing party's claim of privilege, immunity, or nonwaiver by motion. If the inadvertently disclosed item is sequestered, the receiving party may submit (as a proposed sealed filing) the item or a copy of the item with such a motion. Inadvertent disclosure will by itself not necessarily waive any applicable privilege, immunity, or nonwaiver doctrine; the producing and receiving parties may rely on Federal Rule of Evidence 502 to argue whether the disclosure operated as a waiver.

16. The parties will not object to an interrogatory on the grounds that it has too many subparts (or otherwise object that the opposing party is circumventing the limit on the number of interrogatories by using subparts) simply because an interrogatory calls for information relating to more than one licensed patent, more than one patent claim, more than one claim limitation, more than one license quarter, or any combination thereof.

17. Each party may serve any paper—including discovery requests, discovery responses, and expert disclosures—on the other party by e-mail. When electronic service is not feasible by attaching the paper directly to an e-mail (such as when the electronic files are large in size or a large volume of papers needs to be served), then a party may serve papers by uploading them to a file-sharing service (such as a drop-box or FTP site) and transmitting an e-mail to the other party that

notifies the other party that the papers are available for download and that provides appropriate instructions for accessing the file-sharing service. Each attorney of record for each party consents to the service permitted in the previous two sentences; and such consent shall extend automatically to any other attorneys from the parties' current law firms of record who later appear in this case. A party may specify a reasonable number of e-mail addresses that should be included on any service e-mail; the other party shall endeavor to include all such e-mail addresses on any service e-mail, but if one or more such e-mail addresses are omitted inadvertently, service will still be effective if it complies with Federal Rule of Civil Procedure 5(b)(2)(E). Federal Rule of Civil Procedure 6(a)(4) is extended as needed to apply to electronic service: that is, for electronic service, the last day ends at midnight in the Pacific Time Zone.

18. Nothing in this stipulation prevents the parties from later stipulating to alternative discovery procedures (whether such procedures are to be applied in general or only in specific cases).

**IT IS SO ORDERED.**

Dated: September 7, 2017         /S/ FREDERICK F. MUMM
                                 Honorable Frederick F. Mumm
                                 United States Magistrate Judge