1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11

NOMADIX, INC.

Case No. CV 16-08033-AB (FFMx)

Plaintiff,

12
13

v.

**ORDER DENYING
DEFENDANT'S MOTION TO
COMPEL ARBITRATION AND
STAY DISCOVERY**

14

GUEST-TEK INTERACTIVE
ENTERTAINMENT LTD,

15
16

Defendant.

17
18
19
20
21
22
23
24
25
26

    Pending before the Court is Defendant and Counterclaimant Guest-Tek Interactive Entertainment LTD's ("Guest-Tek") Motion to Compel Arbitration and Stay Discovery.  (Dkt. No. 73.)  Plaintiff and Counter-defendant Nomadix ("Nomadix") filed an Opposition, (Dkt. No. 87), and Guest-Tek replied, (Dkt. No. 114).  After considering the papers filed in support of and in opposition to the instant Motion, the Court deems this matter appropriate for decision without oral argument of counsel.  The hearing set for October 20, 2017 is hereby **VACATED**.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7–15.   For the following reasons, the Court **DENIES** Guest-Tek's Motion.

27
28

1

2

## I.    BACKGROUND[1]

3

4

5

6

7

8

9

10

11

12

Nomadix owns various patents related to the network devices it manufactures and distributes.  In 2009, Nomadix sued Guest-Tek, a corporation that sells network devices in the hospitality industry, for alleged infringement of seven Nomadix patents. (FAC ¶¶ 6, 12.)  The parties settled this suit in December 2010 and entered into a licensing agreement ("License Agreement") as part of the settlement.  (*Id.* at ¶ 13, Ex. A.)  The License Agreement provided that Nomadix would grant Guest-Tek a "royalty-bearing, limited, nonexclusive license under the patents involved in the 2009 Litigation and certain related patents," which would permit Guest-Tek to include certain functionalities of Nomadix patents in the devices and services it provided to hotels and other properties as part of its business.  (*Id.* at ¶ 15.)

13

14

15

16

17

18

19

20

21

The License Agreement has a three-part Dispute Resolution Clause which first provides for mediation "[i]n the event that the Parties are unable to reach mutual agreement on (1) whether a Guest-Tek product is covered by the Covenant Not To Sue discussed in clauses 3.1 or 3.2, or (2) whether a feature or functionality is not present at a Guest-Tek property according to clause 2.5.2."  (Dkt. No. 34-1, Ex. A ("License Agreement") § 7.2 (under seal).)  If mediation failed or the parties could not agree on a mediator, they would have thirty days to resolve the dispute through nonbinding arbitration. (*Id.*)  If arbitration failed to resolve the dispute, either party could bring suit in the Central District of California. (*Id.*)

22

23

24

25

Nomadix alleges it requested in January 2013 that the parties participate in mediation under the Dispute Resolution Clause.  Guest-Tek did not identify an acceptable mediator, but instead requested that the parties discuss their positions.  (*Id.*

26

27

28

---

[1] The Court's recent order denying Guest-Tek's motion to dismiss includes a more detailed background regarding the allegations in Nomadix's Complaint.  (Dkt. No. 65 (under seal).)

at ¶ 47.)  According to Nomadix, it agreed to Guest-Tek's request as an "attempt in good faith to reduce the cost of resolving the disagreement." (*Id.*)  These discussions extended throughout 2013, wherein "Nomadix identified sample patent claims for Guest-Tek to consider" and sample claim charts at Guest-Tek's request." (*Id.*)  When Nomadix requested that Guest-Tek give its position, "Guest-Tek delayed and never satisfactorily responded." (*Id.*)

When Nomadix requested that the parties begin the arbitration process outlined in the Dispute Resolution Clause, Guest-Tek refused to identify an arbitrator and insisted that the parties had to first mediate their claims.  (*Id.* at ¶ 48.)  Nomadix disputed this point, but nevertheless agreed to mediate.  On April 16, 2014, the parties engaged in a full-day mediation before Antonio Piazza of Mediated Negotiations.  (*Id.* at ¶¶ 48-49.)  In that mediation, Guest-Tek drafted the "Guest-Tek – Nomadix Confidential MOU 4/16/2014" ("MOU") by hand, which both parties signed.  (*Id.* at ¶ 50.)  The MOU provided the following terms:

- "12 month standstill, including tolling of any statute of limitations.
  - Neither party will pursue any claims it may have with respect to its patents, the settlement agreement, and/or the license agreement.
  - Neither party will attack the other party's patents—no validity, patentability or enforceability challenges
- Parties retain mutually agreeable expert to evaluate the Guest-Tek design arounds
  - Expert report not discoverable, admissible or binding
  - Parties agree not to dispute expert conclusions for purposes of settlement discussions
- The parties stipulate that this satisfies the arbitration provision of the settlement and license agreements.
- Guest-Tek will reasonably cooperate with Nomadix's audit requests."

(Dkt. No. 32-3 ("2014 MOU").)  The parties dispute the meaning of the second-to-last provision that "this satisfies the arbitration provision of the settlement and license agreements."  Nomadix contends the provision "discharged any obligation to arbitrate any portion of the present litigation in accordance with" the Dispute Resolution Provision of the License Agreement, and that in any event, Nomadix has since requested that the parties retain an expert in accordance with the 2014 MOU, but that Guest-Tek has refused to cooperate.  (FAC ¶¶ 51, 54.)  Guest-Tek, on the other hand, maintains that the MOU provision discharging the License Agreement's arbitration requirements would take effect once the parties fulfilled the other requirements of the 2014 MOU, namely, by retaining a mutually-agreeable expert to evaluate Guest-Tek's devices.  (*Id.* at ¶ 53.)

Guest-Tek moved to dismiss Nomadix's Complaint for failure to comply with the arbitration requirement of the Dispute Resolution Clause.  (Dkt. No. 40.)  The Court denied the motion, finding the MOU ambiguous and reasonably susceptible to both parties' interpretations of the disputed provision.  (Dkt. No. 65 at 12-13 (under seal).)  The instant Motion followed.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  Any arbitration agreement within the scope of the FAA "shall be valid, irrevocable, and enforceable" and a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" may file a petition in the district court for an order compelling arbitration.  9 U.S.C. §§ 2, 4.  "[U]pon being satisfied that the making of the agreement for arbitration [] is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to

4.

which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal citation omitted).

When deciding a motion to compel arbitration, the Court must look to whether there is (1) a valid agreement to arbitrate and (2) whether the dispute falls within the scope of the arbitration clause. *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991). Under the FAA, "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483 (1987). The moving party bears the burden of proving both of these elements, while the opponent has the burden of proving the facts of any defense to enforceability. The FAA evinces a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1985).

## III.   DISCUSSION

### a. Applicable Law

As an initial matter, Guest-Tek argues the Federal Arbitration Act ("FAA") governs the interpretation of the Dispute Resolution Clause in the License Agreement, and that under the FAA, Nomadix's claims are arbitrable and should thus be submitted to arbitration. (Mot. at 7.) Guest-Tek does not specifically address what law should govern interpretation of the MOU. However, Guest-Tek admits that the "threshold question at this juncture" is whether execution of the MOU satisfied the arbitration provision. (*Id.*) Further, Guest-Tek relies on California cases in support of its proposed construal of the MOU. (*See* Mot. at 9 n.4, 10-11.) Nomadix's argues California law applies to the MOU's interpretation. (Opp'n at 5.)

Indeed, the Court must now decide the question of whether the signing of the 2014 MOU satisfied the arbitration provision of the Dispute Resolution Clause, or in other words, whether the parties were required to submit their disputes to arbitration at all.  The parties dispute the meaning of the word "this" in the MOU and effectively agree that the interpretation of this term will answer the question of whether they were required to arbitrate prior to filing suit.  The question, then, is one of contract interpretation and governed by state law.  *Tompkins v. 23andMe, Inc*., No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *4 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) ("The interpretation of an arbitration agreement is therefore generally a matter of state law . . . unless application of state-law rules would stand as an obstacle of the accomplishment of the FAA's objectives.") (citations and quotations omitted); *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 937 (9th Cir. 2001) ("[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.") (citations omitted).

"In short, as long as state law defenses concerning validity, revocability and enforceability of contracts are generally applied to all contracts, and not limited to arbitration clauses, federal courts may enforce them under the FAA."  *Id.*  Indeed, the FAA would be wholly inapplicable to the disputes at hand if the parties need not submit to arbitration, as Nomadix argues is the case here.  As to which state law applies, the parties do not dispute that California law governs both the License Agreement and the 2014 MOU.  (Dkt. No 40 at 11; Dkt. No. 45 at 6-7.)  California law thus also governs the preliminary issue of interpreting the terms of the 2014 MOU.

### b. Whether the 2014 MOU Discharged the Parties' Arbitration Obligation under the Dispute Resolution Clause

"The interpretation of contracts under California law involves a complex interplay of questions of fact and questions of law."  *Lord Abbett Mun. Income Fund,*

*Inc. v. Asami*, No. C 12-03694 DMR, 2012 WL 5379591, at *6 (N.D. Cal. Oct. 31, 2012) (citing *City of Santa Clara v. Watkins*, 984 F.2d 1008, 1012 (9th Cir. 1993)). "The court must first determine whether the contested terms are ambiguous," which "is a question of law to be decided by the court." *Id*. In its recent Order denying Guest-Tek's motion to dismiss, the Court determined the terms of the MOU were ambiguous. (*See* Dkt. No. 65 (under seal).) There, the Court held that "the term 'this satisfies the arbitration provision' is reasonably susceptible of either party's proffered interpretation: the parties could have intended to supplant the arbitration requirement in the Dispute Resolution provision with those in the MOU, or the parties could have agreed to release themselves from the arbitration requirement and proceed with settlement discussions governed by the MOU terms." (*Id.*) However, since the prior order concerned a motion to dismiss, the Court did not in fact interpret the contract. The Court does so now.

## 1. Guest-Tek's Position

Guest-Tek contends that compliance with the terms set forth in the MOU would be what satisfied the arbitration provision of the settlement and license agreements. (Mot. at 5.) Additionally, Guest-Tek contends that it attempted to comply with the alternative process set forth in the MOU by suggesting experts after Nomadix threatened litigation. (Mot. at 9-10; Dkt. No. 83-1 at Exs. D, E.) Guest-Tek also argues that applying Nomadix's interpretation would lead to absurd results. (Mot. at 10.) "Under Nomadix's theory, it could game the MOU in such a way as to avoid both arbitration under the License Agreement *and* dispute resolution under the MOU." (*Id.*)

## A. Guest-Tek's Evidence

In support of its interpretation of the MOU, Guest-Tek provides declarations from its CEO Arnon Levy ("Levy") and Nomadix's former CEO, Charles Reed ("Reed"). (*See* Ex. 83-1 at Ex. F ("Reed Decl."), Ex. G ("Levy Decl.").) Levy

testifies that when he signed the MOU, he did not believe his "signature . . . satisfied the arbitration provision in the License Agreement."  (Levy Decl. ¶ 14.)  Reed testifies that he "did not believe when [he] signed the [MOU] on behalf of Nomadix that [his] signature . . . satisfied the arbitration provision in the License Agreement and that only the conclusion of the Expert satisfied the arbitration provision."[2]  (Reed Decl. ¶ 10.)  However, these declarations are not competent evidence of Guest-Tek's interpretation, and the Court does not consider them in its analysis.

California applies the objective standard of contract interpretation, which maintains that the outward manifestation or expression of assent is controlling.  *Brant v. Cal. Dairies*, 4 Cal. 2d 128, 133 (1935).  As a result, "the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language."  *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (Ct. App. 1992).  Here, the parties remained in separate rooms for most of the 2014 mediation.  (Hughes Decl. ¶ 9.)  Guest-Tek transcribed the MOU, which was then presented to Nomadix by the mediator.  (*Id.* ¶ 11.)  Reed and Levy were not together when the MOU was transcribed or signed.  Moreover, there is no evidence to show their subjective interpretations of the MOU were ever voiced during the mediation.  Accordingly, the Court does not find their declarations regarding the meaning of the MOU persuasive.  *See e.g.*, *Salehi v. Surfside III Condo. Owners' Ass'n*, 200 Cal. App. 4th 1146, 1159 (Ct. App. 2011) (holding undisclosed subjective intent of parties irrelevant to determining contract meaning); *Founding Members of Newport Beach Country Club v. Newport Beach Country Club*, 109 Cal. App. 4th 944, 960 (Ct. App. 2003) (same).

## 2.  Nomadix's Position

---

[2] The Court notes that, here—in a case where significant time has been spent attempting to interpret an ambiguous statement—Guest-Tek has seemingly advanced another ambiguous statement in support of its position.  The qualifier he "did not believe" could be applied to both subsequent clauses in the sentence: (1) that his signature satisfied the arbitration provision, and (2) that only the conclusion of the expert satisfied the arbitration provision.

Nomadix, on the other hand, alleges "in the 2014 MOU, the parties stipulated to the satisfaction of the arbitration provision in the License Agreement, which discharged any obligation for further arbitration."  (FAC ¶ 55.)  Nomadix argues the mutual promise that the parties would not pursue their claims for a twelve-month period and that they would retain an expert to facilitate settlement discussions was what "satisfie[d] the arbitration provision of the settlement and license agreements." (2014 MOU.)  Nomadix contends the present-tense language of "*this satisfies* the arbitration provision" and the lack of conditional language indicate the arbitration obligation was discharged upon agreeing to the terms of the MOU.  (Opp'n at 5-13.)

Nomadix explains that it would have had no incentive to engage in a twelve month standstill to participate in the process set out in the MOU if at the end of that period it may have still been required to arbitrate under the terms of the Dispute Resolution Clause.  (*See Declaration* of Kelly Hughes in Support of Nomadix's Opposition ("Hughes Decl.") ¶ 6.)  As Nomadix points out, it first raised the issue of Guest-Tek's potential noncompliance with the License Agreement in January 2013 and initially sought to mediate according to the Dispute Resolution Clause in 2013, but instead complied with Guest-Tek's requests to engage in informal discussions throughout that year.  According to Nomadix, Guest-Tek was not meaningfully participating in these discussions so Nomadix sought arbitration.  At that point, Guest-Tek insisted on mediation under the Dispute Resolution Clause, and the parties met for the mediation in April 2014, a year after Nomadix had first requested it.  (FAC ¶¶ 48-49.)  In Nomadix's view, the benefit of the MOU was that the parties had twelve months to engage an expert and participate in settlement negotiations, and if those failed or the parties did not comply, the arbitration provision would be satisfied and Nomadix could immediately file suit.  (Dkt. No. 45 at 6-7; *see* Hughes Decl. ¶¶ 15-16.)

1

2

### c.   Satisfaction of the Arbitration Provision Is Not Conditional

3   Nomadix argues that under California law, the language "this satisfies the

4   arbitration provision" should not be interpreted as conditional.  (Opp'n at 7.)  "The

5   existence of a condition precedent normally depends upon the intent of the parties as

6   determined from the words they have employed in the contract."  *Realmuto v.*

7   *Gagnard*, 110 Cal. App. 4th 193, 199 (Ct. App. 2003).  But "stipulations in an

8   agreement are not to be construed as conditions precedent unless such construction is

9   required by clear, unambiguous language; and particularly so where a forfeiture would

10   be involved or inequitable consequences would result."  *Alpha Beta Food Markets v.*

11   *Retail Clerks Union Local 770*, 45 Cal. 2d 764, 771 (1955); *see also Rubin v. Fuchs*, 1

12   Cal. 3d 50, 53 (1969) (contract provisions are not construed as conditions precedent in

13   the absence of language plainly requiring such construction); *City of San Diego v.*

14   *Haas*, 207 Cal. App. 4th 472, 493 (Ct. App. 2012).  Because "such conditions are not

15   favored by the law, [they] are to be strictly construed against one seeking to avail

16   [it]self of them."  *Antonelle v. Kennedy & Shaw Lumber Co.*, 140 Cal. 309, 315

17   (1903).

18   The MOU generally, and the phrase "this satisfies the arbitration provision"

19   specifically, contains no conditional language, such as "if" or "subject to."  The MOU

20   does not contain the "clear, unambiguous language" required for the Court to find that

21   performance of the obligations created by the MOU were a condition precedent to the

22   satisfaction of the arbitration provision in the License Agreement.  The fact that the

23   Court has already determined that the language is ambiguous generally belies a

24   finding that the MOU clearly or unambiguously contains a condition precedent.

25   Accordingly, consistent with California law, the Court finds that the parties' failure to

26   comply with all of the obligations set forth in the MOU was not a condition precedent

27   to the satisfaction of the arbitration provision in the License Agreement.

28

1

2

### d.  Nomadix's Interpretation Does Not Lead to an Absurd Result

As Guest-Tek notes, contract interpretation must be fair and reasonable, "not leading to absurd conclusions." *ASP Properties Grp., L.P. v. Fard, Inc.*, 133 Cal. App. 4th 1257, 1269 (Ct. App. 2005).  However, the Court finds that interpreting the MOU as having satisfied the arbitration provision of the Lease Agreement upon execution is not an absurd conclusion.  It is not absurd that parties to a dispute would agree to give up a previous contractual obligation, i.e., to undergo arbitration, in exchange for agreement to undertake new obligations, i.e., restraining from pursuing any claims for one year and agreeing to hire an expert to evaluate design arounds.  Also, contrary to Guest-Tek's contention, this interpretation does not allow Nomadix to avoid both arbitration *and* the resolution process set forth by the MOU.  By signing the MOU, Nomadix agreed to postpone bringing its claims for one year and to engage an expert to evaluate Guest-Tek's design arounds.  The fact that Nomadix did not ultimately fulfill these obligations does not allow it "to avoid dispute resolution under the MOU"; it merely suggests Nomadix is in breach of the MOU.

### IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Guest-Tek's Motion to Compel Arbitration.  As a result, the Court **DENIES** Guest-Tek's Motion to Stay Discovery Pending Arbitration and Ex Parte Application to Continue Motion to Compel Hearing as moot.

**IT IS SO ORDERED.**

Dated:  October 17, 2017

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE