# EXHIBIT B

EXECUTION VERSION

THIS NOTE (AS DEFINED BELOW) HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (TOGETHER WITH ANY APPLICABLE RULES AND REGULATIONS THEREUNDER, AND ANY SUCCESSOR TO SUCH STATUTE, RULES OR REGULATIONS, THE "ACT") OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED UNLESS THE SAME IS REGISTERED UNDER THE ACT AND APPLICABLE STATE AND OTHER LAWS OR UNLESS AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.

PROMISSORY NOTE

$55,000,000.00                                              Dated: 29 September 2015

FOR VALUE RECEIVED, interTouch Holdings LLC, a Delaware limited liability company ("Issuer"), promises to pay, in lawful money of the United States of America, to NTT DOCOMO, INC. ("Holder"), a company incorporated under the laws of Japan having its registered office at 2-11-1, Nagata-cho, Chiyoda-ku, Tokyo 100-6150, Japan by wire transfer to an account designated by Holder, the principal sum of Fifty Five Million Dollars ($55,000,000.00) (the "Principal Amount"), or so much thereof as may be outstanding from time to time, plus interest at a per annum rate equal to 6.00% (the "Interest Rate") computed on a year of 365/366 days on the outstanding principal balance hereof from the date hereof until the payment thereof in full, payable on the terms set forth in this Promissory Note (this "Note") and the NPA referred to below.

This Note is issued pursuant to the terms of that certain Note Purchase Agreement (as the same may be amended, restated, supplemented or otherwise modified from time to time pursuant to the terms thereof, the "NPA") dated of even date herewith, and is subject to the terms and conditions set forth therein. Capitalized terms used but not otherwise defined herein shall have the respective meanings given to them in the NPA.

1. Payments.

1.1 Payment of Note. Interest shall commence to accrue on the outstanding principal amount of this Note as of the day and year first above written, and all interest accrued hereunder shall be payable in arrears on the last day of each quarter, with the first quarterly payment due on December 31, 2015, and thereafter on each of March 31, June 30, September 30 and December 31 through March 31, 2017 (the "Maturity Date"). The principal amount hereof, together with all accrued and unpaid interest shall be payable in two installments, the first in the amount of Five Million Dollars ($5,000,000.00) payable on October 9, 2015, and the remaining principal balance payable on the Maturity Date.

Any payment falling due on a day that is not a Business Day shall be made on the next succeeding Business Day.

1.2   **Prepayment.** This Note may be prepaid in whole or in part, at any time and from time-to-time without payment of any penalty or premium in accordance with Section 1.8(a) of the NPA.

1.3   **Taxes.** Payments may be subject to deduction or withholding for Taxes as set forth in Article VII of the NPA.

2.   **Events of Default.** The occurrence and continuance of any of the following events or conditions shall, without notice or demand, constitute an "Event of Default" under this Note:

2.1   an Event of Default (as defined in the NPA) has occurred under the NPA.

Acceptance by Holder of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and Issuer's failure to pay the entire amount then due shall be and continue to be an Event of Default. Any such acceptance shall not be deemed a novation of this Note and Issuer hereby expressly waives the benefits of any statute or rule of law or equity which would produce a contrary result. On the occurrence and continuance of any Event of Default, neither the failure of Holder to promptly exercise its right to declare the outstanding Principal Amount and accrued and unpaid interest to be immediately due and payable, nor the failure of Holder to demand strict performance of any other obligation of Issuer under this Note, shall constitute a waiver of such rights in connection with any future default on the part of Issuer, except to the extent Holder makes any express waivers in writing.

Upon the occurrence and during the continuance of an Event of Default, the Interest Rate shall automatically and immediately change from 6.00% per annum to 8.00% per annum.

3.   [Reserved].

4.   **Remedies.** No right or remedy conferred upon or reserved to Holder hereunder or now or hereafter existing at law or in equity is intended to be exclusive of any other right or remedy, and each and every such right or remedy shall be cumulative and concurrent, and in addition to every other such right or remedy, and may be pursued singly, concurrently, successively or otherwise, at the sole discretion of Holder, and shall not be exhausted by any one exercise thereof but may be exercised as often as occasion therefor shall occur.

5.   **Notices.** Any notice, request, instruction or other document to be given hereunder shall be in writing and shall be made in accordance with Section 10.4 of the NPA.

6.  **Security.** The full amount of this Note is secured by the Collateral (as defined in the NPA) identified and described as security therefor in the NPA executed and delivered by the Issuer to Holder.

7.  **Miscellaneous.**

    7.1  **Successors and Assigns.** All rights of Issuer and Holder under this Note shall inure to the benefit of their respective successors, assigns, and legal representatives and this Note and all the provisions hereof shall be binding upon Issuer and Holder and their respective successors, assigns, and legal representatives and all other persons or entities claiming under or through them. The term "Issuer", when used in this Note, shall include all of Issuer's successors, assigns, and legal representatives. The term "Holder", when used in this Note, shall include Holder's successors and permitted assigns. Neither party hereto may sell, assign or transfer any of its rights and obligations under this Note except as permitted under the NPA.

    7.2  **Amendments.** Neither this Note nor any provision hereof may be waived, amended or discharged orally, but may be waived, amended or discharged only by an agreement in writing signed by the party against whom enforcement of any waiver, amendment or discharge is sought.

    7.3  **Governing Law.** This Note shall be governed by and construed in accordance with the substantive laws of the State of New York regardless of any principles of choice or conflict of laws that would otherwise provide for the application of the substantive laws of another jurisdiction.

    7.4  **Headings.** The descriptive headings of the Sections of this Note are for convenience only and do not constitute a part of this Note.

    7.5  **Severability.** If any provision of this Note shall be held to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall attach only to such provision and shall not in any manner affect or render illegal, invalid or unenforceable any other provision of this Note, and this Note shall be carried out as if any such illegal, invalid or unenforceable provision were not contained herein.

[Signature Page Follows]

COPY

IN WITNESS WHEREOF, this Note has been duly executed and delivered by Issuer on the date first above written.

ISSUER:

INTERTOUCH HOLDINGS LLC

By: _____
Name: Toque Moore
Title: CEO

*Signature Page to the Note*