# EXHIBIT C

EXHIBIT C
PAGE 81

**EXECUTION VERSION**

# GUARANTY

by

**NOMADIX, INC.**,
as Guarantor,

in favor of

**NTT DOCOMO, INC.**,
as Noteholder,

dated as of

September 29, 2015

---

# GUARANTY

This GUARANTY, dated as of September 29, 2015 (as the same may be amended, supplemented or otherwise modified from time to time, the "Guaranty") is made by **NOMADIX, INC.**, a corporation organized and existing under the laws of Delaware (the "Guarantor"), in favor of **NTT DOCOMO, INC.**, a company organized and existing under the laws of Japan (the "Noteholder").

## RECITALS:

WHEREAS, the Noteholder has accepted and holds that certain Promissory Note issued by the Issuer (as hereinafter defined) dated September 29, 2015 in an original principal amount of $55,000,000 (the "Note");

WHEREAS, the Guarantor receives direct and indirect benefits by reason of the Noteholder's accepting and holding the Note;

NOW THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor hereby guarantees, promises and undertakes as follows:

**SECTION 1. Definitions.** The following terms used in this Guaranty shall have the following meanings (such meanings to be applicable, except to the extent otherwise indicated in a definition of a particular term, both to the singular and the plural forms of the terms defined):

"Agreement" shall mean the Note Purchase Agreement, of even date herewith, by and between the Noteholder and interTouch Holdings LLC, a company organized and existing under the laws of the State of Delaware (the "Issuer"), as the same may be amended, extended, modified, substituted, exchanged or replaced from time to time.

"Issuer" has the meaning set forth in the definition of Agreement.

"Note Documents" has the meaning set forth in the Agreement.

"Obligations" shall have the meaning ascribed to such term in Section 2 hereof.

"Person" has the meaning set forth in the Agreement.

"Specified Event of Default" shall mean either (a) the Note has been declared due and payable upon an Event of Default pursuant to Section 6.2 of the NPA or (b) an Event of Default has occurred and is continuing due to the Issuer's default in payment of principal of the Note upon the Maturity Date.

"Taxes" shall have the meaning ascribed to such term in Section 16 hereof.

(b) Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Agreement.

SECTION 2. <u>Guaranty</u>. The Guarantor unconditionally, absolutely and irrevocably guarantees to pay to the Noteholder, on demand, any and all present or future indebtedness, and to perform any and all present or future liabilities or obligations, of the Issuer of every kind or nature, howsoever evidenced, owing to the Noteholder, whether direct or indirect, primary or secondary, absolute or contingent, liquidated or unliquidated, matured or unmatured, arising out of or in connection with or with respect to the Agreement, any other Note Document, or any other instrument or agreement from time to time between the Issuer and the Noteholder, as any of the foregoing may be amended, modified or otherwise supplemented from time to time (all of the foregoing referred to as the "<u>Obligations</u>"), together with any and all reasonable and documented costs and expenses (including, without limitation, reasonable and documented out-of-pocket attorneys' fees and disbursements) incurred by the Noteholder in preserving, protecting or defending the enforceability of, or enforcing, this Guaranty or the Noteholder's rights hereunder. This Guaranty is a guaranty of payment and not of collectibility.

If for any reason whatsoever the Issuer shall fail or be unable duly, punctually and fully to pay or perform the Obligations or any part thereof as and when the same shall become payable or performable in accordance with the terms of the Agreement or otherwise, (i) the Noteholder may proceed directly and at once, without notice, against the Guarantor to obtain performance of and to collect and recover the full amount, or any portion, of the Obligations that are due and payable at or during such time without (a) first proceeding against the Issuer or any other Person, or (b) proceeding against any other security or collateral for the Obligations (including, without limitation, proceeding under any Guaranty), and (ii) the Guarantor shall pay or cause to be paid to the Noteholder, on demand, the full amount of the Obligations pursuant to the terms of the Agreement or otherwise that are due and payable at or during such time. All such payments by the Guarantor to the Noteholder shall be made without set-off or counterclaim, and the Guarantor hereby waives all set-offs and counterclaims.

Notwithstanding the foregoing, in any action or proceeding involving any state corporate law or any state or Federal bankruptcy, insolvency, reorganization, fraudulent conveyance, or other law affecting the rights of creditors generally, if the obligations of the Guarantor would otherwise be held or determined to be void, invalid or unenforceable on account of the amount of its liability hereunder, then notwithstanding any other provision hereof to the contrary, the amount of such liability shall, without any further action by the Guarantor or any other person, be automatically limited and reduced to the highest amount which is valid and enforceable as determined in such action or proceeding. Guarantor agrees that the Obligations may at any time and from time to time exceed Guarantor's maximum liability without impairing this Guaranty or affecting the Noteholder's rights and remedies hereunder.

Notwithstanding the foregoing or any other provision of any Loan Document, the Noteholder shall be permitted to seek recovery from the Guarantor under this Guaranty only after five (5) days prior written notice and only to the extent that a Specified Event of Default has occurred and is continuing.

SECTION 3. **Obligations Unconditional.** The Guarantor hereby agrees that its obligations under this Guaranty shall be unconditional and binding upon it irrespective of:

(a) the validity or enforceability, avoidance or subordination of the Obligations or the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations;

(b) the absence of any attempt to collect the Obligations from or proceed against the Issuer or any other Guarantor any collateral security, or other action to enforce the same;

(c) any action taken by the Noteholder, from time to time, to (i) renew, refinance, refund, extend, accelerate or otherwise change the time for payment of, or other terms relating to, any or all of the Obligations, increase or modify the amount of the Obligations or otherwise consent, waive, modify, amend or change the terms of the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations; (ii) accept partial payments on all or any part of the Obligations; (iii) take and hold security or collateral (either directly or indirectly) for the payment of any or all of the Obligations, or for the payment of this Guaranty, or for the payment of any other guaranties of the Obligations; (iv) substitute, exchange, enforce, waive and release any such security or collateral, or direct any other Person to do any of the foregoing; and (v) settle, release, compromise, collect or otherwise liquidate any or all of the Obligations and exchange, enforce, fail to protect, perfect or continue perfected, release or waive any security or collateral for the Obligations, in any manner, without affecting or impairing the obligations of the Guarantor hereunder; and (vi) settle, release, compromise or collect on any Guaranty;

(d) any insolvency, bankruptcy, assignment for the benefit of creditors or other similar events or proceedings affecting the Guarantor or the Issuer, or any of their respective assets or of any other Guarantor, or any action taken by any trustee or receiver or by any court in any such proceeding, or any allegation of invalidity of this Guaranty in any such proceeding;

(e) any release or discharge by operation of law of the Issuer, the Guarantor or of any other guarantor, or any other Person from the performance or observance of any obligation, covenant or agreement contained in the Agreement, any other Note Document, this Guaranty or any other instrument or agreement evidencing the Obligations;

(f) any merger or consolidation of the Issuer into or with any other Person or any sale, lease or transfer of any of the assets of the Issuer to any other Person; or

(g) any other occurrence or circumstance whatsoever, whether similar or dissimilar to the foregoing, and any other circumstances that might otherwise constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or that might otherwise limit recourse against the Guarantor other than a defense of payment or the Note Discharge.

-3-

SECTION 4. **Waivers, etc.**  The Guarantor hereby waives any requirement of promptness, diligence, presentment, acceptance, notice of acceptance, demand of payment or performance, notice of non-performance, filing of claims with a court in the event of receivership or bankruptcy of the Issuer, protest or notice with respect to the Obligations, the benefit of any statutes of limitation, all demands whatsoever, all notices and demands that may be required by law, now or hereafter in effect, to preserve intact any rights against the Guarantor, and any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge, release or defense of a guarantor or that may otherwise limit recourse against the Guarantor. The Guarantor further waives notices of any and all proceedings to collect from any other guarantor or surety of all or any part of the Obligations or any collateral or security with respect thereto, or from anyone else, and notices of exchange, sale, surrender or other handling of any collateral or security given to the Noteholder (whether directly or indirectly) to secure payment of the Obligations.

SECTION 5. **Effect of Bankruptcy Proceedings, etc.**  If payments and credits, if any, from the Guarantor, the Issuer or from any other Person on account of the Obligations that have been made to the Noteholder as provided herein, or any part thereof, are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to the Guarantor or any other Person under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the Obligations or part thereof that has been paid, reduced or satisfied by such amount shall be reinstated and such Obligations and this Guaranty shall continue in full force and effect as of the time immediately preceding the time such initial payment, credit, reduction or satisfaction occurred.  The Guarantor agrees that, notwithstanding the foregoing and without limiting the generality of the foregoing if, after the occurrence of an Event of Default (as such term is defined in this Guaranty), the Noteholder is prevented by applicable law from exercising its right to accelerate the maturity of the Obligations, to collect interest on the Obligations or to enforce or exercise any other right or remedy with respect to the Obligations, the Guarantor shall pay to the Noteholder, upon demand therefor, the amount that otherwise would have been due and payable had such rights and remedies been permitted to be exercised by the Noteholder.

At any time when a Specified Event of Default has occurred and is continuing until the Note Discharge the Noteholder may, in its sole discretion, without notice to the Guarantor and regardless of the acceptance of any security or collateral for the payment hereof (either directly or indirectly), appropriate and apply toward the payment of the Obligations then due and payable (i) any indebtedness due or to become due from the Noteholder to the Guarantor, and (ii) any monies, credits or other property belonging to the Guarantor, at any time held by or coming into possession of the Noteholder or any other Person.

SECTION 6. **Subrogation.**  Until the Note Discharge, the Guarantor (i) shall have no right of subrogation and hereby irrevocably agrees not to exercise any rights that it may have or acquire by way of subrogation under this Guaranty, by any payment made hereunder or otherwise, and any right of reimbursement, contribution, exoneration, salvage, or similar right against the Issuer therefor and (ii) agrees not to enforce any and all claims the Guarantor may have against the Issuer for any of the Obligations.

### SECTION 7. Information; Marshalling.

(a) The Guarantor hereby assumes responsibility for keeping itself informed of the financial condition of the Issuers and of any other guarantors or sureties of all or any part of the Obligations, and of all other circumstances bearing upon the risk of nonpayment of the Obligations or any part thereof. The Guarantor hereby agrees that the Noteholder shall have no duty to advise the Guarantor of information known to the Noteholder regarding such condition or any such circumstances. In the event the Noteholder in its sole discretion undertakes at any time or from time to time to provide any such information to the Guarantor, the Noteholder shall be under no obligation (i) to undertake any investigation not a part of its regular business routine, (ii) to disclose any information which, pursuant to accepted or reasonable commercial practices, the Noteholder wishes to maintain confidential or (iii) to make any other or future disclosures of such information or any other information to the Guarantor.

(b) The Guarantor consents and agrees that the Noteholder shall be under no obligation to marshal any assets in favor of the Guarantor or against or in payment of any or all of the Obligations.

### SECTION 8. Representations and Warranties.

The Guarantor represents and warrants as of the date hereof:

(a) Due Authorization, Non-Contravention, etc. The execution, delivery and performance by the Guarantor of this Guaranty and each other Note Document executed or to be executed by it are within the Guarantor's powers, have been duly authorized by all necessary corporate action of the Guarantor, and do not contravene the Guarantor's certificate of incorporation or bylaws.

### SECTION 9. Rights are Cumulative; No Waiver.
The rights and remedies of the Noteholder under this Guaranty are cumulative and not exclusive of any rights or remedies that the Noteholder would otherwise have under the Agreement, any other Note Document (including, without limitation, under any Guaranty) or any other instrument or agreement evidencing the Obligations. No failure or delay on the part of the Noteholder in the exercise of any right, power, privilege or remedy arising under this Guaranty, the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations shall operate as a waiver thereof, and no single or partial exercise by the Noteholder of any such right, power, privilege or remedy shall preclude any further exercise thereof.

### SECTION 10. Amendment.
No amendment, modification or waiver of, or consent with respect to, any provision of this Guaranty shall in any event be effective unless the same shall be in writing and signed and delivered by the Guarantor and the Noteholder, and then any such amendment, modification, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

### SECTION 11. Term of Agreement.
The Guarantor agrees that this Guaranty and all agreements of the Guarantor contained herein shall continue in full force and effect and may not

-5-

be discharged, terminated or otherwise revoked until the Note Discharge, at which time this Guaranty shall automatically terminate without further action by the Guarantor, subject to the terms and provisions of Section 5 hereof.

SECTION 12. **Successors and Assigns**. This Guaranty shall be binding upon the Guarantor and upon the successors and permitted assigns of the Guarantor and shall inure to the benefit of and be enforceable by the Noteholder and its successors and assigns. The Noteholder may assign or otherwise transfer its rights under this Guaranty to any assignee of the Note in connection with an assignment thereof made in accordance with the terms of the Agreement.

SECTION 13. **Governing Law; Jury Trial; Severability**. This Guaranty shall be a contract made under and governed by the laws of the State of New York. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (i) TO ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CONNECTION WITH THIS GUARANTY OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR (ii) ARISING FROM ANY DISPUTE OR CONTROVERSY IN CONNECTION WITH OR RELATED TO THIS GUARANTY OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT, AND AGREES THAT ANY SUCH ACTION OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

EACH OF THE PARTIES HERETO IRREVOCABLY AGREES THAT ANY ACTION OR PROCEEDING IN ANY WAY, MANNER OR RESPECT ARISING OUT OF THIS GUARANTY OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR ARISING FROM ANY DISPUTE OR CONTROVERSY ARISING IN CONNECTION WITH OR RELATED TO THIS GUARANTY OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT SHALL BE LITIGATED IN THE COURTS HAVING SITUS WITHIN THE CITY OF NEW YORK, THE STATE OF NEW YORK, AND EACH PARTY HERETO HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SUCH CITY AND STATE. EACH PARTY HERETO HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT IN ACCORDANCE WITH THIS SECTION 14.

SECTION 14. **Entire Agreement**. This Guaranty and the other Note Documents constitutes the entire agreement of the Guarantor with respect to the subject matter hereof and supersedes all prior negotiations, agreements, discussions, correspondence, memoranda and understandings (whether written or oral) of the Guarantor and the Noteholder concerning or

relating to the subject matter of this Guaranty.

SECTION 15. <u>Payments</u>. Any and all amounts required to be paid by the Guarantor hereunder shall be paid in the lawful currency of the United States of America in immediately available funds, subject to deduction for withholdings as set forth in Article VII of the Agreement.

SECTION 16. <u>Notices</u>. All notices and other communications provided to any party hereto under this Guaranty shall be in writing, Telex or by facsimile and addressed, delivered or transmitted to such party at its address, Telex or facsimile number set forth beneath the signature below or at such other address, Telex or facsimile number as may be designated by such party in a notice to the other parties. Any notice, if mailed and properly addressed with postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any notice, if transmitted by Telex or facsimile, shall be deemed given when transmitted (answerback confirmation in the case of Telexes).

SECTION 17. <u>Captions and References</u>. The recitals to this Guaranty (except for definitions) and the section captions used in this Guaranty are for convenience only, and shall not affect the construction of this Guaranty.

[The rest of this page is intentionally left blank.]

IN WITNESS WHEREOF, this Guaranty has been duly executed as of the day and year first above written.

NOMADIX, INC.

By: _____
Its: _____CEO_____

Address:   c/o Exceptional Innovation
           480 Olde Worthington Road, Suite 350
           Westerville, OH 43082
           USA

Facsimile No.: +1 (614) 890-6091

Attention: Seale A. Moorer, Jr.

with a copy to (which shall not constitute notice):

Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065 USA
Attention: Gabriel Gregson
Facsimile: 1 (650) 802-3100

NTT DOCOMO, INC.

Sanno Park Tower 41st F
2-11-1 Nagata-cho, Chiyoda-ku
Tokyo 100-6150 Japan
Attention: Managing Director of the
Global Business Division
Facsimile: +81 3 5156 0203

*Signature Page to Nomadix Guaranty*