# EXHIBIT D

EXECUTION VERSION

## PATENT SECURITY AGREEMENT

THIS PATENT SECURITY AGREEMENT (the "Agreement") is made and entered into as of September 29, 2015, by NOMADIX, INC., a company incorporated under the laws of Delaware ("Guarantor"), in favor of NTT DOCOMO, INC., a company incorporated under the laws of Japan ("Noteholder").

### WITNESSETH:

WHEREAS, pursuant to that certain Note Purchase Agreement dated September 29, 2015, by and between interTouch Holdings LLC ("Issuer") and Noteholder (as amended or otherwise modified from time to time, the "NPA"; capitalized terms used but not otherwise defined herein having the respective meanings ascribed to them in the NPA), the Noteholder has accepted and holds that certain Promissory Note issued by the Issuer dated September 29, 2015 in an original principal amount of $55,000,000 (the "Note") for a portion of the purchase price under the Share Sale Agreement;

WHEREAS, Guarantor and Noteholder have entered into that certain Guaranty dated September 29, 2015 (as amended or otherwise modified from time to time, the "Guaranty"), providing for, among other items, the guaranty by Guarantor of Issuer's obligations under the NPA; and

WHEREAS, Noteholder has required, as a condition to its receipt of the Note under the NPA, that Guarantor enter into this Agreement with Noteholder.

### AGREEMENT

NOW THEREFORE, in consideration of the premises and in order to induce Noteholder to accept and hold the Note, Guarantor hereby agrees with Noteholder as follows:

1. <u>Security Interest</u>. Guarantor hereby grants to Noteholder a security interest in and to all of its right, title and interest in and to the collateral described in Section 2 herein (the "Collateral") in order to secure the payment of all Obligations (as defined in the Guaranty) and the performance of all the obligations related thereto.

2. <u>Collateral; Financing Statement; Perfection</u>. The Collateral is: (a) all patents and patent applications owned by Guarantor including, without limitation, the patents and patent applications listed on Schedule A attached hereto and made a part hereof, together with all reissues, divisions, continuations, renewals, reexaminations, extensions and continuations-in-part of any of the foregoing (the "Patents"); (b) the inventions claimed in the Patents; (c) all income, royalties, damages and payments now and hereafter due or payable with respect to any of the Patents, including, without limitation, payments under all licenses entered into with respect to the Patents and damages and payments for past or future infringements of the Patents; and (d) the right to sue for past, present and future infringements of the Patents. The Noteholder is expressly authorized to file financing statements in respect of the Collateral and to record this Agreement

with the United States Patent and Trademark Office or other equivalent governmental body as necessary or desirable to perfect or give effect to the security interest created herein.

3. <u>Restrictions on Future Agreements</u>. Until the Note Discharge, Guarantor will not enter into any contractual obligation or, subject to Section 7, take or fail to take any action that would reasonably be expected to impede the exercise of Noteholder's rights to the Collateral upon the occurrence of a Specified Event of Default; provided that, subject to compliance with the mandatory prepayments provisions set forth in Section 1.8(b) of the NPA, nothing in this Agreement shall restrict Guarantor's right to license, sublicense, sell transfer or otherwise dispose of the Collateral. .

4. <u>New Patents</u>. To Guarantor's knowledge, the Patents listed on Schedule A constitute all of the patents and patent applications which are, as of the date hereof, owned by or pending on behalf of Guarantor in the United States. If, prior to the Note Discharge, Guarantor obtains or applies for any additional patents in the United States, such additional patents shall automatically be included in the Collateral and the provisions of Section 1 shall automatically apply thereto. Within sixty (60) days after the end of each calendar quarter, Noteholder shall provide Guarantor notice of any such additional patents, and Guarantor hereby authorizes Noteholder to modify this Agreement by amending Schedule A to include such additional patents.

5. <u>Additional Representations and Warranties</u>. Guarantor hereby represents and warrants, as of the date hereof, that:

    (a)    [Reserved].

    (b)    It has the full right and power to enter into this Agreement and comply with the terms hereof.

    (c)    The execution, delivery and performance by the Guarantor of this Agreement and compliance herewith will not result in any violation of, conflict with, result in a breach of any of the terms of, constitute a default of or accelerate or permit the acceleration of any rights or obligations under: (i) any applicable law; or (ii) the certificate of incorporation, as amended, or the by-laws, as amended, of the Guarantor.

6. <u>Royalties, Terms</u>. Guarantor hereby agrees that the permitted use after foreclosure by Noteholder of all Patents (as set forth in Section 11) shall be worldwide without any liability for royalties or other license fees from Noteholder to Guarantor. The term of the security interest granted herein shall extend until the earlier of (i) the expiration of each of the respective Patents or (ii) the Note Discharge.

7. <u>Duties of Guarantor</u>.

    (a)    Until the Note Discharge, except to the extent permitted in Section 7(b) or to the extent an action or failure to act would not reasonably be expected to have a material adverse impact on the value of the Collateral taken as a whole, Guarantor shall use reasonable efforts to preserve and protect the Collateral at Guarantor's expense, including, without limitation: (i) prosecuting any patent application that is included in the Patents; (ii) submitting

-2-

applications for unpatented but patentable inventions, as appropriate; (iii) preserving and maintaining all of Guarantor's rights in the Patents (including, without limitation, the payment of all maintenance fees); and (iv) not abandoning any Patent.

(b) Notwithstanding anything set forth in Section 7(a) or elsewhere in this Agreement or otherwise, nothing in this Agreement shall prevent Guarantor from (i) abandoning or discontinuing the use, prosecution or maintenance of any of the Patents or (ii) failing to take any action to enforce any actions against infringers of the any of the Patents, in each case (i) and (ii), if Guarantor determines, in its reasonable business judgment, that such abandonment, discontinuance or failure to take action is desirable in the conduct of its business.

(c) At the Noteholder's request, Guarantor shall use commercially reasonable efforts to take all action necessary to preserve and maintain the validity, perfection and first priority of Noteholder's interest granted herein in the Patents.

8. Waivers. No course of dealing between Guarantor and Noteholder, nor any failure to exercise, nor any delay in exercising, on the part of Noteholder, any right, power or privilege hereunder or under the Guaranty or any other Note Document shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder or thereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

9. Severability. The provisions of this Agreement are severable, and if any clause or provision shall be held invalid and unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, in such jurisdiction, and shall not in any manner affect such clause or provision in any other jurisdiction, or any other clause or provision of this Agreement in any jurisdiction. If any provision hereof shall render an otherwise valid Patent invalid or ineffective, then such provision shall be void ab initio to the extent that the validity or effectiveness of the Patent is thereby preserved and Guarantor shall make suitable other valid arrangements to provide Noteholder with equivalent protections to that intended hereby.

10. Amendments. This Agreement or any provision thereof may be changed, waived, or terminated only (a) in the manner set forth in Section 4 or (b) pursuant to a written agreement executed by Guarantor and Noteholder.

11. Remedies. If (a) the Note has been declared due and payable upon an Event of Default pursuant to Section 6.2 of the NPA or (b) an Event of Default has occurred and is continuing due to the Issuer's default in payment of principal of the Note upon the Maturity Date (each a "Specified Event of Default"), then Noteholder shall, upon five (5) days prior written notice to the Guarantor, be entitled to exercise in respect of the Collateral, in addition to other rights and remedies provided for herein, in the Guaranty and other Note Documents or otherwise available to it, all of the rights and remedies of a secured party under the Uniform Commercial Code in effect in the State of New York (the "UCC") and also may: (i) require Guarantor, and Guarantor hereby agrees that it will, upon the request of Noteholder, forthwith, (A) execute and deliver an assignment, substantially in the form of Exhibit A hereto, of all right, title and interest

-3-

in and to the Collateral to Noteholder and (B) take such other action as Noteholder may reasonably request to effectuate the outright assignment of such Collateral to Noteholder or to enable Noteholder to exercise, register or further perfect and protect its rights and remedies with respect to such assigned Collateral; and (ii) without notice except as specified in this Section 11, sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of Noteholder's offices or elsewhere, for cash, on credit or for future delivery, and upon such terms as Noteholder may deem commercially reasonable. Guarantor agrees that at least ten (10) days written notice to Guarantor, given by Noteholder in accordance with the terms of the Guaranty, of the time and place of any public sale or the time which any private sale is to be made shall constitute reasonable notification of the sale of such Collateral. Noteholder shall not be obligated to make any sale of the Collateral regardless of notice of sale having been given. Noteholder may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. Noteholder may purchase all or any part of the Collateral at public or, if permitted by law, private sale and, in lieu of actual payment of such purchase price, may setoff the amount of such price against the Obligations. The proceeds realized from the sale of any Collateral shall be, applied first to the reasonable costs and expenses (including, without limitation, reasonable and documented out-of-pocket attorneys' fees and disbursements (which shall be limited to those of a single legal counsel each relevant jurisdiction)) incurred by Noteholder for collection and for acquisition, protection, and sale of the Collateral; second to interest due upon any of the Obligations; and third to the principal of the Obligations. If any deficiency shall arise, Guarantor shall remain liable to Noteholder therefor. The commencement of any action, legal or equitable, or the rendering of any judgment or decree for deficiency shall not affect Noteholder's security interest in the Collateral until the Note Discharge. Guarantor agrees that Noteholder has no obligation to preserve rights to Collateral against any other parties.

12. <u>Cumulative Remedies: Power of Attorney: Effect on Guaranty</u>. All of Noteholder's rights and remedies with respect to the Patents, whether established hereby, by the Guaranty, by any other Note Document, or by law shall be cumulative and may be exercised singularly or concurrently. Guarantor hereby authorizes Noteholder to make, constitute and appoint any officer or agent of Noteholder as Noteholder may select, in its sole discretion, as Guarantor's true and lawful attorney-in-fact, with power, upon the occurrence of a Specified Event of Default and solely during the continuance of such Specified Event of Default to (a) endorse Guarantor's name on all applications, documents, papers and instruments necessary or desirable for Noteholder in the use of the Patents, (b) take any other actions with respect to the Patents as Noteholder deems in the best interest of Noteholder, (c) grant or issue any exclusive or non-exclusive license under the Patents to anyone or (d) assign, pledge, convey or otherwise transfer title in or dispose of the Patents to anyone. Guarantor hereby ratifies all that such attorney shall lawfully do or cause to be done by virtue hereof. This power of attorney, being coupled with an interest, shall be irrevocable until the Note Discharge. Guarantor acknowledges and agrees that this Agreement is not intended to limit or restrict in any way the rights and remedies of Noteholder under the Guaranty and the other Note Documents but rather is intended to facilitate the exercise of such rights and remedies.

13. <u>Notices</u>. Any notice, approval, consent or other communication to any party hereunder shall be in the form and manner, and to the addresses as set forth in the Guaranty.

14. <u>Binding Effect: Benefits of Agreement</u>. This Agreement and all covenants and agreements of each party contained in this Agreement shall be binding upon and inure to the successors and assigns of such party. Noteholder may assign or otherwise transfer its rights under this Agreement to any assignee of the Note in connection with an assignment thereof made in accordance with the terms of the NPA.

15. <u>Authority of Noteholder</u>. Noteholder shall have and be entitled to exercise all powers hereunder which are specifically delegated to Noteholder by the terms hereof, together with such powers as are reasonably incident thereto. Noteholder may perform any of its duties hereunder or in connection with the Patents by or through agents or employees and shall be entitled to retain counsel and to act in reliance upon the advice of counsel concerning all such matters.

16. <u>Interpretation of Agreement</u>. All terms not defined herein shall have the meaning set forth in the Guaranty and in the UCC, except where the context otherwise requires. To the extent any term or provision of this Agreement conflicts with the Guaranty and is not dealt with more specifically herein, the Guaranty shall control with respect to such term or provision.

17. <u>Waiver</u>. To the fullest extent it may lawfully so agree, Guarantor agrees that it will not at any time insist upon, claim, plead, or take any benefit or advantage of any appraisement, valuation, stay, extension, moratorium, redemption or similar law now or hereafter in force in order to prevent, delay, or hinder the enforcement hereof or the absolute sale of any part of the Patents. Guarantor for itself and all who claim through it, so far as it or they now or hereafter lawfully may do so, hereby waives the benefit of all such laws, and all right to have the Patents marshalled upon any foreclosure hereof, and agrees that any court having jurisdiction to foreclose this Agreement may order the sale of the Patents as an entirety. Guarantor hereby waives and releases any and all right to require Noteholder to collect any of the Obligations from any specific item or items of the Patents or from any other party liable as guarantor or in any other manner in respect of any of the Obligations or from any collateral (other than the Patents) for any of the Obligations.

18. <u>Reinstatement</u>. This Agreement shall continue to be effective or be reinstated, as the case may be, if at any time any amount received by Noteholder in respect of the Obligations is rescinded or must otherwise be restored or returned by Noteholder upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Guarantor or upon the appointment of any intervenor or conservator of, or trustee or similar official for, Guarantor or any substantial part of its assets, or otherwise, all as though such payments had not been made.

19. <u>Final Expression</u>. This Agreement, together with the Guaranty and the other Note Documents to which Guarantor is a party, is intended by the parties as a final expression of their agreement and is intended as a complete and exclusive statement of the terms and conditions thereof. Acceptance of or acquiescence in a course of performance rendered under this Agreement shall not be relevant to determine the meaning of this Agreement even though the accepting or acquiescing party had knowledge of the nature of the performance and opportunity for objection.

20. Survival of Provisions. All representations, warranties and covenants of Guarantor contained herein shall survive the execution and delivery of this Agreement, and shall terminate only upon the full and final payment and performance by Guarantor of the Obligations and termination of the Guaranty and the other Note Documents.

21. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which shall together constitute one and the same agreement.

22. GOVERNING LAW; SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL.

(a) THIS AGREEMENT SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK, INCLUDING THE UCC.

(b) GUARANTOR AND NOTEHOLDER ACKNOWLEDGE THAT THE RIGHT TO A TRIAL BY JURY IS A CONSTITUTIONAL RIGHT, BUT THAT THE RIGHT MAY BE WAIVED. BOTH GUARANTOR AND NOTEHOLDER EACH KNOWINGLY, VOLUNTARILY, IRREVOCABLY AND WITHOUT COERCION, WAIVE ALL RIGHTS TO TRIAL BY JURY OF ALL DISPUTES BETWEEN THEM. NEITHER NOTEHOLDER NOR GUARANTOR SHALL BE DEEMED TO HAVE GIVEN UP THIS WAIVER OF JURY TRIAL UNLESS THE PARTY CLAIMING THAT THIS WAIVER HAS BEEN RELINQUISHED HAS A WRITTEN INSTRUMENT SIGNED BY THE OTHER PARTY STATING THAT THIS WAIVER HAS BEEN GIVEN UP.

(c) EACH PARTY HERETO AGREES THAT ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY MAY BE BROUGHT IN ANY COURT OF THE UNITED STATES OF AMERICA OR OF THE STATE OF NEW YORK, SITTING IN OR HAVING JURISDICTION OVER THE COUNTY OF NEW YORK, NEW YORK AND EACH PARTY HERETO HEREBY SUBMITS TO AND ACCEPTS GENERALLY AND UNCONDITIONALLY THE NON-EXCLUSIVE JURISDICTION OF THOSE COURTS WITH RESPECT TO ITS PERSON AND PROPERTY AND IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS IN CONNECTION WITH ANY SUCH ACTION OR PROCEEDING BY MAILING SUCH SERVICE OF PROCESS (CERTIFIED OR REGISTERED, IF CAPABLE OF CERTIFICATION OR REGISTRATION) TO SUCH PARTY AT ITS ADDRESS FOR NOTICES SET FORTH IN THE GUARANTY. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUCH SUIT OR PROCEEDING IN THE ABOVE-DESCRIBED COURTS. EACH PARTY HERETO IRREVOCABLY AND GENERALLY CONSENTS IN RESPECT OF ANY PROCEEDINGS TO THE GIVING OF ANY RELIEF OR THE ISSUE OF ANY PROCESS IN CONNECTION WITH THOSE PROCEEDINGS INCLUDING, WITHOUT LIMITATION, THE MAKING, ENFORCEMENT OR EXECUTION AGAINST ANY ASSETS WHATSOEVER OF ANY ORDER OR JUDGMENT WHICH MAY BE MADE OR GIVEN IN THOSE PROCEEDINGS.

23. <u>Termination of Agreement</u>. This Agreement shall terminate upon the Note Discharge automatically and without the requirement for any further action by any party. At such time, Noteholder shall promptly (a) reassign and redeliver to Guarantor all of the Patents that have not been otherwise sold or disposed of by Noteholder in accordance with the terms hereof and (b) execute and deliver to Guarantor, at Guarantor's expense, all documents that Guarantor requests to evidence such termination and the release of Noteholder's security interest in and to the Collateral. In addition, the security interest created by this Agreement with respect to any Collateral shall automatically terminate without the requirement for any further action by any party upon any sale or disposition of such Collateral that is permitted by the Note Documents, subject to the mandatory prepayment provisions of the NPA.

[The rest of this page is intentionally left blank.]

IN WITNESS WHEREOF, Guarantor has duly executed and delivered this Agreement as of the day and year first above written.

NOMADIX, INC.,
a Delaware corporation

By: /s/ Gale Moore
Its: CEO

By acceptance hereof as of this __29th__ day of September, 2015, Noteholder agrees to be bound by the provisions hereof.

NTT DOCOMO, INC.,
a Japanese corporation

By: KOICHI TAKAHARA
Its: MANAGING DIRECTOR

*Signature Page to Patent Security Agreement*

SCHEDULE A

TO

PATENT SECURITY AGREEMENT

Dated as of September 29, 2015

Patents Owned By Nomadix, Inc.

| Title | Country | Application No. | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|---|
| NOMADIC TRANSLATOR OR ROUTER | US | 09/041534 | 12-Mar-1998 | 6130892 | 10-Oct-2000 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION WITH UNKNOWN NETWORK AND/OR USER DEVICE | US | 09/684937 | 6-Oct-2000 | 7088727 | 08-Aug-2006 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION WITH UNKNOWN NETWORK AND/OR USER DEVICE | US | 11/097925 | 1-Apr-2005 | 7554995 | 30-Jun-2009 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION | US | 12/240427 | 29-Sep-2008 | 8027339 | 27-Sep-2011 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION | US | 13/225059 | 2-Sep-2011 | 8594107 | 26-Nov-2013 |
| REEXAM OF NOMADIC TRANSLATOR OR ROUTER | US | 90/007423 | 15-Feb-2005 | 6130892 C1 | 01-Dec-2009 |

WEIL:\95477755\7\44349.0003
3583093-v2\

| Title | Country | Application No. | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|---|
| SYSTEMS AND METHODS FOR REDIRECTING USERS HAVING TRANSPARENT COMPUTER ACCESS TO A NETWORK USING A GATEWAY DEVICE HAVING REDIRECTION CAPABILITY | US | 09/458569 | 8-Dec-1999 | 6636894 | 21-Oct-2003 |
| SYSTEMS AND METHODS FOR AUTHORIZING, AUTHENTICATING AND ACCOUNTING USERS HAVING TRANSPARENT COMPUTER ACCESS TO A NETWORK USING A GATEWAY DEVICE | US | 09/458602 | 8-Dec-1999 | 8713641 | 29-Apr-2014 |
| SYSTEM AND METHOD FOR AUTHORIZING A PORTABLE COMMUNICATION DEVICE | US | 13/271099 | 11-Oct-2011 | 8613053 | 17-Dec-2013 |
| SYSTEMS AND METHODS FOR REDIRECTING USERS HAVING TRANSPARENT COMPUTER ACCESS TO A NETWORK USING A GATEWAY DEVICE HAVING REDIRECTION CAPABILITY | US | 90/007220 | 24-Sep-2004 | 6636894 C1 | 28-Mar-2006 |
| SYSTEMS AND METHODS FOR PROVIDING DYNAMIC NETWORK AUTHORIZATION, AUTHENTICATION AND ACCOUNTING | US | 09/693060 | 20-Oct-2000 | 7194554 | 20-Mar-2007 |
| SYSTEMS AND METHODS FOR PROVIDING DYNAMIC NETWORK AUTHORIZATION, AUTHENTICATION AND ACCOUNTING | US | 11/427143 | 28-Jun-2006 | 7689716 | 30-Mar-2010 |
| SYSTEMS AND METHODS FOR PROVIDING DYNAMIC NETWORK AUTHORIZATION, AUTHENTICATION AND ACCOUNTING | US | 12/685585 | 11-Jan-2010 | 8266266 | 11-Sep-2012 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 12/875043 | 02-Sep-2010 | 8244886 | 14-Aug-2014 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 14/059213 | 21-Oct-2013 | 8725888 | 13-May-2014 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 14/059263 | 21-Oct-2013 | 8725899 | 13-May-2014 |

WEIL:\95477755\17\44349.0003
3583093-v2\

EXHIBIT D
PAGE 101

| Title | Country | Application No. | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|---|
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 13/244866 | 26-Sep-2011 | 8155246 | 10-Apr-2012 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 13/329867 | 19-Dec-2011 | 8266269 | 11-Sep-2012 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 13/566904 | 3-Aug-2012 | 8364806 | 29-Jan-2013 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 13/566961 | 3-Aug-2012 | 8370477 | 05-Feb-2013 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 13/659851 | 24-Oct-2012 | 8606917 | 10-Dec-2013 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 14/094712 | 2-Dec-2013 | 8788690 | 22-Jul-2014 |
| SYSTEMS AND METHODS FOR INJECTING CONTENT | US | 11/864319 | 28-Sep-2007 | 8868740 | 21-Oct-2014 |
| ZONE MIGRATION IN NETWORK ACCESS | US | 13/478458 | 23-May-2012 | 8566912 | 22-Oct-2013 |
| ZONE MIGRATION IN NETWORK ACCESS | US | 14/057481 | 18-Oct-2013 | 9141773 | 22-Sep-2015 |
| SYSTEMS AND METHODS FOR DYNAMIC BANDWIDTH MANAGEMENT ON A PER SUBSCRIBER BASIS IN A COMMUNICATIONS NETWORK | US | 09/693481 | 20-Oct-2000 | 7739383 | 15-Jun-2010 |
| SYSTEMS AND METHODS FOR DYNAMIC BANDWIDTH MANAGEMENT ON A PER SUBSCRIBER BASIS IN A COMMUNICATIONS NETWORK | US | 12/579820 | 15-Oct-2009 | 7698432 | 13-Apr-2010 |
| SYSTEMS AND METHODS FOR DYNAMIC DATA TRANSFER MANAGEMENT ON A PER SUBSCRIBER BASIS IN A COMMUNICATIONS NETWORK | US | 12/771915 | 30-Apr-2010 | 7953857 | 31-May-2011 |

WEIL:\95477755\7\44349.0003
3583093-v2\

| Title | Country | Application No. | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|---|
| SYSTEMS AND METHODS FOR DYNAMIC DATA TRANSFER MANAGEMENT ON A PER SUBSCRIBER BASIS IN A COMMUNICATIONS NETWORK | US | 13/094769 | 26-Apr-2011 | 8626922 | 07-Jan-2014 |
| INFORMATION AND CONTROL CONSOLE FOR USE WITH A NETWORK GATEWAY INTERFACE | US | 08/712502 | 11-Sep-1996 | 6795852 | 21-Sep-2004 |
| INFORMATION AND CONTROL CONSOLE FOR USE WITH A NETWORK GATEWAY INTERFACE | US | 09/541877 | 3-Apr-2000 | 6789110 | 07-Sep-2004 |
| SYSTEMS AND METHODS FOR INTEGRATING A NETWORK GATEWAY DEVICE WITH MANAGEMENT SYSTEMS | US | 09/693061 | 20-Oct-2000 | 6868399 | 15-Mar-2005 |
| METHOD AND APPARATUS FOR ESTABLISHING DYNAMIC TUNNEL ACCESS SESSIONS IN A COMMUNICATION NETWORK | US | 09/693369 | 20-Oct-2000 | 7117526 | 03-Oct-2006 |
| GATEWAY DEVICE HAVING AN XML INTERFACE AND ASSOCIATED METHOD | US | 09/693512 | 20-Oct-2000 | 8190708 | 29-May-2012 |
| SYSTEMS AND METHODS OF COMMUNICATING USING XML | US | 13/462585 | 2-May-2012 | 8516083 | 20-Aug-2013 |
| LOCATION-BASED IDENTIFICATION FOR USE IN A COMMUNICATIONS NETWORK | US | 09/693511 | 20-Oct-2000 | 7197556 | 27-Mar-2007 |
| METHODS AND SYSTEMS PROVIDING FAIR QUEUING AND PRIORITY SCHEDULING TO ENHANCE QUALITY OF SERVICE IN A NETWORK | US | 10/060273 | 30-Jan-2002 | 6810426 | 26-Oct-2004 |
| INTELLIGENT NETWORK ADDRESS TRANSLATOR AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 10/271640 | 15-Oct-2002 | 7752334 | 06-Jul-2010 |
| INTELLIGENT NETWORK ADDRESS TRANSLATOR AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 12/830264 | 2-Jul-2010 | 7822873 | 26-Oct-2010 |
| INTELLIGENT NETWORK ADDRESS TRANSLATOR AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 12/908341 | 20-Oct-2010 | 8051206 | 01-Nov-2011 |

| Title | Country | Application No. | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|---|
| INTELLIGENT NETWORK ADDRESS TRANSLATOR AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 13/276217 | 18-Oct-2011 | 8234409 | 31-Jul-2012 |
| SYSTEMS AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 13/550079 | 16-Jul-2012 | 8370524 | 05-Feb-2013 |
| SYSTEMS AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 13/756341 | 31-Jan-2013 | 8832315 | 09-Sep-2014 |
| SYSTEM AND METHOD FOR NETWORK ACCESS WITHOUT RECONFIGURATION | US | 09/694577 | 23-Oct-2000 | 6857009 | 15-Feb-2005 |
| MOBILE WEB | US | 08/839977 | 24-Apr-1997 | 6194992 | 27-Feb-2001 |
| SYSTEMS AND METHODS FOR GROUP BANDWIDTH MANAGEMENT IN A COMMUNICATION SYSTEMS NETWORK | US | 13/352255 | 17-Jan-2012 | 9118578 | 25-Aug-2015 |
| SYSTEM FOR PROVIDING INTERNET ACCESS FROM LOCATIONS DIFFERENT FROM THOSE FOR WHICH THE USER'S SOFTWARE WAS CONFIGURED | US | 09/097603 | 15-Jun-1998 | 6377990 | 23-Apr-2002 |
| SERIAL REDIRECTOR DEVICE AND ASSOCIATED METHODS | US | 13/481060 | 25-May-2012 | 8804717 | 12-Aug-2014 |
| CONVENTION ID BADGE SYSTEM | US | 08/562515 | 24-Nov-1995 | 5936542 | 10-Aug-1999 |
| NETWORK USAGE MONITORING DEVICE AND ASSOCIATED METHOD | US | 09/849551 | 4-May-2001 | 7020082 | 28-Mar-2006 |

WEIL:\95477755\7\44349.0003
3583093-v2\

U.S. PENDING APPLICATIONS

| Title | Country | Application No. | Filing Date | Publication No. | Pub. Date |
|---|---|---|---|---|---|
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 14/335587 | 18-Jul-2014 | 2015/0088710 A1 | 26-Mar-2015 |
| SYSTEMS AND METHODS FOR CONTROLLING USER PERCEIVED CONNECTION SPEED | US | 14/675563 | 31-Mar-2015 | 2015/0236965 A1 | 20-Aug-2015 |
| SYSTEMS AND METHODS FOR INJECTING CONTENT | US | 14/517066 | 17-Oct-2014 | 2015/0206186 A1 | 23-Jul-2015 |
| SYSTEMS AND METHODS FOR DYNAMIC DATA TRANSFER MANAGEMENT ON A PER SUBSCRIBER BASIS IN A COMMUNICATIONS NETWORK | US | 14/146971 | 3-Jan-2014 | 2014/0215089 A1 | 31-Jul-2014 |
| SYSTEMS AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 14/478429 | 5-Sep-2014 | 2015/0215275 A1 | 30-Jul-2015 |
| SYSTEM AND METHOD FOR NETWORK REDIRECTION | US | 13/460997 | 1-May-2012 | 2012/0290724 A1 | 15-Nov-2012 |
| SYSTEMS AND METHODS FOR GROUP BANDWIDTH MANAGEMENT IN A COMMUNICATION SYSTEMS NETWORK | US | 14/832945 | 21-Aug-2015 | | |
| HIERARCHICAL RULE-BASED ROUTING SYSTEM | US | 14/199944 | 6-Mar-2014 | 2014/0280910 A1 | 18-Sep-2014 |
| TRAVELER TRACKING SYSTEM | US | 14/538580 | 11-Nov-2014 | 2015/0134451 A1 | 14-May-2015 |
| CLASS BASED QUEUEING | US | 62/062765 | 10-Oct-2014 | | |
| CLASS BASED QUEUEING | US | 62/094894 | 19-Dec-2014 | | |
| ZONE MIGRATION IN NETWORK ACCESS | US | 12/534814 | 3-Aug-2009 | 2011/0030037 A1 | 3-Feb-2011 |

WEIL:\95477755\7\44349.0003
3583093-v2\

Exhibit A to Patent<br>Security Agreement

## EXHIBIT A

### FORM OF ASSIGNMENT

### ASSIGNMENT OF PATENTS

THIS ASSIGNMENT OF PATENTS ("Assignment") is made as of _____, 20__ by and between Nomadix, Inc., a Delaware corporation, having an office at _____ ("Assignor"), in favor of NTT DOCOMO, INC., a company organized under the laws of Japan, having an office at 2-11-1, Nagata-Cho, Chiyoda-ku, Tokyo 100-6150, Japan ("Assignee").

### Recitals

WHEREAS, Assignor and Assignee are parties to that certain Patent Security Agreement dated as of _____, 2015 by and between Assignor to Assignee (the "Agreement") providing that, during a Specified Event of Default (as such term is defined in the Agreement), Assignor shall execute this Assignment; and

WHEREAS, a Specified Event of Default has occurred and is continuing.

NOW THEREFORE, Assignor hereby agrees as follows:

1. <u>Assignment of Patents</u>. Assignor hereby grants, assigns and conveys to Assignee its entire right, title and interest in and to: (a) all patents and patent applications owned by Guarantor including, without limitation, the patents and patent applications listed on Schedule A attached hereto and made a part hereof, together with all reissues, divisions, continuations, renewals, reexaminations, extensions and continuations-in-part of any of the foregoing (the "<u>Patents</u>"); (b) the inventions claimed in the Patents; (c) all income, royalties, damages and payments now and hereafter due or payable with respect to any of the Patents, including, without limitation, payments under all licenses entered into with respect to the Patents and damages and payments for past or future infringements of the Patents; and (d) the right to sue for past, present and future infringements of the Patents.

2. <u>Representations and Warranties</u>. Assignor represents and warrants that it has the full right and power to make the assignment of the Patents made hereby and that it has made no

previous assignment, transfer or agreement in conflict herewith, except as not prohibited pursuant to the terms of the Agreement.

3. Modification. This Assignment cannot be altered, amended or modified in any way, except by a writing signed by the parties hereto.

4. Binding Effect, Governing Law. This Assignment shall be binding upon Assignor and its successors and shall inure to the benefit of Assignee and its successors and assigns. This Assignment shall, except to the extent that federal law or laws of another state apply to the Patents or any part thereof, be governed by and construed in accordance with the internal laws of the State of New York.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered as of the date first above written.

NOMADIX, INC.,
a Delaware Corporation

By:_____
    Its:_____

## SCHEDULE I

| PATENT | DATE OF REGISTRATION OR APPLICATION | REGISTRATION NUMBER |
|---|---|---|
| | | |