# EXHIBIT F

# FORBEARANCE AGREEMENT

This **FORBEARANCE AGREEMENT**, dated as of October 6, 2017 (the "Forbearance Agreement"), is entered into by and among GATE WORLDWIDE HOLDINGS LLC (the "Noteholder"), INTERTOUCH HOLDINGS LLC a Delaware limited liability company (the "Borrower"), and each of the guarantors identified on the signature pages hereto (the "Guarantors", and together with the Borrower, the "Obligors").

WHEREAS, the Borrower and NTT DOCOMO, INC. ("NTT") entered into that certain Note Purchase Agreement, dated September 29, 2015 (as amended by the First Amendment to Note Purchase Agreement dated November 26, 2015, and as amended, restated, supplemented or otherwise modified and in effect from time to time, the "Note Purchase Agreement");

WHEREAS, pursuant to the Note Purchase Agreement, the Obligors have entered into a certain Guaranties and Security Agreements, in each case as defined in the Note Purchase Agreement (together with the Note and the other Note Documents (each as defined in the Note Purchase Agreement), the "Other Note Documents"[1];

WHEREAS, pursuant to that certain letter from NTT DOCOMO, INC. dated September 5, 2017, Borrower was advised that the Noteholder acquired all of NTT's rights under and title to the Note Purchase Agreement and Other Note Documents;

WHEREAS, Events of Default (as defined in the Note Purchase Agreement) have arisen under Section 6.1 of the Note Purchase Agreement and have been disclosed by the Obligors to the Noteholder including but not limited to the Borrower's failure to pay principal and interest on the Note when due (such Events of Default, but only if disclosed by the Obligors to the Noteholder prior to the Forbearance Effective Date (as defined below), being referred to herein as the "Specified Defaults"); and

WHEREAS, the Obligors have requested that the Noteholder forbear, for a limited period, from enforcing its rights and exercising its remedies under the Note Purchase Agreement, the Other Note Documents and applicable law, in consideration for the undertakings and rights as set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises, and other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **Definitions.** Capitalized terms used and not defined in this Forbearance Agreement are used herein as defined in the Note Purchase Agreement.

---

[1] For the avoidance of doubt, the terms "other Note Documents" and "Other Note Documents" do not include that certain Share Sale Agreement dated as of September 29, 2015, by and among NTT, Borrower and ST Holdings LLC.

2. **Acknowledgements by the Obligors.**

(a) Each Obligor hereby acknowledges and agrees that (i) the Specified Defaults have occurred and are continuing, as set forth in the Recitals, and (ii) as a result of the occurrence of the Specified Defaults, the Noteholder has the right to (x) declare the Note immediately due and payable and (y) seek to exercise any and all of its respective rights and remedies under the Note Purchase Agreement and the Other Note Documents or otherwise available under applicable law and in equity with respect thereto.

(b) Each Obligor acknowledges and agrees that, other than as expressly set forth in this Forbearance Agreement, the forbearance provided herein shall not in any manner limit or restrict any rights or remedies available to the Noteholder under the Note Purchase Agreement, the Other Note Documents or under applicable law as a result of any Event of Default now or hereafter existing. The Obligors expressly acknowledge that the Note bears interest at the applicable rate set forth in Section 1.9(b) of the Note Purchase Agreement.

(c) Each Obligor agrees to, and to cause its officers, directors, accountants, Affiliates and other identified representatives to, fully and timely cooperate with the Noteholder, its representatives and its independent contractors in the exercise of the Noteholder's rights under the Note Purchase Agreement and Other Note Documents.

(d) The Obligors confirm, acknowledge and agree that the current amounts owing under the Note Purchase Agreement and Other Note Documents is $48,050,000.00, plus interest, fees and all other amounts, and such amounts would be due under the Note Purchase Agreement and Other Note Documents absent the forbearance as provided in this Forbearance Agreement. Obligors agree that the foregoing amounts would be due and payable from Obligors, are not contested by Obligors, and that there would be no defenses, right of offset, credits or other claims or defenses with respect to such foregoing amounts. The Obligors further confirm that the Noteholder (including, for the avoidance of doubt, any predecessor thereof) has fully and timely performed all of its obligations and duties in compliance with the Note Purchase Agreement, the Other Note Documents and applicable law, and has acted reasonably, in good faith, and appropriately under the circumstances.

3. **Forbearance Arrangements and Terms.**

(a) Forbearance. During (but only during) the period (such period being hereafter referred to as the "Forbearance Period") commencing on the Forbearance Effective Date (as defined herein) and ending automatically and without any further action, notice or demand or any other occurrence, on the earlier to occur of (such date, the "Forbearance Termination Date"): (i) November 1, 2017; and (ii) the occurrence of a Forbearance Default, the Noteholder shall forebear from enforcing its rights and remedies under the Note Purchase Agreement and the Other Note Documents (including the Guaranty).

The occurrence of one or more of the following shall constitute a "Forbearance Default" under this Forbearance Agreement:

{941.003-W0048876.6}

(A) Any Obligor or any Subsidiary or other Affiliate of any Obligor, or any person or entity claiming by or through either any Obligor or any Subsidiary or other Affiliate of any Obligor joins in, assists, cooperates or participates as an adverse party or adverse witness in any suit or other proceeding against the Noteholder or any Affiliate of the Noteholder;

(B) Any representation or warranty set forth herein, the Note Purchase Agreement or any other Note Document is untrue, incorrect or misleading in any material respect when given;

(C) The breach by any Obligor of any covenant or provision of this Forbearance Agreement;

(D) A default or event of default shall occur under the Note Purchase Agreement or any Other Note Document or any document related to or executed in connection with this Forbearance Agreement, the Note Purchase Agreement or any of the Other Note Documents (other than the Specified Defaults);

(E) Any Guarantor ceases to exist or revokes or terminates its liability under its Guaranty, or challenges the validity or enforceability of its Guaranty, or denies any further liability or obligation thereunder;

(F) Any Obligor:

(I) (i) commences any case, proceeding, or other action under any existing or future requirement of law relating to bankruptcy, insolvency, reorganization, or other relief of debtors, seeking (A) to have an order for relief entered with respect to it, or (B) to adjudicate it as bankrupt or insolvent, or (C) reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition, or other relief with respect to it or its debts, or (D) appointment of a receiver, trustee, custodian, conservator, or other similar official for it or for all or any substantial part of its assets, or (ii) makes a general assignment for the benefit of its creditors;

(II) has commenced against it in a court of competent jurisdiction any case, proceeding, or other action of a nature referred to in clause (I) above which (i) results in the entry of an order for relief or any such adjudication or appointment or (ii) remains undismissed, undischarged, unstayed, or unbonded for 90 days; or

(III) ceases to conduct business in the ordinary course;

(G) A tax lien, warrant, or levy is imposed on any Obligor or any Collateral;

(H) Any other creditor of any Obligor commences an action against any Obligor seeking to collect any debt, obligation, or liability; or

(I)     Any Obligor takes an action, or any event or condition occurs or exists, which the Noteholder reasonably believes in good faith is inconsistent in any material respect with any provision of this Forbearance Agreement, or impairs, or is likely to impair, the prospect of payment or performance by the Obligors of their obligations under this Forbearance Agreement, the Note Purchase Agreement or any of the Other Note Documents.

(b)     <u>Expiration of Forbearance Period</u>.  Upon the Forbearance Termination Date, (i) the Noteholder's agreement to forbear pursuant to paragraph 3(a) above shall automatically, and without any further action, notice or demand or any other occurrence, terminate and (ii) the Noteholder shall be free in its sole and absolute discretion to proceed to enforce any or all of its rights, and exercise any or all of its remedies available under the Note Purchase Agreement, the Other Note Documents and applicable law; including without limitation, those rights and remedies arising by virtue of the occurrence of the Specified Defaults.  The Obligors acknowledge and agree that during the Forbearance Period, the Specified Defaults will continue to exist until waived or released by the Noteholder.

(c)     <u>Effect and Construction of Forbearance</u>.  Except as otherwise expressly provided herein, the Note Purchase Agreement and the Other Note Documents shall remain in full force and effect in accordance with their respective terms, and this Forbearance Agreement shall not be construed to: (i) impair the validity, perfection or priority of any lien or security interest securing the Obligations; (ii) waive or impair any rights, powers or remedies of the Noteholder under the Note Purchase Agreement, the Other Note Documents or applicable law upon the Forbearance Termination Date, with respect to the Specified Defaults or otherwise; (iii) constitute an agreement by the Noteholder, or require the Noteholder, to extend the Forbearance Period or further forbear (other than as set forth in this Forbearance Agreement) from exercising its rights and remedies under the Note Purchase Agreement, the Other Note Documents or applicable law, to extend the term of the Note Purchase Agreement or to extend the time for payment of any of the Obligations; (iv) require the Noteholder to make any extensions of credit to the Borrower or any other Obligor; or (v) constitute a waiver of any right of the Noteholder to insist on strict compliance by the Obligors with each and every term, condition and covenant of this Forbearance Agreement, the Note Purchase Agreement and the Other Note Documents, except as expressly otherwise provided herein. The rights and remedies provided the Noteholder in this Forbearance Agreement and in the Note Purchase Agreement and other Note Documents are cumulative and not exclusive of each other or of any right and remedy provided the Noteholder by law or in equity.  No notice to or demand upon Obligors in any instance shall, in itself, entitle Obligors to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of the Noteholder to any other or further action in any circumstance without notice or demand.

(d)     <u>No Course of Dealing or Performance</u>.  Each Obligor acknowledges and agrees that the agreement of the Noteholder to forbear pursuant to paragraph 3(a) above, does not and shall not create (nor shall any Obligor rely upon the existence of or claim or assertion that there exists) any obligation of the Noteholder to consider or agree to any waiver or any other forbearance and, in the event that the Noteholder subsequently agrees to consider any waiver or any other forbearance, neither the existence of any prior forbearance or waiver, nor this Forbearance Agreement, nor any other conduct of the Noteholder, or any of them, shall be of any force or effect on the consideration or decision with respect to any such requested waiver or

forbearance, and the Noteholder shall have no obligation whatsoever to consider or agree to forbear or to waive any Event of Default. In addition, none of (i) the execution and delivery of this Forbearance Agreement, (ii) the actions of the Noteholder in obtaining or analyzing any information from the Obligors, regardless of whether related to consideration of any waiver, modification, forbearance or alteration of the Note Purchase Agreement, any Event of Default thereunder, or otherwise, including, without limitation, any discussions or negotiations (heretofore or, if any, hereafter) between the Noteholder and any of the Obligors regarding any potential waiver, modification, forbearance or amendment related to the Note Purchase Agreement, (iii) any failure of the Noteholder to enforce any of its rights or exercise any of its remedies under, pursuant or with respect to the Note Purchase Agreement, the Other Note Documents or applicable law, nor (iv) any action, inaction, waiver, forbearance, amendment or other modification of or with respect to the Note Purchase Agreement or the Other Note Documents, shall, except to the extent otherwise expressly provided herein or unless evidenced by a subsequent written agreement (and then only to the extent provided by the express provisions thereof):

        (A)    constitute a waiver by the Noteholder of, or an agreement by the Noteholder to forebear from enforcing, any of its rights or exercising any of its remedies with respect to, any Event of Default under the Note Purchase Agreement, any of the Other Note Documents, or applicable law;

        (B)    constitute a waiver by or estoppel of the Noteholder as to the satisfaction or lack of satisfaction of any covenant, term or condition set forth in the Note Purchase Agreement, or any of the Other Note Documents; or

        (C)    constitute an amendment to or modification of, or an agreement on the part of the Noteholder to enter into any amendment to or modification of, or an agreement to negotiate or continue to negotiate with respect to, the Note Purchase Agreement or any of the Other Note Documents or any amendment of any of the same.

    4.    <u>**Representations, Warranties, Covenants and Acknowledgments.**</u>

    (a)    Each Obligor represents and warrants to the Noteholder that (i) it has the power and authority and is duly authorized to enter into and to deliver this Forbearance Agreement and to perform all of its obligations hereunder, (ii) this Forbearance Agreement has been duly executed and delivered by each Obligor that is party hereto, (iii) this Forbearance Agreement, the Note Purchase Agreement and each of the Other Note Documents to which it is a party is the legally valid and binding obligation of such Obligor, enforceable against such Obligor in accordance with its terms, except as enforcement may be limited by this Forbearance Agreement or by bankruptcy, insolvency, reorganization, moratorium, or similar laws relating to or limiting creditors' rights generally, (iv) the execution, delivery, and performance of this Forbearance Agreement does not and will not (A) violate any law, regulation, or court order to which the Obligors are subject; (B) conflict with any Obligor's organizational documents; or (C) result in the creation or imposition of any lien, security interest, or encumbrance on any property of any Obligor, or any of their subsidiaries, whether now owned or hereafter acquired, other than liens in favor of the Noteholder, (v) no action, suit, litigation, investigation, or proceeding of or before any arbitrator or governmental authority is pending or, to the knowledge of any Obligor, threatened by or against or affecting any Obligor or against any of their properties or assets with respect to the Note Purchase

{941.003-W0048876.6}

Agreement or any of the Other Note Documents or any of the transactions contemplated hereby or thereby and (vi) there are other defaults or events of default under the Note Purchase Agreement and the Other Note Documents within the Specified Defaults. All representations and warranties made in this Forbearance Agreement shall survive the execution and delivery of this Forbearance Agreement and no investigation by the Noteholder shall affect such representations or warranties or the right of the Noteholder to rely upon them.

(b) In addition, in order to induce the Noteholder to forbear from the exercise of its rights and remedies as set forth herein, each Obligor hereby covenants and agrees that at all times during the Forbearance Period, unless the Noteholder otherwise consents in writing, as follows:

(i) each Obligor shall continue to perform and observe all covenants, terms and conditions, and other obligations contained in the Note Purchase Agreement, the Other Note Documents and this Forbearance Agreement, except with respect to the Specified Defaults;

(ii) the Obligors shall not sell, convey, transfer, assign, lease, abandon, or otherwise dispose of any of their assets, tangible or intangible (including but not limited to sale, assignment, discount, or other disposition of accounts, contract rights, chattel paper, or general intangibles with or without recourse), without the Noteholder's prior written consent. If the Noteholder grants its written consent, such Obligor shall cause buyer or other transferee to pay all proceeds of such disposition directly to the Noteholder for application to the Obligations;

(iii) each Obligor shall execute and deliver to the Noteholder such documents and take such actions as the Noteholder deems necessary or advisable to perfect or protect the Noteholder's security interests or liens granted by such Obligor or any Subsidiary thereof to the Noteholder;

(iv) if any Obligor shall become aware that any person or entity is asserting any lien, encumbrance, security interest, or adverse claim (including any writ, garnishment, judgment, warrant of attachment, execution, or similar process or any claim of control) against any of them or any of their property (each, an "Adverse Claim"), such Obligor shall promptly notify the Noteholder in writing thereof, and provide to the Noteholder all documentation and other information it may request regarding such Adverse Claim; and

(v) promptly upon the request of the Noteholder, each Obligor shall take any and all actions of any kind or nature whatsoever, and execute and deliver additional documents, that relate to this Forbearance Agreement and the transactions contemplated herein.

5. **Closing; Conditions Precedent.** Each party hereto agrees that the Forbearance Period shall commence immediately upon the satisfaction (or waiver by the Noteholder in its sole discretion) of each of the following conditions precedent (the date of such satisfaction or waiver, the "Forbearance Effective Date"):

(a)     The Noteholder shall have received counterparts of this Forbearance Agreement duly executed by the Obligors and the Noteholder;

(b)     After giving effect to this Forbearance Agreement, no Event of Default, other than the Specified Defaults, shall have occurred and be continuing under the Note Purchase Agreement or any other Note Document; and

(c)     The representations and warranties in Section 4 hereof shall be true and correct.

6.      **Conflict; Amendments; Covenants.**  In the event of any conflict between the provisions of the Note Documents and this Forbearance Agreement, the provisions of this Forbearance Agreement shall govern.

7.      **No Waiver.**  Except as expressly set forth herein, all of the terms and provisions of the Note Purchase Agreement and the Other Note Documents shall remain in full force and effect. This Forbearance Agreement shall be binding upon the Obligors, any successors or assigns of the Obligors and any other guarantor or co-obligor of any of the Obligations.

8.      **Release of Claims.**  For valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Obligors, on behalf of themselves and their partners, members, operators, managers, affiliates, subsidiaries, predecessors, successors, assigns, agents, and the partners, spouses, and affiliates of their partners, members, operators and managers (collectively, the "Releasors"), hereby irrevocably and unconditionally release and forever discharge the Noteholder and its respective affiliates, and each of their beneficiaries, trustees, owners, predecessors, successors, assigns, agents, officers, employees, servicers, representatives, attorneys, and affiliates, and all persons acting by, through, under, or in concert with any of the aforesaid persons or entities (collectively, "Releasees"), or any of them, from and against any and all causes of action, suits, debts, liens, obligations, liabilities, claims, demands, damages, judgments, losses, orders, penalties, costs and expenses, including, without limitation, attorneys' fees, of any kind or nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, which any of the Releasors now have, own, hold, or claim to have, own, or hold, or at any time heretofore have had, owned, held or claimed to have had, owned, or held against any of the Releasees arising from, based upon, or related to, whether directly or indirectly and without limitation (collectively, the "Claims"): (i) the Note Purchase Agreement and Other Note Documents; (ii) any defenses as to the enforcement of the Note Purchase Agreement and Other Note Documents; (iii) any theory of lender liability; or (iv) any and all claims related to timeliness in the payment of requisition requests. This provision shall survive and continue in full force and effect whether or not (A) Obligors shall satisfy all other provisions of this Forbearance Agreement, (B) this Forbearance Agreement is terminated, or (C) the Noteholder's forbearance ceases or is withdrawn pursuant to the terms herein.

9.      **Reaffirmation of Guaranty.**  Each Guarantor hereby ratifies and reaffirms (i) the validity, legality, and enforceability of its Guaranty; (ii) that its reaffirmation of the Guaranty is a material inducement to the Noteholder to enter into this Forbearance Agreement; and (iii) that its obligations under such Guaranty shall remain in full force and effect until all the Obligations have been paid in full.

{941.003-W0048876.6}

10. **Reservation of Rights, Claims and Causes of Action of Obligors and Guarantors.** Each of the Obligors and the Guarantors expressly reserves and preserves, and does not release or waive, any and all rights, claims and causes of action of any kind or nature, including any recovery or remedy that may exist in equity or law, that any of the Obligors and/or Guarantors had, have or may in the future have against NTT and/or any of its affiliates, parent entities, subsidiaries, members, shareholders, directors, officers, employees, agents or professionals. Notwithstanding anything to the contrary contained in this paragraph 10, nothing in this paragraph 10 shall alter or modify Noteholder's ability to fully enforce (x) this Forbearance Agreement; and (y) without any defense by Obligors, the Note Purchase Agreement and Other Note Documents.

11. **Reimbursement of Expenses; Indemnification.**

(a) Each Obligor agrees to pay all costs, fees, and expenses of the Noteholder (including attorneys' fees), expended or incurred by the Noteholder in connection with the negotiation, preparation, administration, and enforcement of this Forbearance Agreement and all fees, costs, and expenses incurred in connection with any bankruptcy or insolvency proceeding (including, without limitation, any adversary proceeding, contested matter, or motion brought by the Noteholder or any other person). Without in any way limiting the foregoing, the Borrower hereby reaffirms its agreement under the Note Purchase Agreement to pay or reimburse the Noteholder for certain costs and expenses incurred by the Noteholder. The Obligors are jointly and severally liable for their obligations under this paragraph 11.

(b) Each Obligor agrees to pay and protect, indemnify and save the Noteholder and its former, present and future directors, members, officers, employees, representatives, attorneys, agents, successors and assigns, and any of them, harmless from and against any and all liabilities, losses, damages, costs, expenses (including reasonable attorneys' fees), causes of action, settlements, judgments or other obligations of any nature arising through any suits, claims, demands, actions or proceedings of any nature arising from, in connection with or as a result of this Forbearance Agreement, except to the extent arising as a direct result of the gross negligence or willful misconduct of the Noteholder (provided, however, that no indemnified party shall have the right to be indemnified hereunder for any liability resulting from the willful misconduct or gross negligence of such indemnified party (as finally determined by a court of competent jurisdiction)). This indemnification survives the Forbearance Termination Date.

12. **Governing Law.** This Forbearance Agreement shall be governed by the laws of the State of Delaware, without giving effect to any applicable choice of law authority or otherwise.

13. **Miscellaneous.**

(a) This Forbearance Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same instrument. Delivery of an executed counterpart of a signature page to this Forbearance Agreement by facsimile or other electronic communication shall be effective as delivery of a manually executed counterpart of this Forbearance Agreement.

{941.003-W0048876.6}

(b)     This Forbearance Agreement and the rights and benefits hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. No other person shall have or be entitled to assert rights or benefits under this Forbearance Agreement.

(c)     This Forbearance Agreement may not be modified, altered or amended except by agreement in writing signed by all of the parties hereto. Each Obligor acknowledges that it has consulted with counsel and with such other expert advisors as it deemed necessary in connection with the negotiation, execution and delivery of this Forbearance Agreement. This Forbearance Agreement shall be construed without regard to any presumption or rule requiring that it be construed against the party causing this Forbearance Agreement or any part hereof to be drafted. Nothing in this Forbearance Agreement shall be construed to alter the debtor-creditor relationship between the Obligors, on the one hand, and the Noteholder, on the other. Wherever possible, each provision of this Forbearance Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provisions of this Forbearance Agreement shall be prohibited by or rendered invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Forbearance Agreement. This Forbearance Agreement is not intended as, nor shall it be construed to create, a partnership or joint venture relationship between or among any of the parties hereto.

(d)     This Forbearance Agreement embodies the entire understanding and agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements, understandings and inducements, whether express or implied, oral or written.

*[Signature page to follow]*

{941.003-W0048876.6}

9

IN WITNESS WHEREOF, the parties hereto have caused this Forbearance Agreement to be executed by their respective duly authorized representatives as of the date first above written.

**BORROWER:**  INTERTOUCH HOLDINGS LLC

By: *(signed)* Seale Moorer
Name: Seale Moorer
Title:  Manager

**NOTEHOLDER:**  GATE WORLDWIDE HOLDINGS LLC

By: *(signed)*
Name: Ted Helvey
Title: Manager

**GUARANTORS:**  ST HOLDINGS LLC

By: *(signed)* Seale Moorer
Name: Seale Moorer
Title: Manager

INTERTOUCH TOPCO LLC

By: *(signed)* Seale Moorer
Name: Seale Moorer
Title: Manager

NOMADIX, INC.

By: *(signed)* Seale Moorer
Name: Seale Moorer
Title: CEO

{941.003-W0048876.6}