Douglas G. Muehlhauser (SBN 179495)
doug.muehlhauser@knobbe.com
Mark Lezama (SBN 253479)
mark.lezama@knobbe.com
Alexander J. Martinez (SBN 293925)
alex.martinez@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile: 949-760-9502

Attorneys for Plaintiff
NOMADIX, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC., | Case No. CV16-08033 AB (FFMx) |
| Plaintiff, | |
| v. | **NOMADIX'S OPPOSITION TO GUEST-TEK'S MOTION TO STAY CASE** |
| GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., | |
| Defendant. | HEARING: April 13, 2018 10:00 a.m. Courtroom 7B |
| | Honorable André Birotte Jr. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    LEGAL STANDARDS ............................................................................. 1

III.   THE COURT SHOULD NOT STAY THE CASE ...................................... 2

       A.   The stay Guest-Tek seeks would indefinitely delay
            Nomadix's recovery of millions of dollars in
            unpaid royalties ........................................................................... 2

       B.   Guest-Tek has failed to carry its burden of
            demonstrating a clear case of prejudice warranting
            a stay ............................................................................................ 4

            1.   Guest-Tek cannot demonstrate any doubt
                 about Nomadix's present standing because
                 only a foreclosure sale could have divested
                 Nomadix of its ownership rights, but GWH
                 concedes no foreclosure sale has taken place ..................... 5

            2.   Guest-Tek cannot demonstrate prejudice
                 warranting a stay based on speculation that
                 Nomadix might "soon" lose standing ................................. 7

            3.   The standing concern Guest-Tek raises is
                 based on a misconception: a transfer of
                 interest in the litigation does not destroy
                 standing ............................................................................. 7

            4.   The supposed uncertainty over whether
                 Nomadix retains its royalty rights cannot
                 prejudice Guest-Tek because any successor
                 to Nomadix would simply step into
                 Nomadix's shoes .............................................................. 11

            5.   No matter what happens in the New York
                 case, Nomadix will remain a party to this
                 case, so Guest-Tek cannot be prejudiced by
                 litigating against Nomadix ............................................... 12

       C.   This case would not benefit from a stay because
            the New York action will not resolve any questions
            currently relevant to this case .................................................. 13

            1.   The New York action will not decide that
                 GWH presently owns Nomadix's claim
                 against Guest-Tek for unpaid royalties ............................. 13

            2.   In any event, the case against Guest-Tek for
                 royalties does not depend in any way on
                 who owns the rights to the unpaid royalties ..................... 13

1
2

## TABLE OF CONTENTS
### (*Cont'd*)

3

4

IV.   CONCLUSION ..............................................................................14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

*In re Bernal*,
  207 F.3d 595 (9th Cir. 2000) ......................................................... 8, 11

*Biovail Labs. Inc. v. Anchen Pharms. Inc.*,
  No. SACV 04-1468, 2006 WL 8071250 (C.D. Cal. Aug. 1, 2006) ................... 9

*Clinton v. Jones*,
  520 U.S. 681 (1997) .................................................................... 1, 2

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ...................................................... 2, 3

*Evergreen Media Holdings, LLC v. The Safran Co.*,
  No. CV14-09720 AB, 2015 WL 13357803
  (C.D. Cal. Apr. 10, 2015) ......................................................... 2, 3, 4

*Froning's, Inc. v. Johnston Feed Service, Inc.*,
  568 F.2d 108 (8th Cir. 1978) ........................................................... 8

*General Battery Corp. v. Globe-Union, Inc.*,
  100 F.R.D. 258 (D. Del. 1982) .......................................................... 9

*Kloster Speedsteel AB v. Crucible Inc.*,
  793 F.2d 1565 (Fed. Cir. 1986), *as amended on reh'g*
  (Aug. 15, 1986) ........................................................................ 11

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp*
  383 F.3d 1337 (Fed. Cir. 2004) (en banc) ........................................... 12

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................... 1, 2

*Lindell v. Synthes, USA*,
  No. 1:11-cv-2053, 2012 WL 1657197 (E.D. Cal. May 10, 2012) ............. 10, 11

*Prestige Jewelry Int'l, Inc. v. BK Jewellery HK*,
  No. 11-cv-02930, 2012 WL 1066798 (S.D.N.Y. Mar. 24, 2012) ..................... 3

*In re Robinson*,
  285 B.R. 732 (Bankr. W.D. Okla. 2002) ............................................... 5

1
2

**TABLE OF AUTHORITIES**
***(Cont'd)***

3

4
5

*RPost Holdings, Inc. v. Exacttarget, Inc.*,
   No. 2:12-cv-512, 2014 WL 12703780 (E.D. Tex. Sept. 29, 2014) ............. 10, 11

6
7

*In re Trans Nat'l Commc'ns, Inc.*,
   11 UCC Rep. Serv. 238 (Bankr. S.D.N.Y. 1972) ................................................. 6

8
9

*United Pet Grp., Inc. v. MiracleCorp Prods.*,
   No. 4:12-cv-00040, 2012 WL 2458539 (E.D. Mo. June 27, 2012) .................... 3

10

*United States v. Whiting Pools, Inc.*,
   462 U.S. 198 (1983) .......................................................................................... 5, 6

11
12

*Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*,
   No. 10-cv-0541, 2013 WL 5674834 (S.D. Cal. Oct. 16, 2013) ........................ 11

13

**STATUTES**

14
15

28 U.S.C. § 1335 .................................................................................................... 12

16

Fed. R. Civ. P. 22 ................................................................................................... 12

17

Fed. R. Civ. P. 25 ......................................................................................... 7, 8, 9, 11

18
19
20
21
22
23
24
25
26
27
28

# I.  INTRODUCTION

With the close of fact discovery rapidly approaching and trial scheduled for later this year, Defendant Guest-Tek Interactive Entertainment now seeks to stay this case indefinitely because a third party, Gate Worldwide Holdings LLC (GWH), contends it has acquired Plaintiff Nomadix's claim against Guest-Tek for unpaid royalties under a patent license agreement. Guest-Tek asks the Court to delay Nomadix's recovery of the royalties owed under the license agreement until the conclusion of a New York state-court action that GWH recently filed to enforce a promissory note and foreclose on the collateral securing the note. The New York action and GWH's contention that it has acquired Nomadix's royalty claim against Guest-Tek are explained in the papers on GWH's pending motion to substitute; this brief relies on that background. (*See, e.g.*, Dkt. Nos. 193, 206, 207-1, 207-2, 225.) Guest-Tek claims that this case must be put on hold until the New York action decides whether Nomadix or GWH owns the rights to the royalty claim against Guest-Tek. Guest-Tek cannot carry its heavy burden to establish a stay is necessary because (1) a stay would result in a prejudicial, indefinite delay of Nomadix's recovery of unpaid royalties; (2) Guest-Tek cannot demonstrate any prejudice by continuing to litigate against Nomadix—the standing concerns Guest-Tek cites are entirely unfounded and based on a misunderstanding of applicable law; and (3) contrary to the entire premise of Guest-Tek's motion, the New York action will not determine whether Nomadix or GWH presently owns the royalty claim against Guest-Tek.

# II.  LEGAL STANDARDS

Although a district court has inherent power to stay proceedings over which it presides, it should exercise that power cautiously, staying a case only when the need for a stay manifestly outweighs the prejudice resulting from delaying resolution of the merits. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–56 (1936); *Clinton v. Jones*, 520 U.S. 681, 706–08 (1997). "The proponent of a stay bears the

- 1 -

burden of establishing its need." *Clinton*, 520 U.S. at 708. The proponent's burden is a heavy one. *Landis*, 299 U.S. at 256. "[I]f there is even a fair possibility that" a stay would prejudice the other party, the stay's proponent "must make out a clear case of hardship or inequity in being required to go forward." *Id.* at 255. A district court abuses its discretion when it grants a stay even though the proponent has failed to carry its burden. *Clinton*, 520 U.S. at 707–08.

Although a court may consider whether staying the case would meaningfully promote judicial economy, "case management standing alone is not necessarily a sufficient ground to stay proceedings." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). Ultimately, the moving party still bears the burden of demonstrating that either a stay will not prejudice the opposing party or that the movant will clearly suffer hardship or inequity without a stay. *Landis*, 299 U.S. at 255–56. If "there is more than a 'fair possibility' that the stay would 'work damage' on the opposing party, or if the stay would be open-ended and result in undue delay, **then a stay is not warranted**." *Evergreen Media Holdings, LLC v. The Safran Co.*, No. CV14-09720 AB (SHx), 2015 WL 13357803, at *2 (C.D. Cal. Apr. 10, 2015) (emphasis added) (citing *Dependable Highway*, 498 F.3d at 1066; *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)).

### III.  THE COURT SHOULD NOT STAY THE CASE

### A.  The stay Guest-Tek seeks would indefinitely delay Nomadix's recovery of millions of dollars in unpaid royalties

Nomadix filed this lawsuit primarily to recover millions of dollars in unpaid royalties that Guest-Tek owes under the license it took to certain Nomadix patents. Delaying resolution of the merits and Nomadix's recovery of the royalties it is owed constitutes prejudice. The longer Guest-Tek is able to delay its royalty payments, the longer it is able to unfairly compete with Nomadix by using Nomadix's patented technology without needing to factor in the cost of the license

into its pricing in the marketplace. The longer Nomadix goes without the additional funds it expected to receive through the license, the longer Nomadix has fewer resources than it expected to have for investing in research and development, attracting new employees, and covering its expenses and debts.

Guest-Tek suggests that a stay cannot prejudice Nomadix because the relief it seeks is monetary. (Mot. 2–3.) Not only does Guest-Tek ignore that Nomadix seeks nonmonetary relief (*e.g.*, Dkt. No. 32 p. 12 ¶¶ E, F), Guest-Tek improperly conflates the adequacy of legal remedies with the prejudice inquiry. The adequacy of legal remedies is the wrong inquiry on a motion to stay. *Prestige Jewelry Int'l, Inc. v. BK Jewellery HK*, No. 11-cv-02930, 2012 WL 1066798, at \*3 (S.D.N.Y. Mar. 24, 2012). The inadequacy of legal remedies and corresponding irreparable nature of any harm are justifications for granting **preliminary** relief before finally adjudicating the merits of the plaintiff's claims. But that does not imply that the adequacy of any legal remedies or the reparable nature of any harm entitle a defendant to **postpone** adjudication of the merits. Courts are therefore careful not to confuse the inquiry on a motion to stay with the irreparable-harm prong of the preliminary-injunction test. *United Pet Grp., Inc. v. MiracleCorp Prods.*, No. 4:12-cv-00040, 2012 WL 2458539, at \*3 (E.D. Mo. June 27, 2012); *Prestige Jewelry*, 2012 WL 1066798, at \*3.

Not only would a stay work harm to Nomadix, the stay Guest-Tek seeks would be open-ended because it is tied to the conclusion of the New York litigation. "Generally, stays should not be indefinite in nature." *Dependable Highway*, 498 F.3d at 1066. The New York action began only recently, in January 2018, more than fourteen months after Nomadix filed the present suit. Guest-Tek points out that GWH recently moved for summary judgment in the New York action, but Nomadix's opposition is not yet due and there is no deadline by which the New York court must decide the motion. There is simply no telling when the New York action and related appeals will conclude. In *Evergreen Media Holdings*,

1    even though a parallel arbitration proceeding that began six months before district-
2    court litigation could have completely mooted the litigation, this Court denied a
3    request to stay the case pending the outcome of the arbitration. *Evergreen Media*
4    *Holdings*, 2015 WL 13357803, at *2–5. The Court observed that uncertainty
5    regarding the length of parallel proceedings and appeals "militates against a stay."
6    *Id.* at *4.

7           Granting a stay for the reasons Guest-Tek offers would also implement a
8    policy prejudicial to debtors and creditors. In effect, Guest-Tek advocates that
9    whenever a secured creditor simultaneously files a foreclosure action against a
10   debtor and separately contends its security interest gives it the right to collect on
11   the debtor's outstanding claim against a third-party defendant, the defendant can
12   delay recovery of the damages owed on the claim until the foreclosure action
13   concludes, to the detriment of both the debtor and the creditor.

14          Because the stay Guest-Tek seeks would be indefinite and would prejudice
15   Nomadix, "a stay is not warranted." *Evergreen Media Holdings*, 2015 WL
16   13357803, at *2 (citing *Dependable Highway*, 498 F.3d at 1066); *also generally id.*
17   at *2–5.

18   **B.    Guest-Tek has failed to carry its burden of demonstrating a clear case**
19          **of prejudice warranting a stay**

20          Guest-Tek claims it "will face significant prejudice if the action is not stayed
21   while the New York Action is resolved." (Mot. 6.) According to Guest-Tek, the
22   New York action will determine who has the right to collect royalties under the
23   Nomadix–Guest-Tek license agreement—Nomadix or GWH. Until that issue is
24   resolved, Guest-Tek contends, it will be wasting its resources litigating against
25   Nomadix because Nomadix supposedly has already likely lost standing and, if it
26   has not already lost standing, "it soon will." (*Id.*) Guest-Tek's reasoning does not
27   withstand scrutiny.
28   / / /

1    **1.    Guest-Tek cannot demonstrate any doubt about Nomadix's**

2    **present standing because only a foreclosure sale could have**

3    **divested Nomadix of its ownership rights, but GWH concedes no**

4    **foreclosure sale has taken place**

5    Guest-Tek has not carried its burden of demonstrating that there is any

6    meaningful dispute that Nomadix currently owns the right to recover damages for

7    Guest-Tek's breach of its royalty obligations. No matter the outcome in the New

8    York case, nonwaivable protections under the New York Uniform Commercial

9    Code prevent GWH from unilaterally taking Nomadix's patents or any other

10   collateral for itself without any public foreclosure sale. (*See* Dkt. No. 206 at 6–9

11   (detailing UCC restrictions on secured party taking ownership of collateral).)

12   **GWH concedes no foreclosure sale has taken place.** (Dkt. No. 225 at 7–8

13   ("Importantly, **there has been no sale of the Nomadix Patents** or any other

14   Collateral . . . .") (emphasis in original).) GWH claims it has merely taken

15   *possession* of collateral in accordance with the UCC. (*Id.*)

16   Examining levy and seizure provisions available to the IRS under the

17   Internal Revenue Code that "are analogous to," but even more powerful than, "the

18   remedies available to private secured creditors" under the Uniform Commercial

19   Code, the Supreme Court has held such seizures merely bring the property into the

20   IRS's legal custody—they "do not transfer ownership of the property." *United*

21   *States v. Whiting Pools, Inc.*, 462 U.S. 198, 210–11 (1983). "Ownership of the

22   property is transferred only when the property is sold to a bona fide purchaser at a

23   tax sale." *Id.* at 211. Applying the Supreme Court's reasoning, other courts have

24   reached the same conclusion with respect to secured parties under the UCC:

25   repossessing collateral under the UCC does not transfer ownership; only a UCC-

26   compliant sale to a bona fide purchaser does. *In re Robinson*, 285 B.R. 732, 737–

27   38 (Bankr. W.D. Okla. 2002) (applying *Whiting Pools*). GWH claims only to have

28   exercised its right of *possession* under the UCC as a supposed secured creditor, and

- 5 -

1    it admits it has not conducted a foreclosure sale yet; GWH therefore has not taken

2    ownership of any of the collateral it claims to have an interest in, including the

3    rights to Guest-Tek's unpaid royalties. *Id.*

4         Even before *Whiting Pools*, courts recognized that possession—which is the

5    right GWH claims to have exercised as a secured creditor—does not transfer

6    ownership. *In re Trans Nat'l Commc'ns, Inc.*, 11 UCC Rep. Serv. 238, 244 (Bankr.

7    S.D.N.Y. 1972) ("Now, it seems perfectly clear to me that under the [Uniform

8    Commercial] Code, ownership or title in the collateral remains in the debtor after

9    default until such time as the secured creditor either [accepts the collateral in

10   satisfaction of the debt without objection by the debtor] or disposes of the property

11   in compliance with § 9-504 [predecessor to § 9-610, providing for foreclosure

12   sale].").

13        In short, the record on the present motion provides no basis to doubt that

14   Nomadix owns the right to pursue its breach claim against Guest-Tek for unpaid

15   royalties. Indeed, in the New York action, GWH seeks judicial foreclosure,

16   including a judgment "awarding [GWH] possession of all Collateral, and ordering

17   the Collateral and proceeds subject thereto ***be sold***, on the terms approved by the

18   Court upon application by [GWH] ***after judgment is rendered***." (Dkt. No. 207-1

19   (last page; emphasis added).)

20        Guest-Tek seeks to delay this case until the conclusion of the New York

21   case, which *might* conclude with a foreclosure that divests Nomadix of its rights in

22   the collateral (which GWH contends includes the rights to the royalty portion of

23   Nomadix's claim against Guest-Tek). In other words, unable to establish it is

24   presently suffering any prejudice, Guest-Tek seeks to delay this case until such a

25   point in time when circumstances may have changed so as to give rise to the

26   prejudice it claims.

27   / / /

28   / / /

- 6 -

1
2

**2.    Guest-Tek cannot demonstrate prejudice warranting a stay based on speculation that Nomadix might "soon" lose standing**

3
4
5
6
7
8
9
10

Acknowledging that it cannot establish that Nomadix has lost standing, Guest-Tek also bases its request for a stay on its contention that Nomadix will "soon" lose standing. (Mot. 6.) But the New York action began only recently. Guest-Tek offers no evidence to support its speculation that any loss of standing is imminent, and Guest-Tek cannot suffer any cognizable prejudice based on litigating against Nomadix while Nomadix is the rightful plaintiff. Guest-Tek is not entitled to delay this case based on prejudice that only might occur at some indefinite point in the future.

11
12
13

**3.    The standing concern Guest-Tek raises is based on a misconception: a transfer of interest in the litigation does not destroy standing**

14
15
16
17
18
19
20
21
22
23
24

Guest-Tek repeats the word *standing* over twenty times in its brief, but Guest-Tek's arguments demonstrate it misunderstands how Rule 25(c) interacts with the constitutional requirement for a justiciable case or controversy. An Article III controversy of course requires a plaintiff to have standing from the outset of the case. Here, Guest-Tek does not dispute that, as a party to the Confidential License Agreement, Nomadix had standing to sue for breach of contract when it brought this action in October 2016. Instead, Guest-Tek suggests Nomadix may have lost standing in January 2018, when, without Nomadix's involvement, GWH purported to assign to itself Nomadix's patents and royalty rights under Nomadix's patent licenses. Guest-Tek contends the Court should stay the case because the case cannot proceed until this "standing" issue is resolved.

25
26
27
28

But even if the purported assignment that GWH arranged were somehow effective, the change in ownership of the rights to recovery on the cause of action would neither negate the existence of a dispute over Guest-Tek's compliance with its royalty obligations nor change the nature of the dispute in any way and

therefore would not destroy the Article III case or controversy. As a matter of procedure, Rule 25(c) provides that a change in ownership of the cause of action does not require any change in the parties for the action to continue. Specifically, when a litigant transfers its interest in a claim to another party, "the action may be continued by or against the original party." Fed. R. Civ. P. 25(c). "'The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred.'" *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000) (quoting 7C Charles Alan Wright et al., Federal Practice and Procedure § 1958 (2d ed. 1986) ("Wright & Miller")). Any judgment will be binding on the successor in interest. *Id.* (citing Wright & Miller). While Rule 25(c) permits a court to substitute the successor for the original party, whether to permit substitution is left to the court's discretion based on convenience. *Id.*

As a result, a transfer of interest does not create an Article III case-or-controversy problem that must be addressed. For example, in *Froning's, Inc. v. Johnston Feed Service, Inc.*, 568 F.2d 108 (8th Cir. 1978), the Eighth Circuit rejected the very standing concern that Guest-Tek raises here. The plaintiff, Froning's, was a corporation that sued for breach of contract. *Froning's*, 568 F.2d at 109. The jury found in favor of Froning's. *Id.* On appeal, the defendant argued that the district court lost jurisdiction when Froning's was dissolved and the cause of action for breach was assigned to the executors of a deceased shareholder's estate as part of the liquidation plan. *Id.* at 109–110. Because Froning's had standing at the inception of the case, the Eighth Circuit rejected the defendant's jurisdictional argument, finding that Rule 25(c) permitted the action to continue. *Id.* at 110. The Eighth Circuit specifically noted (1) that, even if either party had moved to substitute the executors for Froning's, the district court could have exercised its discretion to deny the motion and (2) that the defendant could not be exposed to multiple suits or inconsistent liability because any judgment that Froning's recovered would bind the assignees of the claim. *Id.* n.4.

Courts have also rejected Guest-Tek's argument in the context of a patent-infringement suit when the asserted patent changed hands mid-suit. In *General Battery Corp. v. Globe-Union, Inc.*, 100 F.R.D. 258 (D. Del. 1982), the district court closely examined the interaction of Rule 25(c) and Article III's case-or-controversy requirement. In that case, General Battery sued Globe-Union for declaratory judgment of invalidity, unenforceability, and no infringement of three Globe-Union patents. *General Battery*, 100 F.R.D. at 259. Through a corporate merger and series of assignments occurring after the litigation began, a non-party acquired all rights, title, and interest in Globe-Union's patents. *Id.* at 259–60 (accepting allegations as true for purposes of deciding motion). Globe-Union moved under Rule 25(c) to join the new patent holder; in response, General Battery moved to dismiss the entire action for lack of Article III subject-matter jurisdiction. *Id.* The court concluded: "Although the argument can be made that once Globe I [the original patent holder] ceased to have an interest in the litigation this Court lost subject matter jurisdiction, the better characterization is that subject matter jurisdiction remained and only ownership of the chose in action was transferred." *Id.* at 262. A valid procedural rule necessary for the efficient function of courts, Rule 25(c) permitted the action to continue unabated. *Id.* at 262–63. Other courts have reached the same conclusion. *E.g.*, *Biovail Labs. Inc. v. Anchen Pharms. Inc.*, No. SACV 04-1468, 2006 WL 8071250, at *2–3 (C.D. Cal. Aug. 1, 2006) (rejecting lack-of-standing argument despite mid-suit transfer of patent and noting that Rule 25(c) permitted the original plaintiff to continue the patent-infringement suit without further action by the court).

In short, the supposed "standing" concern on which Guest-Tek bases its entire motion to stay is nonexistent.

Guest-Tek cites two decisions granting stays based on standing issues. Both are distinguishable because they involved questions about whether the plaintiff lacked standing *at the outset of the case* and thus whether an Article III case or

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

controversy ever existed. In *Lindell v. Synthes, USA*, No. 1:11-cv-2053, 2012 WL 1657197 (E.D. Cal. May 10, 2012), the district court agreed to stay the case pending the final outcome of plaintiff Lindell's motion to reopen a previously filed bankruptcy case. The district court decided to grant a stay in part because if the reopening of the bankruptcy case were finalized, that would mean Lindell lacked standing, as only the bankruptcy trustee could sue on claims that were part of the bankruptcy estate. 2012 WL 1657197 at *2–3. Guest-Tek characterizes the stay as based on the possibility that Lindell "would potentially lose standing," but that is inaccurate. The bankruptcy case began before the district-court litigation; after filing the district-court action, Lindell moved to *reopen* the earlier-filed bankruptcy case and add to his bankruptcy estate his potential asset based on the rights he had sued Synthes on in district court. *Id.* at *1–2. Finalizing Lindell's motion to reopen and the trustee's determination that Lindell lacked any assets would mean Lindell never had standing in the district-court case to begin with. *See id.* (summarizing Synthes's argument as based on "threshold issues with respect to Pope's standing and a possible bar of Pope's claims against Synthes resulting from his *earlier filed* bankruptcy" (emphasis added)).

18
19
20
21
22
23
24
25
26
27
28

Guest-Tek also cites *RPost Holdings, Inc. v. Exacttarget, Inc.*, No. 2:12-cv-512, 2014 WL 12703780 (E.D. Tex. Sept. 29, 2014) because the court in that patent-infringement case stayed the action pending the outcome of other proceedings in which the ownership of the patents in suit was being contested and would be determined. But Guest-Tek ignores that the other actions were filed *before* RPost Holdings filed the patent-infringement suit and that the ownership dispute was therefore based on events occurring before the patent-infringement suit—meaning that RPost might have lacked standing at the *outset* of the patent-infringement suit. 2014 WL 12703780 at *3 (emphasizing that the ownership disputes existed "*before* Plaintiffs' filing of the instant dispute" (emphasis in original)). (Additionally, in each of *RPost* and *Lindell*, the case was in its early

stages and no trial date had been set. *Id.*; *Lindell*, 2012 WL 1657197 at *3. In contrast, this case has been pending for seventeen months, fact discovery closes in two months, and trial is only eight months away.)

> ### 4. The supposed uncertainty over whether Nomadix retains its royalty rights cannot prejudice Guest-Tek because any successor to Nomadix would simply step into Nomadix's shoes

Guest-Tek contends a stay is necessary because Nomadix and GWH "may have different legal strategies." (Mot. 9.) But any concerns about GWH attempting to undo the evolution of the case thus far are unfounded, for GWH, as a purported successor to Nomadix, can only step into Nomadix's shoes and must take the case as it finds it. *See Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, No. 10-cv-0541, 2013 WL 5674834, at *4–6 (S.D. Cal. Oct. 16, 2013). Going forward, even if the Court joined GWH as a plaintiff, Guest-Tek would not suffer any cognizable prejudice. There is nothing remarkable about a case with more than two parties; each plaintiff and defendant is entitled to advance its own arguments, even if its arguments differ from those of its co-plaintiffs or co-defendants.

Guest-Tek similarly argues that judgment on its patent-invalidity and patent-misuse defenses and patent-related declaratory-judgment claim must be entered "against the correct patent owner." (Mot. 9–10.) But that argument is unavailing because, to the extent GWH is Nomadix's successor, any judgment against Nomadix will bind GWH. *Bernal*, 207 F.3d at 598 (citing Wright & Miller); *cf. Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1582–83 (Fed. Cir. 1986) (affirming injunction in patent-infringement suit that bound defendant's successor even though successor was not a party when judgment was entered; district court found that Rule 25(c) did not require joinder of entity that became defendant's successor after trial; district court instead issued injunction encompassing defendant and successors in interest), *as amended on reh'g* (Aug. 15, 1986),

/ / /

- 11 -

1   *overruled in part on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge*

2   *GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc).

3       Finally, to the extent judgment is entered against Guest-Tek and Guest-Tek

4   fears exposure to double liability to both Nomadix and GWH, Guest-Tek can

5   pursue an interpleader claim. *See, e.g.*, Fed. R. Civ. P. 22; 28 U.S.C. § 1335.

6   **5.    No matter what happens in the New York case, Nomadix will**

7   **remain a party to this case, so Guest-Tek cannot be prejudiced by**

8   **litigating against Nomadix**

9       Guest-Tek offers two final reasons that a stay is supposedly necessary to

10  avoid prejudice. First, Guest-Tek contends, Nomadix should not be permitted to

11  supplement the Amended Complaint if GWH is the correct plaintiff; second, if

12  Nomadix lacks standing on its royalty claim it supposedly should not be permitted

13  to continue discovery. (Mot. 9.) These two arguments rest on the incorrect

14  assumption that Nomadix might no longer be a plaintiff or even a party to this

15  case.

16      Guest-Tek overlooks that GWH claims only the rights to royalties under the

17  License Agreement, while Nomadix's breach claim in this case goes beyond

18  royalties owed. In addition to breach for unpaid royalties, Nomadix claims Guest-

19  Tek breached its reporting and disclosure obligations under the License Agreement

20  and seeks damages and a declaration and specific performance of those

21  obligations. (Dkt. No. 32 (Amended Complaint) ¶¶ 34–35, 42, Prayer for Relief

22  ¶¶ A, B, E, F.) Nomadix is also seeking its attorneys' fees and costs in pursuing its

23  breach action against Guest-Tek, and GWH's claim to Nomadix's *royalty* rights

24  does not encompass Nomadix's claim for attorneys' fees and costs. (*Id.* ¶ 44,

25  Prayer for Relief ¶ D.) In short, even if GWH has somehow obtained the rights to

26  Nomadix's claim against Guest-Tek for unpaid royalties, Nomadix retains standing

27  to pursue its other breach claims and remedies against Guest-Tek and thus retains

28  its ability to supplement the complaint. And even if Nomadix were only a

- 12 -

defendant on Guest-Tek's counterclaims, Rule 13 would authorize Nomadix to assert any counterclaims against Guest-Tek. (*See* Dkt. No. 246 at 6 (explaining that, if Nomadix were somehow no longer a plaintiff, Guest-Tek's objection to supplemental pleading would elevate form over substance).)

And as a plaintiff or counterclaim defendant, Nomadix remains a party and is therefore entitled to pursue discovery as much as any other party. Guest-Tek cannot claim prejudice from litigating against Nomadix when Guest-Tek has asserted counterclaims against Nomadix.

## C. This case would not benefit from a stay because the New York action will not resolve any questions currently relevant to this case

### 1. The New York action will not decide that GWH presently owns Nomadix's claim against Guest-Tek for unpaid royalties

The New York action may ultimately determine whether GWH is a valid successor in interest to the promissory note and related security interests and whether GWH is consequently entitled to a judicial foreclosure of the collateral. Importantly, GWH does not assert in the New York action present ownership of any of the collateral. (*See generally* Dkt. No. 207-1.) Instead, GWH seeks judicial approval of foreclosure *after* judgment is entered. (*Id.* (last page).) Since only a foreclosure sale to a bona fide purchaser for value can transfer ownership in the collateral, the New York action will, at most, result in judicial approval of a future transfer of ownership. The critical point for the present motion is that, since GWH's claim to present ownership of Nomadix's royalty claim against Guest-Tek is not part of the New York action, Guest-Tek has failed to identify any reason that this case would benefit from a stay pending the outcome in the New York case.

### 2. In any event, the case against Guest-Tek for royalties does not depend in any way on who owns the rights to the unpaid royalties

Guest-Tek contends that further litigation would be wasteful while the question of who holds the relevant contractual royalty rights is supposedly in

- 13 -

1  doubt. But Guest-Tek's argument rests on the false premise that its liability

2  depends on who owns those contractual rights.

3       To the contrary, Guest-Tek's royalty obligations in this case hinge only on

4  the language of the contract and Guest-Tek's actions. The meaning of the contract

5  does not depend on whether GWH has acquired any rights from Nomadix. Guest-

6  Tek's actions do not depend on that question either. For example, whether Guest-

7  Tek has used Nomadix's patented technology so as to trigger royalty obligations

8  does not depend on whether GWH has acquired any rights from Nomadix.

9  Likewise, whether Guest-Tek properly reported all royalty-bearing properties or

10  paid all royalties it owes in no way depends on whether GWH has acquired from

11  Nomadix the rights to collect those royalties under the license agreement.

12       Therefore, even if the New York action would decide whether Nomadix or

13  GWH presently owns the collateral, waiting for the New York action to conclude

14  will not affect Guest-Tek's liability in any way.

15                              **IV. CONCLUSION**

16       The stay Guest-Tek seeks would result in a prejudicial, indefinite delay of

17  Nomadix's recovery of millions of dollars in unpaid royalties. Guest-Tek has failed

18  to demonstrate the clear case of prejudice required to justify a stay. The standing

19  concerns Guest-Tek cites are entirely unfounded, and the New York case will not

20  determine who—Nomadix or GWH—presently owns the royalty claim against

21  Guest-Tek. Guest-Tek has therefore failed to carry its heavy burden of establishing

22  the need for a stay.

23  / / /

24

25  / / /

26

27  / / /

28

- 14 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: March 23, 2018      /s/ *Mark Lezama*
Douglas G. Muehlhauser
Mark Lezama
Alexander J. Martinez

Attorneys for Plaintiff
NOMADIX, INC.

27833474

- 15 -