Steven J. Rocci (Admitted *Pro Hac Vice*)
Email:  srocci@bakerlaw.com
Kevin M. Bovard, SBN 247521
Email: kbovard@bakerlaw.com
**BAKER & HOSTETLER LLP**
2929 Arch Street, 12th Floor
Philadelphia, PA 19104-2891
Telephone:  215.568.3100
Facsimile:   215.568.3439

*Attorneys for Defendant/Counter-Claimant*
GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.

(*additional counsel listed on following page*)

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., <br><br> Defendant/Counter-Claimant, <br><br> v. <br><br> NOMADIX, INC., <br><br> Counter-Defendant. | Case No.: 2:16-cv-08033-AB-FFM <br><br> [*Honorable André Birotte Jr.*] <br><br> **GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.'S REPLY IN SUPPORT OF ITS MOTION TO STAY PENDING RESOLUTION OF RELATED PROCEEDING** <br><br> [Filed concurrently with Declaration of Erica Barrow] <br><br> Hearing Date:  April 13, 2018 <br> Time:             10:00 a.m. <br> Courtroom:     7B <br><br> Action Filed: 10/28/16 <br> Amended Complaint Filed: 03/23/17 |

1  Michael J. Swope (Admitted *Pro Hac Vice*)
   Email: mswope@bakerlaw.com
2  **BAKER & HOSTETLER LLP**
   999 Third Avenue, Suite 3500
3  Seattle, WA 98104-4040
   Telephone: 206.332.1379
4  Facsimile: 206.624.7317

5  Michael R. Matthias, SBN 57728
   Email: mmatthias@bakerlaw.com
6  Joelle A. Berle, SBN 252532
   Email: jberle@bakerlaw.com
7  **BAKER & HOSTETLER LLP**
   11601 Wilshire Boulevard, Suite 1400
8  Los Angeles, CA 90025-0509
   Telephone: 310.820.8800
9  Facsimile: 310.820.8859

10 *Attorneys for Defendant/Counter-Claimant*
   GUEST-TEK INTERACTIVE
11 ENTERTAINMENT LTD.

## **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ................................................................................................ - 1 -

II. ARGUMENT ...................................................................................................... - 2 -

    A. Contrary to Nomadix's assertions, its standing is in doubt, and will be resolved in the New York Action.................................................. - 2 -

    B. Rule 25(c) does not trump Article III standing requirements. .......... - 4 -

    C. A stay will simplify the issues. ......................................................... - 7 -

    D. Nomadix will not be harmed by a stay. ........................................... - 8 -

        1. The requested stay is not "indefinite." .................................. - 8 -

        2. Nomadix only speculates as to harm, and disregards its own dilatory behavior. .................................................................. - 9 -

    E. Guest-Tek will be severely prejudiced if a stay is not granted. ...... - 11 -

III. CONCLUSION ................................................................................................ - 14 -

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Biovail Labs. Inc. v. Anchen Pharm. Inc.*,
   No. 04-1468, 2006 WL 8071250 (C.D. Cal. Aug. 1, 2006) .................................. 6

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
   402 U.S. 313 (1971) ........................................................................................ 12

*Coastal Commercial Corp. v. Kosoff & Sons*,
   10 A.D. 2d 372 (N.Y. App. Div. 1960) ............................................................. 3

*Commerce Bancorp, LLC v. Hill*,
   No. CIV.08-5628(RBK/KMW), 2010 WL 2545166 (D.N.J. June
   18, 2010) ........................................................................................................... 6

*Froning's, Inc. v. Johnston Feed Service, Inc.*,
   568 F.2d 108 (8th Cir 1978) .............................................................................. 5

*Gen. Battery Corp. v. Globe-Union, Inc.*,
   100 F.R.D. 258 (D. Del. 1982) ....................................................................... 5, 6

*Gould v. Control Laser Corp.*,
   866 F.2d 1391 (Fed. Cir. 1989) (Nichols, J., dissenting) ................................. 12

*Hilbrands v. Far E. Trading Co.*,
   509 F.2d 1321 (9th Cir. 1975) ........................................................................... 4

*Larsen v. City of L.A.*,
   No. 12-04392, 2012 WL 12887557 (C.D. Cal. August 3, 2012) ................ 11, 12

*Leon v. Martinez*,
   84 N.Y. 2d 83 (1994) ......................................................................................... 3

*Lindell v. Synthes, USA*,
   No. 1:11-CV-2053 ......................................................................................... 7, 8

*SCA Hygiene Prods. Aktiebolag ("AB") v. Tarzana Enters., LLC*,
   No. CV1704395ABJPRX, 2017 WL 5952166 (C.D. Cal. Sept. 27,
   2017) ..................................................................................................... 7, 10, 14

ii

GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.'S REPLY IN SUPPORT OF ITS MOTION TO STAY
PENDING RESOLUTION OF RELATED PROCEEDING; CASE NO.: 2:16-CV-08033-AB-FFM

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
  402 F.3d 1198 (Fed. Cir. 2005) ............................................................................... 6

*Speedplay Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000) ........................................................................... 3, 4

*Virgo v. Riviera Beach Assocs., Ltd.*,
  30 F.3d 1350 (11th Cir. 1994) ................................................................................. 4

**Rules**

Rule 25 ................................................................................................................*passim*

iii

GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.'S REPLY IN SUPPORT OF ITS MOTION TO STAY PENDING RESOLUTION OF RELATED PROCEEDING; CASE NO.: 2:16-CV-08033-AB-FFM

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

As it stands now, Guest-Tek is stuck in the middle of a dispute between GWH and Nomadix over which entity owns the rights to proceed as plaintiff in this case. These parties are taking adversarial positions, and each one claims that they are the rightful plaintiff. Guest-Tek should not be made to bear the expense of that dispute – to which it is not a party – as GWH and Nomadix litigate among themselves whether the interests in the License Agreement, the licensed patents, and this lawsuit were properly transferred to GWH. Neither should this Court burden itself with making an advisory decision on the validity of the transfer. The question is properly before a New York court, where a summary judgment motion has been filed and a ruling on the ownership dispute is expected in June or early July. *See* Decl. of Erica Barrow, ¶¶ 6-10.

While Rule 25(c) does allow for the substitution of parties, it requires that a transfer of interest has occurred. Here, GWH and Nomadix dispute whether the transfer occurred, and that question will be decided by the New York court. Unlike other cases, where the transfer of interest is typically uncontested, here, there is a dispute. As such, Nomadix may not have standing in this case any longer (in which this case proceeding is improper), but at the same time, it is premature to determine a Rule 25 motion while the question of ownership-transfer is unresolved. This Court has full discretion to issue a short stay to allow GWH and Nomadix to resolve the validity of the transfer of interests in the New York court. Otherwise, Guest-Tek will be severely prejudiced.

Although the discovery cutoff is approaching, that is an issue of Nomadix's own making. Nomadix knew about the ownership issue since at least September 2017 (D.I. 193 at 7), but never disclosed this information notwithstanding discovery requests on the topic. Nomadix should not now benefit from its failure to timely disclose the ownership issues to Guest-Tek and the Court. Indeed, these late-disclosed issues will necessitate further discovery if the case is not stayed.

Staying this matter will simplify the issues for this Court, preclude the possibility of a plaintiff pursuing a case for which it has no standing, and preclude the possibility of a judgment of damages, patent invalidity, patent misuse, and/or patent non-coverage being rendered unenforceable. Denying the requested stay will create a fundamental unfairness for Guest-Tek.

## II. ARGUMENT

### A. Contrary to Nomadix's assertions, its standing is in doubt, and will be resolved in the New York Action.

Nomadix's interest in this case is in doubt. An assignment which purports to transfer all interests in the License Agreement, the subject patents, and the claims in this lawsuit was executed and also recorded with the USPTO:

> Assignment of Patents. Assignor [Nomadix] hereby grants, assigns and conveys to Assignee its entire right, title and interest in and to: (a) **all patents** and patent applications owned by Guarantor including, without limitation, the patents and patent applications listed on Schedule A [] ("the "Patents"); (b) the inventions claimed in the Patents; (c) **all rights of any kind whatsoever of Assignor accruing under any of the Patents** []; (d) **all income, fees, royalties, damages and payments** and other proceeds now and hereafter due or payable with respect to any of the Patents, including, without limitation, **payments under all licenses entered into with respect to the patents and damages and payment for past or future infringements of the Patents**; and (e) **the right to sue for past, present and future infringements of the Patents.**

(D.I. 193-10, Nomadix-GWH Assignment) (emphasis added). But there is a dispute between GWH and Nomadix as to whether the assignment was properly executed and valid.

If this is a valid assignment, Nomadix may no longer maintain this action in its own name. On the other hand, if it is invalid, Nomadix *does* have standing, and GWH does not. The validity of the assignment is therefore the crux of the dispute in the Motion to Substitute. More importantly, though, it is the crux of a New York court dispute, where GWH first filed an action addressing this issue. (GWH filed

its New York Action before filing its Motion to Substitute here and before Nomadix so much as mentioned the purported transfer of interest to Guest-Tek or the Court).

    Nomadix argues that the disputed interests could not have been transferred since there has not yet been a foreclosure sale. (D.I. 248 at 5.) But GWH contests this point, arguing that assignments need not go through a foreclosure sale to be effective. New York courts have held that "no particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned." *Leon v. Martinez*, 84 N.Y. 2d 83, 88 (1994). "An assignment at law contemplates a completed transfer of the entire interest of the assignor in the particular subject of the assignment, whereby the assignor is divested of all control over the thing assigned." *Coastal Commercial Corp. v. Kosoff & Sons,* 10 A.D. 2d 372, 376 (N.Y. App. Div. 1960). Thus, *if* GWH is correct that the Nomadix-GWH Assignment was properly executed—a critical question before the New York court—it likely transferred the property interest immediately. *Compare Speedplay Inc. v. Bebop, Inc*., 211 F.3d 1245, 1253 (Fed. Cir. 2000) (contract language stating that the assignor "hereby conveys, transfers and assigns … all right, title and interest …" constitutes a present assignment of rights, and "no further act would be required").

    Nomadix points to no caselaw holding that "foreclosure sales" are necessary to effect a valid assignment. The cases Nomadix does cite (D.I. 248 at 5-6) are entirely inapposite because they did not implicate a present assignment having been executed, as GWH purports has occurred here. Here, GWH contends that it acquired "all right, title and interest" in the disputed property interests when the assignment was executed, which it contends it was entitled to do under the Patent Security Agreement. (*See* D.I. 225 at 8.) While GWH does not dispute that it must eventually credit the value of the assignment against Nomadix's debts, that does not

- 3 -
GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.'S REPLY IN SUPPORT OF ITS MOTION TO STAY
PENDING RESOLUTION OF RELATED PROCEEDING; CASE NO.: 2:16-CV-08033-AB-FFM

mean that the property interest has not already transferred. (*See id.*)  While *valuation* of the assignment may be yet to occur, it does not follow that the transfer of interest has yet to occur.  But again, **all of these issues are before the New York court.**

In short, while Rule 25(c) might theoretically allow GWH to cure Nomadix's lack of standing, that presumes knowing that GWH is the rightful successor and that the claims were transferred – issues that are being addressed by the New York court.  "Rule 25 is merely a procedural provision that gives the court the authority to continue with the original parties or to substitute or join a successor in interest.  Whether a party is a successor in interest or is subject to liability as a successor, so that Rule 25 applies, is a matter of substantive law."  6-25 Moore's Federal Practice - Civil § 25.31 (citing, *inter alia, Hilbrands v. Far E. Trading Co.*, 509 F.2d 1321, 1323 (9th Cir. 1975) (whether right to continue suit survives is question of substantive law; Fed. R. Civ. P. 25 is procedural and does not provide for survival of any right of action).  In diversity cases such as this one, this will mean application of state law.  *Id.* (citing, *inter alia, Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1357–58 (11th Cir. 1994)).  Thus, the key questions – namely, the effect and validity of the assignment and the transfer of interests – are squarely and appropriately before a New York court.  If the assignment is valid, then GWH likely needs to be substituted or at the very least joined to the case.  If the assignment is invalid as Nomadix contends, then GWH should not be substituted because Nomadix still would have sole standing.  There is no reason for this Court to intervene and decide these issues now when a stay is available at its discretion to allow the New York court to rule first.

### B. Rule 25(c) does not trump Article III standing requirements.

Nomadix twists Rule 25(c) caselaw to suggest that a plaintiff may continue to pursue a claim, even though its Article III standing had been lost.  This is an incorrect understanding of Rule 25 and the case law, and indeed, Nomadix's

1. position would turn Article III standing into a mere nicety. Nomadix does not point
2. to a single case where (i) the plaintiff transferred its interests in a case to an
3. unaffiliated third party, (ii) the transfer was in dispute, (iii) a Rule 25(c) motion had
4. been brought, yet (iv) the court permitted the plaintiff to continue litigating the case
5. in its own name while potentially lacking a judiciable case-or-controversy with the
6. defendant. That, however, is exactly what Nomadix asks the Court to do here.

7. Nomadix argues that "in *Froning's, Inc. v. Johnston Feed Service, Inc.*, 568
8. F.2d 108 (8th Cir. 1978), the Eighth Circuit rejected the very standing concern that
9. Guest-Tek raises here." (D.I. 248 at 8.) Not so. In *Froning's*, the plaintiff's sole
10. shareholder died midway through litigation, and the causes of action passed to the
11. executors of his estate pursuant to a plan of liquidation under which the company
12. was dissolved. 568 F.2d at 109-10. No party moved to substitute the estate as a
13. new plaintiff, and so the suit carried on. On appeal, the defendant complained that
14. the estate should have been substituted, but the Eighth Circuit observed that
15. "dissolved corporations have been allowed to maintain suits when the dissolution
16. does not abate their authority to do so under state law," and indeed, Iowa law (the
17. relevant law in *Froning's*) expressly allowed for such. *Id.* at 110. Therefore,
18. standing was maintained. The court further noted that "in the absence of [a Rule
19. 25(c) motion], it is not error to continue the action in the name of the original
20. parties." *Id. Froning's* is therefore distinguishable in at least four ways: (1) the
21. successor-in-interest was a related entity (the estate); (2) state law allowed standing
22. to persist under these circumstances; (3) there was no dispute as to the transfer, and
23. (4) no Rule 25(c) motion was ever filed. Here, on the other hand, Nomadix's
24. authority has been challenged by GWH, an unrelated party adversarial to Nomadix.

25. The other cases cited by Nomadix are equally distinguishable. *General*
26. *Battery*, which Nomadix cites, involved a substitution of a related entity as
27. defendant, but unlike here, there was no dispute that the replacement entity was the
28. proper successor. *Gen. Battery Corp. v. Globe-Union, Inc.*, 100 F.R.D. 258, 261

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(D. Del. 1982).[1] Similarly, in *Biovail Labs. Inc. v. Anchen Pharm. Inc.*, No. 04-1468, 2006 WL 8071250, at *2 (C.D. Cal. Aug. 1, 2006), there was no dispute as to whether interests had transferred, leaving a clear-cut Rule 25(c) substitution available to the Court, which it allowed.

Unlike the above cases, which involved properly substituting a plaintiff or defendant, Nomadix argues *against* substitution. The Federal Circuit, however, has expressed "grave doubts" that a plaintiff who lacked standing for assigning its patent interests midway through litigation would be entitled to continue as the sole plaintiff under Rule 25(c). *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1204 n.6 (Fed. Cir. 2005); *see also Commerce Bancorp, LLC v. Hill*, No. CIV.08-5628(RBK/KMW), 2010 WL 2545166, at *9 (D.N.J. June 18, 2010) ("if Plaintiffs truly did assign the rights to prosecute the instant action to its non-party corporate parent, weighty standing concerns would exist, and the Court would seriously question its authority to proceed"). The same "grave doubts" also suggest the Court should be hesitant to allow Nomadix to proceed here, all the more so given that a temporary stay will allow the New York Action to determine the dispute between GWH and Nomadix.

Ultimately, though, as it relates to this stay motion, Nomadix's Rule 25(c) arguments are a red herring. Guest-Tek does not dispute that GWH might properly be substituted under Rule 25(c) *if* the assignment was executed and the interests transferred. The issues here are that those facts are in dispute, they were first raised in another action under state law, and a short stay will illuminate which party is proper and whether a Rule 25(c) substitution should take place.

---

[1] Nomadix conveniently omits another key finding of *General Battery*, namely, that there is "ample authority" that *"a court does not have power to hear a case if jurisdiction ceases to be present during the pendency of the action." Id.* at 261.

### C. A stay will simplify the issues.

In its opening brief, Guest-Tek cited multiple court decisions establishing that "the existence of another proceeding that may have a substantial impact on a pending case is a particularly compelling reason to grant a stay." (D.I. 241 at 10-11, citing, *inter alia, Lindell,* 2012 WL 1657197, at *3.) In other words, where a stay will simplify the issues before a Court, that is a compelling interest. Nomadix attempts to distinguish two of the cases on grounds that those cases involved questions about whether the plaintiff lacked standing at the *outset* of the case.[2] But Nomadix misses the point: stays are not merely permitted at the outset of a case. And Nomadix points to no caselaw disputing that courts appropriately stay cases—even midway through litigation—when an ancillary action will directly impact a pending matter. *See, e.g., SCA Hygiene Prods. Aktiebolag ("AB") v. Tarzana Enters., LLC*, No. CV1704395ABJPRX, 2017 WL 5952166 (C.D. Cal. Sept. 27, 2017) (granting stay pending resolution of *inter partes* review despite months of discovery having been conducted).

Here, prior to bringing its Motion to Substitute in this Court, GWH filed the New York Action. Squarely at issue in that action is the question of whether Nomadix's interests in the License Agreement and the licensed patents were transferred to GWH, as GWH contends. Granting the requested stay will simplify the issues, particularly given the complexities of the dispute between Nomadix and GWH, which favors a stay. *Lindell v. Synthes, USA*, No. 1:11-CV-2053 LJO-BAM, 2012 WL 1657197, at *2 (E.D. Cal. May 10, 2012). Notably, the GWH-Nomadix dispute was brought about through no fault of Guest-Tek's. This Court should stay this case and reject the other bad alternatives, *i.e.*, (1) issuing an advisory opinion on the issues already being determined in New York, or (2) allowing the case to proceed, potentially with an improper plaintiff. Notably, if it

---

[2] Nomadix ignores the other two cited cases altogether.

remains unsettled whether GWH is a party to the license agreement, GWH will not even be entitled to see the license agreement, much less the highly confidential source code at issue in this case. (D.I. 126-2 [License Agreement], 67 [Stipulated Protective Order], and 66 [Stipulated Discovery Order].)

In addition to resolving the question of the Nomadix-GWH assignment's validity and illuminating who may be the rightful owner of the relevant interests, the New York Action presents the possibility of giving *complete* control of this case to GWH. That is because GWH has moved in the New York Action to foreclose on Nomadix's parent companies. (*See* D.I. 241-3.) If successful, GWH will in effect gain full control of Nomadix. *Id.* So even if Nomadix is right that it will retain some interest in the case, GWH will potentially control those interests, too. This fact also favors a stay.

### D. Nomadix will not be harmed by a stay.

Nomadix dramatically argues that the requested stay will "indefinitely delay Nomadix's recovery of millions of dollars in unpaid royalties." (D.I. 248 at 2.) Not so. Nomadix will suffer no prejudice from a short stay of the case, and it should not complain after concealing the GWH transfer from Guest-Tek and the Court for months.

#### 1. The requested stay is not "indefinite."

The requested stay is not "indefinite," contrary to GWH's and Nomadix's assertions. Guest-Tek only seeks "a limited stay of this Action pending the final resolution of the New York Action, **or until the New York court determines whether Nomadix's interests in the License Agreement and the licensed patents were transferred to GWH**." (D.I. 241 at 11) (emphasis added). As all parties acknowledge, GWH has submitted a motion for summary judgment that will illuminate this question, namely, whether Nomadix's interests in the License Agreement and the licensed patents were transferred to GWH. Under the rules in the Supreme Court of New York where the New York Action is pending, and based

on an inquiry to the court clerk there, it is expected that a ruling on GWH's motion for summary judgment will be made in short order – in June of this year or possibly early July. (*See* Barrow Decl. ¶¶ 6-10.) Accordingly, it is simply false that this stay will be "indefinite." Rather than issuing its own analysis of the very same issues that were first raised in the New York Action, this Court may utilize its inherent discretionary powers – and principles of comity – to stay this matter briefly while the New York court analyzes and resolves these threshold issues. It would be helpful for this Court to allow the New York court to analyze these issues to inform its determination on the pending Rule 25(c) Motion to Substitute, rather than addressing the issue first here.

Pinned to its notion that this stay will be indefinite, Nomadix also argues that a stay will "implement a policy prejudicial to debtors and creditors" because "the defendant can delay recovery of the damages owed on the claim until the foreclosure action concludes." (D.I. 248 at 4.) First, given the paucity of caselaw addressing the circumstances here, it must be recognized that the present situation is highly unusual. Even so, there is no indication that the foreclosure action will be particularly lengthy. As noted, a summary judgment motion has been filed, and will likely be decided by June or July. The parties may or may not appeal, but it should not be presumed that the summary judgment order ruling will not significantly inform – likely conclusively – whether the purported assignment was valid and the extent of its scope.

### 2. Nomadix only speculates as to harm, and disregards its own dilatory behavior.

Nomadix argues – without citing any evidence – that if the case is stayed, its "research and development" will be hurt because its presumed multi-million dollar recovery will be delayed. This is a ruse. First, Guest-Tek has properly paid royalties under the License Agreement <u>and continues to do so each quarter</u>, even throughout this lawsuit. Second, and more importantly, it is undisputed that

- 9 -

GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.'S REPLY IN SUPPORT OF ITS MOTION TO STAY
PENDING RESOLUTION OF RELATED PROCEEDING; CASE NO.: 2:16-CV-08033-AB-FFM

1  Nomadix is at least $48 million in debt and its ownership headed for extinction.
2  (D.I. 241-3 at 5.)  A short delay of the case to ensure the proper plaintiff is not
3  going to work damage to Nomadix.  Nomadix's position also ignores that Nomadix
4  had been threatening litigation since January 2013, yet only filed suit four years
5  later.  (*See* D.I. 32 ¶ 47.)  It defies logic that the requested stay would be prejudicial
6  when Nomadix itself delayed bringing this suit for almost four *years*.  It also fails to
7  acknowledge that Nomadix should have brought the transfer-of-ownership issue to
8  the Guest-Tek and the Court's attention months ago.  The need for this stay request
9  was created by Nomadix by failing to pay its debts and by divesting its rights
10 without ever informing Guest-Tek or the Court.  Nomadix should not now
11 complain about a short stay caused by its actions.

12        Moreover, Nomadix's speculation ignores the fact that GWH's motion to
13 substitute is premised on the very claim to royalties that Nomadix wants to believe
14 will be used to fund its research and development.  The notion that Nomadix will
15 use a purported recovery to jump start its research and development is pure fantasy.

16        Even accepting Nomadix's speculative injury, if a delay of monetary
17 recovery were sufficient prejudice to overcome a stay motion, a stay would never
18 be appropriate.  Every stay by definition delays final resolution.  *Cf. SCA Hygiene*,
19 2017 WL 5952166, at *5-6 (granting stay pending resolution of *inter partes* review
20 despite plaintiff's arguments that the stay would delay resolution and cause it to
21 lose market share).  Nomadix may not just presume that it will prevail in this action
22 and then speculate harm based on this hypothetical recovery.  Nomadix's
23 speculation of harm is misplaced.

24        As noted, neither Nomadix nor GWH will be harmed for another reason:
25 because this case is about unpaid royalties and money damages.  In other words,
26 any delay may be compensated by an award of prejudgment interest.  To counter
27 this, Nomadix argues that it also seeks a "declaration and specific performance of
28 [Guest-Tek's] obligations." (D.I. 248 at 3, 12.)  Yet, the specific performance that

- 10 -
GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.'S REPLY IN SUPPORT OF ITS MOTION TO STAY
PENDING RESOLUTION OF RELATED PROCEEDING; CASE NO.: 2:16-CV-08033-AB-FFM

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Nomadix demands is also monetary in nature – payment of royalties. The gist of the action is plainly one for money damages, and these equitable claims to relief go precisely to those damages. As such, a short stay will impose no real prejudice on Nomadix.

Much work remains to be done in this litigation. Neither party has completed their document productions (Nomadix has produced fewer than 1,000 documents to date), neither party has taken a deposition, the parties agree that the Court will still need to construe the subject patents at issue (D.I. 51 at 3), and expert discovery has yet to commence. (D.I. 56 at 2.) Moreover, it is undisputed that at the parties' conference of counsel on this motion, Nomadix suggested that it might agree to this stay if Guest-Tek offered something in return.[3]

### E. Guest-Tek will be severely prejudiced if a stay is not granted.

Guest-Tek will face significant prejudice if the action is not stayed while the New York Action is resolved. If the case is not stayed, Guest-Tek will be made to waste resources litigating an issue that will be decided in the New York action and against a party who may or may not be the appropriate plaintiff. "[T]he moving party's burden in litigating the case [may] be a legitimate form of hardship," particularly where resources will be wasted while another proceeding impacts the case. *Larsen v. City of L.A.*, No. 12-04392, 2012 WL 12887557, at *10 (C.D. Cal. Aug. 3, 2012). That is exactly the case here, where it would be wasteful for Guest-Tek to litigate the ownership-transfer issue and against a potentially improper plaintiff when the New York Action will inform the question of whether Nomadix still retains ownership or a personal stake in the controversy at all. If the stay is not

---

[3] At the parties' meet and confer on this motion, counsel for Nomadix indicated that it would entertain (though it did not commit to) a stay of this action if Guest-Tek were to offer something in return, such as a withdrawal of Guest-Tek's pending Petitions for *Inter Partes* Review of two of the Licensed Patents in the United States Patent and Trademark Office. (D.I. 241-1, Bovard Decl. ¶ 9.) The outcome of those Petitions will determine the validity of the affected patents. Presumably, Nomadix would not even entertain such offers if a stay were highly prejudicial to it.

- 11 -

granted, Guest-Tek will need to take additional discovery into GWH and its ownership interests in the patents, the License Agreement, and this case. The time and costs of this additional discovery will be significant.

Illustrating this point, Guest-Tek is right now spending tens of thousands of dollars in litigation expenses just dealing with a GWH-Nomadix dispute which is of their making – not Guest-Tek's. Nomadix has represented that the GWH-Nomadix dispute is "far removed from the subject matter of this case." (D.I. 206 at 5.) True as that may be, it also perfectly encapsulates the unfairness and wastefulness of having Guest-Tek and this Court expend valuable resources addressing state law and factual disputes when they are already "at the heart of the New York [A]ction." *Id.*

Guest-Tek is also prejudiced because for a patent invalidity judgment to bind, it must be against the proper owner. If Guest-Tek prevailed on its invalidity defenses against Nomadix, there would be no guarantee that GWH, if it is the true patent owner, would be bound by the Court's invalidity order to the extent it is not a party to the litigation. It is well-understood that for collateral estoppel to apply, the party against whom collateral estoppel is asserted must have had a "full and fair chance to litigate the validity of [the] patent" in the prior proceeding. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971). Importantly, no "collateral estoppel effect is given to judgments of patent invalidity from earlier litigation whether the patentee did not have a fair opportunity to litigate the validity of his patent." *See Gould v. Control Laser Corp.*, 866 F.2d 1391, 1395 (Fed. Cir. 1989) (Nichols, J., dissenting). Thus, if GWH were found to be the owner of the patent, Guest-Tek would suffer the prejudice of having to potentially relitigate its entire invalidity case. Again, the cases cited by Nomadix are distinguishable as none of them deal with a dispute as to whether the replacement entity was the proper successor – as is the case here.

/ / /

Further, proceeding now with Nomadix as Plaintiff presents a risk that Guest-Tek could face double liability, *i.e.*, to both Nomadix and GWH. Nomadix pooh-poohs this possibility, saying that if that were to occur, "Guest-Tek can pursue an interpleader claim." (D.I. 248 at 12.) That is easy for Nomadix to say—after all, it is Guest-Tek who would have to bear the costs of an interpleader claim, even though this entire messy situation is Nomadix's creation. That is exactly the prejudice this situation has brought on Guest-Tek.

Nomadix next argues that Guest-Tek cannot be prejudiced because Nomadix will remain a party in this action regardless of the New York Action's findings. That is not exactly a settled question. GWH contends that it owns the patents, the license agreement, and all interests in this case. (D.I. 193 at 4.) If GWH is correct, then there is no reason why Nomadix would need to remain in this case, as Guest-Tek could drop any counterclaims against Nomadix if it so chose. Moreover, as previously noted, if successful, GWH's foreclosure action will give it control over Nomadix as well.

Finally, Guest-Tek is prejudiced as it is unable to resolve this case by settlement while two purported plaintiffs go at each other over their rights to proceed as plaintiff. The fact that the two entities are at loggerheads will make it virtually impossible for them to press ahead jointly as co-plaintiffs. More importantly, though, Guest-Tek cannot avail itself of this Court's ADR procedures to try to reach a resolution, because it is not clear which purported plaintiff has authority to settle. While a mediator has been appointed in this case, at this point, mediation cannot proceed. Simply put, Guest-Tek would effectively be denied the opportunity to settle this matter out of court—and will be forced to go to trial—if a correct plaintiff is not properly identified before proceeding.[4]

---

[4] GWH separately argues that "[w]hile Guest-Tek is asserting that []it will be purportedly prejudiced if discovery is to continue, it is also actively pursuing discovery against GWH." But Guest-Tek may not simply cease all discovery merely because it has filed a motion. If Guest-Tek is to procure meaningful

- 13 -

GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.'S REPLY IN SUPPORT OF ITS MOTION TO STAY
PENDING RESOLUTION OF RELATED PROCEEDING; CASE NO.: 2:16-CV-08033-AB-FFM

The New York Action will squarely address whether Nomadix's interests in this litigation have transferred from Nomadix to GWH, which will inform the question of which party is the proper plaintiff here. The Court should exercise its discretion and stay this case until the New York Action resolves that question.

## III. CONCLUSION

For the foregoing reasons, Guest-Tek respectfully requests that the Court order a limited stay of this Action pending the final resolution of the New York Action, or until the New York court determines whether Nomadix's interests in the License Agreement and the licensed patents were transferred to GWH.

Dated: March 30, 2018　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　BAKER & HOSTETLER LLP

　　　　　　　　　　　　　　　　By: */s/ Kevin M. Bovard*
　　　　　　　　　　　　　　　　　　Steven J. Rocci
　　　　　　　　　　　　　　　　　　Michael J. Swope
　　　　　　　　　　　　　　　　　　Kevin M. Bovard
　　　　　　　　　　　　　　　　　　Michael R. Matthias
　　　　　　　　　　　　　　　　　　Joelle A. Berle

　　　　　　　　　　　　　　　　*Attorneys for Defendant/Counter-Claimant*
　　　　　　　　　　　　　　　　GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.

---

discovery before the discovery-cutoff, it *must* proceed until a stay is granted. GWH also suggests that there is some hypocrisy because Guest-Tek filed petitions for *inter partes* review ("IPRs") with the USPTO. Those petitions were filed in December 2017 before Guest-Tek learned of GWH's existence. Contrary to GWH's characterizations, Guest-Tek has not filed any papers in those proceedings since that time; however, if and when those IPRs are instituted, that would constitute further grounds for a stay motion. *See SCA Hygiene*, 2017 WL 5952166, at *4.