# EXHIBIT 2

Douglas G. Muehlhauser (SBN 179495)
doug.muehlhauser@knobbe.com
Mark Lezama (SBN 253479)
mark.lezama@knobbe.com
Alexander J. Martinez (SBN 293925)
alex.martinez@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile: 949-760-9502

Attorneys for Plaintiff
NOMADIX, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.,<br><br>Defendant. | Case No.<br>CV16-08033 AB (FFMx)<br><br>**NOMADIX'S SECOND SET OF INTERROGATORIES**<br><br>Honorable André Birotte Jr. |

**EXHIBIT 2**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Nomadix directs the following interrogatories to Defendant Guest-Tek Interactive Entertainment to be answered in writing and under oath.

### DEFINITIONS

1.     The terms "Guest-Tek," "you," and "your" refer to Guest-Tek Interactive Entertainment Ltd.

2.     The term "Nomadix" refers to Nomadix, Inc.

3.     The term "License Agreement" refers to the Confidential License Agreement between Nomadix and Guest-Tek with effective date December 30, 2010.

4.     The term "Guest-Tek Entity" is defined as it is in clause 1.10 of the License Agreement.

5.     The term "License Quarter" means any three-month time period commencing on January 1, April 1, July 1, or October 1 in 2011 or any subsequent calendar year.

6.     The term "Network Device" is defined as it is in clause 1.25 of the License Agreement.

7.     The term "Network Service" is defined as it is in clause 1.26 of the License Agreement.

8.     The term "Licensed Network Device" is defined as it is in clause 1.21 of the License Agreement.

9.     The term "Licensed Network Service" is defined as it is in clause 1.22 of the License Agreement.

10.     The term "Guest-Tek Device" refers to a Network Device that, during at least one License Quarter, was used or provided as a result of, or in connection with, business or services provided by a Guest-Tek Entity.

**EXHIBIT 2**

11.    The term "Guest-Tek Service" refers to a Network Service that, during at least one License Quarter, was used or provided as a result of, or in connection with, business or services provided by a Guest-Tek Entity.

12.    All of the following are "Guest-Tek Products": (1) all Guest-Tek Devices; (2) all Guest-Tek Services; (3) all versions of OneView Internet; (4) all versions of RendezView; (4) all versions of Mercury; (5) all Head-End Processors (HEPs) installed at any property at the time of, or after, Guest-Tek's acquisition of assets of iBAHN General Holdings Corporation or other iBAHN entities; and (6) all Golden Tree or GTC devices and services.

13.    The term "Customer Property" refers to a property in the United States that has used a Guest-Tek Product.

14.    A product's "Code" includes all source code and related files for the product, including: source code for the product's firmware, applications, and operating system (including kernel utilities and modules, such as Linux's Netfilter, Traffic Control, and kernel packet scheduler); binaries and executables; configuration files; Makefiles; build scripts; and files storing input or output related to source code.

15.    "Build Parameters" include all environments, files, specifications, tools, configurations, and parameters involved in compiling, building, linking, and otherwise creating an executable, including, but not limited to: development environments; build environments; cross-compilation specifications; web/application frameworks; Java Virtual Machine version; binaries, executables, and images of any kind; operating systems (including, for example, specific version of operating system, specific configuration of options and packages, specific patches, and specific versions of add-ons); compiler tools; hardware specifications, including, for example, any minimum requirements for RAM, processor, NICs, hardware ports (e.g., serial ports), BSP (board support package), and driver versions; third-party libraries; environment variables; runtime

- 2 -

**EXHIBIT 2**

environments; kernel loadable modules; DLLs; build files/Makefiles; HTML or similar content for administrative access or configuration of the end product; scripts of any kind, including, for example, build scripts and configuration scripts of any kind; include files; databases; and configuration files of any kind, including, for example, kernel configurations, property configurations, web-server configurations, and database configurations.

16.     The "License Agreement Patents" are the Licensed Patents (as defined in clause 1.23 of the License Agreement); the Bandwidth Management Patents (as defined in clause 1.2); and the patents in the Patent Families (as defined in clause 1.32).

17.     The term "Bandwidth Management" is defined as it is in clause 1.3 of the License Agreement.

18.     The term "Confidential Amendment" refers to the Confidential Amendment to License Agreement between Nomadix and Guest-Tek with effective date September 29, 2011.

## CLAIMS OF PRIVILEGE

If you withhold any information called for by these interrogatories because you contend the information is privileged, protected as work product or trial-preparation material, or otherwise protected from discovery, please identify the withheld information in a privilege log that complies with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

### INTERROGATORY 5

For each version of each Guest-Tek Product at each property that has been a Customer Property in any License Quarter, provide a detailed, step-by-step explanation of how to take the Code for the Guest-Tek Product you have produced in this litigation and install and execute it on a machine so that the machine operates as the Guest-Tek Product operated at the Customer Property and includes

- 3 -

**EXHIBIT 2**

all functionality resident on the Guest-Tek Product at the Customer Property ("Guest-Tek Operation").

In your explanation, specify all compiling, building, and linking steps involved and all Build Parameters necessary to achieve such Guest-Tek Operation, including the exact values, versions, and configurations of such Build Parameters; to the extent any particular Build Parameter has more than one option sufficient to achieve Guest-Tek Operation, your explanation should specify at least one such option, such that the entire set of Build Parameters provided is internally consistent and will suffice to achieve Guest-Tek Operation. To the extent your explanation involves files, libraries, tools, or other Code or other Build Parameters that you have produced in this litigation, identify those items by their production (Bates) number or, if no production number exists, the date of production and specific filepath. To the extent your explanation involves files, libraries, tools, or other Code or other Build Parameters that you have not produced in this litigation and that you contend you need not produce, explain unambiguously where to download or otherwise obtain the precise version and configuration of such items.

**INTERROGATORY 6**

To the extent that you contend that one or more claims of the License Agreement Patents are invalid, explain the specific facts, legal arguments (including any proposed claim constructions), and evidentiary basis that you will rely on for your contentions, identifying the specific statutory provisions you will rely on (e.g., 35 U.S.C. § 102(a) printed publication versus § 102(b) printed publication versus § 102(b) on-sale bar).

For example, to the extent that you contend that a claim is invalid in view of prior art, your response should explain the facts you will rely on to contend that the alleged prior-art references qualify as prior art and should provide charts (or similarly organized information) showing how you contend the alleged prior art discloses or teaches the limitations of the claim in accordance with the applicable

- 4 -

**EXHIBIT 2**

legal standard. As another example, to the extent that you contend a claim is invalid for failing to satisfy a requirement of § 112, your response should identify the specific claim limitations involved and explain why the legal standard for that requirement of § 112 is not satisfied.

**INTERROGATORY 7**

To the extent that you contend that equitable estoppel applies in this case (see, e.g., the Eighth Affirmative Defense in your Second Amended Answer), explain the specific facts, legal arguments, and evidentiary basis you will rely on for your contentions, identifying the specific events, communications (and content thereof), and persons involved.

**INTERROGATORY 8**

To the extent that you will rely on any defense of waiver, explain the specific facts, legal arguments, and evidentiary basis you will rely on for your defense, identifying the specific events, communications (and content thereof), and persons involved.

**INTERROGATORY 9**

Explain Guest-Tek's contentions—including the specific facts, legal arguments, and evidentiary basis Guest-Tek will rely on—for its First Counterclaim (breach of the License Agreement) against Nomadix based on negotiation of royalty rates (see, e.g., paragraphs 10–20 and 32 of Guest-Tek's Second Amended Counterclaims), including an explanation of what royalty rates Guest-Tek contends should apply for 2016 onward and why, as well as any contentions that Guest-Tek negotiated in good faith, that Nomadix did not negotiate in good faith, that Guest-Tek raised the issue of royalty rates between January 22, 2016, and July 31, 2017, that Guest-Tek has sought binding arbitration in accordance with clause 7.1 of the License Agreement, that Guest-Tek has not waived or otherwise forfeited its claim for failure to seek arbitration, or that Guest-

**EXHIBIT 2**

1  Tek has suffered proximately caused damages (including an explanation of the

2  amount of damages).

3  **INTERROGATORY 10**

4       Explain Guest-Tek's contentions—including the specific facts, legal

5  arguments, and evidentiary basis Guest-Tek will rely on—for its First

6  Counterclaim (breach of the License Agreement) against Nomadix based on

7  alleged failure to update Schedule F or identify licensees (see, e.g., paragraphs 21–

8  25 and 32 of Guest-Tek's Second Amended Counterclaims), including an

9  explanation of any contentions that Nomadix failed to identify licensees it was

10  obligated to identify (including which specific licensees and why they qualified for

11  identification), that a breach arose in connection with each such licensee (including

12  when precisely the breach arose), that Guest-Tek has paid royalties under the

13  License Agreement in connection with a device falling within the scope of clause

14  1.21.4 of the License Agreement, or that Guest-Tek has suffered proximately

15  caused damages (including an explanation of the amount of damages).

16  **INTERROGATORY 11**

17       To the extent not required by interrogatories 9 and 10, explain Guest-Tek's

18  contentions—including the specific facts, legal arguments, and evidentiary basis

19  Guest-Tek will rely on—for its First Counterclaim (breach of the License

20  Agreement).

21       Include an explanation of Guest-Tek's contentions for its First Counterclaim

22  based on alleged breaches of the Confidential Amendment (see, e.g., paragraphs

23  26–32 of Guest-Tek's Second Amended Counterclaims), including an explanation

24  of any contentions that Guest-Tek requested the "List" and "Log" referred to in

25  paragraphs 28–31 of Guest-Tek's Second Amended Counterclaims or any list or

26  log mentioned in paragraph 4 of Exhibit 1 to the Confidential Amendment

27  (including the specific dates, methods, persons, and other circumstances involved

28  in any such requests), that at the time it made any such requests Guest-Tek

**EXHIBIT 2**

believed Highly Confidential – Source Code – Restricted Access Only Material had been improperly disclosed (including the exact disclosure it believed had occurred), that such disclosure was improper (including what provisions, if any, of the Confidential Amendment the disclosure would have violated), that any such belief of improper disclosure was justifiable, or that Guest-Tek has suffered proximately caused damages (including an explanation of the amount of damages).

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: March 6, 2018

Douglas G. Muehlhauser
Mark Lezama
Alexander J. Martinez

Attorneys for Plaintiff
NOMADIX, INC.

- 7 -

**EXHIBIT 2**

**CERTFICATE OF SERVICE**

I hereby certify that on March 6, 2018, I served a copy of the foregoing
NOMADIX'S SECOND SET OF INTERROGATORIES electronically by e-mail
to Defendant's attorneys of record at the following addresses:

Steven J. Rocci
BAKER & HOSTETLER LLP
srocci@bakerlaw.com

Michael R. Matthias
BAKER & HOSTETLER LLP
mmatthias@bakerlaw.com

Michael J. Swope
BAKER & HOSTETLER LLP
mswope@bakerlaw.com

Kevin M. Bovard
BAKER & HOSTETLER LLP
kbovard@bakerlaw.com

Jihee Ahn
BAKER & HOSTETLER LLP
jahn@bakerlaw.com

guest-tek@bakerlaw.com

The papers served were either (1) attached directly to the service e-mail or
(2) were made available for download through a file-sharing service, in which case
the service e-mail provided notice of their availability for download.

Dated: March 6, 2018

Mark Lezama

- 8 -

**EXHIBIT 2**