Steven J. Rocci (Admitted *Pro Hac Vice*)
Email: srocci@bakerlaw.com
Kevin M. Bovard, SBN 247521
Email: kbovard@bakerlaw.com
**BAKER & HOSTETLER LLP**
2929 Arch Street, 12th Floor
Philadelphia, PA 19104-2891
Telephone:  215.568.3100
Facsimile:   215.568.3439

*Attorneys for Defendant/Counter-Claimant*
GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.

(*additional counsel listed on following page*)

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., <br><br> Defendant/Counter-Claimant, <br><br> v. <br><br> NOMADIX, INC., <br><br> Counter-Defendant. | Case No.: 2:16-cv-08033-AB-FFM <br><br> [*Honorable Frederick F. Mumm*] <br><br> **GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.'S NOTICE OF MOTION AND MOTION TO DISSOLVE OR, IN THE ALTERNATIVE, TO MODIFY PROTECTIVE ORDER (D.I. 194)** <br><br> [Filed concurrently with Declaration of Michael J. Swope and (Proposed) Order] <br><br> Hearing Date:  July 3, 2018 <br> Time:                 10:00 a.m. <br> Courtroom:      580 <br><br> Action Filed: 10/28/16 <br> Amended Complaint Filed: 03/23/17 |

1    Michael J. Swope (Admitted *Pro Hac Vice*)
     Email: mswope@bakerlaw.com
2    **BAKER & HOSTETLER LLP**
     999 Third Avenue, Suite 3500
3    Seattle, WA 98104-4040
     Telephone: 206.332.1379
4    Facsimile: 206.624.7317

5    Michael R. Matthias, SBN 57728
     Email: mmatthias@bakerlaw.com
6    Joelle A. Berle, SBN 252532
     Email: jberle@bakerlaw.com
7    **BAKER & HOSTETLER LLP**
     11601 Wilshire Boulevard, Suite 1400
8    Los Angeles, CA 90025-0509
     Telephone: 310.820.8800
9    Facsimile: 310.820.8859

10    *Attorneys for Defendant/Counter-Claimant*
      GUEST-TEK INTERACTIVE
11    ENTERTAINMENT LTD.

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on Tuesday, July 3, 2018 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 580 of the above-captioned court, located at 255 E. Temple Street, 5th Floor, Los Angeles, California 90012, before the Honorable Frederick F. Mumm, Defendant/Counter-Claimant Guest-Tek Interactive Entertainment Ltd. ("Guest-Tek") will, and hereby does, move this Court to dissolve the Protective Order (D.I. 194), or, in the alternative, to modify the Protective Order to allow Guest-Tek to meet with Mr. Reed upon reasonable notice to Plaintiff/Counter-Defendant Nomadix, Inc. ("Nomadix") and to exclude Mr. Hughes from attending future meetings if Mr. Reed so objects.

This Motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Michael J. Swope, including the exhibits attached thereto; the pleadings and papers filed in this action; and any other arguments, evidence, and matters submitted to the Court at the hearing or otherwise. Guest-Tek will also lodge a proposed order for the Court's consideration.

/ / /

/ / /

Pursuant to Civil Local Rule 7-3, this Motion is made following electronic conference of counsel from May 10, 2018 through May 16, 2018. Nomadix refused to confer orally.

Dated: June 5, 2018

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Joelle A. Berle*
Steven J. Rocci
Michael J. Swope
Kevin M. Bovard
Michael R. Matthias
Joelle A. Berle

*Attorneys for Defendant/Counter-Claimant*
GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.

**TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION ........................................................................................... 1

II. FACTS ........................................................................................................... 3

III. ARGUMENT ................................................................................................. 8

    A.  The Court Can Dissolve or Modify the Protective Order for Good Cause. ................................................................................................... 8

    B.  Good Cause Exists to Dissolve or Modify the Protective Order. .......... 8

        1.  The Court Should Dissolve the Protective Order. ....................... 9

        2.  Alternatively, the Court Should Modify the Protective Order to Prevent Further Abuses by Nomadix. ..................................... 9

            a.  The Court Should Allow Guest-Tek to Meet with Mr. Reed upon Reasonable Notice to Nomadix. ................. 10

            b.  The Court Should Also Exclude Mr. Hughes from Any Future Meetings Between Guest-Tek and Mr. Reed. ................................................................................ 11

    C.  The Court Should Not Condone Nomadix's Tactics. ......................... 12

IV. CONCLUSION ............................................................................................ 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CBS Interactive, Inc. v. Etilize, Inc.*,
  257 F.R.D. 195 (N.D. Cal. 2009) .................................................................. 8

*E.E.O.C. v. Original Honeybaked Ham Co. of Ga., Inc.*,
  No. 11-cv-02560, 2012 WL 3472281 (D. Colo. Aug. 13, 2012) ........................ 11

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) ...................................................................... 8

*Galella v. Onassis*,
  487 F.2d 986 (2d Cir. 1973) ........................................................................ 11

*MOBE Ltd. v. Digital Altitude LLC*,
  No. 16-5708, 2017 WL 357492 (C.D. Cal. June 27, 2017) ............................... 12

*Nomadix, Inc. v. Hewlett-Packard Co.*,
  838 F. Supp. 2d 962 (C.D. Cal. 2012) ............................................................ 9

**Rules**

Fed. R. Civ. P. 26(c)(1)(E) .................................................................................... 2, 8

**Other Authorities**

6-26 Moore's Federal Practice – Civil § 26.106 (2018) ........................................ 8, 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This is the third time that Nomadix's litigation maneuvers have necessitated Court intervention to resolve whether and how Guest-Tek may communicate with Charles Reed, Nomadix's retired CEO.  Nomadix has repeatedly sought to bully Mr. Reed out of speaking with Guest-Tek or its attorneys, which he has been willing to do of his own volition.  (The Court specifically authorized filing of this motion in the event that Nomadix continued to frustrate attempted meetings between Guest-Tek and Charles Reed.  (D.I. 260.))  After Nomadix first sent Mr. Reed at least one threatening letter (D.I. 161-16), Nomadix moved for a protective order barring Guest-Tek from communicating *ex parte* with Mr. Reed because, allegedly, Nomadix and Mr. Reed at one time participated in unspecified attorney-client privileged communications.  (D.I. 176.)  Nomadix assured Guest-Tek and the Court that it was not seeking a "gag order" preventing Mr. Reed from speaking with Guest-Tek.  (*Id.* at 1.)  Rather, in moving for the protective order, Nomadix represented that it "simply ask[ed] to be present during any communications between Guest-Tek's attorneys and Mr. Reed," supposedly to "preserve its privileges . . . and confidential information."  (*Id.*)  The Court granted Nomadix's motion and entered a protective order directing Guest-Tek not to "communicate with, or otherwise have contact with, Mr. Reed on any topic relating to Nomadix unless Nomadix's attorneys are present."  (D.I. 194 at 1.)  The Court "expect[ed]" Nomadix to "cooperate with [Guest-Tek] in arranging such contacts."  (D.I. 260 at 1.)

Nomadix is not cooperating.  Nomadix is harassing Mr. Reed and hampering Guest-Tek's communications with him.  First, Nomadix (through Singapore counsel) sent Mr. Reed a baseless letter threatening legal action against him for communicating with Guest-Tek.  (D.I. 161-16.)  That letter also demanded that Mr. Reed "not have further contact with Guest-Tek."  (*Id.*)  Then, Nomadix attempted

- 1 -

to limit Guest-Tek's communications with Mr. Reed to formal depositions—an intentional misreading of this Court's Protective Order, which the Court swiftly rejected. (D.I. 260.) And most recently, Nomadix sabotaged Guest-Tek's planned meeting in Bangkok with Mr. Reed by arranging for Kelly Hughes, Nomadix's in-house general counsel (who Mr. Reed knows and distrusts), to attend the meeting with Nomadix's outside counsel.

Nomadix did not tell Guest-Tek or Mr. Reed of this plan until the eve of the pre-arranged meeting date. After Mr. Reed had objected to Mr. Hughes' presence (due to distrust and bad blood based on previous business dealings), Nomadix proceeded with its plan anyway. Even after all parties had arrived in Bangkok, Nomadix's outside counsel refused to allow the meeting to occur unless Mr. Hughes also participated. Mr. Reed again objected, but offered a compromise. He offered that the meeting could proceed if only Mr. Laquer, and not Mr. Hughes, participated on behalf of Nomadix. Or, alternatively, the meeting could proceed in Mr. Hughes' presence provided that Mr. Hughes could only listen and would not use anything said at the meeting against Mr. Reed. Nomadix refused both offers and then tried to personally serve a sealed document on him, which Nomadix refused to show to Guest-Tek's lawyer. (Declaration of Michael J. Swope ("Swope Decl.") Ex. 3.) Mr. Reed refused to accept the document and the meeting did not occur. After returning to the United States, Guest-Tek learned that the document contained renewed and amped up (and baseless) legal threats against Mr. Reed. (*Id.* Ex. 4.)

These most recent antics necessitate this motion.[1] Guest-Tek is entitled to freely communicate with Mr. Reed concerning non-privileged information. In fact,

---

[1] As the Court is aware, this action is presently stayed. Nomadix has suggested that this motion should not be heard while the stay is in place. But that would effectively compound Nomadix's misuse of the Protective Order. The Protective Order at issue here affects ***non-discovery*** communications. The Court may—and should—resolve this issue now so that Nomadix may not stymie communications

there appears to be a large amount of such non-privileged information, since Mr. Reed and Guest-Tek CEO Arnon Levy had a number of business meetings after the License Agreement was signed, and Nomadix is aware of that. Nomadix's antics reveal its real intent in interfering with Guest-Tek's attempts to speak with Mr. Reed—to prevent Mr. Reed from revealing non-privileged business discussions between Guest-Tek and Nomadix that are potentially highly damaging to Nomadix's claims.

The Court should dissolve the Protective Order, or at least modify it to allow Guest-Tek to meet with Mr. Reed upon reasonable notice to Nomadix and to exclude Mr. Hughes from attending future meetings if Mr. Reed so objects.

## II.   FACTS

Charles Reed has submitted two declarations in support of Guest-Tek's motions, both related to Nomadix's breach of the dispute resolution provision of the parties' License Agreement. (D.I. 28-4, 100.) Nomadix fears Mr. Reed's possible third, non-privileged, declaration that he, on Nomadix's behalf, "represented to [Guest-Tek CEO Arnon] Levy that Nomadix would not sue Guest-Tek for breach of the License Agreement." (D.I. 171 at 31.) That fact would bolster Guest-Tek's equitable estoppel defense, which could defeat Nomadix's claim under the License Agreement. (D.I. 259 at 2–3.)

Instead of confronting this defense on the merits, Nomadix is trying to silence Mr. Reed and his anticipated testimony. The Singaporean law firm purportedly representing Nomadix's parent company, interTouch, sent Mr. Reed an unfounded threatening letter accusing him of breaching contracts with Nomadix by submitting the declarations. (D.I. 161-16.) Nomadix moved for a protective order "prohibiting Guest-Tek's attorneys from communicating *ex parte* with Mr. Reed on ***any topic***." (D.I. 171 at 1) (emphasis added). Nomadix's stated purpose for the

---

with Mr. Reed for the length of the stay. To be clear, the communications at issue are not formal discovery—they are informal, extrajudicial communications.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

requested order was "simply" to "ensur[e] it the opportunity to assert privilege objections" so that Mr. Reed does not "divulge[] privileged or confidential information" to Guest-Tek. (*Id.*)  The Court granted the motion, ordering Guest-Tek not to "communicate with, or otherwise have contact with, Mr. Reed on any topic relating to Nomadix unless Nomadix's attorneys are present." (D.I. 194 at 1.)  At no point in the briefing did Nomadix indicate that anyone other than its outside counsel needed to be present to guard against possible divulgation of privileged or confidential information.

Soon after the Order issued, Guest-Tek reached out to Nomadix to arrange an informal interview meeting with Mr. Reed. (D.I. 259-1 at 29.)  Nomadix refused to cooperate, insisting that Guest-Tek schedule a formal deposition. (*See id.* at 27–28.)  Guest-Tek moved for clarification of the protective order. (D.I. 259.)  Just hours later, the Court ruled that the order was "clear on its face" and rejected Nomadix's position, noting that "[Nomadix] neither requested nor did the Court grant any restriction on contact between [Guest-Tek] and Mr. Reed other than the restriction that [Nomadix] was entitled to have an attorney witness any such contact." (D.I. 260 at 1.)  The Court "expect[ed]" that Nomadix will "cooperate with [Guest-Tek] in arranging such contacts." (*Id.*)  And it warned that if Nomadix "has proved or proves to be uncooperative," then "the Court will entertain a motion to amend the order to provide that [Guest-Tek] must only give reasonable notice to [Nomadix] before any such meeting." (*Id.*)  The amendment would allow Guest-Tek to "meet with Mr. Reed outside the presence of [Nomadix]'s counsel if such counsel does not appear at the meeting." (*Id.* at 1–2.)

Days later, on April 11, Guest-Tek emailed Mr. Reed (and copied Nomadix) to request a meeting near his home in Bangkok. (Swope Decl. Ex. 1 at ¶ 2.)  The email explained "that this is Guest-Tek's meeting only, that Nomadix lawyers may only listen, and its lawyers may not ask questions except to the extent needed to ensure that you do not disclose the legally protected substance of communications

that are properly attorney-client privileged." (*Id.* at 7.) Nomadix has not disputed this characterization of the meeting. (*See id.* at 1–6.) Mr. Reed agreed to meet on May 3 at a Bangkok hotel. (*Id.* at 4–5.) Nomadix disclosed that Alan Laquer of Knobbe Martens would attend the meeting on its behalf. (*See* Swope Decl. Ex. 2 at ¶ 3.)

It was not until April 24 that Nomadix told Guest-Tek that its general counsel, Kelly Hughes, would join Mr. Laquer at the meeting. (*Id.* Ex. 1 at ¶ 2.) Since Nomadix did not tell Mr. Reed of Mr. Hughes' attendance, Guest-Tek delivered the news to him. (*See id.*) Mr. Reed objected to Mr. Hughes' attendance, citing their contentious past:

> My last conversation with Kelly Hughes when I left interTouch was that our friendship was no longer and that I will never speak to him again. This was the result of his actions during the sale of interTouch and Nomadix.
>
> I object to Mr Hughes attending the meeting.

(*Id.*) Nomadix dismissed Mr. Reed's objection. It argued—for the first time—that it "needs Mr. Hughes to attend any meeting between Guest-Tek and Mr. Reed to safeguard against disclosure of its confidential and privileged information." (*Id.* at 3.) And it revealed that Mr. Hughes was already on his way to Bangkok. (*Id.*)

In response, Guest-Tek reserved the right to postpone or reschedule the meeting if "Nomadix persists in its position that Mr. Hughes must be present." (*Id.* at 2.) Guest-Tek contended that Mr. Hughes' presence would "only serve as an attempt to intimidate Mr. Reed, make him uncomfortable, and/or to evoke some emotion from him." (*Id.*) More generally, Mr. Hughes' presence would disrupt "Guest-Tek's interview of a third party," during which "Guest-Tek is entitled to proceed unfettered by Nomadix or its counsel, except to advise Mr. Reed that he should not reveal privileged communications." (*Id.*)

///

- 5 -

On May 3, Guest-Tek's outside counsel, Michael Swope, arrived at the meeting room in the Bangkok hotel. (Swope Decl. ¶ 4.) Mr. Swope found Messrs. Laquer and Hughes already there; Mr. Reed had not yet arrived. (*Id.*) Mr. Swope reiterated Guest-Tek's position that Mr. Hughes' presence would be disruptive and that Guest-Tek did not want him in the room during the meeting if Mr. Reed opposed his presence. (*Id.* ¶ 5.) Mr. Laquer responded that "Nomadix's position is clear. Mr. Hughes has every right to be there." (*Id.*) Mr. Swope reminded Mr. Laquer of Nomadix's obligation to cooperate with Guest-Tek. (*Id.*) (citing D.I. 260 at 1). Yet Mr. Laquer simply repeated Nomadix's position. (*Id.*)

When Mr. Reed did not appear at the appointed time, Mr. Swope and Mr. Laquer went to find Mr. Reed and found him in the hotel lobby. (*Id.* ¶ 6.) Mr. Reed told Mr. Laquer that he was not comfortable with Mr. Hughes attending the meeting. (*Id.*) Mr. Reed added that he and Mr. Hughes had a history and that he did not trust Mr. Hughes. (*Id.*) Mr. Reed also voiced his concern that Mr. Hughes would use anything he said at the meeting to try to create problems for him. (*Id.*) Mr. Laquer again repeated Nomadix's position that Mr. Hughes' attendance was mandatory. (*Id.*)

Guest-Tek and Mr. Reed tried to find a compromise with Nomadix while they were in the hotel lobby. Mr. Reed said several times that he had no issue with Mr. Laquer's attendance at a meeting. (*Id.* ¶ 7.) He also indicated that he would agree to Mr. Hughes' attendance on the condition that Mr. Hughes only listen for privileged information and not use anything said at the meeting against him. (*Id.*) Mr. Laquer said that Nomadix could not agree to this condition. (*Id.*) Mr. Reed responded that he does not trust Mr. Hughes and asked Mr. Laquer to reconsider. (*Id.*) Mr. Laquer replied that Nomadix's position was unchanged. (*Id.*) Mr. Reed asked Mr. Laquer to present the request to Mr. Hughes. (*Id.*)

Mr. Laquer agreed to discuss the matter with Mr. Hughes, and subsequently they caucused in a private room. (*Id.* ¶ 8.) After their conversation, they found Mr.

Swope and told him that they should all return to the lobby to continue the discussion with Mr. Reed. (*Id.*) Messrs. Hughes and Laquer asked Mr. Reed to accept a pre-prepared, sealed letter that supposedly summarized Nomadix's position. (*Id.*) Mr. Swope asked what the letter was about, but Messrs. Laquer and Hughes refused to tell him unless Mr. Reed first opened it. (*Id.*) Mr. Reed declined to open the letter. (*Id.*) Of course, there was no need to spring this letter on Mr. Reed at the planned meeting with Guest-Tek, and its only purpose could have been intimidation. Nomadix has long known Mr. Reed's physical address *and* email address; indeed a similar letter had been sent to Mr. Reed months earlier. (D.I. 116-16.)

Nomadix has since produced what it represents to be the letter. If Nomadix's representation is correct, then the letter comes from the same Singaporean law firm that sent the first threatening letter on interTouch's behalf. But this letter asserts for the first time that the firm also represents Nomadix. And it insinuates that Mr. Reed could owe Nomadix tens of thousands of dollars for cooperating with Guest-Tek. (Swope Decl. Ex. 4, ¶ 14.)

After Mr. Laquer's attempted delivery of the letter in Bangkok, Mr. Swope voiced his concern that Mr. Laquer was trying to prevent Mr. Reed from meeting with him. (*Id.* ¶ 10.) Mr. Hughes interjected that Mr. Swope should not be meeting with Mr. Reed at all because Mr. Reed is a former Nomadix employee. (*Id.*) That, of course, is not what the Court held. (D.I. 260 at 1.) Mr. Swope said once again that he would proceed with the meeting with Mr. Laquer, but not Mr. Hughes, in attendance. (Swope Decl. ¶ 11.) Mr. Laquer refused, insisting that Guest-Tek was required to allow Mr. Hughes to attend under the protective order. (*Id.*) At that point, Mr. Swope informed Mr. Laquer that he had no real choice but to cancel the meeting. (*Id.*) Mr. Laquer retorted, "That's your decision." (*Id.*)

Mr. Laquer and Mr. Swope then went to inform Mr. Reed that the meeting would not go forward. Mr. Reed then remarked that Mr. Hughes' presence had

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

something to do with Seale Moorer, CEO of Nomadix's parent company, and that Mr. Moorer no longer owns Nomadix. (*Id.* ¶ 12.) Mr. Laquer told Mr. Reed to stop talking about that because that information was privileged. (*Id.*) Mr. Swope disagreed that it was privileged; Mr. Reed added that it was public information. (*Id.*) In fact, it is public information—it is disclosed in a publicly available complaint filed in New York state court by the company that has acquired Nomadix.

Mr. Laquer and Mr. Swope did not reach an agreement on the terms of an interview meeting with Mr. Reed. (*Id.* ¶ 13.) So Mr. Laquer, Mr. Hughes, and Mr. Swope left Bangkok without having held the meeting. (*Id.*)

### III. ARGUMENT

#### A. The Court Can Dissolve or Modify the Protective Order for Good Cause.

The Court enjoys "inherent authority to grant a motion to modify a protective order where 'good cause' is shown"—that is, where "specific prejudice or harm will result if the motion is not granted." *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) (citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11, 1213 (9th Cir. 2002)). A protective order may be modified to "designat[e] the persons who may be present while the discovery is conducted." Fed. R. Civ. P. 26(c)(1)(E). Or it may be dissolved entirely. 6-26 Moore's Federal Practice – Civil § 26.106 (2018).

#### B. Good Cause Exists to Dissolve or Modify the Protective Order.

Guest-Tek can show good cause to dissolve or modify the protective order, which Nomadix has abused. Without dissolution or modification, Nomadix will continue to manufacture its own gag order by intimidating Mr. Reed and obstructing his meetings with Guest-Tek.

///

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### 1. The Court Should Dissolve the Protective Order.

This Court entered the Protective Order, and it is also empowered to lift or modify it. Here, Nomadix is abusing the Protective Order, and on that basis it should be dissolved so as not to further harass Mr. Reed and stymie Guest-Tek. The Protective Order entitles Nomadix only "to have *an attorney* witness any . . . contact" between Guest-Tek and Mr. Reed to preserve Nomadix's privileges. (D.I. 260 at 1) (emphasis added). It does not specifically entitle Nomadix to have *Mr. Hughes* witness any contact. (*Id.*) Two Nomadix attorneys were present on May 3 in Bangkok: Mr. Laquer and Mr. Hughes. Mr. Laquer could have attended the meeting, and Nomadix would have "ha[d] an attorney witness" it. (*Id.*) Yet Nomadix refused, demanding Mr. Hughes' attendance over Mr. Reed's objection.

Nomadix's demand implies that Mr. Laquer cannot assess privilege. That cannot be true. Mr. Laquer is an NYU-educated lawyer and a partner at the law firm of Knobbe Martens. He has represented Nomadix against Guest-Tek for most of this decade. *See, e.g.*, *Nomadix, Inc. v. Hewlett-Packard Co.*, 838 F. Supp. 2d 962, 962 (C.D. Cal. 2012). And his actions in Bangkok show that he is more than capable of preserving privilege. Indeed, when Mr. Reed briefly discussed Seale Moorer's relationship to Nomadix, it was Mr. Laquer who told him to stop talking. (Swope Decl. ¶ 12.) Quite simply, Mr. Hughes' attendance would not have been useful or necessary for Nomadix to preserve privilege. But Nomadix did not fly to Bangkok to preserve privilege. It flew to Bangkok to intimidate Mr. Reed and stymie Guest-Tek, and it should be held to account for this blatant misuse of the Court's Protective Order. Accordingly, the Court should dissolve the Protective Order.

### 2. Alternatively, the Court Should Modify the Protective Order to Prevent Further Abuses by Nomadix.

If the Court does not dissolve the Protective Order, then it should modify the Order to allow Guest-Tek to meet with Mr. Reed upon reasonable notice to

Nomadix and to exclude Mr. Hughes from Guest-Tek's future meetings with Mr. Reed.

### a. The Court Should Allow Guest-Tek to Meet with Mr. Reed upon Reasonable Notice to Nomadix.

Nomadix violated not only the Protective Order, but also the Court's later order on Guest-Tek's Motion for Clarification. The later Order (D.I. 260) requires Nomadix to cooperate in arranging any contacts between Guest-Tek and Mr. Reed. (*Id.*) And it warned that if Nomadix "has proved or proves to be uncooperative," then "the Court will entertain a motion to amend the order to provide that [Guest-Tek] must only give reasonable notice to [Nomadix] before any such meeting." (*Id.*) The amendment would allow Guest-Tek to "meet with Mr. Reed outside the presence of [Nomadix]'s counsel if such counsel does not appear at the meeting." (*Id.* at 1–2.) The Court should adopt this amendment because Nomadix has been uncooperative since the Protective Order issued.

When Guest-Tek sought Nomadix's cooperation in scheduling a meeting between Guest-Tek and Mr. Reed, Nomadix argued that the Protective Order mandated a deposition. The Court swiftly corrected Nomadix's misreading of the Order. (*Id.*) Then, Nomadix surprised Mr. Reed with an appearance from Mr. Hughes, who is not on speaking terms with Mr. Reed. (Swope Decl. Ex. 1, and ¶ 4.) As the parties discussed this in a hotel lobby in Bangkok, Nomadix refused to compromise with Guest-Tek and Mr. Reed on the terms of a meeting, either by limiting Mr. Hughes' use of information or by proceeding with only Mr. Laquer. (*Id.* ¶ 7.) In addition, Nomadix threatened Mr. Reed with a letter from a Singaporean law firm, insinuating that Mr. Reed could owe Nomadix more than $40,000 for cooperating with Guest-Tek. (*Id.* Ex. 4 at 16.) Because Nomadix is not cooperating, the Court should modify the protective order as contemplated by the Court's Clarification Order.

///

### b. The Court Should Also Exclude Mr. Hughes from Any Future Meetings Between Guest-Tek and Mr. Reed.

When the Protective Order issued, Guest-Tek could not have anticipated that Nomadix would fly Mr. Hughes to Bangkok to intimidate Mr. Reed. So, if the Court does not dissolve the Protective Order, then it should also modify the Order by excluding Mr. Hughes from any future meetings between Guest-Tek and Mr. Reed.

Good cause exists for this modification, which Guest-Tek and Mr. Reed need to prevent further intimidation by Nomadix. "[P]rotect[ing]" a witness "from embarrassment or ridicule" is good cause for exclusion, especially when a party shows "an irrepressible intent to continue . . . harassment" of the witness or a "complete disregard for judicial process." *Galella v. Onassis*, 487 F.2d 986, 997 & n.17 (2d Cir. 1973) (excluding plaintiff from defendant's deposition). Likewise, good cause exists to exclude a third party who will make a witness "visibly upset" and "extremely distressed." *E.E.O.C. v. Original Honeybaked Ham Co. of Ga., Inc.*, No. 11-cv-02560, 2012 WL 3472281, at *2 (D. Colo. Aug. 13, 2012) (excluding third party from plaintiffs' depositions). These conditions exist here. Through threatening letters, overly narrow readings of the Protective Order, and a surprise visit from Mr. Hughes, Nomadix has relentlessly harassed Mr. Reed and disregarded the Protective Order. If the Court does not modify the Order, then Nomadix's vexatious tactics will continue.

The case for excluding Mr. Hughes is even stronger than the successful cases for exclusion in *Galella* and *Honeybaked Ham*. There, the courts excluded a party and a third party from *depositions*, which party representatives often attend and where some amount of discomfort is to be expected. But Guest-Tek was simply trying to conduct an informal meeting, not a deposition. The Protective Order provides that Nomadix may *attend* that meeting to preserve privilege. But it does not entitle Nomadix to *influence* the meeting by enlisting Mr. Hughes and

brandishing sealed letters to provoke Mr. Reed. The Court should modify the protective order to ensure as much.

### C. The Court Should Not Condone Nomadix's Tactics.

In addition to misrepresenting and misusing the Court's Protective Order, Nomadix's behavior is also vexatious and harassing to both Guest-Tek and Mr. Reed. Such behavior is inherently sanctionable. "[A] district court has the inherent authority to impose sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *MOBE Ltd. v. Digital Altitude LLC*, No. 16-5708, 2017 WL 357492, at *4 (C.D. Cal. June 27, 2017). While Guest-Tek has, in this motion, narrowed the relief that it seeks to allow it to meet with Mr. Reed unfettered by Nomadix's interfering conduct, Guest-Tek does not waive its right to seek appropriate remedies hereafter. Guest-Tek incurred substantial fees and expenses in arranging the meeting with Mr. Reed, in traveling to and from Bangkok, and in preparing this motion. Minimally, the Court should advise Nomadix that its tactics are inappropriate and that the Court does not condone them. However, the Court may choose to exercise its inherent authority to compensate Guest-Tek for its fees and expenses.[2]

/ / /

/ / /

---

[2] Nomadix has already been reprimanded by Judge Birotte for its abuse of discovery in this case. In particular, the Court noted that Nomadix withheld highly relevant documents that undermined its standing in this case, and noted other courts had found such behavior to be sanctionable. (D.I. 284 at 5 n.1.)

## IV. CONCLUSION

Nomadix is abusing a protective order, designed to preserve its privileges and confidential information, as an offensive weapon to obstruct any meetings between Guest-Tek and Charles Reed. The Court should dissolve the protective order, or at least modify it, to prevent further abuse.

Dated: June 5, 2018

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Joelle A. Berle*
Steven J. Rocci
Michael J. Swope
Kevin M. Bovard
Michael R. Matthias
Joelle A. Berle

*Attorneys for Defendant/Counter-Claimant*
GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.