1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5   NOMADIX, INC.,                    )
                                      )
6                  PLAINTIFF,         )
                                      )
7           vs.                       ) No. CV 16-8033-AB
                                      )
8   GUEST-TEK INTERACTIVE             )
    ENTERTAINMENT LTD.,               )
9                                     )
                   DEFENDANT.         )
10  _____)

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14              FRIDAY, AUGUST 31, 2018

15                  10:07 A.M.

16              LOS ANGELES, CALIFORNIA

17

18

19

20

21

22  _____

23          **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
            FEDERAL OFFICIAL COURT REPORTER
24          350 WEST FIRST STREET, ROOM 4311
            LOS ANGELES, CALIFORNIA 90012
25              cmjui.csr@gmail.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:

 3          KNOBBE MARTENS
            BY:  MARK LEZAMA, ATTORNEY AT LAW
 4          AND  JAMES F. SMITH, ATTORNEY AT LAW
            2040 MAIN STREET
 5          14TH FLOOR
            IRVINE, CALIFORNIA 92614
 6          949-760-0404

 7

 8   FOR THE DEFENDANT:

 9          BAKERHOSTETLER
            BY:  THOMAS D. WARREN, ATTORNEY AT LAW
            1900 EAST 9TH STREET
10          SUITE 3200
            CLEVELAND, OHIO 44114
11          216-861-7528

12

13   FOR THE DEFENDANT:

14          BAKERHOSTETLER
            BY:  MICHAEL J. SWOPE, ATTORNEY AT LAW
15          999 THIRD AVENUE
            SUITE 3600
16          SEATTLE, WASHINGTON 98104
            206-332-1386

17

18   FOR THE INTERVENOR APPLICANT GATE WORLDWIDE HOLDINGS:

19          MORRISON & FOERSTER LLP
            BY:  GREGORY B. KOLTUN, ATTORNEY AT LAW
20          707 WILSHIRE BOULEVARD
            LOS ANGELES, CALIFORNIA 90017
21          213-892-5551

22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; FRIDAY, AUGUST 31, 2018

 2                              10:07 A.M.

 3                                - - -

 4              THE CLERK:  Calling CV 16-8033-AB, Nomadix, Inc.,

 5    versus Guest-Tek Interactive Entertainment Ltd.

 6              Counsel, please step forward and state your

 7    appearances.

 8              MR. LEZAMA:  Mark Lezama of Knobbe Martens on

 9    behalf of plaintiff Nomadix.

10              THE COURT:  Good morning.

11              MR. LEZAMA:  With me is my colleague, James Smith.

12              THE COURT:  Say that again.

13              MR. LEZAMA:  My colleague, James Smith.

14              THE COURT:  Good morning.

15              MR. WARREN:  Tom Warren on behalf of Guest-Tek.

16    With me is Michael Swope.

17              THE COURT:  Good morning to you both.

18              MR. KOLTUN:  Greg Koltun, Morrison and Foerster,

19    for intervenor applicant, Gate Worldwide Holdings.

20              THE COURT:  Good morning to you as well.

21              There has been a lot that's happening in this case

22    over the last -- since the last time we were all together,

23    including what I just saw, I guess, was filed yesterday

24    by -- by Nomadix, their statement or their position with

25    respect to what's happened in New York.
```

```
 1              I guess let's hear from Mr. Lezama, if you would
 2    just outline your views as to where we are.  It sounds like,
 3    if I understand you correctly, that even if there is the
 4    sale, the sale will only do -- the sale will not relinquish
 5    the patent rights of Nomadix.  Is that in sum and substance
 6    your position?
 7              MR. LEZAMA:  That is correct, Your Honor.  It's
 8    clear now that Nomadix owns the patents.  It has since the
 9    outset of this case, as we argued.  And the foreclosure path
10    that Gates sought and has been approved to take and is now
11    ordered to take will transfer only the LLC membership
12    interest units of Nomadix's parent company.
13              So, basically, the New York Court has made clear
14    that Nomadix owns the patents and Nomadix will remain the
15    owner even if Gate completes its foreclosure.
16              THE COURT:  If you wouldn't mind, play out --
17    let's play out what would happen.  The foreclosure sale
18    occurs, okay?  And then what?  Foreclosure sale occurs and
19    just pick a figure -- it sold for X amount.  That money goes
20    to who?
21              MR. LEZAMA:  That money goes to Gate.
22              THE COURT:  And they're done?  They just take
23    their money and run?
24              MR. LEZAMA:  Yes.  Whoever is the prevailing
25    bidder at the foreclosure sale will acquire
```

 1   interTouch Holdings, which is the parent company of Nomadix.

 2            So interTouch Holdings and its assets will remain

 3   intact.  Nomadix and its assets will remain intact through

 4   the closing of the foreclosure sale.

 5            THE COURT:  Help me understand that.  How does

 6   Nomadix and its holdings -- they remain intact but they will

 7   be owned by whom?

 8            MR. LEZAMA:  They will still be owned by

 9   interTouch Holdings, the present parent company.

10            THE COURT:  Who will own interTouch Holdings?

11            MR. LEZAMA:  Whoever is the prevailing bidder at

12   the foreclosure sale.  This is assuming that the defendants

13   do not first pay the money that's owed and, basically, avoid

14   a sale.

15            THE COURT:  Right.  What's the likelihood of that?

16            MR. LEZAMA:  We think it's likely but --

17            THE COURT:  Percentage-wise, can you give me a

18   little more?  I will likely win the Lotto tomorrow.  What

19   are we talking about?

20            MR. LEZAMA:  So Nomadix and its related group of

21   companies have secured a contractual obligation to provide

22   over $70 million in funding, and that money is earmarked for

23   paying off the debt.  That's as much as I can say.

24            THE COURT:  Okay.  All right.  I guess -- well, is

25   there anything else you wish to add as it relates to this

```
 1  issue?
 2          MR. LEZAMA:  Sure.  I would just say that, by
 3  stipulated order of the parties in the New York case, the --
 4  if the foreclosure sale goes through to completion, even
 5  though what's being sold is interTouch Holdings, that sale
 6  will extinguish the security interests of Gate in all the
 7  subsidiary collateral.  So that, basically, includes
 8  Nomadix's patents.
 9          So Gate will no longer -- the foreclosure sale
10  will extinguish any security interest in Nomadix's patents.
11          THE COURT:  I don't know if Mr. Warren or
12  Mr. Swope, which of you have drawn the short straw.  What's
13  your response to it?  I guess I am concerned -- well, not
14  concerned.  The language at least that's highlighted in the
15  filing by Nomadix yesterday that talks about -- seems to
16  suggest that, at the closing of the sale, for all intents
17  and purposes, once that sale is done, Gate is out.  Do you
18  have a different view?
19          MR. WARREN:  Well -- and, yes, Your Honor, I drew
20  the short straw.
21          The -- I mean, unlikely that they -- I mean it's
22  likely that they will be the high bidder.
23          THE COURT:  You think it is likely that Gate --
24  that Nomadix will be the high bidder?
25          MR. WARREN:  No.  I think Your Honor has a better
```

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    chance of winning the lottery than Nomadix coming up with

2    the money.

3            THE COURT:  Okay.

4            MR. WARREN:  But, you know, Gate has a $50 million

5    note.  Since they are likely to be the company that has the

6    biggest interest in purchasing these assets since they have

7    such a large note on it -- and I don't want to speak for

8    Gate, but in all likelihood what will happen will be that

9    Gate will be the high bidder just like the bank is a high

10   bidder on any other foreclosure where they have got the big

11   note.  So they'll end up owning it.

12           And I think that we're getting a little bit into

13   the metaphysical when Nomadix argues that the company will

14   still own the patents.  It won't be the company as it is

15   currently constituted.  InterTouch will be owned either by

16   Gate or by some other company --

17           THE COURT:  So what's your view?  You are right.

18   We are getting into the weeds.  I am just trying to play

19   this out because I have a feeling we'll end up at this point

20   at some point, and I would rather just, at least, start a

21   discussion about it.

22           MR. WARREN:  I mean, when we originally briefed

23   this issue, Gate was taking the position that it owned the

24   patents and Nomadix was taking the position that it owned

25   the patents.

```
 1              Now we're, sort of, in this intermediary position
 2    where -- and Judge Ostragar in New York wasn't entirely
 3    clear on this.  He started off by saying that Nomadix owned
 4    the patents, and by the end of that hearing he said, "Look.
 5    The only thing I am holding is that you guys have a valid
 6    note, and you are allowed to foreclose on it."
 7              But we have a situation where the patents are
 8    redeemable -- the collateral is redeemable by Nomadix if it
 9    comes up with the dough, which it's likely not to, and it's
10    part of the collateral that Gate is foreclosing on.
11              THE COURT:  So, then, let's play out two
12    scenarios.  One, Nomadix comes up with the money, it's their
13    patent.  That's the easier one; right?
14              MR. WARREN:  Right.
15              THE COURT:  The other scenario, Gate comes up --
16    they likely prevail at the foreclosure sale.  Okay?  Does
17    Gate own the patent at that point?  Or Gate owns interTouch
18    Holdings, which is the parent company of Nomadix; and if so,
19    does that, in essence, mean that Gate owns the patent?
20              MR. WARREN:  Yes.  So if Gate buys interTouch, it
21    owns Nomadix, and that means it owns the patents.
22              THE COURT:  And then what difference does it
23    make -- well, I will ask the question.  I think I know the
24    answer.  Would it be Gate's position -- and, obviously, I
25    will give Gate an opportunity to be heard on this -- but
```

```
 1    would Gate say, "Okay.  We now own you, Nomadix.  We're
 2    going to shut you down or get out of the way so we can
 3    proceed with this lawsuit"?
 4              MR. WARREN:  I think that Gate, as the owner of
 5    the patents, at that point would have the right to either
 6    operate the company and litigate these cases or sell the
 7    company and try to collect the rest of their collateral that
 8    way.
 9              I don't want to speak to Gate's interests, but,
10    when we started this, we were concerned about whether 25(c)
11    really applied or not.  I think we -- to my mind, we've
12    moved past the legal into the practical at this point.
13              THE COURT:  Right.  Although there are some legal
14    implications just by -- at least paragraph 14 suggests that
15    Gate's rights get extinguished upon the foreclosure sale.
16    So I guess that may -- forgive me because I am going to add
17    another scenario.
18              Let's say somebody else comes in and they're the
19    prevailing party.  What happens then?  Is Gate out?  I mean,
20    at least, if you read this language, it suggests that Gate
21    is out of the game in that third scenario.
22              MR. WARREN:  I'm not entirely sure what Gate's
23    position would be on whether they're in or out because I'm
24    not entirely sure what the record is in New York on that
25    point.  But we believe that it is likely that Gate will end
```

```
 1    up owning the patents.
 2              And if either Nomadix or Gate ends up owning the
 3    patents, then we know who we're litigating against, and then
 4    we are not put in the middle of this foreclosure.
 5              THE COURT:  So getting back to the real issue from
 6    your perspective, your of the view, for lack of a better
 7    term, let's kick this can down the road another 70 days and
 8    figure out who is going to -- where we stand after the
 9    foreclosure sale.
10              MR. WARREN:  That's right, Your Honor.
11              THE COURT:  All right.  Thank you, Mr. Warren.
12              Let me hear from Mr. Koltun because I have a
13    feeling we are all going to be back here again, but I just
14    want to at least, for the sake of my slow mind, I want to
15    get my thoughts rolling on this.
16              MR. KOLTUN:  Good morning.
17              THE COURT:  I gave three scenarios.  Okay?  I
18    think we all agree, if Nomadix comes up with the money and
19    they're the prevailing party at the foreclosure sale, then
20    Nomadix, I guess, owns the patent.
21              MR. KOLTUN:  Right.  There are three scenarios at
22    the foreclosure sale.  The most likely scenario is that Gate
23    Worldwide bids its credit or some portion of its credit and
24    then owns interTouch Holdings.  Another possibility is a
25    third party comes in and outbids Gate Worldwide.
```

```
 1          The third possibility, which to me, based on my

 2   experience in these types of things seems the least likely,

 3   is Nomadix comes in and redeems because, if they had that

 4   ability to do that, they would have done it a long time ago.

 5          THE COURT:  Right.

 6          MR. KOLTUN:  It's, sort of, like a situation --

 7   well, it is a situation where there is likely to be a change

 8   of ownership in the company, a potential change in counsel

 9   down the line.

10          You granted a stay last time of 120 days so these

11   issues over ownership and control could be resolved.  What's

12   happened in the meantime is, sort of, two things.  It

13   switched from transfer of ownership of the patents to a

14   transfer of ownership of the entire company.

15          And then the other thing that's happened is that

16   the judge in New York, Judge Ostragar, has put it on a

17   really tight schedule, like, much quicker than you would

18   normally see in cases like this.  And I don't know if it was

19   done for the purposes of this litigation or what, but he set

20   a schedule where the sale of the company is likely to take

21   place within two months.

22          So to us, to Gate Worldwide Holdings, it cries out

23   for an extension to accommodate that process that

24   Judge Ostrager set up so we can get certainty over who is

25   going to control the company and how we move forward in the
```

1    litigation.

2          THE COURT:  I appreciate your comments.  I want to

3    get your thoughts as to the scenario where, let's say, a

4    third party comes in and outbids.  What would you contend

5    happens after that?

6          MR. KOLTUN:  If a third party comes in -- and I

7    don't want to bind the company to this -- but I believe, if

8    a third party comes in and satisfies Gate Worldwide's debt

9    or is the winning bidder, they take the company, the third

10   party.

11         THE COURT:  Including the patent?

12         MR. KOLTUN:  Yeah, because they own the company

13   which owns the patents.

14         By the way, there is another scenario.  I can't

15   put a percentage of likelihood on this, but in these kind of

16   circumstances where there is a change of control, it's

17   frequently the case that a new entity would be set up to own

18   some or all of the interest.

19         So there is a decent chance that the patents would

20   be set into a different entity and that entity could become

21   the plaintiff in the case.

22         That was suggested to me as a possibility.  I

23   don't -- like I said, I can't put a percentage of likelihood

24   on it.

25         But back to your point, if a third party comes in

```
 1    and buys the company and they outbid Gate Worldwide, then

 2    presumably Gate Worldwide is satisfied with that result and

 3    would not have --

 4              THE COURT:  Dealing with a whole other potential

 5    plaintiff in this case.

 6              MR. KOLTUN:  Right.  Entirely different.

 7              THE COURT:  Okay.  Thank you for your thoughts.

 8              Mr. Lezama, is there anything else you wish to say

 9    in response?  I am going to tell you -- look.  It just seems

10    to me we need to put this over to sometime in November.

11    Given that you take a different view than everyone else,

12    let's figure out who prevails, and then we can have a real

13    discussion about who is the plaintiff in this case.  But I

14    will allow you a moment to be heard.

15              MR. LEZAMA:  Sure, just a few points.

16              One, everything that we just heard is really just

17    speculation.  There is no basis for saying that Gate will be

18    the likely bidder or the New York defendants won't come up

19    with the money.  I don't think we can stay the case based on

20    speculation.

21              THE COURT:  Hold on, Mr. Lezama.  You are saying

22    it's speculation.  But -- yes, technically, it is

23    speculation.  But the reality of it is there is a

24    foreclosure sale that's been set up for your company.

25    Somebody is going to prevail at that foreclosure sale.
```

1           It may be you, it may be Gate, it could be a third

2      party.  But the point is we now know that there is a

3      likelihood -- or at least there is at least two thirds of a

4      chance that someone else other than Nomadix is going to own

5      this company after the foreclosure sale.

6           And why wouldn't I just wait to figure that out as

7      opposed to -- let's say I move forward and we start with

8      discovery and other matters and then a third party comes in.

9      And then I am going to get a bunch of paper saying "Whoa.

10     Time out.  We just got in this case.  We don't know what we

11     want to do."  I mean, why would I do that?

12          As much as I like seeing you all, wouldn't it just

13     make sense -- what's the prejudice in putting this over till

14     November until we know what's happened?  Particularly given

15     the fact that, thanks to the judge in New York, he put it on

16     a tight timeline, he's willing to take time out of his

17     vacation with his -- I think it was his daughter is getting

18     married, to deal with this so we could get some finality?

19     What's the harm in that?

20          MR. LEZAMA:  So as to the harm, we are preparing

21     for foreclosure sale, and the foreclosure sale needs to be

22     conducted on commercially reasonable terms, which means

23     terms that are designed to get fair value for the assets

24     being sold.

25          And when bidders are making a valuation of the

1    assets being sold, they're going to look to this litigation,

2    and they're going to look at our claim against Guest-Tek,

3    which is for many millions of dollars; and this will be an

4    important asset that the prevailing bidder will be looking

5    at in trying to attach a value to.

6            And the farther out trial is, the longer it will

7    take to monetize this claim and the lower a prep and value

8    the bidders will assign to this asset.  Likewise, the more

9    uncertainty we have about when trial will occur, the lower

10   the present value the bidders are going to assign to this

11   claim and thus to their overall bid for interTouch Holdings.

12           THE COURT:  Flip side of that, there is

13   litigation -- no one is hiding the fact that this litigation

14   exists.  That's a known fact.  That's going to be a factor

15   in a foreclosure sale regardless of whether this gets

16   continued or not, isn't it?  I mean --

17           MR. LEZAMA:  I'm sorry.  What?

18           THE COURT:  There is a foreclosure sale that's

19   set.  Anyone that does their due diligence is going to know

20   that there is existing litigation.  I'm not sure I

21   understand what you mean when you say that delaying the case

22   might have an impact on the value of the company.  It seems

23   to me the existing litigation may have a value on the

24   company, not necessarily the dates contained within that

25   litigation.

```
 1                MR. LEZAMA:  Well, I think the time to trial and
 2    the time to monetization of, you know, of this claim,
 3    certainly the farther out trial is, the less -- smaller
 4    present value would be assigned to this claim.  So it will
 5    tend to depress the foreclosure sales proceeds, in our view.
 6                I guess one way to address that potential
 7    uncertainty would be to say -- would be to set a trial date
 8    for a fixed amount of time when the stay lifts, if the
 9    Court's inclined to issue a sale -- to issue a stay order.
10                The other thing I want to just point out is --
11    this is speculation.  Let's imagine a hypothetical where
12    there is no foreclosure sale, there is no litigation in
13    New York.  What we're basically saying is we should stay the
14    case because Nomadix's grandparent company might sell
15    Nomadix's parent company to some third party and that some
16    third party might decide to change the direction of
17    litigation.
18                THE COURT:  That's a vastly different hypothetical
19    than what's currently going on.  Look.  There has been
20    litigation.  There has been a decision by the Court.  There
21    is a foreclosure sale.  There are certain things that have
22    occurred and will occur going forward.
23                It's not like I am just saying -- look.  I would
24    not be inclined to kick this can down the road if I didn't
25    know there was going to be a foreclosure sale.
```

```
 1            But to the judge's credit in New York, the judge
 2   recognizes the competing interests of all the parties, says,
 3   "We need some finality.  Let's get some dates in place and
 4   move forward."  And I guess that's to your concern as to you
 5   want this trial to move forward.
 6            I think currently we have a pretrial conference
 7   scheduled for November 9th and a jury trial set for December
 8   the 4th.  Maybe you will be ready for both of those dates --
 9   I don't know.  But my proposal would be to have another
10   status conference on November 9th.  We would continue the
11   pretrial conference -- we'll continue everything another 30
12   days.  So the pretrial conference will be December the 14th,
13   and then a jury trial -- we could do February the 12th of
14   2019.  We could have those dates.  This way it gives you
15   some comfort the case is moving forward.
16            Now, I am going to give you a little hard time.  I
17   will put those dates down at your request, but then, when
18   you come -- assuming if you are the prevailing party, then
19   asks to continue the case, I am going to remind you of this
20   conversation.
21            But, again, you made that request.  So I want to
22   try to at least give you some comfort that, hey, we've got
23   dates set.  We're not going anywhere.  I am here all day.
24   So I'm ready to try the case whenever you all are.
25            MR. LEZAMA:  I appreciate that, Your Honor.
```

```
 1          THE COURT:  With that in mind, I appreciate the

 2   comments of all counsel.  Why -- I think it makes sense to

 3   continue this matter.  Let's have a status conference for

 4   November the 9th so we can figure out where we are at

 5   relative to that.

 6          We'll move the pretrial conference to -- the

 7   pretrial conference will be December -- I think I said the

 8   14th and then a jury trial date of February the 12th of

 9   2019.  So let's do that, then.  And your objection and your

10   opposition is noted for the record.

11          Is there anything else we need to discuss today?

12          Mr. Lezama?

13          MR. LEZAMA:  I don't think so, Your Honor.

14          THE COURT:  Mr. Warren?

15          MR. WARREN:  Just one thing, Your Honor.  I just

16   want to note, as the Court knows, that we are still in the

17   preliminary stages of discovery.  If in fact the sale goes

18   through, I would presume that the parties will be back

19   before the Court seeking a little more time.

20          THE COURT:  I would presume that to be the case,

21   but I know your track record, Mr. Warren, you could try a

22   case in a moment's notice -- I am giving you a hard time.

23          We'll keep these dates.  Maybe there is a

24   Hail Mary and Nomadix prevails with the sale and we move

25   forward.  But I want to give Mr. Lezama some comfort that we
```

1    have got dates set.  But I will be amenable.  I think my

2    reputation is that I am amenable to the parties moving dates

3    if it's a reasonable request.  But we'll keep these dates

4    for now.

5             MR. WARREN:  Very good.  Your Honor, thank you.

6             THE COURT:  All right.  Mr. Koltun, anything

7    further?

8             MR. KOLTUN:  No, thank you, Your Honor.

9             THE COURT:  All right.  So thank you all.  I will

10   see you all on November 9th, and, hopefully, we'll get

11   closer to some finality in this matter.  Thank you all.

12            MR. LEZAMA:  Thank you, Your Honor.

13        (Proceedings concluded at 10:32 a.m.)

14                          --oOo--

15

16

17

18

19

20

21

22

23

24

25

1                         CERTIFICATE

2

3        I hereby certify that pursuant to Section 753,

4   Title 28, United States Code, the foregoing is a true and

5   correct transcript of the stenographically reported

6   proceedings held in the above-entitled matter and that the

7   transcript page format is in conformance with the

8   regulations of the Judicial Conference of the United States.

9

10  Date:  September 24, 2018.

11

12

13

14                    ___/S/ CHIA MEI JUI _____

15                    Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25

1

2     !!FINISH FINISH!!

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MR. KOLTUN: [8]**
3/17 10/15 10/20 11/5
12/5 12/11 13/5 19/7
**MR. LEZAMA: [18]**
3/7 3/10 3/12 4/6 4/20
4/23 5/7 5/10 5/15
5/19 6/11 13/14 14/19
15/16 15/25 17/24
18/12 19/11
**MR. WARREN: [12]**
3/14 6/18 6/24 7/3
7/21 8/13 8/19 9/3
9/21 10/9 18/14 19/4
**THE CLERK: [1]** 3/3
**THE COURT: [37]**

**$**

**$50 [1]** 7/4
**$50 million [1]** 7/4
**$70 [1]** 5/22
**$70 million [1]** 5/22

**-**

**--oOo [1]** 19/14

**0**

**0404 [1]** 2/6

**1**

**10:07 [2]** 1/15 3/2
**10:32 [1]** 19/13
**120 [1]** 11/10
**12th of [2]** 17/13 18/8
**1386 [1]** 2/16
**14 [1]** 9/14
**14TH [3]** 2/5 17/12
18/8
**16-8033-AB [2]** 1/7
3/4
**1900 [1]** 2/9

**2**

**2018 [3]** 1/14 3/1
20/10
**2019 [2]** 17/14 18/9
**2040 [1]** 2/4
**206-332-1386 [2]** 2/16
**213-892-5551 [1]** 2/20
**216-861-7528 [1]** 2/11
**24 [1]** 20/10
**25 [1]** 9/10
**28 [1]** 20/4

**3**

**30 [1]** 17/11
**31 [2]** 1/14 3/1
**3200 [1]** 2/10
**3287 [2]** 1/23 20/15
**350 [1]** 1/24
**3600 [1]** 2/15

**4**

**4311 [1]** 1/24
**44114 [1]** 2/10
**4th [1]** 17/8

**5**

**5551 [1]** 2/20

**7**

**70 [1]** 10/7
**707 [1]** 2/19
**7528 [1]** 2/11
**753 [1]** 20/3

**9**

**90012 [1]** 1/24
**90017 [1]** 2/20
**92614 [1]** 2/5
**949-760-0404 [1]** 2/6
**98104 [1]** 2/15
**999 [1]** 2/14
**9TH [4]** 2/9 17/7 17/10
19/10
**9th so [1]** 18/4

**A**

**AB [2]** 1/7 3/4
**ability [1]** 11/4
**accommodate [1]**
11/23
**acquire [1]** 4/25
**add [2]** 5/25 9/16
**address [1]** 16/6
**after [3]** 10/8 12/5
14/5
**again [3]** 3/12 10/13
17/21
**against [2]** 10/3 15/2
**ago [1]** 11/4
**agree [1]** 10/18
**allow [1]** 13/14
**allowed [1]** 8/6
**Although [1]** 9/13
**amenable [2]** 19/1
19/2
**amount [2]** 4/19 16/8
**ANDRÉ [1]** 1/3
**ANGELES [4]** 1/16
1/24 2/20 3/1
**another [6]** 9/17 10/7
10/24 12/14 17/9
17/11
**answer [1]** 8/24
**appearances [2]** 2/1
3/7
**applicant [2]** 2/17
3/19
**applied [1]** 9/11
**appreciate [3]** 12/2
17/25 18/1
**approved [1]** 4/10
**argued [1]** 4/9
**argues [1]** 7/13
**asks [1]** 17/10
**asset [2]** 15/4 15/8
**assets [5]** 5/2 5/3 7/6
14/23 15/1
**assign [2]** 15/8 15/10
**assigned [1]** 16/4
**assuming [2]** 5/12
17/18
**attach [1]** 15/5
**AUGUST [2]** 1/14 3/1

**AVENUE [1]** 2/14
**avoid [1]** 5/13

**B**

**back [4]** 10/5 10/13
12/25 18/18
**BAKERHOSTETLER**
**[2]** 2/8 2/13
**bank [1]** 7/9
**based [2]** 11/1 13/19
**basically [4]** 4/13 5/13
6/7 16/13
**basis [1]** 13/17
**become [1]** 12/20
**before [1]** 8/18
**behalf [2]** 3/9 3/15
**believe [2]** 9/25 12/7
**better [2]** 6/25 10/6
**bid [1]** 15/11
**bidder [9]** 4/25 5/11
6/22 6/24 7/9 7/10
12/9 13/18 15/4
**bidders [3]** 14/25 15/8
15/10
**bids [1]** 10/23
**big [1]** 7/10
**biggest [1]** 7/6
**bind [1]** 12/7
**BIROTTE [1]** 1/3
**bit [1]** 7/12
**both [2]** 3/17 17/8
**BOULEVARD [1]** 2/19
**briefed [1]** 7/22
**bunch [1]** 14/9
**buys [2]** 8/20 13/1

**C**

**CALIFORNIA [6]** 1/2
1/16 1/24 2/5 2/20 3/1
**Calling [1]** 3/4
**cases [2]** 9/6 11/18
**CCRR [1]** 1/23
**CENTRAL [1]** 1/2
**certain [1]** 16/21
**certainly [1]** 16/3
**certainty [1]** 11/24
**CERTIFICATE [1]**
20/1
**certify [1]** 20/3
**chance [3]** 7/1 12/19
14/4
**change [4]** 11/7 11/8
12/16 16/16
**CHIA [3]** 1/23 20/14
20/15
**circumstances [1]**
12/16
**claim [5]** 15/2 15/7
15/11 16/2 16/4
**clear [3]** 4/8 4/13 8/3
**CLEVELAND [1]** 2/10
**closer [1]** 19/11
**closing [2]** 5/4 6/16
**cmjui.csr [1]** 1/25
**Code [1]** 20/4
**collateral [4]** 6/7 8/8
8/10 9/7
**colleague [2]** 3/11

3/13
**collect [1]** 9/7
**comes [12]** 8/9 8/12
8/15 9/18 10/18 10/25
11/3 12/4 12/6 12/8
12/25 14/8
**comfort [3]** 17/15
17/22 18/25
**coming [2]** 7/1
**comments [2]** 12/2
18/2
**commercially [1]**
14/22
**companies [1]** 5/21
**company [24]**
**competing [1]** 17/2
**completes [1]** 4/15
**completion [1]** 6/4
**concern [1]** 17/4
**concerned [2]** 6/13
6/14 9/10
**concluded [1]** 19/13
**conducted [1]** 14/22
**conference [8]** 17/6
17/10 17/11 17/12
18/3 18/6 18/7 20/8
**conformance [1]** 20/7
**constituted [1]** 7/15
**contained [1]** 15/24
**contend [1]** 12/4
**continue [4]** 17/10
17/11 17/19 18/3
**continued [1]** 15/16
**contractual [1]** 5/21
**control [3]** 11/11
11/25 12/16
**conversation [1]**
17/20
**correctly [1]** 4/3
**counsel [4]** 2/1 3/6
11/8 18/2
**Court's [1]** 16/9
**credit [3]** 10/23 10/23
17/1
**cries [1]** 11/22
**CSR [2]** 1/23 20/15
**currently [2]** 7/15
16/19 17/6
**CV [2]** 1/7 3/4

**D**

**date [3]** 16/7 18/8
20/10
**dates [10]** 15/24 17/3
17/8 17/14 17/17
17/23 18/23 19/1 19/2
19/3
**daughter [1]** 14/17
**day [1]** 17/23
**days [3]** 10/7 11/10
17/12
**deal [1]** 14/18
**Dealing [1]** 13/4
**debt [2]** 5/23 12/8
**December [1]** 17/7
17/12 18/7
**decent [1]** 12/19
**decide [1]** 16/16

**decision [1]** 16/20
**DEFENDANT [3]** 1/9
2/7 2/12
**defendants [2]** 5/12
13/18
**delaying [1]** 15/21
**depress [1]** 16/5
**designed [1]** 14/23
**difference [1]** 8/22
**different [5]** 6/18
12/20 13/6 13/11
16/18
**diligence [1]** 15/19
**direction [1]** 16/16
**discovery [2]** 14/8
18/17
**discuss [1]** 18/11
**discussion [2]** 7/21
13/13
**DISTRICT [3]** 1/1 1/2
1/3
**DIVISION [1]** 1/2
**dollars [1]** 15/3
**dough [1]** 8/9
**down [5]** 9/2 10/7
11/9 16/24 17/17
**drawn [1]** 6/12
**drew [1]** 6/19
**due [1]** 15/19

**E**

**earmarked [1]** 5/22
**easier [1]** 8/13
**EAST [1]** 2/9
**either [2]** 7/15 9/5
10/2
**end [4]** 7/11 7/19 8/4
9/25
**ends [1]** 10/2
**ENTERTAINMENT [2]**
1/8 3/5
**entire [1]** 11/14
**entirely [4]** 8/2 9/22
9/24 13/6
**entitled [1]** 20/6
**entity [3]** 12/17 12/20
12/20
**essence [1]** 8/19
**even [3]** 4/3 4/15 6/4
**existing [2]** 15/20
15/23
**exists [1]** 15/14
**experience [1]** 11/2
**extension [1]** 11/23
**extinguish [2]** 6/6
6/10
**extinguished [1]** 9/15

**F**

**fact [4]** 14/15 15/13
15/14 18/17
**factor [1]** 15/14
**fair [1]** 14/23
**farther [2]** 15/6 16/3
**FCRR [1]** 1/23
**February [2]** 17/13
18/8
**FEDERAL [1]** 1/23

**F**

feeling [2] 7/19 10/13
few [1] 13/15
figure [5] 4/19 10/8
13/12 14/6 18/4
filed [1] 3/23
filing [1] 6/15
finality [3] 14/18 17/3
19/11
FINISH [2] 21/2 21/2
first [2] 1/24 5/13
fixed [1] 16/8
Flip [1] 15/12
FLOOR [1] 2/5
FOERSTER [2] 2/18
3/18
foreclose [1] 8/6
foreclosing [1] 8/10
foreclosure [27]
foregoing [1] 20/4
forgive [1] 9/16
format [1] 20/7
forward [8] 3/6 11/25
14/7 16/22 17/4 17/5
17/15 18/25
frequently [1] 12/17
FRIDAY [2] 1/14 3/1
funding [1] 5/22
further [1] 19/7

**G**

game [1] 9/21
GATE [34]
Gate's [4] 8/24 9/9
9/15 9/22
Gates [1] 4/10
gave [1] 10/17
gets [1] 15/15
getting [4] 7/12 7/18
10/5 14/17
give [5] 5/17 8/25
17/16 17/22 18/25
given [2] 13/11 14/14
gives [1] 17/14
giving [1] 18/22
gmail.com [1] 1/25
goes [4] 4/19 4/21 6/4
18/17
good [6] 3/10 3/14
3/17 3/20 10/16 19/5
grandparent [1] 16/14
granted [1] 11/10
Greg [1] 3/18
GREGORY [1] 2/19
group [1] 5/20
guess [8] 3/23 4/1
5/24 6/13 9/16 10/20
16/6 17/4
GUEST [4] 1/8 3/5
3/15 15/2
GUEST-TEK [4] 1/8
3/5 3/15 15/2
guys [1] 8/5

**H**

Hail [1] 18/24
Hail Mary [1] 18/24
happen [2] 4/17 7/8

happened [4] 3/25
11/12 11/15 14/14
happening [1] 3/21
happens [2] 9/19 12/5
hard [2] 17/16 18/22
harm [2] 14/19 14/20
he's [1] 14/16
hear [2] 4/1 10/12
heard [3] 8/25 13/14
13/16
hearing [1] 8/4
held [1] 20/6
Help [1] 5/5
hereby [1] 20/3
hey [1] 17/22
hiding [1] 15/13
high [4] 6/22 6/24 7/9
7/9
highlighted [1] 6/14
Hold [1] 13/21
holding [1] 8/5
holdings [12] 2/17
3/19 5/1 5/22 5/6 5/9
5/10 6/5 8/18 10/24
11/22 15/11
HONORABLE [1] 1/3
hopefully [1] 19/10
hypothetical [2] 16/11
16/18

**I**

imagine [1] 16/11
impact [1] 15/22
implications [1] 9/14
important [1] 15/4
INC [2] 1/5 3/4
inclined [1] 16/9
16/24
includes [1] 6/6
including [2] 3/23
12/11
intact [3] 5/3 5/3 5/6
intents [1] 6/16
INTERACTIVE [2] 1/8
3/5
interest [4] 4/12 6/10
7/6 12/18
interests [3] 6/6 9/9
17/2
intermediary [1] 8/1
interTouch [10] 5/1
5/2 5/9 5/10 6/5 7/15
8/17 8/20 10/24 15/11
interTouch Holdings
[2] 5/1 5/9
intervenor [2] 2/17
3/19
IRVINE [1] 2/5
issue [5] 6/1 7/23 10/5
16/9 16/9
issues [1] 11/11

**J**

JAMES [3] 2/4 3/11
3/13
JR [1] 1/3
judge [7] 1/3 8/2
11/16 11/16 11/24

14/15 17/1
Judge Ostragar [2]
8/2 11/16
Judge Ostrager [1]
11/24
judge's [1] 17/1
Judicial [1] 20/8
JUI [3] 1/23 20/14
20/15

**K**

keep [2] 18/23 19/3
kick [2] 10/7 16/24
kind [1] 12/15
KNOBBE [2] 2/3 3/8
known [1] 15/14
knows [1] 18/16
KOLTUN [4] 2/19 3/18
10/12 19/6

**L**

lack [1] 10/6
language [2] 6/14
9/20
large [1] 7/7
last [3] 3/22 3/22
11/10
LAW [5] 2/3 2/4 2/9
2/14 2/19
lawsuit [1] 9/3
least [9] 6/14 7/20
9/14 9/20 10/14 11/2
14/3 14/3 17/22
legal [2] 9/12 9/13
less [1] 16/3
Let [1] 10/12
LEZAMA [7] 2/3 3/8
4/1 13/8 13/21 18/12
18/25
lifts [1] 16/8
like [8] 4/2 7/9 11/6
11/17 11/18 12/23
14/12 16/23
likelihood [5] 5/15 7/8
12/15 12/23 14/3
likely [13] 5/16 5/18
6/22 6/23 7/5 8/9 8/16
9/25 10/22 11/2 11/7
11/20 13/18
Likewise [1] 15/8
line [1] 11/9
litigate [1] 9/6
litigating [1] 10/3
litigation [11] 11/19
12/1 15/11 15/13 15/13
15/20 15/23 15/25
16/12 16/17 16/20
little [4] 5/18 7/12
17/16 18/19
LLC [1] 4/11
LLP [1] 2/18
long [1] 11/4
longer [2] 6/9 15/6
look [6] 8/4 13/9 15/1
15/2 16/19 16/23
looking [1] 15/4
LOS [1] 1/16 1/24 2/20
3/1

lot [1] 3/21
lottery [1] 7/1
Lotto [1] 5/18
lower [2] 15/7 15/9
LTD [2] 1/8 3/5

**M**

made [2] 4/13 17/21
MAIN [1] 2/4
make [2] 8/23 14/13
makes [1] 18/2
making [1] 14/25
many [1] 15/3
MARK [2] 2/3 3/8
married [1] 14/18
MARTENS [2] 2/3 3/8
Mary [1] 18/24
matter [3] 18/3 19/11
20/6
matters [1] 14/8
Maybe [2] 17/8 18/23
mean [8] 6/21 6/21
7/22 8/19 9/19 14/11
15/16 15/21
means [2] 8/21 14/22
meantime [1] 11/12
MEI [3] 1/23 20/14
20/15
membership [1] 4/11
metaphysical [1] 7/13
MICHAEL [2] 2/14
3/16
middle [1] 10/4
might [3] 15/22 16/14
16/16
million [2] 5/22 7/4
millions [1] 15/3
mind [4] 4/16 9/11
10/14 18/1
moment [1] 13/14
moment's [1] 18/22
monetization [1] 16/2
monetize [1] 15/7
money [9] 4/19 4/21
4/23 5/13 5/22 7/2
8/12 10/18 13/19
months [1] 11/21
more [3] 5/18 15/8
18/19
morning [5] 3/10 3/14
3/17 3/20 10/16
MORRISON [2] 2/18
3/18
most [1] 10/22
move [6] 11/25 14/7
17/4 17/5 18/6 18/24
moved [1] 9/12
moving [2] 17/15 19/2
Mr. Koltun [2] 10/12
19/6
Mr. Lezama [5] 4/1
13/8 13/21 18/12
18/25
Mr. Swope [1] 6/12
Mr. Warren [4] 6/11
10/11 18/14 18/21
much [3] 5/23 11/17
14/12

**N**

necessarily [1] 15/24
need [3] 13/10 17/3
18/11
needs [1] 14/21
new [11] 3/25 4/13 6/3
8/2 9/24 11/16 12/17
13/18 14/15 16/13
17/1
New York [10] 3/25
4/13 6/3 8/2 9/24
11/16 13/18 14/15
16/13 17/1
NOMADIX [29]
Nomadix's [5] 4/12
6/8 6/10 16/14 16/15
normally [1] 11/18
note [5] 7/5 7/7 7/11
8/6 18/16
noted [1] 18/10
notice [1] 18/22
November [6] 13/10
14/14 17/7 17/10 18/4
19/10
November 9th [3]
17/7 17/10 19/10

**O**

objection [1] 18/9
obligation [1] 5/21
obviously [1] 8/24
occur [2] 15/9 16/22
occurred [1] 16/22
occurs [2] 4/18 4/18
off [2] 5/23 8/3
OFFICIAL [1] 1/23
OHIO [1] 2/10
once [1] 6/17
one [6] 8/12 8/13
13/16 15/13 16/6
18/15
only [3] 4/4 4/11 8/5
oOo [1] 19/14
operate [1] 9/6
opportunity [1] 8/25
opposed [1] 14/7
opposition [1] 18/10
order [2] 6/3 16/9
ordered [1] 4/11
originally [1] 7/22
Ostragar [2] 8/2 11/16
Ostrager [1] 11/24
out [19] 4/16 4/17
6/17 7/19 8/11 9/2
9/19 9/21 9/23 10/8
11/22 13/12 14/6
14/10 14/16 15/6 16/3
16/10 18/4
outbid [1] 13/1
outbids [2] 10/25 12/4
outline [1] 4/2
outset [1] 4/9
over [6] 3/22 5/22
11/11 11/24 13/10
14/13
overall [1] 15/11
owed [1] 5/13
own [7] 5/10 7/14 8/17

**O**

own... [4] 9/1 12/12
12/17 14/4
owned [6] 5/7 5/8
7/15 7/23 7/24 8/3
owner [2] 4/15 9/4
ownership [4] 11/8
11/11 11/13 11/14
owning [3] 7/11 10/1
10/2
owns [9] 4/8 4/14 8/17
8/19 8/21 8/21 10/20
10/24 12/13

**P**

page [1] 20/7
paper [1] 14/9
paragraph [1] 9/14
paragraph 14 [1] 9/14
parent [5] 4/12 5/1 5/9
8/18 16/15
part [1] 8/10
Particularly [1] 14/14
parties [4] 6/3 17/2
18/18 19/2
party [13] 9/19 10/19
10/25 12/4 12/6 12/8
12/10 12/25 14/2 14/8
16/15 16/16 17/18
past [1] 9/12
patent [6] 4/5 8/13
8/17 8/19 10/20 12/11
patents [16] 4/8 4/14
6/8 6/10 7/14 7/24
7/25 8/4 8/7 8/21 9/5
10/1 10/3 11/13 12/13
12/19
path [1] 4/9
pay [1] 5/13
paying [1] 5/23
percentage [3] 5/17
12/15 12/23
Percentage-wise [1]
5/17
perspective [1] 10/6
pick [1] 4/19
place [2] 11/21 17/3
plaintiff [6] 1/6 2/2 3/9
12/21 13/5 13/13
play [4] 4/16 4/17 7/18
8/11
please [1] 3/6
point [9] 7/19 7/20
8/17 9/5 9/12 9/25
12/25 14/2 16/10
points [1] 13/15
portion [1] 10/23
position [7] 3/24 4/6
7/23 7/24 8/1 8/24
9/23
possibility [3] 10/24
11/1 12/22
potential [2] 11/8 13/4
16/6
practical [1] 9/12
prejudice [1] 14/13
preliminary [1] 18/17
prep [1] 15/7

preparing [1] 14/20
present [1] 5/9 15/10
16/4
presumably [1] 13/2
presume [2] 18/18
18/20
pretrial [5] 17/6 17/11
17/12 18/6 18/7
prevail [2] 8/16 13/25
prevailing [6] 4/24
5/11 9/19 10/19 15/4
17/18
prevails [2] 13/12
18/24
proceed [1] 9/3
proceedings [3] 1/13
19/13 20/6
proceeds [1] 16/5
process [1] 11/23
proposal [1] 17/9
provide [1] 5/21
purchasing [1] 7/6
purposes [2] 6/17
11/19
pursuant [1] 20/3
putting [1] 14/13

**Q**

question [1] 8/23
quicker [1] 11/17

**R**

rather [1] 7/20
read [1] 9/20
ready [2] 17/8 17/24
real [2] 10/5 13/12
reality [1] 13/23
really [3] 9/11 11/17
13/16
reasonable [2] 14/22
19/3
recognizes [1] 17/2
record [3] 9/24 18/10
18/21
redeemable [2] 8/8
8/8
redeems [1] 11/3
regardless [1] 15/15
regulations [1] 20/8
related [1] 5/20
relates [1] 5/25
relative [1] 18/5
relinquish [1] 4/4
remain [4] 4/14 5/2
5/3 5/6
remind [1] 17/19
reported [1] 20/5
REPORTER [1] 1/23
REPORTER'S [1] 1/13
reputation [1] 19/2
request [3] 17/17
17/21 19/3
resolved [1] 11/11
respect [1] 3/25
response [2] 6/13
13/9
rest [1] 9/7
result [1] 13/2

right [14] 5/15 5/24
7/17 8/13 8/14 9/5
9/13 10/10 10/11
10/21 11/5 13/6 19/6
19/9
rights [2] 4/5 9/15
road [2] 10/7 16/24
rolling [1] 10/15
ROOM [1] 1/24
run [1] 4/23

**S**

sake [1] 10/14
sale [33]
sales [1] 16/5
satisfied [1] 13/2
satisfies [1] 12/8
saying [6] 8/3 13/17
13/21 14/9 16/13
16/23
scenario [6] 8/15 9/17
9/21 10/22 12/3 12/14
scenarios [3] 8/12
10/17 10/21
schedule [2] 11/17
11/20
scheduled [1] 17/7
SEATTLE [1] 2/15
Section [1] 20/3
secured [1] 5/21
security [2] 6/6 6/10
see [2] 11/18 19/10
seeing [1] 14/12
seeking [1] 18/19
seems [4] 6/15 11/2
13/9 15/22
sell [2] 9/6 16/14
sense [2] 14/13 18/2
September [1] 20/10
set [10] 11/19 11/24
12/17 12/20 13/24
15/19 16/7 17/7 17/23
19/1
short [2] 6/12 6/20
shut [1] 9/2
side [1] 15/12
since [4] 3/22 4/8 7/5
7/6
situation [3] 8/7 11/6
11/7
slow [1] 10/14
smaller [1] 16/3
SMITH [3] 2/4 3/11
3/13
sold [4] 4/19 6/5 14/24
15/1
somebody [2] 9/18
13/25
someone [1] 14/4
sometime [1] 13/10
sorry [1] 15/17
sort [3] 8/1 11/6 11/12
sought [1] 4/10
sounds [1] 4/2
speak [2] 7/7 9/9
speculation [5] 13/17
13/20 13/22 13/23
16/11

stages [1] 18/17
stand [1] 10/8
start [2] 7/20 14/7
started [2] 8/3 9/10
state [1] 3/6
statement [1] 3/24
STATES [3] 1/1 20/4
20/8
status [2] 17/10 18/3
stay [5] 11/10 13/19
16/8 16/9 16/13
stenographically [1]
20/5
step [1] 3/6
stipulated [1] 6/3
straw [2] 6/12 6/20
STREET [3] 1/24 2/4
2/9
subsidiary [1] 6/7
substance [1] 4/23
such [1] 7/7
suggest [1] 6/16
suggested [1] 12/22
suggests [2] 9/14
9/20
SUITE [2] 2/10 2/15
sum [1] 4/5
sure [5] 6/2 9/22 9/24
13/15 15/20
switched [1] 11/13
SWOPE [3] 2/14 3/16
6/12

**T**

take [8] 4/10 4/11 4/22
11/20 12/9 13/11
14/16 15/7
taking [2] 7/23 7/24
talking [1] 5/19
talks [1] 6/15
technically [1] 13/22
TEK [4] 1/8 3/5 3/15
15/2
tend [1] 16/5
term [1] 10/7
terms [2] 14/22 14/23
thank [7] 10/11 13/7
19/5 19/8 19/9 19/11
19/12
thanks [1] 14/15
they -- I [1] 6/21
thing [4] 8/5 11/15
16/10 18/15
things [3] 11/2 11/12
16/21
think [16] 5/16 6/23
6/25 7/12 8/23 9/4
9/11 10/18 13/19
14/17 16/11 17/6 18/2
18/7 18/13 19/1
third [3] 2/14 9/21
10/25 11/1 12/4 12/6
12/8 12/9 12/25 14/1
14/8 16/15 16/16 19/6
thirds [1] 14/3
THOMAS [1] 2/9
though [1] 6/5
thoughts [3] 10/15

12/3 13/7
three [2] 10/17 10/21
thus [1] 15/11
tight [2] 11/17 14/16
till [1] 14/13
timeline [1] 14/16
Title [1] 20/4
today [1] 18/11
together [1] 3/22
Tom [1] 3/15
tomorrow [1] 5/18
track [1] 18/21
transcript [3] 1/13
20/5 20/7
transfer [3] 4/11
11/13 11/14
trial [9] 15/6 15/9 16/1
16/3 16/7 17/5 17/7
17/13 18/8
true [1] 20/4
try [4] 9/7 17/22 17/24
18/21
trying [2] 7/18 15/5
two [4] 8/11 11/12
11/21 14/13
two thirds [1] 14/3
types [1] 11/2

**U**

uncertainty [2] 15/9
16/7
understand [1] 4/3
5/5 15/21
UNITED [3] 1/1 20/4
20/8
units [1] 4/12
unlikely [1] 6/21
until [1] 14/14
up [13] 7/1 7/11 7/19
8/9 8/12 8/15 10/1
10/2 10/18 11/24
12/17 13/18 13/24
upon [1] 9/15
us [1] 11/22

**V**

vacation [1] 14/17
valid [1] 8/5
valuation [1] 14/25
value [7] 14/23 15/5
15/7 15/10 15/22
15/23 16/4
vastly [1] 16/18
versus [1] 3/5
view [5] 6/18 7/17
10/6 13/11 16/5
views [1] 4/2

**W**

wait [1] 14/6
WARREN [6] 2/9 3/15
6/11 10/11 18/14
18/21
WASHINGTON [1]
2/15
weeds [1] 7/18
WEST [1] 1/24
WESTERN [1] 1/2

## W

**Whoa [1]** 14/9
**whole [1]** 13/4
**why [3]** 14/6 14/11
18/2
**Why -- I [1]** 18/2
**willing [1]** 14/16
**WILSHIRE [1]** 2/19
**win [1]** 5/18
**winning [2]** 7/1 12/9
**wise [1]** 5/17
**wish [2]** 5/25 13/8
**WORLDWIDE [7]** 2/17
3/19 10/23 10/25
11/22 13/1 13/2
**Worldwide's [1]** 12/8

## Y

**yesterday [2]** 3/23
6/15
**York [10]** 3/25 4/13
6/3 8/2 9/24 11/16
13/18 14/15 16/13
17/1
**Your Honor [8]** 4/7
6/19 6/25 10/10 17/25
18/13 18/15 19/8