# EXHIBIT 1

# 18-1724

# United States Court of Appeals
# for the Federal Circuit

---

DODOCASE VR, INC., fka Dodocase, Inc.

*Plaintiff-Appellee,*

v.

MERCHSOURCE, LLC, dba Sharper Image,

*Defendant-Appellant,*

THREESIXTY BRANDS GROUP, LLC, dba Sharper Image,

*Defendant*

---

*Appeal from the United States District Court
for Northern District of California in No. 3:17-cv-07088-EDL
Magistrate Judge Elizabeth D. Laporte*

---

## [CORRECTED] BRIEF OF APPELLANT MERCHSOURCE, LLC

---

MARK C. JOHNSON
KYLE B. FLEMING
RENNER OTTO
1621 Euclid Avenue, Floor 19
Cleveland, Ohio 44115
Telephone: (216) 621-1113
Facsimile: (216) 621-6165

*Counsel for Defendant-Appellant MerchSource, LLC*

Date: June 18, 2018

**Exhibit 1**

FORM 9. Certificate of Interest

Form 9
Rev. 10/17

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Dodocase VR, Inc.     v.   MerchSource, LLC

Case No. 18-1724

### CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ☑ (appellant) ☐ (respondent) ☐ (appellee) ☐ (amicus) ☐ (name of party)

MerchSource, LLC

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| MerchSource, LLC | None | None |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

None

**Exhibit 1**

**FORM 9. Certificate of Interest**

Form 9
Rev. 10/17

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).  (The parties should attach continuation pages as necessary).

DODOCASE VR, INC. v. MERCHSOURCE, LLC, et al, United States District Court for the Northern District of California case no. 3:17-cv-07088-EDL

PTAB IPR2018-00494
PTAB PGR2018-00019
PTAB PGR2018-00020

| 6/18/2018 | /s/ Mark C. Johnson |
|---|---|
| Date | Signature of counsel |
| Please Note: All questions must be answered | Mark C. Johnson |
| | Printed name of counsel |

cc: _____

**Reset Fields**

**Exhibit 1**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF CITATIONS ............................................................................. iii

STATEMENT OF RELATED CASES ...................................................1

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES................................................................2

STATEMENT OF THE CASE....................................................................2

SUMMARY OF THE ARGUMENT ........................................................5

ARGUMENT ............................................................................................7

I.     INTRODUCTION ..........................................................................7

II.    STANDARD OF REVIEW ............................................................9

III.   THE DISTRICT COURT ERRED IN GRANTING TO PLAINTIFF A PRELIMNINARY INJUNCTION REQUIRING MERCHSOURCE TO WITHDRAW THE IPR/PGR PETITIONS FROM THE PTAB....................10

    A.     Plaintiff Cannot Show Any Likelihood Of Success On The Merits Because The Venue Selection Clause Does Not Apply To PTAB Invalidity Proceedings As A Matter Of Law. ........................................12

        1.     PTAB petitions do not fall within the scope of the MLA venue selection clause..............................................................12

        2.     A clause precluding PTAB petitions would be void as against public policy...................................................................22

    B.     The Remaining Preliminary Injunction Factors Also Favor MerchSource........................................................................27

        1.     The district court erred in finding that plaintiff would be irreparably harmed by having to defend the validity of its patent before the PTAB. ........................................................28

i

Exhibit 1

2.   The district court erred in finding that MerchSource would not suffer any hardship by the grant of the injunction. .........................33

3.   The district court erred in finding that the public interest favored the grant of the injunction. .................................................34

CONCLUSION ........................................................................................................38

**Exhibit 1**

## TABLE OF CITATIONS

### CASES

*Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661 (9th Cir. 2016)................................................................. 13, 21

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)...............11

*American Steel Foundries v. Robertson*, 262 U.S. 209, 215, 43 S.Ct. 541 (1923) ...........................................................................24

*Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353 (Fed. Cir. 2017)......................13

*Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, No. 2:10-CV-02991-JHN, 2010 WL 5154136 (C.D. Cal. Aug. 12, 2010) ....................14

*Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)...............................................23

*Callaway Golf Co. v. Kappos*, 802 F. Supp. 2d 678 (E.D. Va. 2011) ............ passim

*Crowell v. Benson*, 285 U.S. 22, 52 S. Ct. 285 (1932) ...........................................32

*Cuozzo Speed Techs., LLC v. Lee*, –U.S.–, 136 S. Ct. 2131 (2016) ..... 25, 31, 32, 35

*DISH Network Corp. v. F.C.C.*, 653 F.3d 771 (9th Cir. 2011).................................9

*Ex parte Bakelite Corp.*, 279 U.S. 438, 49 S. Ct. 411 (1929) ................................33

*Flex-Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362 (Fed. Cir. 2001)................................30

*Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361 (Fed. Cir. 1997)..................11

*General Protecht Group v. Leviton Mfg. Co.*, 651 F.3d 1355 (Fed. Cir. 2011)...................................................................... passim

*Husky Injection Molding Sys. Ltd. v. Athena Automation Ltd.*, 838 F.3d 1236 (Fed. Cir. 2016) .......................................................................35

*Independent Living Center of Southern California, Inc. v. Maxwell–Jolly*, 572 F.3d 644 (9th Cir. 2009)........................................................................35

**Exhibit 1**

*Kappos v. Hyatt*, 566 U.S. 431, 132 S. Ct. 1690 (2012).........................................22

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197
    (9th Cir. 1980) ...........................................................................................33

*Lear v. Adkins*, 395 U.S. 653 (1969) ...................................................... 3, 23, 24, 30

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988) .... 13, 14, 15

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)............................................................10

*MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284 (Fed. Cir.
    2015)................................................................................................. 23, 36

*Munaf v. Geren*, 553 U.S. 674 (2008) ....................................................................10

*Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357 (Fed. Cir. 2016) ............... 9, 29

*Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133 (9th Cir. 2004) ..................... 22, 23

*Novo Nordisk of North Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364 (Fed.
    Cir. 1996)...................................................................................................9

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC,* -U.S.-,
    138 S. Ct. 1365 (2018) ........................................................... passim

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985) ..................................24

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*,
    324 U.S. 806 (1945)....................................................................................31

*S. California Stroke Rehab. Assocs., Inc., v. Nautilus, Inc.*, 782 F. Supp. 2d
    1096 (S.D. Cal. 2011)..................................................................................10

*Sanford L.P., et al. v. Esselte AB*, No. 1:14-cv-07616-VSB, Memorandum
    and Order dated Sept. 16, 2015 (S.D.N.Y) ................................................. 15, 16

*Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594 (2011).......................................22

*Stormans, Inc. v. Selecky*, 571 F.3d 960 (9th Cir. 2009) .........................................33

*Tex. Instruments Inc. v. Tessera Inc.*, 231 F.3d 1325 (Fed. Cir. 2000)...................18

**Exhibit 1**

*Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159 (Fed. Cir. 2014) ...............9

*United States v. American Bell Telephone Co.*, 128 U.S. 315 (1888).............. 27, 37

*Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364 (Fed. Cir. 2018) ...................24

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)................................ 10, 11

## STATUTES

28 U.S.C. § 1292 ...............................................................................................1

35 U.S.C. § 102 ......................................................................................... 14, 18

35 U.S.C. § 103 ......................................................................................... 14, 18

35 U.S.C. § 271 ...............................................................................................18

35 U.S.C. § 302 ......................................................................................... 31, 35

35 U.S.C. § 311 .................................................................................... 12, 14, 15

35 U.S.C. § 315 .................................................................................... 28, 29, 34

35 U.S.C. § 321 .................................................................................... 12, 14, 15

Cal. Civil Code § 1643 ...................................................................................22

Cal. Civil Code § 1648 ...................................................................................22

## OTHER AUTHORITIES

H.R. Rep. No. 112-98, 2011 U.S.C.C.A.N. 67 ................................................. 23, 31

Inter Partes Reexamination Proceeding, Decision on Petition to Vacate
    Order Granting Reexamination, Control No. 95/000,123 (Office of
    Patent Legal Admin. June 7, 2006) .................................................... 16, 23, 36

## RULES

Fed. R. Civ. P. 8 .............................................................................................20

**Exhibit 1**

**REGULATIONS**

19 C.F.R. §§ 210.13 ...................................................................................30

19 C.F.R. §§ 210.28–210.32 ......................................................................30

37 C.F.R. § 1.987 .......................................................................................29

**Exhibit 1**

## STATEMENT OF RELATED CASES

There have been no other appeals in or from the same civil action or proceeding in the district court.

MerchSource has filed three petitions with the U.S. Patent and Trademark Office, Patent Trial and Appeal Board challenging the validity of three of plaintiff's patents: Case IPR2018-00494 (Patent 9,420,075); Case PGR2018-00019 (Patent 9,723,117); Case PGR2018-00020 (Patent 9,811,184). These petitions are pending.

## JURISDICTIONAL STATEMENT

This is an appeal from a district court's interlocutory order (Appx1–48) granting a preliminary injunction. Jurisdiction at the district court is in part based on 28 U.S.C. § 1338(a) for claims relating to patents.[1]

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) and (c)(1).

---

[1] *See, e.g.,* Appx69, ¶ 18 (invoking § 1338(a)) and Counts I-VI (seeking declarations of patent infringement and validity) and Appx163, ¶ 21 (invoking § 1338(a)) and Counts II-VII (seeking declarations of patent infringement and validity).

**Exhibit 1**

Case 2:16-cv-00033-AB-FFM   Document 310-1   Filed 12/27/16   Page 12 of 48   Page ID #:9194

## STATEMENT OF THE ISSUES

Whether the district court erred in granting a preliminary injunction ordering MerchSource to involuntarily withdraw IPR and PGR petitions based on a contractual venue selection clause applicable only to disputes "arising out of or under" the contract.

Whether the district court erred in concluding that a petition to the PTAB challenging the validity of a patent "arises out of or under" a license agreement between the parties because PTAB proceedings on invalidity are neither created by nor dependent on the license agreement and can be decided without any analysis of or reference to the license agreement.

## STATEMENT OF THE CASE

MerchSource designs, sources and distributes a diverse range of consumer products to the nation's largest retailers. One of MerchSource's products is a virtual reality headset that receives a user's mobile device, such as a mobile phone. The user inserts his/her mobile device into the headset, and the combination of lenses and software (on the mobile device and not part of the headset platform) creates a three-dimensional virtual reality effect for the viewer.

Plaintiff is the owner of several related patents directed to screen input mechanisms for virtual reality headsets. Virtual reality ("VR") headsets and

**Exhibit 1**

software are not new, and the alleged inventions of the relevant patents merely

provide a way to cause an input event on the touchscreen of the mobile device

when it is enclosed in a headset.

Plaintiff's first relevant patent, U.S. Patent No. 9,420,075 (the "'075

patent"), issued in August 2016. Shortly after the '075 patent issued, the parties

executed a Master License Agreement ("MLA") for this patent and future, related

patents.[2] As of October 2017, plaintiff had two more issued patents—U.S. Patent

Nos. 9,723,117 (the "'117 patent") and 9,811,184 (the "'184 patent")—plus

another pending continuation application.

After seeing numerous, unlicensed VR headsets on the market and

uncovering relevant prior art, on October 5, 2017, MerchSource delivered to

plaintiff a *Lear* notice[3] stating that MerchSource would no longer pay royalties

under the license because it believed that all of the relevant claims were invalid.[4]

On December 13, 2017, plaintiff filed a complaint in the underlying action

in the U.S. District Court for the Northern District of California seeking a

declaration of breach of contract, and infringement, enforceability, and "validity"

---

[2] Appx26–27.

[3] *Lear v. Adkins*, 395 U.S. 653 (1969).

[4] *See* Appx170, ¶ 27.

**Exhibit 1**

of the licensed patents. Approximately one month later, MerchSource filed petitions with the PTAB on all claims of the three issued patents.[5] These petitions were each accorded a filing date of January 15, 2018.

On February 14, 2018, plaintiff filed an Amended Complaint, adding supplemental allegations and claims, and reasserting the original claims. Plaintiff also notified MerchSource that it had terminated the MLA.[6]

On February 16, 2018, plaintiff filed a Motion for Temporary Restraining Order or Preliminary Injunction. On March 23, 2018, following briefing and oral argument, the district court granted plaintiff's request for a preliminary injunction in an Order requiring, in part, that MerchSource involuntarily withdraw its three pending PTAB petitions. Two days later, on March 25, 2018, MerchSource filed its Notice of Appeal. On March 26, 2018, the district court entered an amended Order, and MerchSource filed an Amended Notice of Appeal that same day.

On March 27, 2018, MerchSource filed with this Court an Emergency Motion for Stay seeking to have the preliminary injunction Order to withdraw the PTAB petitions stayed pending appeal.[7] On March 28, 2018, this Court

---

[5] *See* Appx158–160.

[6] Appx174, ¶ 51.

[7] Dkt. No. 4-1.

**Exhibit 1**

temporarily stayed the Order pending briefing on the motion.[8] The district court
and the PTAB subsequently stayed deadlines in their respective proceedings
pending this Court's ruling on the stay.

On April 25, 2018, this Court granted MerchSource's Emergency Motion for
Stay pending the outcome of this appeal.[9] The Court also denied plaintiff's motion
for a bond to be imposed on MerchSource.[10]

## SUMMARY OF THE ARGUMENT

The district court erred in granting plaintiff's preliminary injunction because
it erroneously determined that the venue selection clause in the MLA covered post-
grant IPR/PGR petitions to the PTAB. The MLA provides that "any dispute arising
out of or under this Agreement" shall be litigated before the courts in San
Francisco or Orange counties. The provisions of the MLA are interpreted under
California law, and the scope of this provision is a question of law for the court to
resolve.

However, the district court misapplied the law in concluding that PTAB
proceedings to reexamine the validity of an issued patent are disputes "arising out

---

[8] Dkt. No. 6.

[9] Dkt. No. 22.

[10] *Id.*

5

**Exhibit 1**

of or under" the MLA. Claims arise "out of" or "under" a contract when the claims are created by or originate from the contract, or where resolution requires determination of whether a party had complied with the contract.

None of those factors applies to PTAB post-grant proceedings. The PTO's reexamination of issued claims in a patent does not arise from or out of the MLA (or any other contract); does not depend on the MLA; does not require any analysis, construction, interpretation or enforcement of the MLA; and, simply stated, does not relate to the MLA. Rather, such proceedings are created and governed by federal patent statutes, regulations, and case law.

Moreover, any construction of the venue selection clause covering PTAB proceedings should be void as against public policy. As various courts and agencies have acknowledged and discussed on numerous occasions, there is a strong public policy in favor of reexamining the grant of patent rights. The PTO also has strong interest in discharging one of its core agency functions—to review the prior grant of a patent to ensure that public rights have not been improvidently removed from the public domain.

Because the MLA's venue selection clause does not cover PTAB proceedings as a matter of law, plaintiff could not make the requisite showing of success on the merits, and was not entitled to a preliminary injunction.

**Exhibit 1**

The other preliminary injunction factors also did not support the district court's Order. Patents are granted by the PTO subject to the PTO's right to revisit that grant, so such a reexamination does not constitute "irreparable harm."

The balance of hardships also weighed against the injunction. Plaintiff's "hardship" in defending its patent at the PTO is simply part of the price of getting a patent in the first place. In contrast, requiring MerchSource to withdraw its petitions pending the district court litigation would have triggered the one-year litigation bar and permanently deprived MerchSource of the statutory right to petition for post-grant review.

Lastly, the district court erred in finding that the public interest favored the injunction. The public has a strong interest in having the PTO reexamine its prior grant of patent rights to ensure that public rights have not been improvidently removed from the public domain.

## ARGUMENT

## I.    INTRODUCTION

The district court misconstrued and misapplied the law to expansively rewrite the venue clause to cover IPR/PGR proceedings because the district court concluded that such proceedings might impact the MLA. But impacting the MLA is not the proper legal test. The district court disregarded Ninth Circuit law and

**Exhibit 1**

ignored the narrow language of the venue clause covering only disputes "arising out of or under this Agreement."[11]

Ultimately, the district court implicitly conceded that PTAB proceedings do not "arise out of or under" the MLA when it failed to identify anything from the MLA relevant to the PTAB's proceedings or analysis. Instead, and because patent invalidity is also before the district court, the district court concluded that the PTAB proceedings have a "close relationship" with the MLA and that MerchSource's "motivation" for the PTAB petitions was rooted in the MLA and a desire to avoid royalties.[12] While it is certainly true that MerchSource desired to avoid paying royalties on invalid patents, MerchSource's motivation is irrelevant. The inquiry is not whether invalidity could be decided by the district court, nor whether the MLA will be impacted by the patents' invalidity. The proper legal inquiry is whether invalidity—the analysis of prior art references as disclosing or rendering obvious the limitations of a given claim—"arise[s] out of or under" the MLA. It clearly does not.

Because the venue selection clause does not apply as a matter of law, the district court erred in finding that plaintiff had a likelihood of success on the merits and erred in granting the preliminary injunction.

---

[11] *See* Appx35–36.

[12] Appx36–37.

**Exhibit 1**

## II.    STANDARD OF REVIEW

This Court generally reviews the grant or denial of a preliminary injunction using the law of the regional circuit, here the Ninth Circuit.[13] However, "the Federal Circuit has itself built a body of precedent applying the general preliminary injunction considerations to a large number of factually variant patent cases, and gives dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues."[14]

The Ninth Circuit and this Court review the grant or denial of a preliminary injunction for an abuse of discretion and review underlying legal principles *de novo*.[15] "An abuse of discretion may be established by showing that the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings."[16]

Here, the district court's decision to grant a mandatory injunction turned on whether MerchSource breached the MLA's venue clause by petitioning the PTAB

---

[13] *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1363 (Fed. Cir. 2016) citing *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014).

[14] *Id.* quoting *Trebro*, 748 F.3d at 1165.

[15] *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011).

[16] *Novo Nordisk of North Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367 (Fed. Cir. 1996).

**Exhibit 1**

to find the patents invalid.[17] With no material facts in dispute, this is a pure question of law: specifically, the legal scope and interpretation of the MLA's venue selection clause.[18] California law governs the MLA, and under California law contract interpretation is a question of law.[19] Even if there is an ambiguity in the language, "[i]f no parol evidence is introduced to interpret the contract, or if the evidence is not contradictory, the trial court's resolution of the ambiguity is a question of law."[20]

## III. THE DISTRICT COURT ERRED IN GRANTING TO PLAINTIFF A PRELINMINARY INJUNCTION REQUIRING MERCHSOURCE TO WITHDRAW THE IPR/PGR PETITIONS FROM THE PTAB

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."[21] A movant must clearly show a likelihood of success on the merits,

---

[17] Appx32.

[18] Appx467:22–468:3.

[19] *S. California Stroke Rehab. Assocs., Inc., v. Nautilus, Inc.*, 782 F. Supp. 2d 1096, 1110 (S.D. Cal. 2011) (citation omitted). The rules of contract construction are found at Cal. Civil Code §§ 1635-1663.

[20] *S. California Stroke*, 782 F. Supp. at 1110. (citation omitted).

[21] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis added); *Munaf v. Geren*, 553 U.S. 674, 689 (2008) ("A preliminary injunction is an extraordinary and drastic remedy."); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.")

Exhibit 1

irreparable harm in the absence of the injunction, the balance of hardships in its favor, and that public policy is served by the injunction.[22]

Here, the merits of the relevant claim—whether the filing of IPR/PGR petitions with the PTAB breached the MLA venue selection clause—is resolved as a matter of law in favor of MerchSource. The scope of the clause is pure legal issue and, as set forth herein, the clause plainly does not cover PTAB proceedings on invalidity. Because plaintiff cannot show a likelihood of success on this purely legal question, the district court erred in granting to plaintiff a preliminary injunction. [23]

---

[22] *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (while a "sliding scale" might allow for weakness under one factor to be offset by stronger showings in others, the factors must still favor movant).

[23] *Winter*, 555 U.S. at 20. *See also Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997).

**Exhibit 1**

**A.  Plaintiff Cannot Show Any Likelihood Of Success On The Merits Because The Venue Selection Clause Does Not Apply To PTAB Invalidity Proceedings As A Matter Of Law.**

**1.  PTAB petitions do not fall within the scope of the MLA venue selection clause.**

The MLA's venue selection clause does not apply to MerchSource's PTAB petitions because patent reexaminations are not proceedings "arising out of or under" the MLA. The MLA venue clause states in relevant part:

> 13.4 The laws of the State of California shall govern any dispute arising out of or under this Agreement … AND THAT DISPUTES SHALL BE LITIGATED BEFORE THE COURTS IN SAN FRANCISCO COUNTY OR ORANGE COUNTY, CALIFORNIA.[24]

The PTO's reexamination of claims in a patent it originally granted does not arise from or out of the MLA; does not depend on the MLA; does not require any analysis, construction, interpretation or enforcement of the MLA; and, simply stated, does not relate to the MLA. That anyone can file the same petition on the same grounds and have the same law and standards applied illustrates that the PTAB petitions do not arise out of or under the MLA.[25]

---

[24] Appx32; Appx435.

[25] *See* 35 U.S.C. §§ 311 (standing to file petition for *inter partes* review) and 321 (standing to file petition for post-grant review).

**Exhibit 1**

While the MLA language "disputes[26]… arising out of or under" encompasses more than just breach of contract claims, the reach is not infinite. In the Ninth Circuit, contractual venue clauses can apply to non-breach of contract claims "at least where 'resolution of the claims relates to interpretation of the contract.'"[27] The controlling Ninth Circuit law on application of a forum selection clause to non-contract claims was established in *Manetti-Farrow, Inc. v. Gucci Am., Inc.*[28] The Ninth Circuit held that the legal test for analyzing if a non-contract claim falls within a forum selection clause is whether the non-contract claim can "be adjudicated without analyzing whether the parties were in compliance with the contract."[29] There, the Ninth Circuit determined that the asserted business tort

---

[26] PTAB proceedings also fall outside the scope of the venue clause because they seek agency reexamination of a patent, not resolution of a "dispute" between the parties. As the Supreme Court recently articulated in *Oil States Energy Services, LLC v. Greene's Energy Group, LLC,* -U.S.-, 138 S. Ct. 1365 (2018), patents are public rights between the public (government) and the patentee, and an IPR is a review of the grant of that public franchise, not an adjudication of a dispute between two private parties. *See also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360-61 (Fed. Cir. 2017) (IPR involves administrative reexamination of earlier grant of patent by PTO).

[27] *Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661, 662 (9th Cir. 2016) (Dkt. No. 4-8) quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).

[28] *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988).

[29] *Id.* at 514.

Exhibit 1

claims were predicated on the parties' contractual rights and duties, and therefore

the contractual venue selection clause applied to those tort claims.[30]

The district court disregarded *Manetti-Farrow*, apparently because the

specific venue language in *Manetti-Farrow* ("interpretation or fulfillment") differs

from that in the MLA ("arising out of or under"). The district court erroneously

ignored the large body of case law applying *Manetti-Farrow* to a broad range of

clause language.[31]

Here, it cannot be disputed that PTAB invalidity proceedings can be decided

without any analysis of, or reference to, the MLA. IPR/PGR petitions "arise out of

or under" 35 U.S.C. §§ 311 and 321, not the MLA, and whether prior art

references anticipate or render obvious patent claims is wholly resolved under §§

102 and 103 and applicable case law. The MLA did not create the PTAB

proceedings or MerchSource's right to petition the PTAB, and the MLA is

irrelevant to the invalidity analysis. In sum, PTAB proceeding on invalidity can

---

[30] *Id.* ("[B]ecause the tort causes of action alleged by Manetti-Farrow relate to 'the central conflict over the interpretation' of the contract, they are within the scope of the forum selection clause.").

[31] *See, e.g., Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, No. 2:10-CV-02991-JHN, 2010 WL 5154136, at *3 (C.D. Cal. Aug. 12, 2010) (applying *Manetti-Farrow* to claims that "arise out of" contract and explaining that "a host of subsequent decisions have applied the Manetti-Farrow test to a variety of forum selection clauses."). Indeed, Westlaw identifies over 750 judicial decisions and over 2700 other citing references to *Manetti-Farrow*.

**Exhibit 1**

"be adjudicated without analyzing whether the parties were in compliance with" the MLA, and therefore the PTAB proceedings are not covered by the MLA's venue selection clause.

A legal analysis similar to *Manetti-Farrow* was employed in *Sanford L.P., et al. v. Esselte AB,* the only case identified below by either party addressing the question of whether PTAB challenges "arise out of" or "relate to" a contract. There, a district court concluded under New York law that PTAB *inter partes* review petitions ***did not*** "arise out of" or "relate to" a purchase agreement and thus were outside the agreement's venue selection clause.[32] Specifically, the district court determined that a claim "arises out of or 'originates' from a contract when a party asserts rights or duties created by the contract."[33] The genesis of the right to challenge patent claims at the PTAB (in an IPR or PGR) is not contractual—it is a statutory right created by Congress.[34]

The *Sanford* court further determined that PTAB petitions did not "relate" to the purchase agreement and that PTAB reexaminations are outside the scope of the

---

[32] *Sanford L.P., et al. v. Esselte AB*, No. 1:14-cv-07616-VSB, Memorandum and Order dated Sept. 16, 2015, pp. 14-18 (S.D.N.Y). Appx406–424.

[33] *Id.* at 15 (citation omitted).

[34] 35 U.S.C. §§ 311 and 321.

**Exhibit 1**

venue clause because nothing in a PTAB reexamination depends on or requires

enforcement or interpretation of any substantive term in the contract.[35]

The district court and plaintiff also relied on *Callaway,*[36] particularly the

Delaware district court finding that Acushnet breached a forum selection clause of

a settlement by filing several reexamination petitions.[37] However, both the district

court and plaintiff ignored the significant fact that the forum selection clause was

broadly worded to expressly included disputes relating to "patents":

> [a]ny dispute ***arising out of or relating to patents***, including the above
> mentioned patents … shall be resolved in accordance with the
> procedures specified in this Section.[38]

Patent invalidity proceedings are clearly "relating to patents," but nothing in

any of the *Callaway* opinions supports concluding that a PTAB invalidity

challenge "arises out of or under" a ***contract*** such as the MLA. Moreover, and as

discussed more fully in the following section, in *Calloway* the PTO argued, and the

E.D. Virginia district court agreed, that the forum selection clause was void

---

[35] *Id.* at 16-18.

[36] *See Callaway Golf Co. v. Kappos*, 802 F. Supp. 2d 678 (E.D. Va. 2011); *Inter Partes* Reexamination, 95/000,123  (*see* Dkt. No. 4-7). There were also several related appeals to this Court, including 2011-1407 and 2011-1551, both dismissed.

[37] *See Callaway*, 802 F. Supp. 2d at 683.

[38] *Id.* at 681 (emphasis added).

16

**Exhibit 1**

because "a private contractual agreement that would prohibit reexamination would be contrary to public policy."[39]

During argument below plaintiff also relied on this Court's decision in *General Protecht*[40] concerning forum selection clauses in patent litigation. The parties in *General Protecht* had previously licensed asserted patents to settle related litigation and agreed that "[a]ny dispute between the Parties relating to or arising out of this [Settlement Agreement] shall be prosecuted exclusively in" the same forum as the original, settled action.[41]

The patentee subsequently filed a new action at the ITC alleging infringement of different, but related, patents while defendant filed suit in the original forum alleging, in part, that it had an implied license to the related patents under the settlement agreement. The district court found that the ITC action violated the forum selection clause. On appeal, the Federal Circuit confirmed that the new infringement action, including the alleged implied license resulting from

---

[39] *Id.* at 686.

[40] *General Protecht Group v. Leviton Mfg. Co.*, 651 F.3d 1355 (Fed. Cir. 2011) .

[41] *Id*. at 1358.

**Exhibit 1**

the settlement agreement, must be litigated in New Mexico because resolution of the infringement claim required interpretation of the license.[42]

Patent infringement claims often substantively "arise from" or "relate to" a patent license or settlement agreement because infringement requires that an accused infringer act "without authority."[43] Thus, construing or interpreting a license often is required to determine the scope of the "authority" and therefore resolve infringement. That was the case in *General Protech*, where the Court stated:

> This case presents a non-frivolous dispute regarding the scope of a patent license. The outcome of that dispute will determine whether the patentee can sustain its suit for infringement. Thus, there is no question in this case that the dispute "relates to or arises out of" the Settlement Agreement.[44]

In contrast, the PTAB review sought by MerchSource is resolved purely with respect to the patent statutes.[45] Except perhaps in highly unusual cases, the substantive interpretation or enforcement of a license is immaterial to whether one or more prior art references renders a patent claim invalid. In its reliance on

---

[42] *Id*. at 1359 quoting *Tex. Instruments Inc. v. Tessera Inc.*, 231 F.3d 1325, 1331 (Fed. Cir. 2000).

[43] 35 U.S.C. § 271(a).

[44] *General Protecht*, 651 F.3d at 1359.

[45] *See, e.g.,* 35 U.S.C. §§ 102 and 103.

18

**Exhibit 1**

*General Protecht* the district court failed to appreciate the material differences between assertions of infringement and invalidity.

*Manetti-Farrow*, *Sanford* and *General Protecht* are consistent[46]—the common touchstone is whether resolution of ***a claim presented in the challenged venue/forum*** requires reference to, resolution of, or interpretation of a provision of the contract. It did in *General Protecht* because infringement turned on the scope of the settlement agreement's license. And it did in *Manetti-Farrow* because the business tort claims alleged were predicated on interpreting the parties' contractual rights and duties. But it did not in *Sanford* because (in)validity of the patent did not depend on, implicate, or require interpretation of any provision of the purchase agreement.

The district court's Order tacitly acknowledged that nothing in the MLA would impact the PTAB's analysis, and initially (and correctly) framed the issue as whether the PTAB proceedings "aris[e] out of or under" the license.[47] However, the district court's subsequent analysis reversed the inquiry into whether the district court action will be affected by the outcome of the PTAB proceeding:

---

[46] *Callaway* is also consistent, but factually distinguishable. The venue selection query in *Callaway* was not whether a PTO reexamination is a dispute that "arises out of or under" ***an agreement***, such as the MLA. It was instead whether a PTO reexamination is a dispute "arising out of or relating to" ***patents***. *See, supra* pp. 16-17.

[47] Appx36:1-3.

**Exhibit 1**

That the PTAB Petitions "aris[e] out of or under" the MLA is further substantiated by the fact that Defendant MerchSource's justification for its refusal to make royalty payments (an alleged breach of the MLA) is that the Dodocase Patents are invalid and unenforceable. … The claim of invalidity is impossible to disentangle from the question of whether Defendants may be liable in this case because Defendant MerchSource breached its obligations under the terms of the agreement.  For these reasons, the Court concludes that the PTAB Petitions "aris[e] out of or under" the MLA and the licensee's rights and obligations created by that agreement.[48]

The district court's analysis is backwards and incorrect: the proper inquiry is whether a PTAB invalidity challenge "arises out of or under" the parties' license, not whether the district court case will be impacted by the outcome of a PTAB proceeding. The district court's analysis was fatally flawed in that it wrongly focused on the district court action and not on the PTAB proceedings.[49]

Further, although the issue and cases were neither raised nor briefed by the parties below, the district court's reliance on arbitration clause cases was

---

[48] Appx36:27–37:15.

[49] The district court also relied on MerchSource's raising of invalidity and other arguments as a defense in the district court case and requesting reimbursement of fees in the event it prevails. *See* Appx36–37. But invalidity is a required affirmative defense and is waived if not pled, and the federal rules specifically allow alternative, hypothetical or inconsistent statements and allegations under Fed. R. Civ. P. 8(d). None of MerchSource's statements, however, resolve the relevant inquiry: does the PTAB reexamination "arise from or out of" the license. The answer is still no.

**Exhibit 1**

misplaced.[50] None of the cited cases were directed at patents or patent invalidity, and none held that a PTAB validity review "arises out of or under" any contract. These cases do not support the district court's erroneous conclusion.

Under California law even the broadest reading of a venue clause requires that the challenged claims (here, the PTAB reexaminations) at least "relate" to the contract containing the venue clause.[51] Here, the venue clause makes no mention of PTAB proceedings or patent challenges. Not a single substantive term of the license has any potential relationship to the PTAB's (in)validity determination. The MLA has nothing to do with whether the asserted prior art renders a claim invalid. Nor does contract interpretation, the contractual rights and duties of the parties, or whether the parties are in compliance with the license of any aspect thereof.

The language of the MLA forum selection clause is clear. And, as a matter of law, PTAB challenges do not "arise out of or under" the MLA. Accordingly, the venue clause does not cover PTAB proceedings, the district court's misapplication of the law was clear error, and the preliminary injunction should not have been granted.

---

[50] Appx36.

[51] *Adema Techs.,* 657 F. App'x at 662. Dkt No. 4-8.

**Exhibit 1**

## 2.   A clause precluding PTAB petitions would be void as against public policy.

Interpreting the MLA venue selection clause broadly enough to cover the PTAB proceedings would render the clause unenforceable as violating public policy.[52] A venue selection clause is unenforceable if enforcement of the clause would contravene a strong public policy *of the forum in which the suit has been brought*.[53]

Here, the venue selection clause, if interpreted to exclude PTAB review of patents, would be overreaching and would contravene the strong public policy in favor of permitting the United States Patent and Trademark Office to correct its own mistakes. As the Federal Circuit recently stated in upholding the constitutionality of PTAB petition procedures:

> The patent right "derives from an extensive federal regulatory scheme," *Stern*, 131 S. Ct. at 2613, and is created by federal law. Congress created the PTO, "an executive agency with specific authority and expertise" in the patent law, *Kappos v. Hyatt*, -U.S.-, 132 S. Ct. 1690, 1696, 182 L.Ed.2d 704 (2012), and saw powerful reasons to utilize the expertise of the PTO for an important public purpose—to correct the agency's own errors in issuing patents in the first place. Reacting to "a growing sense that questionable patents are

---

[52] Such an interpretation would also violate Cal. Civil Code § 1643 (contracts should be given reasonable constructions) and § 1648 ("However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.")

[53] *See Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

**Exhibit 1**

too easily obtained and are too difficult to challenge," Congress sought to "provid[e] a more efficient system for challenging patents that should not have issued" and to "establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." H.R. Rep. No. 112-98, 2011 U.S.C.C.A.N. 67, 69, at 39-40.[54]

Notably, the test for enforceability of a venue selection clause turns on the

**public policy of the forum in which the challenged proceeding has been**

**brought**.[55] The relevant forum here is the PTAB, part of the PTO, which has held

that parties cannot contract away the right to seek PTO review of patents:

> Second, *a contractual provision preventing a party from seeking reexamination would be void as being contrary to public policy*. In *Lear v. Adkins*, 395 U.S. 653, (1969), the United States Supreme Court determined that prohibiting licensees from challenging the validity of a patent that they had licensed runs afoul of public policy "in permitting full and free competition in the use of ideas which are in reality part of the public domain." *id*. at 670. By analogy, preventing a third-party requester (and a potential licensee of the subject patent) from requesting reexamination of a patent would be contrary to the public policy embodied in the *Lear v. Adkins* decision.[56]

---

[54] *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1290-91 (Fed. Cir. 2015) .

[55] *Murphy*, 362 F.3d at 1137.

[56] Inter Partes Reexamination Proceeding, Decision on Petition to Vacate Order Granting Reexamination, Control No. 95/000,123, at 5 (Office of Patent Legal Admin. June 7, 2006) (emphasis added). Dkt. No. 4-7. *See also id*. at 5, n.8 (relying on *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) (concluding that a forum selection clause, while generally enforceable, will not be enforced where it violates the strong public policy of the forum in which suit is brought)).

**Exhibit 1**

Moreover, the PTO's strong interest in reexamining patents is neither remote nor tangential, but is part of it "core statutory function."[57] And at least one district court has recognized the PTO's pronouncement of its function and the important public policy to reexamine patents:

> ***The PTO also correctly argues that a private contractual agreement that would prohibit reexamination would be contrary to public policy.*** [] Patents are government-granted monopolies that provide the patent holders with tremendous power to suppress competition. *See American Steel Foundries v. Robertson*, 262 U.S. 209, 215, 43 S.Ct. 541, 67 L.Ed. 953 (1923). Accordingly, there is a strong public interest in ensuring that patents are valid. As the Supreme Court held in *Lear v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), prohibitions on challenges to patent validity violate public policy which favors "permitting full and free competition in the use of ideas which are in reality part of the public domain." *Id*. at 670, 89 S.Ct. 1902. The patent reexamination process helps ensure such full and free competition. Because the purpose of reexaminations "is to correct errors made by the government ... and if need be to remove patents that never should have been granted," *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604 (Fed. Cir. 1985), a private contract that prevents reexamination is void as a matter of public policy.[58]

Thus, the district court's Order was contrary to conclusions of the PTO and another district, both of which rejected a patentee's attempt to use a forum selection clause to preclude review of patents by the PTO.

---

[57] *Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364, 1376 (Fed. Cir. 2018) (O'Malley, concurring). *See also Oil States*, 138 S. Ct. at 1374 (discussion of PTO functions, including reexamination of patents).

[58] *Callaway Golf Co. v. Kappos*, 802 F. Supp. 2d 678, 686 (E.D. Va. 2011).

**Exhibit 1**

MerchSource has a statutory right to seek review of the asserted patents in

the tribunal that granted the patents in the first instance and is uniquely and

expertly equipped to assess the claim. The public and PTO have strong interests in

allowing such reviews. Moreover, PTAB proceedings have a different evidentiary

standard and broader claim construction standard than district court proceedings.[59]

These uniquely PTAB standards were driven by a strong public policy to

encourage innovation and protect the public:

> We conclude that the regulation represents a reasonable exercise of
> the rulemaking authority that Congress delegated to the Patent Office.
> For one thing, construing a patent claim according to its broadest
> reasonable construction helps to protect the public. A reasonable, yet
> unlawfully broad claim might discourage the use of the invention by a
> member of the public. Because an examiner's (or reexaminer's) use of
> the broadest reasonable construction standard increases the possibility
> that the examiner will find the claim too broad (and deny it), use of
> that standard encourages the applicant to draft narrowly. This helps
> ensure precision while avoiding overly broad claims, and thereby
> helps prevent a patent from tying up too much knowledge, while
> helping members of the public draw useful information from the
> disclosed invention and better understand the lawful limits of the
> claim.[60]

The venue selection clause in the license cannot be reasonably interpreted to

prevent PTO review of its prior agency decisions, and public policy would void

such a result for the reasons set forth above.

---

[59] *Cuozzo Speed Techs., LLC v. Lee*, –U.S.–, 136 S. Ct. 2131, 2144-46 (2016).

[60] *Id*. at 2144–45.

**Exhibit 1**

This strong public policy favoring PTO reexaminations of its granted patents is further supported by the Supreme Court's recent decision in *Oil States*, holding that *inter partes* reviews fall within the public-rights doctrine and granted patents can be reconsidered by the PTAB without violating Article III or the Seventh Amendment. The Supreme Court reviewed the history of post-grant reexaminations of patents, noting that a patent is a public-rights matter between the public and the patentee and that the PTO, whether by deciding to grant a patent or to subsequently review such a grant, is discharging its administrative responsibility to ensure that the "immense value" of a patent has not been improvidently granted:

> Additionally, granting patents is one of "the constitutional functions" that can be carried out by "the executive or legislative departments" without "'judicial determination.'" … And, from the founding to today, Congress has authorized the Executive Branch to grant patents that meet the statutory requirements for patentability. When the PTO "adjudicate[s] the patentability of inventions," it is "exercising the executive power."
>
> ***
>
> Inter partes review involves the same basic matter as the grant of a patent. So it, too, falls on the public-rights side of the line.
>
> Inter partes review is "a second look at an earlier administrative grant of a patent." The Board considers the same statutory requirements that the PTO considered when granting the patent. Those statutory requirements prevent the "issuance of patents whose effects are to remove existent knowledge from the public domain." So, like the PTO's initial review, the Board's inter partes review protects "the public's paramount interest in seeing that patent monopolies are kept within their legitimate scope." Thus, inter partes review involves the

26

**Exhibit 1**

same interests as the determination to grant a patent in the first instance.[61]

The PTO clearly has an interest not only in making sure that the original grant of a patent—"from the public rights of immense value, and bestow[ing] them upon the patentee"[62]—is proper, but also in later reviewing that grant to make sure it was not given in error. A venue selection clause that interferes with that review is against the public interest and should be void.

## B. The Remaining Preliminary Injunction Factors Also Favor MerchSource.

Because the venue selection clause of the MLA does not apply to PTAB proceedings, plaintiff has no likelihood of success on the merits and is not entitled to any relief—and certainly not to a preliminary injunction. Nonetheless, MerchSource is raising errors with the district court's analysis of the other injunction factors in the event that this Court determines that there is some issue of material fact and therefore plaintiff has at least some chance on the merits.

The district court's error in assessing the scope of the MLA vis-à-vis PTAB proceedings infected the analysis of the other preliminary injunction factors. Specifically, the district court analyzed each factor from the starting point that

---

[61] *Oil States,* 138 S. Ct. at 1374 (internal citations omitted).

[62] *Id.* at 1373 quoting *United States v. American Bell Telephone Co.*, 128 U.S. 315, 370 (1888).

**Exhibit 1**

PTAB invalidity proceedings arose out of or under the MLA. This mistaken

vantage, coupled with a refusal to recognize the interests of the PTO and public in

reviewing previously granted patents, lead the district court to improperly granting

the preliminary injunction.

> **1.    The district court erred in finding that plaintiff would be irreparably harmed by having to defend the validity of its patent before the PTAB.**

A patentee does not suffer "irreparable harm" by having to defend before the

PTAB a patent is has chosen to assert in a district court. Congress expressly

authorized parallel PTAB and district court proceedings, and the statutory

framework permits PTAB petitions to be filed up to a year after commencement of

a related district court patent case.[63] Indeed, it is very common to have both.

Congress not only expressly authorized parallel proceedings, it further provided

specific mechanisms to manage them, including allowing a district court to stay

parallel district court actions filed by petitioner; allowing the PTAB to stay other

IPR/PGR proceedings on the same patent; and authorizing the PTAB to stay an

---

[63] 35 U.S.C. § 315(b).

**Exhibit 1**

IPR/PGR in favor of a district court action.[64] Further, of course, is the inherent

power of the district court to stay an action pending review by the PTO.[65]

The district court viewed *General Protecht* as holding that any proceeding

outside a chosen venue constitutes irreparable harm.[66] But this reads too much into

that case, and ignores several key distinctions with the instant action. *General*

*Protecht* hinged on a settlement agreement of patent infringement litigation in

which the parties agreed to resolve future related disputes in the District of New

Mexico—the same forum as the original, settled action. The patentee later filed a

new action at the ITC alleging infringement of related patents, while defendant

filed suit in New Mexico alleging, in part, that the original settlement provided it a

license to the related patents. On appeal, the Federal Circuit confirmed that

resolution of settlement agreement issues must be heard in the New Mexico forum

and that the ITC action must be dismissed. But none of the material factors from

*General Protecht* exist here: there is no prior litigation, nor any settlement

---

[64] 35 U.S.C. §§ 315(a)(2) and 315(d), and 37 C.F.R. § 1.987 (suspension of *inter partes* reexamination proceeding due to litigation)

[65] *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016) ("The Supreme Court has long recognized that district courts have broad discretion to manage their dockets, including the power to grant a stay of proceedings.").

[66] Appx42–43.

**Exhibit 1**

agreement, nor was there a dispute between the parties previously before this Court.

Importantly, *General Protecht*, unlike the case at bar, implicated a strong public policy favoring the enforcement of settlement agreements.[67] And the subsequent round of cases in *General Protecht* arose from the settlement agreement, whereas MerchSource's PTAB petitions did not arise from, and are unrelated to, the parties' now-terminated license. The present case does not contain any of the foundational elements of *General Protecht*.

Moreover, there are material differences between ITC actions and the PTAB patent review proceedings. An ITC investigation is a judicial action for patent infringement, similar to a district court action, albeit with different remedies. While the procedures differ slightly, ITC actions include subpoena power, the full range of affirmative defenses to infringement, and full-blown claim construction and discovery, including wide-ranging depositions, interrogatories, document requests, and requests for admissions.[68] It is truly parallel litigation covering the same claims, issues, and defenses as in district court.

---

[67] *See Flex-Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362 (Fed. Cir. 2001) (no-challenge clause in settlement agreement is enforceable because, unlike in *Lear*, another important public policy favoring enforcement of settlement terms is implicated).

[68] *See* 19 C.F.R. §§ 210.13, 210.28–210.32.

**Exhibit 1**

In contrast, patent review proceedings at the PTAB are much less judicial in nature compared to district court or the ITC and, as recently characterized by the Supreme Court, "inter partes review is less like a judicial proceeding and more like a specialized agency proceeding."[69] The Supreme Court further noted that the purpose of PTAB review procedures is different from that of a district court action:

> Most importantly, these features, as well as inter partes review's predecessors, indicate that the purpose of the proceeding is not quite the same as the purpose of district court litigation. The proceeding involves what used to be called a reexamination (and, as noted above, a cousin of inter partes review, ex parte reexamination, 35 U.S.C. § 302 et seq., still bears that name). The name and accompanying procedures suggest that the proceeding offers a second look at an earlier administrative grant of a patent. Although Congress changed the name from "reexamination" to "review," nothing convinces us that, in doing so, Congress wanted to change its basic purposes, namely, to reexamine an earlier agency decision. Thus, in addition to helping resolve concrete patent-related disputes among parties, inter partes review helps protect the public's "paramount interest in seeing that patent monopolies ... are kept within their legitimate scope."[70]

Here, Plaintiff would not deprived of its chosen forum or venue simply because the PTAB undertakes review of its earlier grant of plaintiff's patents. The issues arising under or relating to the MLA—such as whether a breach of contract

---

[69] *Cuozzo*, 136 S. Ct. at 2143 (finding that claim terms are construed in IPR as under examination, not as if in litigation).

[70] *Id*. at 2144 quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 816 (1945) and citing H.R. Rep. No. 112-98 at 39–40 (*inter partes* review is an "efficient system for challenging patents that should not have issued").

**Exhibit 1**

has occurred, or the relevant damages period, if any—would be decided in the courts and not at the PTO.

Plaintiff's lack of "irreparable harm" is reinforced by the Supreme Court's recent decision in *Oil States*. In addition to discussing the differences between judicial proceedings and PTAB *inter partes* review proceedings, the Supreme Court reaffirmed that a patentee is granted a patent subject to the PTO's ability—and right—to revisit that grant:

> Patent claims are granted subject to the qualification that the PTO has "the authority to reexamine—and perhaps cancel—a patent claim" in an inter partes review.[71]

As the Supreme Court made clear, all patents are granted "subject to" having the claims reexamined and potentially cancelled by the PTAB. Moreover, PTAB proceedings are not an adjudication of rights between petitioner and patentee, but a review of a patent's "public rights" as between the public/government and patentee:

> Although inter partes review includes some of the features of adversarial litigation, it does not make any binding determination regarding "the liability of [[petitioner]] to [[patentee]] under the law as defined." *Crowell*, 285 U.S., at 51, 52 S.Ct. 285. It remains a matter

---

[71] *Oil States*, 138 S. Ct. at 1374 citing *Cuozzo*, 136 S. Ct., at 2137 (patents thus remain "subject to [the Board's] authority" to cancel outside of an Article III court); *Crowell v. Benson*, 285 U.S. 22, 50, 52 S. Ct. 285 (1932).

**Exhibit 1**

involving public rights, one "between the government and others, which from [its] nature do[es] not require judicial determination."[72]

The district court erred in reading *General Protecht* so broadly as to find a PTAB proceeding to constitute irreparable harm. A patentee obtains its patent subject to having it subsequently reviewed by the granting agency, and this happens before the PTAB. Thus, it is not irreparable harm to have one's patent reexamined pursuant to the framework established by Congress.

### 2. The district court erred in finding that MerchSource would not suffer any hardship by the grant of the injunction.

The district court erred in balancing the hardships by improperly presuming that plaintiff would prevail and then concluding that MerchSource could not suffer "hardship" because it could not prevail.[73] But this factor is intended to weigh the relative hardships should the court err: the movant's harm without an injunction compared to the non-movant's harm from a wrongfully-issued injunction.[74] Assessing this factor entirely based on the assumptions from another factor (likelihood of success) effectively renders this balance of hardships meaningless.

---

[72] *Id.* at 1378 quoting *Ex parte Bakelite Corp.*, 279 U.S. 438, 451, 49 S. Ct. 411 (1929).

[73] Appx44.

[74] *See Stormans, Inc. v. Selecky*, 571 F.3d 960, 987–88 (9th Cir. 2009) citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

**Exhibit 1**

MerchSource would undoubtedly suffer hardship—irreparable harm—from the injunction because it would effectively foreclose MerchSource's opportunity to ever file a petition with the PTAB. Federal law mandates that a patent review petition to the PTAB must be filed within one year after the commencement of a related district court action.[75] Thus, and absent the emergency stay of the Order from this Court, MerchSource would have been forever statutorily-barred from re-filing these petitions before this action was concluded. Conversely, plaintiff faces no corresponding time-bar. And plaintiff will have to respond to MerchSource's invalidity challenges regardless of the forum or venue, so it faces minimal (if any) hardship if required to defend the same challenges at the PTO—the very federal agency that granted plaintiff the patents in the first place.

### 3. The district court erred in finding that the public interest favored the grant of the injunction.

Having already and erroneously concluded that the venue selection clause covered PTAB proceedings, the district court later erred by finding no public interest in having the PTAB review its previous grants of the patents. But, as previously discussed *supra* in Section I.A.2, the public has a substantial interest in having the PTO review its prior grant of a public right to the patentee.

---

[75] 35 U.S.C. § 315(b).

**Exhibit 1**

The public interest analysis for the issuance of a preliminary injunction
"requires [the court] to consider 'whether there exists some critical public interest
that would be injured by the grant of preliminary relief.'"[76]

As previously mentioned, PTAB patent review proceedings at the PTO serve
the significant and important public interest in allowing the federal agency with
expertise in patents—and which originally granted the patent—to review its prior
decision. The Supreme Court recently emphasized this role in confirming the
PTO's authority in IPRs:

> The proceeding involves what used to be called a reexamination (and,
> as noted above, a cousin of inter partes review, ex parte
> reexamination, 35 U.S.C. § 302 et seq., still bears that name). The
> name and accompanying procedures suggest that the proceeding
> offers a second look at an earlier administrative grant of a patent.
> Although Congress changed the name from "reexamination" to
> "review," nothing convinces us that, in doing so, Congress wanted to
> change its basic purposes, namely, to reexamine an earlier agency
> decision. Thus, in addition to helping resolve concrete patent-related
> disputes among parties, inter partes review helps protect the public's
> "paramount interest in seeing that patent monopolies ... are kept
> within their legitimate scope. [77]

The "important congressional objective" of giving the PTO the "significant
power to revisit and revise earlier patent grants"[78] in IPR/PGR proceedings is

---

[76] *Independent Living Center of Southern California, Inc. v. Maxwell–Jolly*, 572
F.3d 644, 659 (9th Cir. 2009) (quotation omitted).

[77] *Cuozzo*, 136 S. Ct. at 2144 (quotations omitted).

[78] *Id*. at 2139-40. *See also Husky Injection Molding Sys. Ltd. v. Athena Automation
Ltd.*, 838 F.3d 1236, 1243 (Fed. Cir. 2016) (same).

Exhibit 1

affirmed by the Supreme Court and the Federal Circuit in other decisions. For

example, in *MCM Portfolio* the Federal Circuit noted that "Congress … saw

powerful reasons to utilize the expertise of the PTO [for IPRs/PGRs] for an

important public purpose—to correct the agency's own errors in issuing patents in

the first place."[79]

    *Oil States* reaffirmed the strong public interest in PTO reexamination of

previously issued patents:

> Inter partes review is "a second look at an earlier administrative grant
> of a patent." The Board considers the same statutory requirements that
> the PTO considered when granting the patent. Those statutory
> requirements prevent the "issuance of patents whose effects are to
> remove existent knowledge from the public domain." So, like the
> PTO's initial review, the Board's inter partes review protects "the
> public's paramount interest in seeing that patent monopolies are kept
> within their legitimate scope." Thus, inter partes review involves the
> same interests as the determination to grant a patent in the first
> instance.[80]

---

[79] 812 F.3d at 1290–91. *See also, e.g., Callaway Golf*, 802 F. Supp. 2d at 686 ("a
private contract that prevents reexamination is void as a matter of public policy");
Inter Partes Reexamination Proceeding, Decision on Petition to Vacate Order
Granting Reexamination, Control No. 95/000,123, at 5 (Office of Patent Legal
Admin. June 7, 2006) ("By analogy, preventing a third party requester (and a
potential licensee of the subject patent) from requesting reexamination of a patent
would be contrary to the public policy embodied in the Lear v. Adkins decision.")
Dkt. No. 4-7.

[80] *Id.* at 1374 (internal citations omitted).

**Exhibit 1**

The public undeniably has a strong interest in allowing the PTO to review its prior administrative decisions to grant a patent. A patent is a public right "of immense value"[81] bestowed by the PTO on the patentee, and PTAB review proceedings help ensure that such rights were not given in error.

While the district court is correct that a judicial proceeding in district court can also invalidate claims, this is not a substitute for PTAB proceedings. A district court adjudicates disputes between parties and does not conduct "a second look at an earlier administrative grant of a patent." And, because of different standards and presumptions, a district court does not adjudicate patent claims to be "valid," only not invalid.

There is no countervailing, critical public interest favoring plaintiff. The generic public interest in enforcing contractual provisions and forum selection clauses discussed in *General Protecht* is a weak interest at best, and one that is already subservient to the more significant public interest in weeding-out improperly issued patents. As the overwhelming weight of the authorities cited above shows, private contractual provisions must yield to the significant public interest in the patent system and ensuring valid patents.

---

[81] *Oil States*, 138 S. Ct. at 1373 quoting *American Bell Telephone Co.*, 128 U.S. at 370.

**Exhibit 1**

# CONCLUSION

For the reasons set forth, the Order of the district court granting the

preliminary injunction should be reversed.

Date: June 18, 2018                    Respectfully submitted,

                                       /s/ Mark C. Johnson
                                       Mark C. Johnson
                                       Kyle B. Fleming
                                       RENNER OTTO

                                       *Counsel for Defendant-Appellant*
                                       *MerchSource, LLC*

**Exhibit 1**