# EXHIBIT 2

**18-1724**

# United States Court of Appeals
# for the Federal Circuit

DODOCASE VR, INC., fka Dodocase, Inc.,

*Plaintiff-Appellee,*

v.

MERCHSOURCE, LLC, dba Sharper Image,

*Defendant-Appellant,*

THREESIXTY BRANDS GROUP, LLC, dba Sharper Image,

*Defendant.*

*Appeal from the United States District Court*
*for Northern District of California in No. 3:17-cv-07088-EDL*
*Magistrate Judge Elizabeth D. Laporte*

## CORRECTED ANSWERING BRIEF OF
## PLAINTIFF-APPELLEE DODOCASE VR, INC.

TIMOTHY J. HALLER, ESQ.
HALLER LAW PLLC
53 West Jackson Boulevard, Suite 1623
Chicago, IL 60604
haller@haller-iplaw.com
(630) 336-4283

GABRIEL I. OPATKEN, ESQ.
NOBLE IP LLC
418 North Noble Street, Suite 4
Chicago, IL 60642
gabriel@nobleipllc.com
(773) 648-5433

*Counsel for Plaintiff-Appellee, DODOCASE VR, Inc.*

JULY 17, 2018

**Exhibit 2**

FORM 9. Certificate of Interest

Form 9
Rev. 10/17

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

DODOCASE VR, Inc., fka Dodocase, Inc.     v.     MerchSource, LLC dba Sharper Image

Case No. 18-1724

### CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ☐ (appellant) ☐ (respondent) ☒ (appellee) ☐ (amicus) ☐ (name of party)

## DODOCASE VR, Inc., fka Dodocase, Inc.

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| DODOCASE VR, Inc. | None. | None. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

LAW OFFICES OF MARC LIBARLE - Marc Libarle;
GONSALVES LAW FIRM - Dr. Gregory J. Gonsalves.

**Exhibit 2**

Case: 18-1724    Document: 34    Page: 3    Filed: 07/17/2018

**FORM 9. Certificate of Interest**                                    **Form 9**
                                                                        **Rev. 10/17**

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).  (The parties should attach continuation pages as necessary).

3:17-cv-07088-EDL - DODOCASE VR, Inc. v. MerchSource, LLC, et al, United States District Court for the Northern District of California

IPR2018-00494 - Patent Trial and Appeal Board Inter Partes Review
PGR2018-00019 - Patent Trial and Appeal Board Post Grant Review
PGR2018-00020 - Patent Trial and Appeal Board Post Grant Review

| 7/17/2018 | /s/ Timothy J. Haller |
|-----------|------------------------|
| Date | Signature of counsel |
| Please Note: All questions must be answered | Timothy J. Haller |
|  | Printed name of counsel |
| cc:   Served by CM/ECF on all registered users | |

**Reset Fields**

**Exhibit 2**

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF RELATED CASES ..........................................................1

STATEMENT OF THE ISSUES....................................................................1

STATEMENT OF THE CASE.......................................................................2

     I.     PRIOR RELATIONSHIP BETWEEN THE PARTIES .....................2

     II.    THE MASTER LICENSE AGREEMENT ("MLA") ..........................4

SUMMARY OF THE ARGUMENT ..............................................................6

ARGUMENT .................................................................................................8

     I.     STANDARD OF REVIEW ................................................................8

     II.    THE   DISTRICT   COURT   RELIED   ON   THE APPLICABLE LEGAL STANDARD..................................................9

     III.   THE   DISTRICT   COURT   DID   NOT   ABUSE   ITS DISCRETION ...................................................................................10

          A.    The District Court Did Not Abuse Its Discretion In Finding That DODOCASE Is Likely To Succeed On The Merits Of Its Breach Of Contract Claim For Violation Of The Forum Selection Clause. ..............................11

               1.    The District Court Did Not Abuse Its Discretion In Holding That MerchSource's Validity Challenge "Arose Out Of Or Under" The MLA's Mandatory Forum Selection Clause. .........................................................................11

**Exhibit 2**

2.      The District Court Did Not Abuse Its
Discretion In Finding The Forum Selection
Clause Enforceable. .......................................................21

B.      The District Court Did Not Abuse Its Discretion
Regarding The Remaining Three Factors. ...............................29

1.      The District Court Did Not Abuse Its
Discretion In Finding That DODOCASE
Would Suffer Irreparable Harm. .....................................30

2.      The District Court Did Not Abuse Its
Discretion In Finding That The Balance Of
Equities Tips In DODOCASE's Favor. ..........................34

3.      The District Court Did Not Abuse Its
Discretion In Finding That The Injunction Is
In The Public Interest. ...................................................37

CONCLUSION .........................................................................................40

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

**Exhibit 2**

# TABLE OF AUTHORITIES

## CASES

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ........................................................10

*Anderson v. United States*,
    612 F.2d 1112 (9th Cir. 1979) .......................................................10

*Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*,
    2010 WL 5154136 (C.D. Cal. Aug. 12, 2010) ..............................16

*Callaway Golf Co. v. Acushnet Co.*,
    523 F. Supp. 2d 388 (D. Del. 2007) ...................................... passim

*Callaway Golf Co. v. Kappos*,
    802 F. Supp. 2d 678 (E.D. Va. 2011) ................................... passim

*Clear Channel Outdoor, Inc. v. City of Los Angeles*,
    340 F.3d 810 (9th Cir. 2003) .........................................................10

*DISH Network Corp. v. FCC*,
    653 F.3d 771 (9th Cir. 2011) ...........................................................9

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) .........................................................10

*General Protecht Grp. Inc. v. Leviton Mfg. Co., Inc.*,
    651 F.3d 1355 (Fed. Cir. 2011) ........................................... passim

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) .........................................................9

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*
    *Local No. 70 of Alameda Cnty.*,
    415 U.S. 423 (1974).........................................................................9

*Int'l Fashion Prods. B.V. v. Calvin Klein, Inc.*,
    1995 WL 92321 (S.D. N.Y. Mar. 7, 1995)....................................32

**Exhibit 2**

*Lear v. Adkins*,
　　395 U.S. 653 (1969)......................................................................27

*M/S Bremen v. Zapata Off-Shore Co.*,
　　407 U.S. 1 (1972)................................................................... 22, 39

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
　　858 F.2d 509 (9th Cir. 1988) ................................... 16, 17, 19, 20

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
　　571 F.3d 873 (9th Cir. 2009) .......................................................10

*Martinez v. Mathews*,
　　544 F.2d 1233 (5th Cir. 1976) .....................................................10

*Mazurek v. Armstrong*,
　　520 U.S. 968 (1997)........................................................................9

*Mediterranean Enter., Inc. v. Ssangyong Corp.*,
　　708 F.2d 1458 (9th Cir. 1983) .....................................................19

*Murata Machinery USA v. Daifuku Co., Ltd.*,
　　830 F.3d 1357 (Fed. Cir. 2016) .................................................8, 9

*Murphy v. Schneider Nat'l Inc.*,
　　362 F.3d 1133 (9th Cir. 2004) ............................................... 22, 39

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC*,
　　- U.S. -, 138 S. Ct. 1365 (2018)...................................................34

*Pac. Sunwear of Cal. Inc. v. KP Fashion Co.*,
　　2009 WL 10670246 (C.D. Cal. Mar. 20, 2009) .............................9

*Republic of Nicaragua v. Standard Fruit Co.*,
　　937 F.2d 469 (9th Cir. 1991) .......................................................15

*Sanford L.P. v. Esselte AB*,
　　No. 1:14-cv-07616-VSB, Memorandum and Order (S.D. N.Y.
　　Sep. 16, 2015) ................................................................. 17, 32, 33

**Exhibit 2**

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ........................................................................15

*Stanley v. Univ. of S. Cal.*,
    13 F.3d 1313 (9th Cir. 1994) ..........................................................................9

*Stormans, Inc. v. Selecky*,
    571 F.3d 960 (9th Cir. 2009) ........................................................................36

*TMI Prods., Inc. v. Rosen Elecs., L.P.*,
    2013 WL 12114078 (C.D. Cal. Nov. 27, 2013) ............................................27

*U.S. Philips Corp. v. KBC Bank N.V.*,
    590 F.3d 1091 (9th Cir. 2010) ........................................................................9

*Versata Dev. Corp. v. Rea*,
    959 F. Supp. 2d 912 (E.D. Va. 2013) ............................................................28

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008)................................................................................... passim

**STATUTES**

35 U.S.C. § 282 .......................................................................................................33

35 U.S.C. § 287(a) ...................................................................................................5

35 U.S.C. § 315(b) .................................................................................................35

**OTHER AUTHORITIES**

*In re Callaway Golf Co.*, *Inter Partes* Reexamination Proceeding,
    Control Nos. 95/000,120, 95/000,121, 95/000,122 and
    95/000,123 (Office of Patent Legal Admin.)......................................... 25, 26

*Inter Partes* Review of U.S. Patent No. 9,420,075 (IPR2018-00494) .................1, 4

Post Grant Review of U.S. Patent No. 9,723,117 (PGR2018-00019)..................1, 4

Post Grant Review of U.S. Patent No. 9,811,184 (PGR2018-00020)..................1, 4

U.S. Patent No. 9,420,075..................................................................................1, 2

**Exhibit 2**

U.S. Patent No. 9,723,117.........................................................................1, 2

U.S. Patent No. 9,811,184.........................................................................1, 2

**RULES**

Fed. R. Civ. P. 11 ...................................................................................14

**REGULATIONS**

37 C.F.R. § 1.913 ...................................................................................25

**Exhibit 2**

## STATEMENT OF RELATED CASES

There have been no other appeals in or from this civil action or proceeding in the District Court (3:17-cv-07088-EDL – DODOCASE VR, Inc. v. MerchSource, LLC, et al, U.S. District Court for the Northern District of California).

MerchSource, LLC filed three petitions with the U.S. Patent and Trademark Office, Patent Trial and Appeal Board ("PTAB") concerning DODOCASE VR, Inc.'s Patents: *Inter Partes* Review of U.S. Patent No. 9,420,075 (IPR2018-00494); Post Grant Review of U.S. Patent No. 9,723,117 (PGR2018-00019); and Post Grant Review of U.S. Patent No. 9,811,184 (PGR2018-00020). These petitions are pending.

## STATEMENT OF THE ISSUES

The issues on appeal are properly considered as follows:

Whether the District Court abused its discretion in granting a preliminary injunction enjoining Defendant-Appellant MerchSource, LLC (doing business as Sharper Image) ("MerchSource") from pursuing PTAB Petitions for *inter partes* review and post grant review of the patents in suit (though not ordering the PTAB to take any action).

Whether the District Court abused its discretion in finding that Plaintiff-Appellee DODOCASE VR, Inc. (formerly known as DODOcase, Inc.) ("DODOCASE") was likely to succeed on the merits of its breach of contract claim

1

**Exhibit 2**

for violation of the forum selection clause of the parties' Master License Agreement ("MLA").

Whether the District Court abused its discretion in finding that DODOCASE would suffer irreparable harm absent an injunction.

Whether the District Court abused its discretion in finding that the balance of equities tipped in favor of DODOCASE.

Whether the District Court abused its discretion in finding that the requested injunction was in the public interest.

## STATEMENT OF THE CASE

## I.    PRIOR RELATIONSHIP BETWEEN THE PARTIES

On or about June 16, 2016, MerchSource contacted DODOCASE to inquire about obtaining a patent license. (Appx168, ¶24 and Appx304, ¶24). On or about October 3, 2016, DODOCASE and MerchSource entered into the MLA regarding the DODOCASE Patents.[1] (Appx169, ¶25 and Appx304, ¶25).

Starting on or around June 9, 2017 (barely 8 months after entering into the MLA), MerchSource began expressing dissatisfaction with the MLA. (Appx169, ¶27 and Appx304, ¶27).

---

[1] The "DODOCASE Patents" covered under the MLA and asserted in the District Court are: U.S. Patent No. 9,420,075 ("the '075 Patent"); U.S. Patent No. 9,723,117 ("the '117 Patent"); and U.S. Patent No. 9,811,184 ("the '184 Patent").

2

**Exhibit 2**

On November 17, 2017, after missing its Q3 payment deadline and cure deadline under the MLA, MerchSource submitted payment and a royalty report for 2017 Q3, which stated: "Attached is the royalty payment for Q3 pursuant to the [MLA], provided however MerchSource considers the dispute over royalty rate and owed royalties under the [MLA] outstanding and not yet resolved." (Appx171, ¶34 and Appx305, ¶34).

In light of the "dispute" raised by MerchSource, DODOCASE filed suit on December 13, 2017. (See Appx65-84). Thereafter, DODOCASE, MerchSource and Defendant ThreeSixty Brands Group, LLC (doing business as Sharper Image) ("ThreeSixty") (with counsel and party representatives present) met for a telephonic conference on Friday, January 12, 2018. (Appx173, ¶42 and Appx306, ¶42).

During that conference, the parties discussed potential resolution including renegotiation of the terms of the still-in-force MLA to maintain a running royalty (including options for a running royalty for the life of the DODOCASE Patents). (Appx173, ¶43 and Appx392-393).

Unable to reach agreement, MerchSource and ThreeSixty threatened that they were prepared to file challenges to the DODOCASE Patents with the PTAB, though still refusing to identify the alleged prior art upon which they intended to rely. (Appx173, ¶44 and Appx395-402).

During those settlement discussions, MerchSource stated:

3

**Exhibit 2**

MerchSource desires a significantly lower royalty rate *because the patents are invalid* and feels that it has already paid significantly more than it should have. This discussion, unlike those of the past, is not about market factors, enforcement or shrinking profits (all of which remain true). MerchSource's unwillingness to pay [DODOCASE] such a high royalty is the direct result of MerchSource having become aware of prior art that it believes invalidates all relevant claims of the licensed patents.

(Appx398; emphasis in original).

After DODOCASE refused to acquiesce to MerchSource's and ThreeSixty's attempts to extort a more favorable royalty rate, MerchSource and ThreeSixty filed the PTAB Petitions[2] regarding each of the three DODOCASE Patents. (Appx173, ¶47 and Appx404).

The remaining procedural events are accurately set forth in the [Second] [Corrected] Brief Of Appellant MerchSource, LLC ("Op.Br."). (Op.Br.4-5).

## II.    THE MASTER LICENSE AGREEMENT ("MLA")

The MLA between MerchSource and DODOCASE provides in pertinent part:

2.2    Licensor shall not grant to any Third Party a license to the Licensed IP for products that directly compete with the Licensed Product at a more favorable royalty rate to the Third Party and on similar terms hereby granted to MerchSource; provided however that, Licensor is free to offer or grant a more favorable royalty rate to a Third Party based on different business considerations of Licensor relating to the Third Party such as, without limitation, volume of sales or duration

---

[2] The "PTAB Petitions" include: *Inter Partes* Review of the '075 Patent (IPR2018-00494); Post Grant Review of the '117 Patent (PGR2018-00019); and Post Grant Review of the '184 Patent (PGR2018-00020).

4

**Exhibit 2**

of the license, and other tangible and intangible benefits provided to
Licensor. (Appx430).

3.1    In consideration for the license granted under this Agreement,
MerchSource agrees to pay Licensor the Royalty Rate on all Licensed
Products sold by MerchSource or its Affiliates. (Appx430).

6.2    Licensor has the right in its sole discretion and at its own expense
to prosecute any and all infringements of the Licensed IP....
(Appx431).

6.4    MerchSource shall not (a) attempt to challenge the validity or
enforceability of the Licensed IP; or (b) directly or indirectly,
knowingly assist any Third Party in an attempt to challenge the validity
or enforceability of the Licensed IP except to comply with any court
order or subpoena. (Appx432).

8.2    This Agreement shall automatically terminate upon the
expiration, lapse, or invalidity and unenforceability of the Licensed IP.
(Appx432-433).

8.4    Termination of this Agreement shall cancel any and all rights
under the Licensed IP granted to MerchSource pursuant to this
Agreement. The following provisions will survive termination of this
Agreement: Sections 1 (Definitions), 2 (Payment, for Sales occurred
during the Term and Sell-Off Period), 4 (Reports), 7 (Confidentiality),
this section 8, and 13 (Miscellaneous). (Appx433).

8.1.5  Termination of this Agreement shall not cancel any obligations
that may have accrued, nor preclude any remedy for a default which
occurred prior to termination. (Appx433).

9.1    Licensee agrees to mark all Licensed Products under this
Agreement with such patent markings as specified in writing by Licensor
and reasonably necessary to protect Licensor's rights under
35 U.S.C. § 287(a). (Appx433).

13.4  ... THE PARTIES AGREE ... THAT DISPUTES SHALL BE
LITIGATED BEFORE THE COURTS IN SAN FRANCISCO
COUNTY OR ORANGE COUNTY, CALIFORNIA. (Appx435).

**Exhibit 2**

13.11 In the event litigation or other dispute resolution process is necessary to enforce a provision or provisions of this Agreement, all costs, expenses and attorneys' fees shall be awarded to the prevailing Party. (Appx436).

## SUMMARY OF THE ARGUMENT

In this case, a sophisticated, global business enterprise – MerchSource – sought a license to patent rights from a small, American company that designed, manufactured and distributed virtual reality products – DODOCASE. MerchSource obtained the right to manufacture, distribute and sell an innovative product; marked the product under valid United States patent rights; engaged in business operations without fear of litigation; and then tried to leverage its size and capital to extort more favorable licensing terms.

MerchSource first complained that it had become unfeasible to continue sales at the negotiated royalty rate (Appx169, ¶27) – a position contradicted by MerchSource's significant sales in the following several months (see, e.g., Appx508, l.22) – and then that DODOCASE was not enforcing its intellectual property to the desired degree (Appx169, ¶28) (an obligation DODOCASE did not have). DODOCASE stood its ground.

MerchSource then threatened that the patents were invalid – while refusing to state why or identify any alleged prior art. (Appx170, ¶30 and Appx172-173, ¶¶40-44). DODOCASE stood its ground.

6

**Exhibit 2**

MerchSource belatedly paid the royalties owed but, in the attached report, cryptically stated that it "considers the **<u>dispute</u>** over royalty rate and owed royalties under the [MLA] outstanding and not yet resolved." (Appx171, ¶34 and Appx305, ¶34; emphasis added). Concerned that MerchSource would engage in such conduct and avoid payment every quarter, DODOCASE filed a lawsuit in the Northern District of California, per the parties' agreement. (Appx49; Appx53, Docket 1; and Appx65). Dissatisfied again with its voluntary agreement – this time the provision requiring litigation of all **<u>disputes</u>** in the "courts of California" – MerchSource used the extension (Appx56, Docket 18 and Appx57, Docket 22) to prepare PTAB Petitions challenging the validity of the patents. (Appx174, ¶48 and Appx368-369). MerchSource then used the threat of the PTAB Petitions to leverage a more favorable royalty rate (Appx172-173, ¶¶40-45 and Appx398), just as it had sought to achieve the summer before, through complaints that DODOCASE was not enforcing its intellectual property to a desired degree. (Appx169, ¶28). DODOCASE stood its ground.

DODOCASE sought injunctive relief from the District Court, which it obtained (Appx25-48) – but MerchSource appealed. (Appx534). During the delay of enforcement of the District Court's order, DODOCASE incurred significant expenses and fees hiring additional PTAB counsel and was then forced to file preliminary responses and face a second front of litigation.

**Exhibit 2**

Now, MerchSource asks this Court to reverse the District Court's well-reasoned and limited order, which only required that "MerchSource as the filing entity and real-party-in-interest ThreeSixty as necessary, are ORDERED to (1) send the email to the PTAB by Sunday March 25, 2018 requesting a conference call to facilitate the withdrawal of the PTAB Petitions, and (2) **if** the PTAB grants permission to file motions to dismiss the [PTAB Petitions], then file the motions by 12:00 p.m. on April 3, 2018." (Appx48, ll.13-17; emphasis added).

DODOCASE simply requests that this Court find that the District Court did not abuse its discretion and affirm the District Court's order so that the PTAB may consider the withdrawal requests and, if accepted, cease the irreparable harm of two-front litigation that DODOCASE continues to suffer.

## ARGUMENT

DODOCASE hereby submits this Answering Brief in opposition to [Second] [Corrected] Brief Of Appellant MerchSource, LLC ("Op.Br.").

## I.  STANDARD OF REVIEW

Both the Ninth Circuit and the Federal Circuit review the grant of a preliminary injunction motion for an abuse of discretion. *See Murata Machinery USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1363 (Fed. Cir. 2016). The grant of a preliminary injunction lies within the discretion of the district court, which may be reversed only where the district court relied on an erroneous legal premise or abused

**Exhibit 2**

its discretion. *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011). To

determine whether the district court abused its discretion, this Court "must consider

whether the decision was based on a consideration of the relevant factors and

whether there has been a clear error of judgment." *Id*. "A district court would

necessarily abuse its discretion if it based its ruling on an erroneous view of the law

or on a clearly erroneous assessment of the evidence." *Murata*, 830 F.3d at 1363.

## II.   THE DISTRICT COURT RELIED ON THE APPLICABLE LEGAL STANDARD

The District Court set forth the proper legal standard for issuance of a

preliminary injunction:

> A preliminary injunction preserves the status quo and the rights of the
> parties until a final judgment on the merits can be rendered. *See Granny
> Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local
> No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974); *U.S. Philips Corp.
> v. KBC Bank N.V.*, 590 F.3d 1091, 1093-94 (9th Cir. 2010). A
> preliminary injunction "should not be granted unless the movant, *by a
> clear showing*, carries the burden of persuasion." *Mazurek v.
> Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted)
> (emphasis in original).
>
> A "prohibitory" injunction restores the status quo as it existed before
> the controversy at issue arose. *See Pac. Sunwear of Cal. Inc. v. KP
> Fashion Co.*, 2009 WL 10670246, at *6 (C.D. Cal. Mar. 20, 2009)
> (finding that the plaintiff was seeking a prohibitory injunction to stop
> the defendant from infringing its trademarks, therefore restoring the
> status quo as it existed before the alleged infringement) (citing *Stanley
> v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (holding that a
> prohibitory injunction preserves the status quo *ante litem*); *GoTo.com,
> Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The
> status quo *ante litem* refers not simply to any situation before the filing
> of a lawsuit, but instead to 'the last uncontested status which preceded

**Exhibit 2**

the pending controversy' …") (citation omitted)). By contrast, a mandatory injunction goes beyond restoring the status quo that preceded the dispute and "orders a responsible party to 'take action.'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citation omitted)). The Ninth Circuit has held that mandatory injunctions, "which go[] well beyond simply maintaining the status quo [p]endente lite, [are] particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). *See also Garcia*, 786 F.3d at 740.

A plaintiff seeking a preliminary injunction must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Winter* [*v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)]. Alternatively, the plaintiff may demonstrate that the likelihood of success is such that "serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor," so long as the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

(Appx29-30).

## III.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION

The District Court thoroughly considered the facts of this case and applied those facts to the appropriate law including the *Winter* four-factor test. The District Court did not abuse its discretion – it based its decision on relevant factors and there was no clear error in judgment.

10

**Exhibit 2**

**A.   The District Court Did Not Abuse Its Discretion In Finding That DODOCASE Is Likely To Succeed On The Merits Of Its Breach Of Contract Claim For Violation Of The Forum Selection Clause.**

MerchSource argues that DODOCASE cannot succeed on the merits for two distinct reasons: (1) The PTAB Petitions do not fall within the scope of the MLA's forum selection clause (Op.Br.12); and (2) The MLA's forum selection clause is void as against public policy (Op.Br.6). Both arguments fail, even considering MerchSource's new matter not raised with the District Court.

The District Court engaged in extensive review of the parties' MLA, relevant facts from the pleadings, and applicable law (including over twenty cases) in finding that "[DODOCASE] has met its burden on the likelihood of success." (Appx32, ll.24-25).

**1.   The District Court Did Not Abuse Its Discretion In Holding That MerchSource's Validity Challenge "Arose Out Of Or Under" The MLA's Mandatory Forum Selection Clause.**

After finding that the forum selection clause of the MLA was mandatory rather than permissive,[3] the District Court correctly found that "the MLA provides

---

[3] MerchSource and ThreeSixty waived the issue but the District Court nonetheless properly found that the forum selection clause was "mandatory" because, inter alia, "it states that 'disputes *shall* be litigated' (emphasis added) in those courts, mandatory language akin to an express statement of exclusivity." (Appx34, ll.22-23; emphasis in original). MerchSource does not dispute the District Court's finding.

**Exhibit 2**

that 'the laws of the State of California shall govern any dispute *arising out of or under* this Agreement,' which 'disputes' 'shall be litigated before the courts in San Francisco County or Orange County, California.'" (Appx35, ll.19-22; emphasis by District Court; quoting Appx435, §13.4). The District Court then framed the relevant question as "whether the PTAB Petitions constitute a 'dispute' that 'aris[es] out of or under' the MLA." (Appx36, ll.2-3).

In an effort to distort the inquiry, MerchSource argues: "The PTO's reexamination of claims in a patent it originally granted <u>does not arise from or out of the MLA</u>; <u>does not depend on the MLA</u>; <u>does not require any analysis, construction, interpretation or enforcement of the MLA</u>; and, simply stated, <u>does not relate to the MLA</u>." (Op.Br.12; emphasis added). This argument without citation misrepresents the standard properly applied by the District Court to the facts of this case. The inquiry is not whether a PTAB *inter partes* <u>review</u> or post-grant <u>review</u> (not "reexamination") implicates the MLA; the inquiry is whether the dispute brought on by MerchSource – a dispute over the validity of the DODOCASE Patents – arises out of or under the MLA. In this case, MerchSource clearly raised a dispute under the MLA when it stated on November 17, 2017: "Attached is the royalty payment for Q3 pursuant to the [MLA], provided however MerchSource <u>considers the **dispute** over royalty rate and owed royalties</u> under the [MLA] outstanding and not yet resolved." (See Appx171, ¶34 and Appx305, ¶34; emphasis added).

**Exhibit 2**

While the November 17, 2017 language used by MerchSource suggests further efforts to renegotiate the license to more favorable terms rather than a full repudiation of the agreement based on invalidity, MerchSource subsequently made its "dispute" clear when it filed the PTAB Petitions on January 15, 2018 and in its subsequent counterclaims for invalidity. (See Appx404 and Appx318-320). MerchSource would have never filed the PTAB Petitions if it was not obligated to make royalty payments under the MLA (or if it had successfully renegotiated a more favorable royalty rate). In fact, MerchSource made clear that it would forego filing the PTAB Petitions if DODOCASE agreed to a lower royalty rate. (See Appx340, ll.3-27; Appx388; Appx392-393; and Appx395-402). Unsuccessful in its efforts to renegotiate a lower royalty rate, MerchSource subsequently filed counterclaims seeking invalidity determinations in the District Court (on the exact same grounds as the PTAB Petitions) while explicitly seeking to recover attorneys' fees related to its PTAB Petitions. (See Appx36, ll.19-26 and Appx318-320). Specifically, in its counterclaim, MerchSource "asks for an award of 'all costs, expenses and attorneys' fees, including all fees, costs and expenses associated with [the PTAB Petitions], as the prevailing party *pursuant to the MLA section 13.11*.'" (See Appx36, ll.22-24; emphasis by District Court; citing Appx321 and Appx436, §13.11).

Importantly, Section 13.11 of the MLA reads: "In the event litigation or other dispute resolution process is <u>necessary to enforce a provision or provisions of this</u>

13

**Exhibit 2**

Agreement, all costs, expenses and attorneys' fees shall be awarded to the prevailing Party." (Appx436; emphasis added). Thus, pursuant to Rule 11, Fed. R. Civ. P., MerchSource certified in its counterclaims that it had a good-faith basis for alleging that the PTAB proceedings were "necessary to enforce a provision or provisions" of the MLA. (See Appx36, ll.24-26 and Appx436, §13.11). MerchSource subsequently claimed, and continues to claim, that the validity dispute and the PTAB proceedings do not even relate to the MLA. (Op.Br.12). This change of position is not simply disingenuous; rather, this conduct demonstrates MerchSource's concerted efforts to use the MLA fee-shifting clause when it was beneficial (as leverage against a smaller company with fewer resources) but then refute the relationship between the PTAB Petitions and the MLA when that argument became more beneficial (in an effort to salvage the PTAB Petitions). The District Court was rightly unpersuaded. (See Appx37, ll.11-15).

While MerchSource's own counterclaims seeking attorneys' fees under the MLA expressly for pursuit of the PTAB proceedings are sufficient to reject its argument on appeal, the District Court found further support that the validity dispute arose out of or under the MLA. The District Court cited Ninth Circuit precedent holding that "the phrase 'any and all disputes arising under the arrangements contemplated hereunder' 'must be interpreted liberally.'" (Appx36, ll.9-10 (quoting

**Exhibit 2**

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 474 (9th Cir. 1991))).

The District Court further found "[t]hat the PTAB Petitions 'aris[e] out of or under' the MLA" as "substantiated by the fact that Defendant MerchSource's justification for its refusal to make royalty payments (an alleged breach of the MLA) is that the [DODOCASE] Patents are invalid and unenforceable." (Appx36-37, ll.27-1). Notably, "validity and enforceability are the same issues that Defendant MerchSource has placed before the PTAB." (Appx37, ll.3-4). Accordingly, the District Court reasoned:

> But for the parties' licensor-licensee relationship, and Defendants' interest in reducing or eliminating the royalties provided for under the MLA based on the claim of invalidity, there is no indication that Defendant MerchSource would be pursuing the PTAB proceedings at all, and, indeed, it only did so after this attempt to renegotiate the MLA based on alleged invalidity of the patents failed and Plaintiff [DODOCASE] filed this suit alleging breach of the MLA. Defendants' defense to this suit is that the patents are invalid, and they are attempting to use the PTAB proceedings to nullify Plaintiff's breach of contract or infringement claims here. <u>The claim of invalidity is impossible to disentangle from the question of whether Defendants may be liable in this case because Defendant MerchSource breached its obligations under the terms of the agreement.</u>

(Appx37, ll.4-13; emphasis added). The District Court also addressed and rejected MerchSource's "additional argument that the MLA's forum selection clause is not applicable to the PTAB proceedings because anyone, including uninterested parties, can initiate PTAB proceedings." (Appx37, ll.16-18). Specifically, the District Court

15

**Exhibit 2**

properly reasoned: "That others who are not subject to an exclusive forum selection clause are permitted to initiate PTAB proceedings does not resolve the question of whether Defendants are precluded from doing so based on the MLA's agreed-to forum selection clause." (Appx37, ll.18-21).

Despite the clarity and rigor of the foregoing analysis in the District Court's opinion, MerchSource assigns the following errors to the District Court:

First, MerchSource Argues:

> The district court disregarded *Manetti-Farrow*[, *Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988)], apparently because the specific venue language in *Manetti-Farrow* ("interpretation or fulfillment") differs from that in the MLA ("arising out of or under"). The district court erroneously ignored the large body of case law applying *Manetti-Farrow* to a broad range of clause language.

(Op.Br.14). The District Court certainly did not "disregard" *Manetti-Farrow*. While insignificant to MerchSource, the District Court's recognition of the distinction between the MLA in this case and the non-patent contract in *Manetti-Farrow* was important and well-reasoned. Simply stated, the terms of the forum selection clause matter and, in this case, the clause broadly covered "any dispute" "arising out of or under" the MLA. Moreover, the District Court did not "erroneously ignore[]" any large body of case law. In fact, MerchSource cites only one case that the District Court allegedly ignored – *Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, 2010 WL 5154136 (C.D. Cal. Aug. 12, 2010) – notably, however,

**Exhibit 2**

MerchSource did not cite that decision in the proceedings below. (See Appx279-280).[4]

Second, MerchSource Argues:

> [B]oth the district court and plaintiff ignored the significant fact that the forum selection clause [in *Callaway Golf Co. v. Kappos*, 802 F. Supp. 2d 678 (E.D. Va. 2011)] was broadly worded to expressly include[] disputes relating to "patents."[5]

(Op.Br.16). While MerchSource is correct that the *Callaway v. Kappos* clause covered disputes "arising out of or relating to patents," such distinction does not make the District Court's ruling erroneous here – as set forth above, the MLA's language is also broad and covers "any disputes," including disputes about claims of invalidity (which resulted in non-payment of owed royalties). *Callaway v. Kappos*

---

[4] MerchSource later cites *Sanford L.P. v. Esselte AB*, No. 1:14-cv-07616-VSB, Memorandum and Order (S.D. N.Y. Sep. 16, 2015) as comprising a legal analysis similar to *Manetti-Farrow*, (Op.Br.15), but misrepresents the facts of that case. There, the agreement at issue was a pre-AIA, ninety-page, Stock Purchase Agreement. (*Sanford*, Appx417). After confirming that "[t]he relevant issue in this case is not whether the *patents* at issue in IPR bear some relation to the SPA, but whether the '*claims*' asserted in IPR are related to the SPA," the court found that the PTAB claims had no relationship to any substantive provisions of the agreement. (*Sanford*, Appx421, Appx423; emphasis in original). Here, the "claims" at issue in MerchSource's PTAB Petitions are the "validity" of the DODOCASE Patents, which claims of invalidity, if proven, would relieve MerchSource of its obligations to pay royalties under the MLA. Accordingly, the District Court was correct in finding that the PTAB proceedings in this case did arise out of or under the MLA. The validity of the DODOCASE Patents are at the core of the MLA.

[5] While MerchSource cited *Callaway v. Kappos* below, it never raised this new argument. (See Appx283; Appx289; and Appx296).

**Exhibit 2**

is also easily distinguished as it involved a would-be order directed to the Patent

Office, specifically, an order by a district court enjoining the Patent Office from

conducting a <u>reexamination</u> that it had already decided to pursue. Here, however,

the District Court's order is directed to MerchSource alone, requiring only

MerchSource to take action that would set the stage for the Patent Office to decide

whether to terminate the PTAB proceedings or engage in further consideration.

<u>Third, MerchSource Argues</u>:

> In its reliance on *General Protecht* [*Grp. Inc. v. Leviton Mfg. Co., Inc.*,
> 651 F.3d 1355 (Fed. Cir. 2011)] the district court failed to appreciate
> the material differences between assertions of infringement and
> invalidity.

(Op.Br.18-19). Contrary to MerchSource's contention, the District Court did not rely

on *General Protecht* with respect to the issue of whether the "dispute" language from

the forum selection clause encompasses validity challenges. Rather, the District

Court relied on *General Protecht* with respect to the other three *Winter* factors

(irreparable harm (Appx42-44), balance of hardships (Appx44), and public interest

(Appx44-45)).

<u>Fourth, MerchSource Argues</u>:

> The district court's analysis is backwards and incorrect: the proper
> inquiry is whether a PTAB invalidity challenge "arises out of or under"
> the parties' license, not whether the district court case will be impacted
> by the outcome of a PTAB proceeding. The district court's analysis was
> fatally flawed in that it wrongly focused on the district court action and
> not on the PTAB proceedings.

**Exhibit 2**

(Op.Br.20). As set forth above, MerchSource misstates the proper analysis. The question is not whether the PTAB proceedings arise out of or under the MLA – the issue is whether MerchSource's invalidity challenge is a dispute that arose out of or under the MLA. The District Court properly concluded that MerchSource's invalidity challenge (leveraged to justify non-payment of royalties) did arise out of or under the MLA. (Appx37, ll.11-15). The District Court did not focus on the impact of the PTAB proceedings on the district court litigation; rather, it focused on the language of the MLA and the facts of this case that gave rise to the parties' dispute.

Fifth, MerchSource Argues:

> Further, although the issue and cases were neither raised nor briefed by the parties below, the district court's reliance on arbitration clause cases was misplaced. None of the cited cases were directed at patents or patent invalidity, and none held that a PTAB validity review "arises out of or under" any contract. These cases do not support the district court's erroneous conclusion.

(Op.Br.20-21). The District Court was reasonable in relying on arbitration clause cases to better analyze the scope of the language of the MLA forum selection clause. In fact, the court in MerchSource's oft-cited *Manetti-Farrow* decision undertook the same analysis. 858 F.2d 509, 514, fn. 4 (9th Cir. 1988) ("Although *Mediterranean [Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983)] involved interpretation of the scope of an arbitration clause, we apply its analysis here because an agreement to arbitrate is actually a specialized forum selection clause.").

19

**Exhibit 2**

Moreover, MerchSource surprisingly claims that these cases should be disregarded because "[n]one of the cited cases were directed at patents or patent invalidity." (Op.Br.21). Under this metric, this Court should ignore MerchSource's extensive reliance on *Manetti-Farrow* and any other cases unrelated to patents.

Sixth, MerchSource Argues:

> The language of the MLA forum selection clause is clear. And, as a matter of law, PTAB challenges do not "arise out of or under" the MLA. Accordingly, the venue clause does not cover PTAB proceedings, the district court's misapplication of the law was clear error, and the preliminary injunction should not have been granted.

(Op.Br.21). The language of the forum selection clause is clear … and broadly covers "any disputes" "arising out of or under" the MLA. MerchSource cites no authority for the bold contention that "as a matter of law, PTAB challenges do not 'arise out of or under' the MLA." (Op.Br.21). Regardless, that is not the proper inquiry. The proper inquiry is whether the challenge to validity (to avoid payment of royalties under the MLA) is a "dispute" that "arose out of or under" the MLA (a patent license agreement that requires payment only if the patents are valid). (See Appx432-433, §8.2 ("This Agreement shall automatically terminate upon the … invalidity and unenforceability of the Licensed IP.")). The District Court did not err in applying the facts to the applicable law, and the issuance of the preliminary injunction was entirely proper (and certainly not an abuse of discretion).

**Exhibit 2**

In light of applicable law and the facts of this case, which the District Court considered thoroughly, the District Court did not abuse its discretion in concluding that "the PTAB Petitions 'aris[e] out of or under' the MLA and the licensee's rights and obligations created by that agreement." (Appx37, ll.13-15). The MLA granted MerchSource the right to use the patented inventions and created a corresponding obligation to pay for that use for the life of the agreement, which would immediately terminate if the DODOCASE Patents were found invalid. (See Appx432-433, §8.2). Desiring to extinguish its obligations under the MLA, MerchSource challenged the validity of the DODOCASE Patents, violating §6.4 of the MLA, (Appx432), and violating the forum selection clause by pursuing that challenge with the PTAB rather than the agreed-upon forum of the courts in California, (see Appx435, §13.4). If the DODOCASE Patents were found invalid, MerchSource's obligations under the MLA would drastically change, or be eliminated; thus, the "dispute" over validity raised by MerchSource necessarily arises out of or under the MLA.

> ### 2.  The District Court Did Not Abuse Its Discretion In Finding The Forum Selection Clause Enforceable.

The District Court considered and rejected MerchSource's argument that the forum selection clause is unenforceable due to a strong public policy of permitting the Patent Office to correct its mistakes. (Appx37-42). The District Court relied on relevant precedent holding that "[f]orum selection clauses are 'presumptively valid'

**Exhibit 2**

and are fully enforced 'absent some compelling and countervailing reason.'"
(Appx37, ll.24-25); quoting *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140
(9th Cir. 2004) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12
(1972))). The District Court then engaged in a several-page discussion of the public
policy issue. (Appx37-42). Therein, the District Court properly identified the
decision in *Callaway Golf Co. v. Acushnet Co.*, 523 F. Supp. 2d 388, 407 (D. Del.
2007), rev'd in part on other grounds, 576 F.3d 1311 (Fed. Cir. 2009), which
concluded "that Acushnet 'violated the Agreement by filing the inter partes
reexaminations to contest the validity of the Sullivan patents.'" (Appx39-40, ll.28-
2). The District Court further noted that, in *Callaway v. Acushnet*, the trial court
granted summary judgment finding breach of contract for which defendant may be
liable. (Appx40, l.5). The District Court also noted the unique procedural posture of
*Callaway v. Kappos* that prevented dismissal of the PTO proceedings:

> Essentially, the court concluded that it could not vacate the PTO's
> ruling because the PTO had no duty to walk away from an already
> instituted reexamination in light of its statutory obligations. That is in
> sharp contrast with the procedural posture of the proceedings before the
> PTAB in this case, which has not yet determined if it will even review
> the [DODOCASE] Patents. It also does not indicate that this Court
> should refuse to enforce the forum selection clause here *before* the
> PTAB has decided whether to review the patents, in light of a valid
> forum selection clause that provides for litigating validity here, and the
> public policy generally favoring enforcement of such clauses.

(Appx40, ll.12-19; emphasis by District Court). Further addressing MerchSource's
public policy argument, the District Court rightly noted:

22

**Exhibit 2**

> As the court recognized in the Delaware proceedings in *Callaway* [*v. Acushnet*] when it enforced the forum selection clause, the public interest is not compromised because other third parties may still challenge the validity of the [DODOCASE] Patents through the PTAB, even if Defendants have bargained away their opportunity to do so. *See Callaway* [*v. Acushnet*], 523 F. Supp. 2d at 407.

(Appx41, ll.4-8). Finally, the District Court considered and rejected MerchSource's argument that it would be denied its "day in court" if the forum selection clause was enforced. (Appx41-42). Specifically, the District Court noted that district courts are authorized to decide patent validity challenges and rejected the "belated attempt at forum shopping" due to a preference for one forum over the other. (Appx41, ll.25-26). Noting that MerchSource was aware of the availability of PTAB proceedings when it entered into the MLA, the District Court found no countervailing reason sufficient to preclude enforcement of the forum selection clause, found that its scope includes the PTAB proceedings, and held that DODOCASE demonstrated a likelihood of success on its breach of contract claim. (Appx42, ll.5-9).

MerchSource cannot persuasively argue that the District Court abused its discretion in issuing an opinion that comprised over ten pages of detailed factual and legal analysis, including reference to approximately two dozen cases. The District Court considered and addressed each of MerchSource's arguments and rejected them based on the facts of this case as applied to relevant precedent. The simple fact remains that MerchSource breached the MLA's forum selection clause by filing the PTAB Petitions – an effort to shop for a forum perceived as more favorable and/or

23

**Exhibit 2**

to impose further legal expense on DODOCASE after DODOCASE filed suit in a California court per the MLA. While this situation is similar to the case of *Callaway v. Acushnet* (which found breach of contract for violation of a forum selection clause on summary judgment), it possesses important distinctions from *Callaway v. Kappos* (which decided not to vacate <u>reexamination</u> proceedings), including, that the PTAB Petitions are <u>reviews</u> and DODOCASE raised the issue of termination with the District Court before the PTAB made any decision as to institution. Thus, the District Court was well within its authority to enjoin MerchSource from pursuing the PTAB proceedings. And, unlike *Callaway v. Kappos*, the District Court below did not, and was not requested to, issue any order directing the Patent Office to take (or not take) any specific action – the decision to consider the PTAB Petitions remains with the PTAB even if the District Court's order is affirmed and enforced.

Despite the District Court's reasoned analysis of the public policy issue, MerchSource assigns the following error to the District Court:

<u>MerchSource Argues</u>:

> Thus, the district court's Order was contrary to conclusions of the PTO and another district, both of which rejected a patentee's attempt to use a forum selection clause to preclude review of patents by the PTO.

(Op.Br.24). MerchSource's contention is misplaced. MerchSource's argument relies upon two matters readily distinguishable from the present case: *In re Callaway Golf Co.*, *Inter Partes* Reexamination Proceeding, Control Nos. 95/000,120, 95/000,121,

24

**Exhibit 2**

95/000,122 and 95/000,123 (Office of Patent Legal Admin.) ("*In re Callaway*") and *Callaway v. Kappos*. *In re Callaway* involved a PTO denial of patent-owner's reconsideration request to vacate reexamination proceedings, (*see*, *e.g.*, *In re Callaway*, Control No. 95/000,122, Decision Denying Petition for Reconsideration and Returning Improper Paper (Sep. 7, 2006), p.1, Appx538): (a) "because the Office was not, and is not, a party to the settlement agreement, the Office was not, and is not, bound by the settlement agreement," (*id*. p.7, Appx544); and (b) because the settlement agreement at issue there "was entered into in 1996, *prior to* the enactment in 1999 of the statute authorizing *inter partes* reexamination," (*id*. p.8, Appx545; emphasis in original). Thereafter, the district court in Virginia refused to enter an injunction that would have forced the Patent Office to vacate the reexamination. *Callaway v. Kappos*, 802 F. Supp. 2d at 691.

The present case is distinct. Setting aside the differences between reexamination (*Callaway v. Kappos* and *In re Callaway*) and *inter partes* and post-grant review proceedings (here)[6], this case has distinguishing facts and a different procedural posture. First, the District Court's injunction does not seek to bind the

---

[6] MerchSource's frequent labeling of its *inter partes* review and post-grant review proceedings as "reexaminations" amounts to intentional misnomer. In fact, *inter partes* reexaminations no longer exist. (See 37 C.F.R. § 1.913 ("Any request for *inter partes* reexamination submitted on or after September 16, 2012, will not be accorded a filing date, and any such request will not be granted.")).

25

**Exhibit 2**

PTAB; rather, it only binds MerchSource to the MLA into which it freely entered. Second, the MLA in this case was entered into in 2016, after the enactment of the AIA providing for *inter partes* review in 2011. Third, the PTAB has not instituted any proceedings in this case (unlike in *Callaway v. Kappos* and *In re Callaway* where an order to reexamine had issued) and, therefore, has no obligation to continue with a review that has not commenced. This timing distinction and the attempt to force the PTO to take specific action (as a non-party to the agreement) were significant factors for the ruling in *Callaway v. Kappos*.[7] Here, the District Court's order below was issued before institution (which has still not occurred as of the filing of this brief) and directed solely to MerchSource – without any obligations placed upon the PTAB.

While *In re Callaway* and *Callaway v. Kappos* did not terminate the reexamination proceedings, the Delaware proceeding did confirm that DODOCASE is likely to succeed on the merits of its breach of contract claim. *Callaway v.*

---

[7] When the District Court's injunction first issued, DODOCASE had not yet filed Preliminary Responses to the PTAB Petitions. In view of this Court's temporary stay of the injunction, DODOCASE was required to file its Preliminary Responses. As of the filing of this Answering Brief, the PTAB has yet to decide whether it will institute the PTAB Petitions. Even if the PTAB decides to institute any proceedings before this Court issues a ruling on appeal, it would still be appropriate for this Court to affirm the District Court's order and require MerchSource to file motions to withdraw with the PTAB – thus enabling the PTAB to consider the propriety of continuing any such instituted proceedings.

**Exhibit 2**

*Acushnet*, 523 F. Supp. 2d at 406. The Delaware district court, considering a breach of contract claim for violation of the forum selection clause, noted: "the court owes no deference to the PTO's interpretation of the legal effect of the Agreement or, more generally, the legality of a provision that purports to prevent parties from filing *inter partes* reexaminations." *Id*. at 405. The Delaware decision further notes:

> Section 19.7 of the Agreement is akin to a forum selection clause; the parties have not contracted away their rights to contest the validity of each other's patents, but have agreed to do so before a court, rather than before the PTO. The parties' interest in adjudicating the validity of the issued patents is not compromised. The public interest is not compromised here, as the public is not a party to the Agreement, and other third parties may still challenge the validity of the parties' patents through reexamination.

*Id*. at 406-407. Any contrary holdings in the Virginia or PTO decisions are not binding on this Court (especially given that those decisions were based on a PTO reexamination process rather than a PTAB review process) and were the result of different factual considerations not present here. Moreover, MerchSource's citation to *Callaway v. Kappos* does no more than rely on *Lear v. Adkins*, 395 U.S. 653 (1969), which is not a bright-line admonishment of no-challenge provisions.[8] As

---

[8] See, e.g., *TMI Prods., Inc. v. Rosen Elecs., L.P.*, 2013 WL 12114078, **3-4 (C.D. Cal. Nov. 27, 2013) ("Courts have interpreted *Lear v. Adkins* to require a balancing approach" … "In the decades following *Lear*, federal courts have identified additional policies courts must weigh before deciding whether a licensing contract bars an invalidity defense" … "courts have implicitly recognized that the policies underlying contract doctrine, which favor the enforcement of voluntary private

**Exhibit 2**

with the Delaware *Callaway v. Acushnet* decision, the District Court in this case considered the facts, engaged in extensive legal analysis, and properly determined that no public policy was frustrated by the parties' voluntary agreement to pursue disputes in the courts of California. (Appx39-42). Under the District Court's order, MerchSource still possesses a forum to challenge the validity of the DODOCASE Patents, which challenge (if successful) will continue to promote the public policy argued by MerchSource – DODOCASE is ready and willing to defend its patents in the agreed-upon forum.

The District Court did not abuse its discretion and MerchSource cites no law requiring the District Court to be bound by the decisions of a Virginia court or the PTO – especially given the factual and procedural distinctions.[9] To reiterate, the District Court's order, challenged on appeal, does not attempt in any way to direct the PTAB to take (or not take) any action – the order is directed solely to

---

agreements, are more compelling in cases where a party has clearly and voluntarily agreed not to challenge a patent's validity").

[9] See *Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 922 (E.D. Va. 2013) ("The Court disagrees with Plaintiff's argument and declines to follow the holding in *Callaway* [*v. Kappos*]. In addition to the fact that decisions of district courts, even this Court, are persuasive and perhaps instructive but not binding, *Callaway* [*v. Kappos*] is especially distinguishable because the Court's conclusion in that case relied upon a statute that differs from and predates the passage of the AIA, which controls this matter.").

28

**Exhibit 2**

MerchSource, the party to the MLA that contains the forum selection clause at issue (and affiliate/real-party-in-interest ThreeSixty).

The District Court engaged in extensive analysis, spanning several pages, addressing MerchSource's public policy argument. Absent binding case law with similar factual and procedural history – which MerchSource has not identified – the District Court was well within its discretion to find that DODOCASE was likely to succeed on the merits of its breach of contract claim for MerchSource's violation of the forum selection clause.

### B.   The District Court Did Not Abuse Its Discretion Regarding The Remaining Three Factors.

MerchSource's main contention is that the District Court erred in determining the scope of the MLA, which "infected the analysis of the other" *Winter* factors. (Op.Br.27-28). Again, MerchSource misstates the applicable analysis when it faults the District Court for analyzing each factor from "the starting point that the PTAB invalidity proceedings arouse out of or under the MLA." (Op.Br.27-28). As set forth above, the pertinent inquiry is whether the "dispute" "arose out of or under" the MLA. Here, the "dispute" is MerchSource's challenge to the validity of the patents in an effort to avoid its obligations and duties under the MLA (including the payment of royalties). The District Court properly ascertained that the "dispute" "arose out of or under" the MLA because "[t]he claim of invalidity is impossible to disentangle from the question of whether Defendants may be liable in this case because

29

**Exhibit 2**

Defendant MerchSource breached its obligations under the terms of the agreement."

(Appx37, ll.11-13).

The District Court's well-reasoned analysis based on the facts of this case was not erroneous and its determination of the scope of the MLA was not "mistaken." As set forth below, the District Court properly considered the remaining factors, and addressed MerchSource's arguments. After thorough consideration of the facts and law, the District Court properly ruled – within its discretion – that DODOCASE established each of the *Winter* factors.

### 1. The District Court Did Not Abuse Its Discretion In Finding That DODOCASE Would Suffer Irreparable Harm.

In arguing abuse of discretion, MerchSource challenges only the District Court's reliance on *General Protecht*. (Op.Br.29,33). Specifically, MerchSource faults the District Court for "read[ing] too much into that case," (Op.Br.29), and "reading [it] so broadly as to find a PTAB proceeding to constitute irreparable harm," (Op.Br.33). MerchSource is mistaken.

The District Court engaged in an extensive analysis of the facts of this case in view of the precedent provided by this Court in *General Protecht*. (Appx42-44). The District Court first noted that "the district court found that 'litigating simultaneously in California and the ITC will cause financial and business hardship … [and that] the inconvenience and disruption to its business is irreparable,'" a ruling upheld by

30

**Exhibit 2**

this Court. (Appx42-43, ll.28-2). Rather than cease its inquiry there, the District Court then assessed several factors in *General Protecht* and compared them to this case:

> The same concerns that amounted to irreparable harm in [*General Protecht*] are also present here. Plaintiff has filed a declaration by its chairman and co-founder about the disruption of the business and the financial hardship it will face if the PTAB proceedings continue. Principally, he states that [DODOCASE] only has four employees and limited resources. *See* Buckley Decl., ¶¶1-7. Plaintiff has also been put to the added expense of hiring specialized attorneys to respond to the PTAB Petitions. *Id*. Moreover, he explains that the PTAB proceedings will materially disrupt [DODOCASE's] business because it will prevent it from effectively enforcing its patent rights, which will diminish its market position. *Id*. As the district court recognized in [*General Protecht*] and the Federal Circuit agreed, these hardships are manifest in the need to defend a challenged patent on multiple fronts at the same time.

(Appx43, ll.5-14; citing Appx425-426, ¶¶1-7). Thus, the District Court considered the facts establishing hardship, based on a sworn declaration from DODOCASE, and properly exercised its discretion in finding irreparable harm. Moreover, the District Court considered the differences between *General Protecht* and the present case, specifically addressing the nature of ITC proceedings:

> Although [*General Protecht*] involved a parallel ITC proceeding, current PTAB proceedings are much closer to the rigor of ITC proceedings than the previous versions of inter partes review. A slightly reduced degree of harm, if any, that arises from this distinction does not cure the fundamental irreparable harm caused by requiring Plaintiff to simultaneously litigate on two fronts with different attorneys and under different rules instead of preventing Plaintiff from obtaining the benefit of its contracted-for exclusive dispute resolution process.

31

**Exhibit 2**

(Appx43, ll.16-21). Accordingly, the District Court did not ignore MerchSource's arguments but, rather, considered those arguments and rejected them based on the facts of the case as applied to the precedent set forth by this Court. Moreover, MerchSource's argument is rebutted by *Sanford* (relied upon by MerchSource elsewhere), which addressed a preliminary injunction to enjoin participation in an *inter partes* review before the PTAB:

> [The defendant] does not address the underlying principle of each of these cases, i.e., that a party's contractual right to resolve disputes in its bargained-for forum cannot be vindicated if the party is forced to litigate on two fronts with a risk of inconsistent rulings. See [*General Protecht*], 651 F.3d at 1363; *Int'l Fashion Prods.* [*B.V. v. Calvin Klein, Inc.*, 1995 WL 92321, *2 (S.D. N.Y. Mar. 7, 1995)]. Put differently, if litigation is permitted to proceed in a second forum, the benefit of a forum selection clause is irreparably lost. Therefore, consistent with these cases, I find that DYMO will likely suffer irreparable injury during the pendency of this litigation if Esselte's pursuit of IPR breaches the Forum Selection Clause in the SPA.

(Appx351; quoting *Sanford*, Appx412). Regardless of the location of the second forum, *Sanford* reiterates that the bargained for benefit of the forum selection clause is irreparably lost when a party to the agreement shops for a different forum.

MerchSource's real complaint appears to be that "[a] patentee obtains its patent subject to having it subsequently reviewed." (Op.Br.33). Essentially, MerchSource contends that PTAB proceedings cannot constitute irreparable harm because patentees should expect the need to defend their patents after issuance. Setting aside the fact that such argument eviscerates the presumption of validity

32

**Exhibit 2**

codified in the Patent Act, 35 U.S.C. § 282 ("A patent shall be presumed valid."),
MerchSource continues to ignore the fact that the parties voluntarily negotiated a
license agreement that restricted disputes to the courts in California. While a
patentee must certainly be prepared to defend its patent rights, it should not be
required to defend those rights in the PTAB (and the district court simultaneously)
when it bargained for the sole forum of the courts. In this case, DODOCASE does
not seek to avoid an invalidity challenge; rather, it only asks that MerchSource
pursue that challenge in the District Court in accordance with the terms of the MLA.
And, MerchSource has a more-than-adequate forum to pursue its pending invalidity
claims – the District Court below. In fact, DODOCASE offered to stipulate, based
on its strong belief in the validity of the DODOCASE Patents, that MerchSource
could bring a summary judgment motion for invalidity in the District Court on an
accelerated basis. (Appx265, fn.1). DODOCASE contends that such a protocol
would have avoided the potential for inconsistent rulings and resulted in a more
expedient final determination of validity than MerchSource's chosen course of
multi-front litigation at the PTAB, District Court and this Court on appeal.

MerchSource has not set forth any error or abuse of discretion by the District
Court. While MerchSource disregards *Sanford* and asks this Court to ignore *General
Protecht*, MerchSource fails to identify any contrary law that the District Court
failed to consider. Instead, MerchSource cites *Oil States Energy Services, LLC v.*

33

**Exhibit 2**

*Greene's Energy Group, LLC*, - U.S. -, 138 S. Ct. 1365 (2018); yet that decision did not address "irreparable harm." Rather, that case and others are cited by MerchSource solely to argue that the PTAB is a good forum for patent validity disputes. Setting aside DODOCASE's disagreement regarding the alleged "efficiency" of the PTAB (*e.g.*, situations where the challenger is unsuccessful and the parties expend considerable resources only to then have the challenger return to the district court and start from scratch), any such benefits of the PTAB are irrelevant because the parties bargained to settle all disputes in the courts of California. In fact, MerchSource's underlying argument appears to be that the PTAB is perceived as more favorable, (see Op.Br.31, fn.69 (noting different claim construction standards)), which demonstrates MerchSource's clear desire to engage in forum shopping.

For the foregoing reasons, the District Court did not abuse its discretion and its finding of irreparable harm (based on the facts of the case and applicable law) should not be disturbed.

**2.    The District Court Did Not Abuse Its Discretion In Finding That The Balance Of Equities Tips In DODOCASE's Favor.**

As a preliminary matter, MerchSource misstates this *Winter* factor in claiming that "[t]he district court erred in finding that MerchSource would not suffer any hardship by the grant of the injunction." (Op.Br.33). This is not the proper inquiry.

34

**Exhibit 2**

The inquiry necessary to grant an injunction, as correctly noted by the District Court, is whether "the balance of equities tips in [] favor" of the party seeking the injunction. (Appx44, ll.7-8).

Accordingly, the District Court considered the hardship to DODOCASE, including the issues addressed with respect to the "irreparable harm" factor (namely, litigating on two fronts, added expense, delay, and potential for inconsistent results). (Appx44, ll.8-9). The District Court also rejected DODOCASE's equitable arguments regarding the questionable behavior of MerchSource during the course of the litigation. (Appx44, ll.11-12).

The District Court then considered any hardship to MerchSource, namely (a) the contention that it would be foreclosed from pursuing PTAB review in light of the time bar set forth in 35 U.S.C. § 315(b); and (b) the argument that it would deprive them of the unique aspects of PTAB review. (Appx44, ll.18-22).

The District Court considered the competing positions and noted that MerchSource cannot claim hardship resulting from enforcement of an agreement into which it freely entered. (Appx44, ll.22-24). Put another way, MerchSource's only basis of hardship is that it will lose the ability to forum shop – an ability that it never possessed because it voluntarily agreed to resolve all disputes in the courts of California. MerchSource cannot claim hardship for "losing" something it never had. Based on the facts of the case (including the real and substantial hardship faced by

35

**Exhibit 2**

DODOCASE) and the arguments of MerchSource, the District Court exercised its discretion in finding that the balance of hardships tips in favor of granting the injunction. (Appx44, ll.24-25).

MerchSource raises new argument and case law to contend: "But this factor is intended to weigh the relative hardships should the court err: the movant's harm without an injunction compared to the non-movant's harm from a wrongfully-issued injunction." (Op.Br.33; citing *Stormans, Inc. v. Selecky*, 571 F.3d 960, 987-88 (9th Cir. 2009)). Regardless of its belatedness, this new citation does not support MerchSource's sweeping proposition; rather, the exact quote from *Stormans* states: "In assessing whether the plaintiffs have met this burden, the district court has a 'duty … to balance the interests of all parties and weigh the damage to each.'" *Stormans*, 571 F.3d at 987-88. This simply restates the very standard applied by the District Court. Here, the District Court considered the harm to DODOCASE if the injunction did not issue, considered the harm to MerchSource if the injunction did issue, balanced the competing hardships, and ruled in favor of DODOCASE. In effect, MerchSource claims that the PTAB is better-equipped than district courts to deal with validity issues – an attorney argument unsupported by any objective facts (and presumably rebutted by the numerous district courts that handle myriad patent cases each year). Yet, DODOCASE has advocated prompt resolution of the validity

**Exhibit 2**

issue at the District Court, (see Appx265, fn.1); thus, any perceived harm to MerchSource is minimal at best.

Absent some identification of clear error in assessing the facts or applying those facts to the law (which MerchSource has not, and cannot, show), the District Court's ruling should not be disturbed.

> **3.     The District Court Did Not Abuse Its Discretion In Finding That The Injunction Is In The Public Interest.**

MerchSource argues that "the district court later erred by finding no public interest in having the PTAB review its previous grants of the patents." (Op.Br.34). Again, MerchSource misrepresents the ruling of the District Court. In fact, the District Court considered MerchSource's public-interest argument but determined that (a) "<u>This Court is an adequate forum</u> for Defendants to challenge the validity of the [DODOCASE] Patents"; and (b) "nothing prevents an independent third party from initiating separate PTAB proceedings." (Appx45, ll.3-7; emphasis added). In other words, the District Court did not find "no public interest" but, rather, determined that the public interest was still satisfied because (a) MerchSource could continue challenging the validity of the patents in the courts of California (where DODOCASE has even advocated for early summary judgment to promote efficiency) in accordance with its counterclaims; and (b) others that were not

**Exhibit 2**

contractually bound to challenge validity in the courts of California were free to pursue such challenges in the PTAB.

Thus, the District Court properly considered MerchSource's argument of public interest but properly ascertained that the public interest (namely, invalidating invalid patents) could still be satisfied in the Northern California District Court (which has extensive experience in resolving patent validity disputes and specialized local patent rules designed to facilitate such resolution) or, at the PTAB by others. The District Court then considered the other public interest raised by DODOCASE, namely that issuing an injunction vindicates the rights and obligations of the parties to a contract. (Appx44-45, ll.27-1). Balancing these competing interests, the District Court determined that "granting the injunction protects the rights of parties to freely contract for a chosen forum and the ability of courts to enforce such agreements." (Appx45, ll.4-6).

Interestingly, MerchSource argues that "[t]here is no countervailing, critical public interest favoring plaintiff. The generic public interest in enforcing contractual provisions and forum selection clauses … is a weak interest at best." (Op.Br.37). MerchSource's disregard for contract rights has been made abundantly clear – commencing with its efforts to renegotiate the contract to a lower royalty rate, its threats to impute a zero royalty if DODOCASE did not sue third parties immediately

**Exhibit 2**

(a non-obligation), and its challenge to the validity of the patents after its initial extortion efforts failed. (Appx169-173, ¶¶27-47).

While MerchSource may believe that contract rights should be weak at best, DODOCASE and several courts disagree. *See*, *e.g.*, *Murphy*, 362 F.3d at 1140 (forum selection clauses are "presumptively valid" and are fully enforced "absent some compelling and countervailing reason"); *Bremen*, 407 U.S. at 12 (same).

The District Court properly weighed the public interest argument of MerchSource with the public interest advocated by DODOCASE. Within its sound discretion, the District Court properly ascertained that the public interest in enforcing contracts was stronger in this case. Specifically, the public right to freely contract and have those contracts enforced represents a real public interest that would indisputably suffer if an injunction did not issue in this case; on the other hand, the public interest in invalidating invalid patents, while certainly important, was not a real interest based on the facts of this case because such interest was not foreclosed by the grant of an injunction.

Accordingly, the District Court did not err, did not abuse its discretion, and properly found in favor of DODOCASE. Such decision, based on the facts of the case and applicable law, should not be disturbed.

**Exhibit 2**

## CONCLUSION

For the reasons set forth above, DODOCASE respectfully requests that this Court deny MerchSource's request to reverse the District Court's grant of the preliminary injunction.

Specifically, DODOCASE requests that this Court affirm the District Court's order requiring only that: (1) MerchSource promptly send an email to the PTAB requesting a conference call to facilitate the withdrawal of the PTAB Petitions; and (2) **if** the PTAB grants permission to file motions to dismiss the PTAB Petitions, that MerchSource promptly file motions for the PTAB's consideration.

Dated: July 17, 2018                    Respectfully submitted,

*/s/ Timothy J. Haller*
Timothy J. Haller
HALLER LAW PLLC
53 West Jackson Boulevard, Suite 1623
Chicago, IL 60604
haller@haller-iplaw.com
(630) 336-4283

Gabriel I. Opatken
NOBLE IP LLC
418 North Noble Street, Suite 4
Chicago, IL 60642
gabriel@nobleipllc.com
(773) 648-5433

*Counsel for Plaintiff-Appellee,*
*DODOCASE VR, Inc.*

**Exhibit 2**

FORM 30. Certificate of Service

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on    July 17, 2018
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

| Timothy J. Haller | /s/ Timothy J. Haller |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | HALLER LAW PLLC |
| Address | 53 West Jackson Boulevard, Suite 1623 |
| City, State, Zip | Chicago, IL 60604 |
| Telephone Number | (630) 336-4283 |
| Fax Number | (312) 944-8861 |
| E-Mail Address | haller@haller-iplaw.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

**Exhibit 2**

**FORM 19. Certificate of Compliance With Rule 32(a)**

Form 19
Rev. 12/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.   This brief complies with the type-volume limitation of Federal Rule of Federal Circuit Rule 32(a) or Federal Rule of Federal Circuit Rule 28.1.

☒   This brief contains   *[state the number of ]* 9,653 _____ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), or

☐   This brief uses a monospaced typeface and contains   *[state the number of ]* _____

lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.   This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒   This brief has been prepared in a proportionally spaced typeface using

*[state name and version of word processing program ]*  Microsoft Word _____ in

*[state font size and name of type style ]*  14 point, Times New Roman _____ , or

☐   This brief has been prepared in a monospaced typeface using

*[state name and version of word processing program ]* _____ with

*[state number of characters per inch and name of type style ]* _____ .

/s/ Timothy J. Haller
_____
(Signature of Attorney)

Timothy J. Haller
_____
(Name of Attorney)

Counsel for Plaintiff-Appellee, DODOCASE VR, Inc.
_____
(State whether representing appellant, appellee, etc.)

Jul 17, 2018
_____
(Date)

[ Reset Fields ]

**Exhibit 2**