EXHIBIT 3

# 18-1724

# United States Court of Appeals
# for the Federal Circuit

DODOCASE VR, INC., fka Dodocase, Inc.

*Plaintiff-Appellee,*

v.

MERCHSOURCE, LLC, dba Sharper Image,

*Defendant-Appellant*,

THREESIXTY BRANDS GROUP, LLC, dba Sharper Image,

*Defendant*

*Appeal from the United States District Court
for Northern District of California in No. 3:17-cv-07088-EDL
Magistrate Judge Elizabeth D. Laporte*

## REPLY BRIEF OF APPELLANT MERCHSOURCE, LLC

MARK C. JOHNSON
KYLE B. FLEMING
RENNER OTTO
1621 Euclid Avenue, Floor 19
Cleveland, Ohio 44115
Telephone: (216) 621-1113
Facsimile: (216) 621-6165

*Counsel for Defendant-Appellant MerchSource, LLC*

Date: July 30, 2018

**Exhibit 3**

FORM 9. Certificate of Interest                                                    Form 9
                                                                                   Rev. 10/17

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Dodocase VR, Inc. _____   v.   MerchSource, LLC _____

Case No. __18-1724__

### CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ■ (appellant) ☐ (respondent) ☐ (appellee) ☐ (amicus) ☐ (name of party)

MerchSource, LLC _____

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| MerchSource, LLC | None | None |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:
None

**Exhibit 3**

Case: 18-1724    Document: 37    Page: 3    Filed: 07/30/2018

**FORM 9. Certificate of Interest**                                      **Form 9**
                                                                          **Rev. 10/17**

---

5.    The title and number of any case known to counsel to be pending in this or any other court or agency
that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir.
R. 47. 4(a)(5) and 47.5(b).  (The parties should attach continuation pages as necessary).
DODOCASE VR, INC. v. MERCHSOURCE, LLC, et al, United States District Court for the Northern District of
California case no. 3:17-cv-07088-EDL

PTAB IPR2018-00494
PTAB PGR2018-00019
PTAB PGR2018-00020

---

7/30/2018                                    /s/ Mark C. Johnson
_____                      _____
Date                                         Signature of counsel

                                             Mark C. Johnson
Please Note: All questions must be answered  _____
                                             Printed name of counsel

cc: _____

---

**Reset Fields**

**Exhibit 3**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ........................................................................ iii

ARGUMENT ................................................................................................ 1

I.     INTRODUCTION ............................................................................... 1

II.    The District Court Erred In Finding Plaintiff Had A Likelihood Of
       Success On The Merits Because The Venue Selection Clause Does Not
       Apply To PTAB Invalidity Proceedings As A Matter Of Law ........................ 2

       A.     PTAB Petition Invalidity Claims Do Not Fall Within The Scope Of
              The MLA Venue Selection Clause Because Such Claims Are Not
              "Arising Out Of Our Under" The MLA. ...................................... 2

              1.     The district court erred in disregarding *Manetti-Farrow.* ............... 13

              2.     *Calloway* does not support applying the MLA's venue clause to
                     cover PTAB proceedings. ............................................. 18

              3.     *General Protecht* does not support applying the MLA's venue
                     clause to cover PTAB proceedings. ................................... 19

              4.     The district court erred by relying on MerchSource's alleged
                     subjective motivation for filing the PTAB proceedings instead
                     of whether the PTAB proceedings depended upon the MLA. ......... 19

              5.     The district court erred by ignoring the directly relevant case
                     law regarding venue clauses and disputes "arising out of or
                     under" in favor of arbitration cases. ................................ 22

              6.     PTAB proceedings do not "arise out of or under" the MLA as a
                     matter of law ....................................................... 23

       B.     The District Court Erred In Concluding That The Venue Clause Was
              Not Void Against Public Policy To The Extent It Covered PTAB
              Proceedings ................................................................. 24

       C.     The District Court Erred In Concluding That The Remaining
              Preliminary Injunction Factors Favored Plaintiff ....................... 28

i

**Exhibit 3**

CONCLUSION .......................................................................................30

**Exhibit 3**

# TABLE OF AUTHORITIES

## CASES

*Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, No. 2:10-CV-02991-JHN, 2010 WL 5154136 (C.D. Cal. Aug. 12, 2010) ........ 2, 4, 5, 13

*Bastami v. Semiconductor Components Indus., LLC*, No. 17-CV-00407-LHK, 2017 WL 1354148 (N.D. Cal. Apr. 13, 2017) ................................ 14, 22

*Callaway Golf Co. v. Kappos*, 802 F. Supp. 2d 678, 681 (E.D. Va. 2011) 18, 19, 26

*Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914 (9th Cir. 2011) ..................... 5

*Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153 (D. Haw. 2018) .............................. 5

*General Protecht Grp. Inc. v. Leviton Mfg. Co., Inc.,* 651 F.3d 1355 (Fed. Cir. 2011) ................................................................................ 19, 29, 30

*Henry v. Cent. Freight Lines, Inc.*, 2017 WL 4517836 (E.D. Cal. Oct. 10, 2017) .......................................................................................................... 5

*In re Orange, S.A.*, 818 F.3d 956 (9th Cir.), cert. denied sub nom. *Orange, S.A. v. U.S. Dist. Court for N. Dist. of California*, 137 S. Ct. 282 (2016) ................................................................................... 14, 16, 17

*Kappos v. Hyatt*, 566 U.S. 431, 132 S.Ct. 1690, 1696, 182 L.Ed.2d 704 (2012) ........................................................................................................ 25

*Kwiecinski v. Medi-Tech Intern. Corp.*, No. 3:14-CV-01512-BR, 2015 WL 3905224 (D. Or. June 25, 2015) ........................................................... 7

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197 (9th Cir. 1980) ..................................................................... 29

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ........................................ 25

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988) ......... passim

*MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284 (Fed. Cir. 2015) ........................................................................................................ 26

**Exhibit 3**

*Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983)................................................................................................ passim

*Modius, Inc. v. Psinaptic, Inc.*, 2006 WL 1156390 (N.D. Cal., May 6, 2006)............................................................................................ 4, 13

*Multimin USA, Inc. v. Walco International, Inc. et al.*, 2006 WL 1046964 (E.D. Cal., Apr.11, 2006) ........................................................... 4, 13

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365 (2018) ..............................................................................28

*Oracle Am., Inc. v. Oregon Health Ins. Exch. Corp.*, 145 F. Supp. 3d 1018 (D. Or. 2015) ...........................................................................5, 7

*Petersen v. Boeing Co.*, 715 F.3d 276 (9th Cir. 2013) ...............................................6

*Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469 (9th Cir. 1991) . 14, 15, 22

*Rice Aircraft Servs., Inc. v. Soars*, No. 2:14-CV-2878 MCE DB, 2018 WL 3203133 (E.D. Cal. June 29, 2018)...................................................... 5, 10, 21

*Robles v. Comtrak Logistics, Inc.*, No. 2:13–cv–0161 JAM AC, 2015 WL 1530510 (E.D. Cal. Apr. 3, 2015) ......................................................6

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir.1999)............................... passim

**STATUTES**

35 U.S.C. § 315...................................................................................27

35 U.S.C. § 325...................................................................................27

Fed. R. Civ. P. 8 .................................................................................12

**OTHER AUTHORITIES**

H.R.Rep. No. 112–98, 2011 U.S.C.C.A.N. 67 .......................................................26

**Exhibit 3**

# ARGUMENT

## I.      INTRODUCTION

Plaintiff's Answering Brief attempts to resuscitate the injunction by distorting the law, the contract language, and the PTAB proceedings. Plaintiff repeatedly disregards legal propositions and analyses based on immaterial factual differences between this case and precedent, but then glosses over material distinctions—such as the actual language and express scope of the MLA's venue clause—while advocating less relevant cases.

The proper legal interpretation of the MLA's phrase "arising out of or under" covers only claims created by the contract or requiring substantive analysis of the contract. This test was articulated by the Ninth Circuit in *Manetti-Farrow* and has been consistently applied for the past twenty years. It is undisputed that PTAB proceedings (IPRs/PGRs) on the invalidity of plaintiff's patents are neither created by the MLA nor require any substantive analysis of the MLA.

Accordingly, the PTAB proceedings do not "arise out of or under" the MLA and are not covered by the MLA's venue clause. The district court erred as a matter of law in concluding otherwise. The preliminary injunction was issued in error and should be reversed.

**Exhibit 3**

II.    **The District Court Erred In Finding Plaintiff Had A Likelihood Of Success On The Merits Because The Venue Selection Clause Does Not Apply To PTAB Invalidity Proceedings As A Matter Of Law**

   A.    **PTAB Petition Invalidity Claims Do Not Fall Within The Scope Of The MLA Venue Selection Clause Because Such Claims Are Not "Arising Out Of Our Under" The MLA.**

Contrary to plaintiff's arguments, the district court clearly failed to properly apply the legal test for determining whether non-contract claims (the PTAB proceedings) are within the scope of the MLA's venue clause.

The legal rule was announced by the Ninth Circuit in *Manetti-Farrow[1]*, holding that whether non-contract claims fall within the scope of a contractual forum selection clause depends on whether resolution of the claims "requires interpretation of the contract" or can "be adjudicated without analyzing whether the parties were in compliance with the contract."[2] Here, the proper test is whether resolution of the merits of the claims in the PTAB proceedings themselves require or depend on some analysis, interpretation, or obligations in or from the MLA. The test is ***not*** whether the district court's action will be impacted by any results from the PTAB proceedings.

_____

[1] *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988). *See also Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, No. 2:10-CV-02991-JHN, 2010 WL 5154136 at *3 (C.D. Cal. Aug. 12, 2010) ("Moreover, a host of subsequent decisions have applied the *Manetti-Farrow* test to a variety of forum selection clauses.").

[2] *Manetti-Farrow,* 858 F.2d at 514.

2

**Exhibit 3**

Plaintiff does not and cannot point to anything in the MLA that would ***substantively*** impact the PTAB's analysis of the merits of MerchSource's petitions or the invalidity grounds asserted. Nor could the district court. Resolution of the validity of the patents by the PTAB is entirely a matter of federal statutory and case law, and does not depend in any way on interpreting the MLA. The legal test of *Manetti-Farrow* dictates that PTAB proceedings are outside the scope of the MLA's venue clause and the district court committed legal error in concluding otherwise.

The district court disregarded *Manetti-Farrow* apparently because the language of the clause in that case differed from the "arising out of or under" language from the MLA.[3] Then, in contravention of *Manetti-Farrow*, the district court looked to whether MerchSource's petitions were motivated by its obligations under the MLA and whether the outcome of the PTAB's review would potentially impact plaintiff's breach of contract claims. The district court thus erroneously reversed the inquiry—instead of looking for any impact ***to*** the PTAB proceedings ***from*** the MLA, the district court focused on the impact ***from*** the PTAB proceedings ***to*** plaintiff's claims for breach of the MLA.

_____

[3] Appx35.

3

**Exhibit 3**

But in rejecting *Manetti-Farrow* the district court ignored[4] the extensive
body of cases applying the *Manetti-Farrow* test to a wide range of venue clause
formulations, including venue clauses using the "arising out of" or "arising under"
language present in the MLA. For example, in *Bagdasarian Prods.* the district
court applied *Manetti-Farrow* to claims that "arise out of" a contract:

> The Court finds ample Ninth Circuit authority for the proposition that,
> for purposes of a forum selection clause, a claim arises out of a
> contract when it is necessary to interpret the contract to resolve the
> dispute.[5]

The *Bagdasarian Prods.* court also refuted plaintiff's arguments that the test
of *Manetti-Farrow* was limited to the specific language of that venue clause:

> Plaintiff attempts to avoid *Manetti-Farrow* by limiting its holding to
> the specific forum selection clause at issue in that case. However, as
> Defendant correctly points out, nothing in the decision suggests that
> the Ninth Circuit intended to so limit its ruling. Moreover, a host of
> subsequent decisions have applied the *Manetti-Farrow* test to a
> variety of forum selection clauses. *See e.g., Multimin USA, Inc. v.
> Walco International, Inc. et al.*, 2006 WL 1046964 (E.D.Cal., Apr.11,
> 2006) (applying *Manetti-Farrow* test to "disputes arising under" the
> contract); *Modius, Inc. v. Psinaptic, Inc.*, 2006 WL 1156390 at *7
> (N.D.Cal., May 6, 2006) (applying *Manetti-Farrow* test to forum
> selection clause for "disputes under" the contract).[6]

---

[4] Plaintiff's criticism of MerchSource for not citing these cases to the district court
is misplaced. Plaintiff's effort to distinguish *Manetti-Farrow* did not start until
**after** MerchSource had filed its opposition papers, and the district court likewise
did not question *Manetti-Farrow* until the preliminary injunction hearing.

[5] *Bagdasarian Prods.*, 2010 WL 5154136 at *3.

[6] *Id.* (citations to record omitted).

**Exhibit 3**

*Bagdasarian Prods.* is not unique or isolated, and courts routinely apply
*Manetti-Farrow* to venue clauses covering claims "arising under," "arising
hereunder," or "arising out of" a contract. Two very recent examples from district
courts in the Ninth Circuit affirm *Manetti-Farrow* and *Bagdasarian Prods.* (and
list additional cases). In *Dolin*, the court held:

> When interpreting a forum-selection clause, phrases such as "arising
> under," "arising hereunder," and "arising out of" should be construed
> to encompass "only those disputes concerning 'the interpretation and
> performance of the contract itself.'" *Henry v. Cent. Freight Lines,
> Inc.*, 2017 WL 4517836, at *2 (E.D. Ca. Oct. 10, 2017) (quoting *Cape
> Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011).[7]

And in *Robles*:

> The scope of the claims governed by a forum selection clause depends
> upon the language used in the clause. In analogous contexts, the Ninth
> Circuit has found that provisions using the phrases 'arising under,'
> 'arising out of,' and 'arising hereunder' (collectively referred to as
> 'arising under' language) should be narrowly construed to cover only
> those disputes 'relating to the interpretation and performance of the
> contract itself.' In contrast, provisions that include or add phrases such

---

[7] *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1160–61 (D. Haw. 2018). *See
also Rice Aircraft Servs., Inc. v. Soars*, No. 2:14-CV-2878 MCE DB, 2018 WL
3203133 at *4 (E.D. Cal. June 29, 2018) (applying *Manetti-Farrow* to venue
selection clause covering disputes "regarding" the contract); *Oracle Am., Inc. v.
Oregon Health Ins. Exch. Corp.*, 145 F. Supp. 3d 1018, 1027 (D. Or. 2015)
(applying *Manetti-Farrow* venue clause covering disputes "arising out of or
relating to" the contract).

**Exhibit 3**

as 'relating to' and 'in connection with' (collectively referred to as 'relating to' language) have a broader reach.[8]

Plaintiff's argument suggests that PTAB proceedings "relate" to the MLA, but that conflates venue clauses that cover disputes "relating to" a contract with the *Manetti-Farrow* requirement that the challenged claims "relate to interpretation of the contract."[9] The phrase "relating to **interpretation** of the contract" does not broadly mean anything that might be relevant to the contract, but is limited to claims **requiring interpretation of the contract**:

> The Ninth Circuit has held "in some circumstances, a contractual forum selection clause may also apply to related non-contract claims." *Petersen v. Boeing Co.*, 715 F.3d 276, 283 n. 7 (9th Cir. 2013). Specifically, contractual forum-selection clauses may apply to noncontract claims "only when 'resolution of the [noncontract] claims relates to interpretation of the contract.'" *Id*. (quoting *Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir.1988)).
>
> **Resolution of noncontract claims "relates to" interpretation of the contract when the noncontract "claims require interpretation of the contract"**; *i.e.*, the noncontract claims "cannot be adjudicated without analyzing whether the parties were in compliance with the contract."

---

[8] *Robles v. Comtrak Logistics, Inc.*, No. 2:13–cv–0161 JAM AC, 2015 WL 1530510 at *3 (E.D. Cal. Apr. 3, 2015) (alterations, citations, quotations omitted). The narrow scope of claims "arising out of or under" the contract compared with "related to" is also recognized and followed with respect to arbitration clauses. *See, e.g., Mediterranean Enterprises, Inc. v. Ssangyong,* 708 F.2d 1458 (9th Cir.1983) ("arising under" narrower than recommended American Arbitration Association (AAA) language of "arising out of or relating to.").

[9] *See, e.g., Petersen v. Boeing Co.*, 715 F.3d 276, 283 n7 (9th Cir. 2013) (citing *Manetti-Farrow*).

6

**Exhibit 3**

*Manetti–Farrow*, 858 F.2d at 514 (citation omitted). *See also Kwiecinski v. Medi-Tech Intern. Corp.*, No. 3:14-CV-01512-BR, 2015 WL 3905224, at *3 (D.Or. June 25, 2015) (same); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir.1999); *Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir.1983).[10]

Contrary to the district court's Order and plaintiff's arguments, and as illustrated in the foregoing exemplary cases, Ninth Circuit law dictates that the MLA's venue clause language, "arising out of or under," falls under the *Manetti-Farrow* test and is limited in scope to claims requiring interpretation of the contract.

The "dispute" of each PTAB proceeding is whether the claims of patent are invalid over publicly available prior art. These disputes did not "arise out of or under" the MLA—they arose out of the PTO's prior issuance of the patents. Indeed, neither the district court nor plaintiff can identify anything in the PTAB proceedings that relates to the interpretation and performance of the MLA itself. This is confirmed by the fact that anyone could have filed the same PTAB petitions on the same grounds, and the PTAB would review, analyze and decide the validity the same way—the existence of the MLA is simply not relevant to the PTAB and its proceedings.

---

[10] *Oracle*, 145 F. Supp. 3d at 1027 (emphasis added).

**Exhibit 3**

In an attempt to justify the district court's Order, plaintiff's Answering Brief advances two main arguments. First, plaintiff argues that the relevant dispute is not the PTAB proceedings, but MerchSource's alleged subjective reasons for seeking to invalidate the patents—to avoid paying royalties under the MLA.[11] But the issue of royalties is plainly **not** before the PTAB, and the subjective intent in filing the challenged claims (petitioning the PTAB to reexamine the patents) is not relevant under *Manetti-Farrow* or any other authority. Plaintiff cites no authority in which such an inquiry is relevant and, in fact, the cases cited above and in MerchSource's Brief all clearly focus on the ***objective*** inquiry of whether resolution of the merits of the challenged ***claims***—here, the invalidity challenges presented to the PTAB—requires interpretation of the contract or analysis of a parties' compliance with the contract.

In each case the court analyzed venue on a claim-by-claim basis, inquiring for each whether its resolution depended on interpreting the contract. While in most cases the claims rise or fall together, *Mediterranean Enterprises*, a seminal arbitration clause case on which the *Manetti-Farrow* court relied, clearly illustrates the potential for different results when there are multiple claims. There, the court found plaintiff's breach of contract and fiduciary duties claims to be covered by the

---

[11] Answering Brief, pp. 12-13.

8

**Exhibit 3**

arbitration clause, but plaintiff's quantum meruit and conversion claims to not arise

under or relate to the contract:

> Count 8 sets forth a claim in quantum meruit, which by its own terms
> rests on the theory that services were performed and accepted
> pursuant to an implied contract or "quasi-contract." An action does
> not lie on an implied contract where there exists between the parties a
> valid express contract which covers the identical subject matter. Thus,
> by definition, count 8 does not directly relate to the interpretation and
> performance of the Agreement itself.

> Count 9 alleges that Ssangyong converted to its own use and benefit
> certain prequalification documents delivered by MEI. The Agreement
> provides only that each of the parties would bear his own costs at the
> prequalification stage. MEI's claim that Ssangyong misappropriated
> these documents appears to raise issues largely distinct from the
> central conflict over the interpretation and performance of the
> Agreement itself.[12]

Equally unavailing is plaintiff's related argument, also offered by the district

court, that the PTAB proceedings would not have been filed "but for" the

relationship created by the MLA.[13] The effort to "backdoor" a claim into the venue

clause is not novel and has been rightly rejected by the courts. For example, a

district court recently rejected an argument that claims are "related" to an

agreement merely because a party's "impetus" and "motivation" for acting

stemmed from the existence of that agreement:

> However, that the defendants would never have engaged in their
> tortious conduct "had Rice never entered into the 2011 partnership

---

[12] *Mediterranean Enter.*, 708 F.2d at 1464–65.

[13] Answering Brief, p. 15; Appx37.

**Exhibit 3**

agreement" does not establish that plaintiff's tort claims are regarding the July 31, 2011 Partnership Agreement. Under plaintiff's logic, the court would have personal jurisdiction over any tort defendants committed against plaintiff because the "impetus" and "motivation" for the defendants' alleged tortious conduct would stem from "the souring of the parties' business relationship[.]" Such an expansive definition of "regarding" would essentially render any dispute between these parties subject to the forum selection clause. That is not consistent with the language of the clause.

The partnership agreement provided that any legal action regarding the agreement to purchase certain aviation assets from the German Government" [*sic*] could be brought in this court. (Rice Decl., Ex. A (ECF No. 48–1) at 4, 7.) But in this action, no party is disputing, challenging, or placing at issue the July 31, 2011 partnership agreement to purchase the subject helicopters from the German Government. Instead, this action is regarding defendant Wieland and defendant WAG's allegedly tortious conduct concerning plaintiff's dealings with the Philippine Government, the United States' Government, and Eagle. The mere fact that the parties had a prior partnership agreement does not establish that this action is regarding that partnership agreement.[14]

The "motivation" argument rejected in *Rice Aircraft* is similar to plaintiff's argument here ("MerchSource would have never filed the PTAB Petitions if it was not obligated to make royalty payments under the MLA").[15] Cases consistently

_____

[14] *Rice Aircraft*, 2018 WL 3203133 at *5.

[15] Answering Brief, p. 13. The district court Order similarly argued, "[b]ut for the parties' licensor-licensee relationship, and Defendants' interest in reducing or eliminating the royalties provided for under the MLA based on the claim of invalidity, there is no indication that Defendant MerchSource would be pursuing the PTAB proceedings at all." Appx37.

**Exhibit 3**

establish that the relevant inquiry for "arising out of or under" a contract is ***not*** a "motivation for filing" argument or a "but for the contract" argument. Rather, the proper inquiry is whether resolution of the merits of the ***challenged claims themselves*** requires an analysis into the "interpretation and performance of the contract itself."[16]

Plaintiff's second main argument is that MerchSource's prayer[17] for attorneys' fees related to the PTAB proceedings and pursuant to the MLA somehow proves that the PTAB proceedings "arise out of or under" the MLA.[18] Plaintiff's argument is fundamentally flawed. The language regarding the scope of the fee-shifting provision ("In the event litigation or other dispute resolution process is necessary to enforce a provision or provisions of this Agreement, all costs, expenses and attorneys' fees shall be awarded to the prevailing Party") is different from the language governing the scope of the venue clause (disputes "arising out of or under this Agreement.").[19] The different language implies different scope, and therefore PTAB proceedings could fall within one clause (fee-shifting) and be excluded from the other (venue). Presumably, the parties would

---

[16] *Manetti-Farrow*, 858 F.2d at 514.

[17] Prayer for Relief (m), Appx321.

[18] Answering Brief, pp. 13-14. The district court's Order advanced a similar argument. Appx36.

[19] Compare Appx436 (§13.11, fee shifting) and Appx435 (§13.4, venue).

**Exhibit 3**

have used the same language for both clauses had they intended them to have identical scope.

Plaintiff's invocation of Rule 11 and accusations that MerchSource has been inconsistent are unfounded. It was not improper for MerchSource to include in its answer a request fees and maintain that the PTAB proceedings are outside the scope of the venue clause. There is no evidence regarding the parties' understanding of the fee-shifting provision, nor has the meaning or scope of the provision been briefed or ruled on by the district court. Any alleged inconsistency is merely plaintiff's opinion and is not based on any adjudication or other competent authority.[20] Certainly, the uninterpreted fee-shifting provision cannot dictate the scope of the venue provision.

None of plaintiff's main arguments establishes that PTAB proceedings "arise out of or under" the MLA. Accordingly, the district court erred as a matter of law in concluding otherwise. In addition to its main arguments, plaintiff

---

[20] In any event, Rule 8(d)(3) of the Federal Rules of Civil Procedure expressly permits inconsistent pleadings, Rule 8(a)(3) expressly allows alternative requests for relief, and Rule 11(b)(2) expressly states that contentions "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

12

**Exhibit 3**

enumerated six responses to MerchSource's opening argument. MerchSource

addresses plaintiff's arguments in turn below.

### 1.    The district court erred in disregarding *Manetti-Farrow.*

Plaintiff argues that the district court did not disregard *Manetti-Farrow*, but

acknowledges that the Court did not follow the test set forth therein.[21] As

previously discussed, *supra*, the district court erred in restricting the *Manetti-*

*Farrow* test to the specific language because *Manetti-Farrow* is applicable to a

wide range of formulations, including "arising out of or under" a contract:

> Plaintiff attempts to avoid *Manetti-Farrow* by limiting its holding to
> the specific forum selection clause at issue in that case. However, as
> Defendant correctly points out, nothing in the decision suggests that
> the Ninth Circuit intended to so limit its ruling. Moreover, a host of
> subsequent decisions have applied the *Manetti-Farrow* test to a
> variety of forum selection clauses. *See e.g., Multimin USA, Inc. v.
> Walco International, Inc. et al.*, 2006 WL 1046964 (E.D.Cal., Apr.11,
> 2006) (applying *Manetti-Farrow* test to "disputes arising under" the
> contract); *Modius, Inc. v. Psinaptic, Inc.*, 2006 WL 1156390 at *7
> (N.D.Cal., May 6, 2006) (applying *Manetti-Farrow* test to forum
> selection clause for "disputes under" the contract). In addition,
> Plaintiff criticizes Graham as having misapplied *Manetti-Farrow's*
> narrow holding. 'The Court is not only unconvinced that *Manetti-
> Farrow's* holding is so limited, but also notes that *Graham* remains
> good law and has been cited with approval by other district courts
> within this circuit.[22]

---

[21] Answering Brief, pp. 16-17.

[22] *Bagdasarian Prods.*, 2010 WL 5154136 at *3 (citations to record omitted). *See
also, supra*, n7.

13

**Exhibit 3**

Rather than following *Manetti-Farrow* and its progeny, the district court cited and relied upon three cases—none of which were cited by the parties during briefing—interpreting materially different language.[23] For example, in *Bastami* the venue clause covered disputes "arising out of or relating to" the offer letter.[24] But the MLA's venue clause does not include the phrase "relating to" which, at least in the arbitration context, is construed more broadly than "arising out of or under."[25] A claim can "relate to" but not "arise out of or under" the MLA.

Similarly, the language in *Republic of Nicaragua* was materially different because the "arising under" language was not limited to the contract itself but extended to "the arrangements contemplated hereunder."[26] The claims disputed in *Republic of Nicaragua* were breach of contract, but of a contract different from the one containing the arbitration clause. But because the later, asserted contract was

---

[23] Appx36.

[24] *Bastami v. Semiconductor Components Indus., LLC*, No. 17-CV-00407-LHK, 2017 WL 1354148 at *10 (N.D. Cal. Apr. 13, 2017)

[25] *Mediterranean Enter.*, 708 F.2d at 1464 ("arising under" narrower than … "arising out of or relating to" in arbitration clause). But even "relating to" language is not construed so expansively in the contact of venue clauses. *In re Orange, S.A.*, 818 F.3d 956, 962–63 (9th Cir.), cert. denied sub nom. *Orange, S.A. v. U.S. Dist. Court for N. Dist. of California*, 137 S. Ct. 282 (2016) (venue clause language is not construed as broadly or liberally as it would be in an arbitration clause).

[26] *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 474 (9th Cir. 1991).

**Exhibit 3**

arguably "contemplated" by the earlier one, the district court held that the claims were subject to arbitration. There is no doubt that the scope of claims arising under "arrangements contemplated" by an agreement is broader than claims arising under the agreement itself. Here, the venue clause of the MLA does not refer to "arrangements contemplated" by the MLA and therefore is more limited in scope than the clause from *Republic of Nicaragua*.

The third case cited by the district court, *Simula*,[27] not only fails to support the district court's conclusion, but instead supports **MerchSource's** interpretation of the MLA's venue clause. The clause in *Simula* was directed at claims "arising in connection with" the contract, a phrase the court construed broadly. However, the court noted that the broad construction was derived from the phrase "in connection with," and that clauses directed at claims merely "arising under" were more limited in scope:

> [T]he plain meaning of the phrase 'arising in connection with' suggests a broader scope than a phrase such as 'arising out of' or 'arising under,' **which seem to limit the clause to disputes concerning the contract itself**.[28]

---

[27] *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999).

[28] *Id.* at 721 (emphasis added) (citation and quotation omitted).

15

**Exhibit 3**

The Ninth Circuit subsequently discussed *Simula* in analyzing a venue clause covering disputes "arising out of or relating to the Agreement."[29] The Ninth Circuit first affirmed application of the *Manetti-Farrow* test to the venue clause, then rejected the argument that *Simula* extended the reach of the venue clause to "every claim that touches an agreement":

> Orange also relies heavily on [*Simula*] to show that the NDA's forum selection clause is further reaching than the district court decided. In *Simula*, we were tasked with determining whether an arbitration clause that covered "[a]ll disputes arising in connection with [the] Agreement" extended to allegations that included antitrust violations, misappropriation of trade secrets, and defamation. Id. at 720 (emphasis omitted). *Simula* held that the "language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id*. at 721. Orange argues that *Simula's* holding dictates that every claim that touches an agreement with a forum selection clause is automatically covered by that clause.[30]

The Ninth Circuit then highlighted differences in construing venue and arbitration clauses, arbitration clauses being construed more broadly:

> The fact that the forum selection clause in *Simula* was an arbitration provision weighed heavily in our analysis. We stated that "all doubts are to be resolved in favor of arbitrability," and, as a result, the plaintiff's claims "need only 'touch matters' covered by the contract." *Id*. Here, we do not interpret an arbitration clause, and, accordingly,

---

[29] *In re Orange,* , 818 F.3d 956, 962–63.

[30] *Id.* at 962.

**Exhibit 3**

do not apply the strong presumption that prompted us in *Simula* to construe broadly the scope of the arbitration clause.[31]

The Ninth Circuit then held that the venue clause test for disputes "relating to" a contract is whether resolution of the challenged claims require interpretation of the underlying contract (the *Manetti-Farrow* test):

> Moreover, regardless of the interpretative distinctions between arbitration clauses and forum selection clauses, the district court's reasoning in this case is in line with the analysis in *Simula*. In *Simula*, we analyzed each of the tort claims, ***and considered whether the tort claim required us to interpret the underlying contract***. *Id*. at 721–25. The district court applied the same considerations here: it looked at Telesocial's tort claims and determined ***if there was anything factually within the claims that required it to interpret the NDA***. Unlike the facts underpinning the tort claims in *Simula*, the relevant facts in this case did not involve the parties' agreement. Orange fails to show how the district court's conclusion is legal error.[32]

Here, the district court's disregard of *Manetti-Farrow* and effort to expand the MLA venue clause beyond the plain language of "arising out of or under" was legal error, and not justified by any of the cases cited in the Order. The appropriate test is whether resolution of the challenged claims requires interpretation of the agreement or enforcement of rights created by the agreement. With respect to PTAB proceedings and the MLA, the answer is plainly no.

---

[31] *Id*.

[32] *Id.* at 962-3 (emphasis added).

**Exhibit 3**

## 2. *Calloway* does not support applying the MLA's venue clause to cover PTAB proceedings.

Plaintiff argued in its Reply Brief below that *Calloway* supported its likelihood of success on the merits argument because that court found that Acushnet breached the forum selection clause in the settlement when it sought reexamination of the patents.[33] It is not clear whether the district court agreed with plaintiff on this particular point or relied on it, but the district court does note that in *Calloway* "the party which sought reexamination breached the forum selection clause."[34]

If the district court did not rely on *Calloway* and plaintiff no longer argues that it supports its venue arguments, then all parties are in agreement. But *Calloway* is instructive nevertheless because it demonstrates that different venue clause language can be used to produce different scopes. In *Calloway* the forum selection clause was worded to expressly include disputes arising out of or relating to **patents**:

> [A]ny dispute ***arising out of or relating to patents***, including the above mentioned patents … shall be resolved in accordance with the procedures specified in this Section.[35]

---

[33] Appx348.

[34] Appx40.

[35] *Callaway Golf Co. v. Kappos*, 802 F. Supp. 2d 678, 681 (E.D. Va. 2011) (emphasis added).

18

**Exhibit 3**

Patent invalidity proceedings are clearly "relating to patents," so there is nothing surprising about a finding that PTAB invalidity proceedings were within the literal scope of that venue clause. But nothing in any of the *Callaway* opinions supports concluding that a PTAB invalidity challenge "arises out of or under" a license such as the MLA.

### 3.   *General Protecht* does not support applying the MLA's venue clause to cover PTAB proceedings.

Plaintiff argues that neither it nor the district court rely on *General Protecht* concerning the likelihood of success on the merits.[36] Accordingly, as with *Calloway*, it appears all parties now agree that *General Protecht* does not support application of the MLA venue clause to PTAB proceedings.

### 4.   The district court erred by relying on MerchSource's alleged subjective motivation for filing the PTAB proceedings instead of whether the PTAB proceedings depended upon the MLA.

As previously discussed, plaintiff attempts to justify the district court's error by redefining the "dispute" in broad, general terms. According to plaintiff, the relevant dispute for the venue analysis of "arising out of or under" is not the PTAB proceedings, but rather royalties owned under the MLA.[37] Plaintiff's theory (also

---

[36] Answering Brief, p. 18; *General Protecht Grp. Inc. v. Leviton Mfg. Co., Inc.,* 651 F.3d 1355 (Fed. Cir. 2011).

[37] Answering Brief, pp. 12, 18-19.

**Exhibit 3**

advanced by the district court) advances a novel associative property of disputes: the motivation for filing PTAB proceedings was to avoid royalties under the MLA; failure to pay royalties is a claim that "arise[s] out of our under" the MLA; therefore PTAB proceedings "arise out of or under" the MLA.

But neither plaintiff nor the district court identified any legal authority for this novel approach, nor could they. *Manetti-Farrow* and its progeny defined when non-contract claims "arise out of or under" a contract—when adjudication of the non-contract claims requires interpretation of the contract or analysis of whether the parties were in compliance with the contract.[38] The cases all focus the venue inquiry on the merits of the specific legal claims asserted in the challenged venue, not on the motivational genesis or strategy behind filing those claims.

Moreover, courts have rejected efforts to bootstrap claims into a venue clause based on some argument that "but for the contract the parties would not

---

[38] *Manetti-Farrow*, 858 F.2d at 514. *See also Oracle*, 145 F.Supp.3d at 1027.

20

Exhibit 3

have a dispute."[39] Indeed, this rejected "but for" argument lies at the heart of the

district court's reasoning:

> But for the parties' licensor-licensee relationship, and Defendants'
> interest in reducing or eliminating the royalties provided for under the
> MLA based on the claim of invalidity, there is no indication that
> Defendant MerchSource would be pursuing the PTAB proceedings at
> all.[40]

Plaintiff cannot avoid application of *Manetti-Farrow* by recharacterizing the

dispute as over royalties. A royalty dispute is ***not*** before the PTAB, and the PTAB

will not be adjudicating a royalty dispute or any other provision of the MLA.

Rather, the district court proceeding will determine what, if any, royalties are owed

for past activity. Moreover, because plaintiff now has terminated the MLA, there

can be no MLA-royalty dispute for current or future activity.[41] The disputes before

the PTAB are purely invalidity, which does not "arise out of or from" the MLA.

---

[39] *See, e.g., Rice Aircraft*, 2018 WL 3203133 at *5 ("Under plaintiff's logic, the court would have personal jurisdiction over any tort defendants committed against plaintiff because the "impetus" and "motivation" for the defendants' alleged tortious conduct would stem from "the souring of the parties' business relationship[.]" Such an expansive definition of "regarding" would essentially render any dispute between these parties subject to the forum selection clause. That is not consistent with the language of the clause.").

[40] Appx37.

[41] Appx164.

**Exhibit 3**

**5.    The district court erred by ignoring the directly relevant case law regarding venue clauses and disputes "arising out of or under" in favor of arbitration cases.**

Plaintiff either misunderstands or misstates MerchSource's criticism of the district court's reliance on arbitration cases—specifically *Bastami, Republic of Nicaragua,* and *Simula*—to conclude that the PTAB proceedings arose out of or under the MLA.[42] These arbitration clause cases are less-relevant than the large body of authority addressing venue clauses under *Manetti-Farrow*, and because none of those three cases involved patents or PTAB invalidity proceedings, they do not inform the proper analysis.

Moreover, even in relying on *Simula* the district court ignored *Simula's* recognition that "arising out of" or "arising under" are narrow in scope, not broad:

> [T]he plain meaning of the phrase 'arising in connection with' suggests a broader scope than a phrase such as 'arising out of' or 'arising under,' ***which seem to limit the clause to disputes concerning the contract itself***.[43]

Under *Simula*, the MLA's venue clause would be limited to "disputes concerning the contract itself"—a rule that is consistent with *Manetti-Farrow* but was inexplicably ignored by the district court. Thus, the district court erred in

---

[42] Answering Brief, pp. 19-20.

[43] *Simula,* 175 F.3d at 721 (emphasis added) (citation and quotation omitted).

**Exhibit 3**

rejecting the *Manetti-Farrow* test in favor of selectively following inapplicable arbitration cases.

### 6.    PTAB proceedings do not "arise out of or under" the MLA as a matter of law.

Plaintiff incredibly argues that "MerchSource cites no authority for the bold contention that 'as a matter of law, PTAB challenges do not 'arise out of or under' the MLA.'"[44] Apparently plaintiff failed to read or comprehend pages 10-21 of MerchSource's Brief or any of the authority cited.

There is no disputing that PTAB proceedings (and the invalidity challenges therein) are not created or established by the MLA, do not require any analysis or interpretation of the MLA, and do not depend in any way on whether either party has, or has not, complied with the MLA. Simply put, the MLA did not create and is not relevant to the adjudication of the PTAB proceedings, and neither plaintiff nor the district court has identified any evidence or authority to the contrary.[45]

In summary, plaintiff and the district court would read the MLA's venue clause of "disputes… arising out of or from" the MLA so expansively as to render the specific language meaningless. The MLA's venue clause does not include

---

[44] Answering Brief, p. 20.

[45] Plaintiff and the district court apparently confuse correlation and causation. That the MLA might depend on the validity of the patents does not mean that invalidity proceedings depend on the MLA.

**Exhibit 3**

disputes that simply "relate to" the MLA, or are more generally related to the

parties' "relationship," or even to disputes that more specifically relate "to

patents." Instead, the language "arising out of or under" was used, and the case

law overwhelming describes this language as "narrow" in scope and limited to claims

that require interpretation of the contract or analysis of whether a party has

complied with the contract. This is the *Manetti-Farrow* test—the test that the

district court either failed to apply or at least failed to properly apply. This failure

apparently led the district court to erroneously conclude that plaintiff was likely to

prevail on its breach of the venue clause and, ultimately, to erroneously enter the

preliminary injunction Order.

> **B.     The District Court Erred In Concluding That The Venue Clause
> Was Not Void Against Public Policy To The Extent It Covered
> PTAB Proceedings.**

Plaintiff's arguments regarding enforceability of the venue provision are

superficial and conclusory, and do nothing to justify the district court's ruling on

this issue. Contrary to plaintiff's arguments, neither the page length of the Order

nor the number of cases cited has any bearing on whether the district court's legal

conclusions were erroneous, which they were. Congress and the PTO have both

expressed a strong public policy in favor of IPRs and allowing the PTO to revisit

its earlier administrative action in granting a patent. Because the district court's

**Exhibit 3**

interpretation of the MLA's venue clause would preclude PTAB proceedings, the

clause as interpreted undermines this policy and is void.

In *Bremen*, the Supreme Court specifically held that contractual venue

clauses are not enforceable if against public policy:

> A contractual choice-of-forum clause should be held unenforceable if
> enforcement would contravene a strong public policy of the forum in
> which suit is brought, whether declared by statute or by judicial
> decision.[46]

Both Congress and the PTO have expressed a strong public policy in favor

of post-grant reviews of patents by the PTO—a policy has been acknowledged by

the judiciary, including the Supreme Court and this Court.[47] While MerchSource's

opening Brief quotes and cites some of these authorities and each need not be

repeated here, an exemplary statement is found from this Court's decision in *MCM*

*Portfolio*:

> The patent right "derives from an extensive federal regulatory
> scheme," Stern, 131 S.Ct. at 2613, and is created by federal law.
> ***Congress*** created the PTO, "an executive agency with specific
> authority and expertise" in the patent law, Kappos v. Hyatt, —— U.S.
> ——, 132 S.Ct. 1690, 1696, 182 L.Ed.2d 704 (2012), and ***saw***
> ***powerful reasons to utilize the expertise of the PTO for an important***
> ***public purpose—to correct the agency's own errors in issuing***
> ***patents in the first place.*** Reacting to "a growing sense that

---

[46] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

[47] *See* Brief of MerchSource, pp. 22-27, and 34-37.

**Exhibit 3**

questionable patents are too easily obtained and are too difficult to
challenge," Congress sought to "provid[e] a more efficient system for
challenging patents that should not have issued" and to "establish a
more efficient and streamlined patent system that will improve patent
*1291 quality and limit unnecessary and counterproductive litigation
costs." H.R.Rep. No. 112–98, 2011 U.S.C.C.A.N. 67, 69, at 39–40.[48]

Congress saw "powerful reasons" to include the PTO "for [the] important

public purpose" of revisiting the validity of patents in order "to correct the

agency's own errors in issuing patents in the first place." This important public

purpose is thwarted if PTO review can be prevented by an expensive reading of the

MLA's venue clause.

Plaintiff's Answering Brief does not address—or cite to or even

acknowledge—any of the Supreme Court and Federal Circuit cases cited by

MerchSource on this issue, nor does it acknowledge that PTO review advances an

important public policy as declared by Congress. Instead, plaintiff spends

numerous pages distinguishing the facts and posture of the various *Calloway*

decisions. While the facts of *Calloway* were of course different, those differences

do not negate the clear acknowledgements by Congress, the PTO, the Supreme

Court, and this Court of the important public policy favoring PTO's review of

granted patents.

---

[48] *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1290–91 (Fed. Cir.
2015) (emphasis added). *See also* Appx545-548 (also available at Dkt. 4-7) and
cited in the MerchSource's Brief.

26

**Exhibit 3**

The district court afforded very little weight to this important public policy
because of the view that petitioning the PTO for an IPR/PGR amounts to improper
forum shopping. In rejecting the public policy favoring PTO review, the district
court Order stated:

> Defendants essentially ask this Court to permit their ***belated attempt
> at forum shopping***.[49]

The district court's description of petitioning the PTAB for an IPR or PGR
as "belated forum shopping" is curious, hostile and simply incorrect. Federal law
not only contemplates and permits concurrent PTAB reexamination and district
court proceedings,[50] but under §315(b) expressly allows IPR petitions to be filed
up to one-year after the petitioner has been served in the district court action. Here,
MerchSource filed its petitions approximately <u>one-month</u> after plaintiff initiated
the district court action. Characterizing MerchSource's petitions to the PTAB as
"belated forum shopping" ignores federal law and strongly suggests that the district
court improperly dismissed the strong public policy supporting PTAB review.

The district court erred in failing to appropriately consider the important
public policy considerations favoring PTAB proceedings, and erred in applying the

---

[49] Appx41 (emphasis added).

[50] *See, e.g.,* 35 U.S.C. §§ 315 and 325.

**Exhibit 3**

venue clause to PTAB proceedings. The venue clause would be unenforceable under the district court's construction.

###    C.    The District Court Erred In Concluding That The Remaining Preliminary Injunction Factors Favored Plaintiff.

The district court erred in applying the remaining preliminary injunction factors for all the reasons set forth in MerchSource's Opening Brief, and plaintiff's Answering Brief does nothing to rehabilitate these errors.

For example, the district court found plaintiff's "irreparable harm" to be a combination of expenses resulting from the PTAB proceedings and simply being forced to defend its patents before the PTAB.[51] The former can be compensated by money damages and are not "irreparable," and the latter are not "harms" to be prevented. As the Supreme Court noted in *Oil States*, the grant of a patent comes subject to the right of the PTO to revisit that grant and to cancel that patent.[52] It cannot be a judicially-recognized "harm" if the PTO exercises that right.

Regarding the balance of the hardships, although plaintiff valiantly attempts to elaborate on the district court's reasoning, plaintiff's efforts cannot conceal that

---

[51] Appx43.

[52] *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1374 (2018).

Exhibit 3

the district court wrongly applied this factor because it improperly presumed the injunction was correct and that MerchSource was wrong:

> However, Defendants "should not be heard to argue that the enforcement of the contract into which it freely entered would cause hardship."[53]

The proper test weighs the relative hardships should the district court err by either wrongly issuing the injunction or wrongfully denying the injunction.[54] The district court simply presumed the injunction was properly issued, and then failed to properly assess and recognize irreparable harm to MerchSource from a wrongly issued injunction.

Finally, in a single, short paragraph the district court erroneously found that the public had no interest in allowing the PTO to review the validity of a patent:

> As the Federal Circuit observed in *Gen. Protecht Grp.*, 651 F.3d at 1366: "There is no public interest served by excusing a party's violation of its previously negotiated contractual undertaking to litigate in a particular forum." This Court is an adequate forum for Defendants to challenge the validity of the Dodocase Patents, and granting the injunction protects the right of parties to freely contract for a chosen forum and the ability of courts to enforce such agreements.[55]

---

[53] Appx44.

[54] *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1203 (9th Cir. 1980).

[55] Appx45.

29

**Exhibit 3**

The district court's reliance on *General Protecht* that there was "no public interest" served by allowing the PTAB proceedings to continue reads too much into *General Protecht.* While more fully discussed elsewhere,[56] *General Protecht* involved a settlement agreement and parallel infringement proceedings before a district court and the ITC. There may have been no public interest served in *General Protecht* by the ITC infringement investigation compared to the district court infringement action, but with respect to the PTO and invalidity challenges, this Court and the Supreme Court (and the PTO) have recognized that there is an important public interest served by allowing the ***PTO*** to reexamine its earlier grant of a patent, and the district court erred in holding otherwise.[57]

## CONCLUSION

For the reasons set forth, the Order of the district court granting the preliminary injunction should be reversed.

---

[56] Brief of MerchSource, pp. 29-33.

[57] *Id.* at 34-37 (public interest in PTO review proceedings).

**Exhibit 3**

Date: July 30, 2018                    Respectfully submitted,

                                       /s/ Mark C. Johnson_____
                                       Mark C. Johnson
                                       Kyle B. Fleming
                                       RENNER OTTO

                                       *Counsel for Defendant-Appellant*
                                       *MerchSource, LLC*

**Exhibit 3**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on  July 30, 2018
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

| Mark C. Johnson | /s/ Mark C. Johnson |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Renner Otto |
| Address | 1621 Euclid Avenue, Floor 19 |
| City, State, Zip | Cleveland, Ohio 44115 |
| Telephone Number | (216) 736-3170 |
| Fax Number | (216) 621-6165 |
| E-Mail Address | mjohnson@rennerotto.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

**Exhibit 3**

FORM 19. Certificate of Compliance With Rule 32(a)

Form 19
Rev. 12/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Federal Circuit Rule 32(a) or Federal Rule of Federal Circuit Rule 28.1.

☒  This brief contains  *[state the number of ]* 6,887 _____ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), or

☐  This brief uses a monospaced typeface and contains  *[state the number of ]* _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☐  This brief has been prepared in a proportionally spaced typeface using

*[state name and version of word processing program ]* Microsoft Word _____ in

*[state font size and name of type style ]* 14 point Times New Roman _____ , or

☐  This brief has been prepared in a monospaced typeface using

*[state name and version of word processing program ]* _____ with

*[state number of characters per inch and name of type style ]* _____ .

/s/ Mark C. Johnson
_____

(Signature of Attorney)

Mark C. Johnson
_____

(Name of Attorney)

Counsel for Appellant MerchSource, LLC
_____

(State whether representing appellant, appellee, etc.)

July 30, 2018
_____

(Date)

[ Reset Fields ]

**Exhibit 3**