1  Douglas G. Muehlhauser (SBN 179495)
   doug.muehlhauser@knobbe.com
2  KNOBBE, MARTENS, OLSON & BEAR, LLP
   2040 Main Street, Fourteenth Floor
3  Irvine, CA 92614
   Telephone: 949-760-0404
4  Facsimile: 949-760-9502

5  Attorneys for Plaintiff
   NOMADIX, INC.

6
   Steven J. Rocci (admitted *pro hac vice*)
7  srocci@bakerlaw.com
   BAKER & HOSTETLER LLP
8  2929 Arch Street, 12th Floor
   Philadelphia, PA 19104-2891
9  Telephone: 215-568-3100
   Facsimile: 215-568-3439
10
   Attorneys for Defendant
11 GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.

12 [*Attorney listing continued on next page*]

13
                IN THE UNITED STATES DISTRICT COURT
14
             FOR THE CENTRAL DISTRICT OF CALIFORNIA
15

16 NOMADIX, INC.,                    Case No.
                                     CV16-08033 AB (FFMx)
17        Plaintiff,
                                     **JOINT STIPULATION ON**
18    v.                             **NOMADIX'S MOTION TO**
                                     **COMPEL GUEST-TEK TO**
19 GUEST-TEK INTERACTIVE            **RESPOND TO**
   ENTERTAINMENT LTD.,               **INTERROGATORY 5**
20
          Defendant.
21                                   Hearing:
22                                   July 9, 2019
                                     10:00 a.m.
23                                   Courtroom 580
                                     Fact Discovery Cutoff: August, 30, 2019
24                                   Pretrial Conference: March 13, 2020
                                     Trial: April 14, 2020
25

26                                   Honorable Frederick F. Mumm
27
          REDACTED VERSION OF DOCUMENT PROPOSED TO BE
28                    FILED UNDER SEAL

1   Mark Lezama (SBN 253479)
    mark.lezama@knobbe.com
2   Alan G. Laquer (SBN 259257)
    alan.laquer@knobbe.com
3   Alexander J. Martinez (SBN 293925)
    alex.martinez@knobbe.com
4   Justin J. Gillett (SBN 298150)
    justin.gillett@knobbe.com
5   James F. Smith (SBN 313015)
    james.smith@knobbe.com
6   KNOBBE, MARTENS, OLSON & BEAR, LLP
    2040 Main Street, Fourteenth Floor
7   Irvine, CA 92614
    Telephone: 949-760-0404
8   Facsimile: 949-760-9502

9   Vincent J. Belusko (SBN 100282)
    vbelusko@mofo.com
10  Nicole M. Smith (SBN 189598)
    nsmith@mofo.com
11  Nicholas R. Fung (SBN 312400)
    nfung@mofo.com
12  Sorin G. Zaharia (SBN 312655)
    szaharia@mofo.com
13  MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
14  Los Angeles, California 90017
    Telephone: 213-892-5200
15  Facsimile: 213-892-5454

16  Attorneys for Plaintiff
    NOMADIX, INC.

17

18  Daniel J. Goettle (admitted *pro hac vice*)
    dgoettle@bakerlaw.com
19  Jeffrey W. Lesovitz (admitted *pro hac vice*)
    jlesovitz@bakerlaw.com
20  Kevin M. Bovard (SBN 247521)
    kbovard@bakerlaw.com
21  BAKER & HOSTETLER LLP
    2929 Arch Street, 12th Floor
22  Philadelphia, PA 19104-2891
    Telephone: 215-568-3100
23  Facsimile: 215-568-3439

24  Michael J. Swope (admitted *pro hac vice*)
    mswope@bakerlaw.com
25  Curt R. Hineline (admitted *pro hac vice*)
    chineline@bakerlaw.com
26  BAKER & HOSTETLER LLP
    999 Third Avenue, Suite 3500
27  Seattle, WA 98104-4040
    Telephone: 206-332-1379
28  Facsimile: 206-624-7317

Michael R. Matthias (SBN 57728)
Email: mmatthias@bakerlaw.com
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310-820-8800
Facsimile: 310-820-8859

Andrew E. Samuels (admitted *pro hac vice*)
asamuels@bakerlaw.com
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215-4138
Telephone: 614-228-1541
Facsimile: 614-462-2616

Attorneys for Defendant
GUEST-TEK INTERACTIVE
ENTERTAINMENT LTD.

# TABLE OF CONTENTS

I.    INTRODUCTORY STATEMENTS..............................................................1

 A.    Nomadix's Introduction ...............................................................1

 B.    Guest-Tek's Introduction .............................................................2

II.   INTERROGATORY 5...........................................................................3

 A.    Text of Nomadix's Interrogatory .................................................3

 B.    Text of Guest-Tek's Response ......................................................4

III.  NOMADIX'S ARGUMENT ...................................................................5

 A.    Nomadix seeks to understand how human-readable computer code Guest-Tek has produced in this case is turned into the software running at Guest-Tek's customer sites................................................5

 B.    Nomadix's interrogatory 5 seeks relevant information ...............6

 C.    Guest-Tek's objections are meritless...........................................8

 D.    Conclusion..................................................................................10

IV.   GUEST-TEK'S ARGUMENT................................................................10

Pursuant to Local Rule 37-2, Plaintiff Nomadix and Defendant Guest-Tek Interactive Entertainment Ltd. submit this Joint Stipulation in connection with Nomadix's motion to compel Guest-Tek to respond to Nomadix's interrogatory 5.

# I.  INTRODUCTORY STATEMENTS

## A.   Nomadix's Introduction

Plaintiff Nomadix filed this action to recover millions of dollars in unpaid royalties that Defendant Guest-Tek Interactive Entertainment owes under a patent license agreement. Guest-Tek's royalty obligations depend on whether Guest-Tek has incorporated Nomadix's patented technology into its computer networking devices. The parties recognize that Nomadix's case in chief at trial may involve expert testimony explaining how Guest-Tek's software works. Guest-Tek does not dispute that Nomadix is entitled to discovery of the source code for Guest-Tek's products. Indeed, Guest-Tek has now produced over 50 versions of source code. This Court previously ordered Guest-Tek to respond in full to interrogatories requiring Guest-Tek to identify which version of source code was installed at each customer site during each quarter the license agreement has been in effect. (Dkt. No. 117 (granting motion to compel at Dkt. No. 76).)

Nomadix's interrogatory 5 asks Guest-Tek to explain how to take the source code it has produced and turn it into the executable software running at actual customer sites. At trial, Nomadix is entitled to ask its expert to explain to the jury how the human-readable source code that Guest-Tek has produced is turned into the executable software running at actual customer sites so as to trigger a royalty obligation under the license agreement. Nomadix is also entitled to this information so that an expert can verify that Guest-Tek has in fact produced all relevant source-code files. Nomadix's expert should also be able to convert Guest-Tek's produced source code into executable software to verify that the source code Guest-Tek has produced matches the behavior Nomadix has observed while performing testing at actual Guest-Tek customer sites. And Nomadix is also

entitled to run Guest-Tek's software in a test environment to demonstrate how Guest-Tek's software has worked over the years. The alternative would be for Nomadix and its expert to visit thousands of Guest-Tek customer properties across the country to produce test data showing how Guest-Tek's software operates in the field.

Guest-Tek has refused to answer interrogatory 5. Guest-Tek's refusal is baseless and unfair given that Guest-Tek itself has demanded in interrogatories that Nomadix explain how Guest-Tek's products incorporate Nomadix's patented technology. In particular, Guest-Tek has served an interrogatory demanding that Nomadix identify the specific lines of source code corresponding to the technology Nomadix has patented. Guest-Tek has asked Nomadix to provide this analysis for *every* Guest-Tek product, *every* one of more than 50 versions of source code, and *every* one of thousands of customer sites.

The Court should therefore order Guest-Tek to respond to Nomadix's interrogatory 5 in full.

**B.   Guest-Tek's Introduction**

Nomadix's complaint is a problem of its own making. Its Interrogatory No. 5 is based on a fundamental flaw in Nomadix's assumption of how the accused Guest-Tek instrumentality (called "OneView Internet" or "OVI") operates. Interrogatory No. 5 simply cannot be answered given the configuration of Guest-Tek's systems, and Guest-Tek has told Nomadix why that is the case. Here, Nomadix has asked how to manually install and execute the OVI code on a Guest-Tek machine, even though Guest-Tek has no mechanism for doing so, because that is simply not how the code operates. The code is not ever manually installed on machines, and in order to satisfy Nomadix, Guest-Tek would need to *invent* a protocol to "manually install and execute the OVI code on a Guest-Tek machine." In other words, Nomadix's interrogatory is asking how to put a square peg in a round hole. Had Nomadix asked the right questions, or even bothered to take a

deposition to learn how the accused instrumentality works, it would not find itself in this position. In fact, Nomadix has had over six years to learn that its premise is flawed. Nomadix has had versions of the OVI source code since 2013, and, for at least the past several years, it has had a Guest-Tek machine prepopulated with the OVI code. It has also had access to hotels that use the Guest-Tek machines populated with the OVI code, by which it can observe the operation of the accused instrumentality. It knew, or in the exercise of reasonable diligence, should have known, that the question is incapable of a response, other than the one that Guest-Tek has already provided.

Moreover, Nomadix's motion is premature. There has been recent correspondence between the parties indicating that there may be a misunderstanding as to the information that Nomadix requests. Guest-Tek has asked Nomadix to explain why it believes that there is a misunderstanding, but Nomadix has not done so.

Nomadix's motion should be denied.

## II.  INTERROGATORY 5

### A.    Text of Nomadix's Interrogatory

Nomadix's interrogatory 5 is set forth below. The set of interrogatories in which it appears is Exhibit 1 to the Declaration of Justin Gillett.

**INTERROGATORY 5**

For each version of each Guest-Tek Product at each property that has been a Customer Property in any License Quarter, provide a detailed, step-by-step explanation of how to take the Code for the Guest-Tek Product you have produced in this litigation and install and execute it on a machine so that the machine operates as the Guest-Tek Product operated at the Customer Property and includes all functionality resident on the Guest-Tek Product at the Customer Property ("Guest-Tek Operation").

In your explanation, specify all compiling, building, and linking steps involved and all Build Parameters necessary to achieve such Guest-Tek Operation, including the exact values, versions, and configurations of such

Build Parameters; to the extent any particular Build Parameter has more than one option sufficient to achieve Guest-Tek Operation, your explanation should specify at least one such option, such that the entire set of Build Parameters provided is internally consistent and will suffice to achieve Guest-Tek Operation. To the extent your explanation involves files, libraries, tools, or other Code or other Build Parameters that you have produced in this litigation, identify those items by their production (Bates) number or, if no production number exists, the date of production and specific filepath. To the extent your explanation involves files, libraries, tools, or other Code or other Build Parameters that you have not produced in this litigation and that you contend you need not produce, explain unambiguously where to download or otherwise obtain the precise version and configuration of such items.

## B. Text of Guest-Tek's Response

Guest-Tek's response to Nomadix's interrogatory 5 is set forth below. The set of interrogatory responses in which it appears is Exhibit 2 to the Declaration of Justin Gillett.

**Response to Interrogatory No. 5:**

Guest-Tek objects that Nomadix has not established standing to propound this Interrogatory. If Nomadix validly assigned its interests in the License Agreement, in the Licensed Patents, and in this litigation to Gate Worldwide Holdings LLC ("GWH"), then GWH—not Nomadix—is the proper Plaintiff/Counter-Defendant here. Guest-Tek further objects that this Interrogatory calls for Highly Confidential – Attorneys' Eyes Only information, which the Protective Order bars Nomadix from viewing if Nomadix lacks standing to prosecute this action.

Guest-Tek further objects that this Interrogatory is unduly burdensome and seeks discovery not proportional to the needs of the case because it would require Guest-Tek to create "a detailed, step-by-step explanation" of how to install and execute code "[f]or each version of each Guest-Tek Product at each property that has been a Customer Property in any License Quarter." The Federal Rules of Civil Procedure do not require Guest-Tek to create documents explaining how to use the documents and things that it produces.

Guest-Tek further objects that the phrase "a detailed, step-by-step explanation" is vague and ambiguous. Nomadix does not specify whether

this explanation includes even more than the already burdensome information expressly requested in this Interrogatory.

Guest-Tek further objects that this Interrogatory seeks information not relevant to the parties' claims and defenses. Nomadix defines "Guest-Tek Products" to encompass products not at issue in this case.

Guest-Tek further objects that this Interrogatory is an improper compound interrogatory comprising an indefinite number of parts. Nomadix defines "Guest Tek Products" to encompass six categories of products, and these categories consist of multiple products or versions of products. Guest-Tek will not respond to this Interrogatory unless and until the parties reach agreement on the scope of this Interrogatory and the number of Interrogatories that it contains.

## III.  NOMADIX'S ARGUMENT

**A.**  **Nomadix seeks to understand how human-readable computer code Guest-Tek has produced in this case is turned into the software running at Guest-Tek's customer sites**

In a nutshell, interrogatory 5 asks Guest-Tek to explain how to take the human-readable source code Guest-Tek has produced in this litigation and install it on a machine so that the machine operates just as Guest-Tek's products do at actual customer sites. Nomadix employed technical jargon to make the interrogatory precise, but the bottom line is that Nomadix simply seeks to understand how the source-code files Guest-Tek has produced in this case become the final executable software product that operates at actual Guest-Tek customer sites.

Interrogatory 5 asks Guest-Tek to explain this process with reference to the Bates numbers of files that Guest-Tek has already produced. Alternatively, if installing Guest-Tek's software on a machine depends on computer files that Guest-Tek believes it need not produce, the interrogatory calls for Guest-Tek to explain where Nomadix can download or otherwise obtain such files.

**B.     Nomadix's interrogatory 5 seeks relevant information**

Guest-Tek's liability for unpaid royalties depends on whether Guest-Tek has incorporated Nomadix's patented technology into its products. Guest-Tek does not dispute that Nomadix may prove its case by demonstrating how Guest-Tek's software works. Nor does Guest-Tek dispute that Nomadix is entitled to discovery of the source code for Guest-Tek's products. Indeed, Guest-Tek has now produced over 50 versions of source code. And this Court previously ordered Guest-Tek to respond in full to interrogatories requiring Guest-Tek to identify which version of source code was installed at each customer site during each quarter the license agreement has been in effect. (Dkt. No. 117 (granting motion to compel at Dkt. No. 76).) The Court also ordered Guest-Tek to explain any contentions that its products do not incorporate Nomadix's patented technology. (*Id.*)

Nomadix's interrogatory 5 goes to the heart of these issues. First, Nomadix is entitled to rely on Guest-Tek's source code at trial. Nomadix may offer the source code into evidence and have its expert explain the source code to the jury. As part of its trial presentation, Nomadix is entitled to have its expert explain to the jury how the human-readable source code that Guest-Tek has produced is turned into the executable software running at actual customer sites so as to trigger a royalty obligation under the license agreement.

Second, despite having access to the same human-readable source-code files, the parties apparently disagree on how Guest-Tek's products operate in practice. As part of understanding Guest-Tek's contentions and as part of confirming Nomadix's own understanding of Guest-Tek's products, Nomadix is entitled to understand how Guest-Tek translates its source code into software.

Third, Nomadix is entitled to have an expert compile the source code and replicate Guest-Tek's software to verify that Guest-Tek has in fact produced all relevant source-code files. For example, Nomadix should be able to verify that the particular source-code files Guest-Tek has produced can in fact be used to make an

operational product. If following Guest-Tek's instructions for turning the source code into software results in an error message or an inoperable piece of software, that would indicate Guest-Tek has not produced all relevant source-code files.

As another example, Nomadix has conducted testing at actual Guest-Tek customer sites and observed behavior showing that Guest-Tek has incorporated Nomadix's patented technology into its products. Nomadix is entitled to confirm that the behavior it has observed in testing matches the behavior of software generated from the source-code files Guest-Tek has produced. Again, a mismatch between what Nomadix has observed in its own testing at actual sites and what Nomadix obtains from Guest-Tek's document production would suggest Guest-Tek's production is incomplete. Nomadix cannot make this comparison until Guest-Tek answers interrogatory 5.

Fourth, interrogatory 5 promotes efficiency and practical preparation for trial. To show Guest-Tek owes it royalties, Nomadix must demonstrate how Guest-Tek's software has worked over the years. Guest-Tek has had thousands of customer sites over the life of the license agreement, which has been in effect for over eight years. Guest-Tek's royalty obligations arise on a quarter-by-quarter basis. It would be impractical for Nomadix to have its expert visit thousands of Guest-Tek customer properties across the country four times a year to produce test data showing how Guest-Tek's software operates in the field. A proper answer to interrogatory 5 would allow Nomadix's expert to take the source code Guest-Tek has produced in this case, install it on a machine in accordance with Guest-Tek's instructions, and run Guest-Tek's software in a test environment to demonstrate how various versions of Guest-Tek's software have worked during the term of the license agreement. Running the software in a test environment will also allow Nomadix to keep variables fixed and demonstrate consistent results that can be more easily summarized for a jury. Nomadix is entitled to this discovery to save on the cost of litigation and facilitate a more realistic presentation at trial.

## C.   Guest-Tek's objections are meritless

Guest-Tek has refused to answer interrogatory 5 altogether. Guest-Tek's response thus far has been limited to objections without any substantive response. Nomadix wrote to Guest-Tek immediately after receiving Guest-Tek's deficient response over a year ago. (Gillett Decl. Ex. 3.) The parties conferred on April 19, 2018, and Guest-Tek explained at that time that it objected to answering the interrogatory on the grounds that Federal Rules of Civil Procedure did not obligate it to create documents that did not previously exist. (Gillett Decl. ¶ 5; Gillett Decl. Ex. 4.) Nomadix explained that Guest-Tek must still answer questions propounded under Rule 33. (Gillett Decl. ¶ 5.) Guest-Tek stated it would consider Nomadix's position and consider whether to supplement.

Shortly thereafter, Judge Birotte stayed the case, and the case remained stayed for approximately ten months. Judge Birotte lifted the stay in February 2019. (Dkt. No. 325.) After Nomadix did not hear anything further from Guest-Tek for several weeks, Nomadix confirmed via correspondence and telephonic conference that Guest-Tek refused to answer interrogatory 5. (Gillet Decl. ¶ 7.)

In the Local Rule 37-1 conference of counsel, the only ground Guest-Tek cited for not answering interrogatory 5 was its objection that the Federal Rules "do not require Guest-Tek to create documents." But interrogatory 5 does not ask Guest-Tek to create any documents. Rather, it asks Guest-Tek to answer a question: namely, how can one take the source code Guest-Tek has produced and install and execute it on a machine so that the machine operates like Guest-Tek's products in the field? If answering this question constituted "creating a document" in the manner Guest-Tek suggests, no party would ever have to answer any interrogatory.

Guest-Tek's other objections are equally meritless. Guest-Tek objected that Nomadix may lack standing based on a third party's attempt to substitute as the plaintiff in the case. That objection should be moot because the third party

withdrew its request to substitute. (Dkt. No. 329.) Guest-Tek also objected that the interrogatory encompasses products not at issue, but the interrogatory is directed to products that give rise to royalty obligations under the license agreement and is phrased in terms of source code that Guest-Tek has produced in this litigation. Guest-Tek also objected that the interrogatory covers multiple versions of multiple products. But Guest-Tek failed to substantiate in its objections any undue burden from addressing the versions of code it has produced in this litigation.

Guest-Tek's own interrogatories to Nomadix show that its objections to interrogatory 5 lack merit. For example, Guest-Tek's interrogatory 10 is a sweeping interrogatory demanding that Nomadix identify the specific lines of source code corresponding to Nomadix's patented technology for *every* disputed patent claim, *every* Guest-Tek product, *every* one of over 50 versions of source code, and *every* one of thousands of customer sites over the years. (Gillett Decl. Ex. 5.) Having propounded interrogatory 10, Guest-Tek cannot legitimately object to explaining how to take the source-code files it has produced and install them as software on a machine.

Responding on any level to Guest-Tek's interrogatory 10 is unduly burdensome and unfair without the ability to turn the human-readable source code Guest-Tek has produced in this case into machine-executable software that Nomadix can test and debug. A debugger is a computer tool used to test the operation of a software program. It would allow Nomadix's expert to run Guest-Tek's software on a machine while monitoring the specific lines of human-readable source code triggered by particular operations. To debug Guest-Tek's software, Nomadix's expert first needs to know how to turn Guest-Tek's source code into software—i.e., Nomadix first needs Guest-Tek to answer interrogatory 5. Given Guest-Tek's demands that Nomadix identify specific lines of source code for every version of every Guest-Tek product and every customer property,

1    Nomadix is entitled to understand how to install all the source code Guest-Tek has
2    produced in this case as machine-executable software.

3    **D.      Conclusion**

4           Through interrogatory 5, Nomadix seeks to understand how to take the
5    human-readable source code Guest-Tek has produced in this case and install it on a
6    machine for testing. This discovery is highly relevant to critical issues in the case.
7    As Guest-Tek's own interrogatories demonstrate, Guest-Tek has no legitimate
8    objections. The Court should therefore order Guest-Tek to answer Nomadix's
9    interrogatory 5 in full within 14 days.

10
11
12                          **IV.  GUEST-TEK'S ARGUMENT**

13          Guest-Tek has advised Nomadix as follows in a supplemental response to
14   Interrogatory No. 5:

15          Guest-Tek objects to this Interrogatory as unduly burdensome and as
16          seeking discovery through inappropriate means. The Interrogatory
             incorrectly assumes the existence of facts, circumstances and information
17          (collectively "information") that would enable Guest-Tek to respond thereto,
18          and based on that incorrect assumption, requests that Guest-Tek provide
             and/or summarize such non-existent information.
19
20          By way of example, this Interrogatory requests a "detailed, step-by-step
             explanation of how to take the Code for the Guest-Tek Product you have
21          produced in this litigation and install and execute it on a machine so that the
22          machine operates as the Guest-Tek Product operated at the Customer
             Property and includes all functionality resident on the Guest-Tek Product at
23          the Customer Property." This portion of the Interrogatory incorrectly
24          assumes that Guest-Tek manually installs its products on-site at customer
             hotels, and therefore that the assumed manual installation process can be
25          explained….

26          As presently advised, Guest-Tek does not perform, and has not performed,
27          such manual installations. Rather, code installation occurs through an
             automated procedure; a server at Guest-Tek's headquarters directs and self-
28

installs the code on the "Guest-Tek Product" once the "Guest-Tek Product" has been remotely connected to the server via a secure internet connection. To the extent that the Interrogatory requests an explanation of how code might be manually installed in and executed on a "Guest-Tek Product," the Interrogatory calls for speculation.

Moreover, Guest-Tek is not required to perform a manual installation so that it can respond to this Interrogatory, and any such effort would be extremely burdensome since it would require significant, time-consuming, and costly re-engineering of Guest-Tek's installation process.

For the same reasons, the remainder of the Interrogatory, which calls for a specification of "all compiling, building, and linking steps involved and all Build Parameters necessary to achieve such Guest-Tek Operation, including the exact values, versions, and configurations of such Build Parameters," is improperly based on an incorrect assumption, calls for speculation, and is unduly burdensome.

Thus, the Interrogatory improperly requests Guest-Tek to set forth information that does not exist. To the extent that the Interrogatory purports to request that Guest-Tek explain why such information does not exist, or how such information might otherwise be obtained by Nomadix, Guest-Tek objects thereto, inasmuch as there are less burdensome ways, such as a deposition, for Nomadix to attempt to obtain the information that it seeks. Alternatively, Nomadix may seek to access a "Guest-Tek Product" at a Guest-Tek Property and attempt to obtain the information that it seeks. The Federal Rules of Civil Procedure do not require Guest-Tek to undertake an effort that is more burdensome to Guest-Tek than it would be to Nomadix by pursuing other avenues of discovery.

But, Guest-Tek did not stop there. Guest-Tek went on to advise Nomadix:

BEGIN   HIGHLY   CONFIDENTIAL–ATTORNEYS'   EYES   ONLY MATERIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16 <span style="color:red">END HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY MATERIAL</span>

17

18 See Ex. 5 (Guest-Tek Interactive Entertainment Ltds' Supplemental Objections

19 and Response to Interrogatory No. 5 of Nomadix's Second Set of Interrogatories.

20     Guest-Tek has done everything that it can do to respond to this interrogatory.

21 Guest-Tek has no obligation to tell Nomadix how to do its homework, but, as

22 mentioned in Guest-Tek's supplemental response above, there are less burdensome

23 ways, such as a deposition, for Nomadix to attempt to obtain the information that it

24 seeks. Alternatively, Nomadix may seek to access a "Guest-Tek Product" at a

25 Guest-Tek Property and attempt to obtain the information that it seeks. The Federal

26 Rules of Civil Procedure do not require Guest-Tek to undertake an effort that is

27 more burdensome to Guest-Tek than it would be to Nomadix by pursuing other

28 avenues of discovery.

1    In any event, Nomadix's motion is premature. Following receipt of Guest-
2  Tek's supplemental response, and Guest-Tek's portion of this Joint Stipulation,
3  Nomadix e-mailed Guest-Tek stating: "It seems that Guest-Tek may misunderstand
4  what Nomadix is looking for…. It is also possible that, after Nomadix reads Guest-
5  Tek's half of the joint stipulation, we will identify issues worth discussing further
6  by phone before filing a motion." (Exh. 6, June 17, 6:18 PM EST e-mail from
7  Mark Lezama to Steven Rocci.) Guest-Tek responded, stating that Guest-Tek
8  suggests "that you let us know, in writing, what information you seek, that you
9  believe GuestTek may possess, after having reviewed the supplemental response.
10  We can then decide whether further discussion is warranted, and you can then
11  decide whether to proceed with your motion." (Exh. 6, June 17, 6:30 PM EST e-
12  mail from Steven Rocci to Mark Lezama.) But Nomadix never explained how it
13  believes that Guest-Tek "may misunderstand what Nomadix is looking for," never
14  identified any "issues worth discussing further by phone before filing a motion,"
15  and never let Guest-Tek know "what information [Nomadix] seeks that you believe
16  that Guest-Tek may possess."  Rather, Nomadix informed Guest-Tek that it would
17  proceed to file this motion. (Exh. 6, 10:05 PM EST e-mail from Mark Lezama to
18  Steven Rocci).
19    Nomadix's motion must be denied.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: June 18, 2019

/s/ *Mark Lezama*
_____

Douglas G. Muehlhauser
Mark Lezama
Alan G. Laquer
Alexander J. Martinez
Justin J. Gillett
James F. Smith

MORRISON & FOERSTER LLP

Vincent J. Belusko
Nicole M. Smith
Nicholas R. Fung
Sorin G. Zaharia

Attorneys for Plaintiff
NOMADIX, INC.

Respectfully submitted,

BAKER & HOSTETLER LLP

Dated: June 18, 2019

/s/ *Steven J. Rocci* (with permission)
_____

Steven J. Rocci
Jeffrey W. Lesovitz
Daniel J. Goettle
Kevin M. Bovard
Michael J. Swope
Curt R. Hineline
Michael R. Matthias
Andrew E. Samuels

Attorneys for Defendant
GUEST-TEK INTERACTIVE
ENTERTAINMENT LTD.

- 14 -

# LOCAL RULE 5-4.3.4(a)(2)(i) ATTESTATION

All other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


Dated: June 18, 2019             /s/ *Mark Lezama*
                                 Mark Lezama

30765079

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

10
11

NOMADIX, INC.

12

          Plaintiffs,

13

     v.

14

GUEST–TEK INTERACTIVE
ENTERTAINMENT LTD.

15
16

          Defendants.

17
18

Case No.:
2:16–cv–08033–AB–FFM

**ORDER RE JURY TRIAL**

**I.      DEADLINES**

**II.     TRIAL PREPARATION**

**III.    CONDUCT OF
          ATTORNEYS AND
          PARTIES**

**Trial:  December 4, 2018**

**Time:  8:30 a.m.**

19
20
21
22
23
24
25
26
27
28

## I.      DEADLINES

| | |
|---|---|
| Last Day to Add Parties/Amend Pleadings | 2/26/2018 |
| Non–expert Discovery Cut–off | 5/31/2018 |
| Expert Disclosure (Initial) | 6/29/2018 |
| Expert Disclosure (Rebuttal) | 7/27/2018 |
| Expert Discovery Cut–off | 8/27/2018 |
| Last Day to Hear Motions | 8/27/2018 |
| Last Day to Conduct ADR Proceeding | 9/10/2018 |
| File Memorandum of Contentions of Fact and Law, Exhibit and Witness Lists, Status Report regarding settlement, and all Motions in Limine | 10/15/2018 |
| Lodge Pretrial Conference Order, file agreed set of Jury Instructions and Verdict forms, file statement regarding Disputed Instructions and Verdict Forms, and file oppositions to Motions in Limine | 10/22/2018 |
| Final Pretrial Conference and Hearing on Motions in Limine | 11/5/2018 at 11:00 AM |
| Trial Date (Est. _4_ Days) | 12/4/2018 at 08:30 AM |

### A.   Parties/Pleadings

The Court has established a cut−off date for adding parties or amending pleadings. All motions to add parties or to amend the pleadings must be noticed to be *heard* on or before the cut−off date. All unserved parties will be dismissed at the time of the pretrial conference pursuant to Local Rule 16−8.1.

### B.   Discovery and Discovery Cut−off

1.   <u>Discovery Cut−off</u>:  The Court has established a cut−off date for discovery, including expert discovery, if applicable. This is not the date by which discovery requests must be served; it is the date by which all discovery, *including all hearings on any related motions*, is to be completed.

2.   <u>Discovery Disputes</u>:  Counsel are expected to comply with the Federal Rules of Civil Procedure and all Local Rules concerning discovery. Whenever possible, the Court expects counsel to resolve discovery problems among themselves in a courteous, reasonable and professional manner. The Court expects that counsel will adhere strictly to the Civility and Professionalism Guidelines (which can be found on the Court's website under Attorney Information, Attorney Admissions).

3.   <u>Discovery Motions</u>:  Any motion challenging the adequacy of discovery responses must be filed, served, and calendared sufficiently in advance of the discovery cut−off date to permit the responses to be obtained before that date if the motion is granted.

4.   <u>Depositions</u>:  All depositions shall commence sufficiently in advance of the discovery cut−off date to permit their completion and to permit the deposing party enough time to bring any discovery motions concerning the deposition before the cut−off date. Given the requirements to "meet and confer" and to give notice, in most cases a planned motion to compel must be discussed with opposing counsel at least six weeks before the cut−off.

*///*

5.  <u>Written Discovery</u>:  All interrogatories, requests for production of documents and requests for admissions must be served sufficiently in advance of the discovery cut–off date to permit the discovering party enough time to challenge (via motion practice) responses deemed to be deficient.

6.  <u>Expert Discovery</u>: All disclosures must be made in writing. The parties should begin expert discovery shortly after the initial designation of experts. The final pretrial conference and trial dates will not be continued merely because expert discovery is not completed. Failure to comply with these or any other orders concerning expert discovery may result in the expert being excluded as a witness.

**C.  Law and Motion**

The Court has established a cut–off date for the *hearing* of motions. All motions must be noticed so that the *hearing* takes place on or before the motion cut–off date.

**The Court will allow only one motion for summary judgment per party in this case, and will not entertain cross–motions**. Counsel shall meet and confer prior to summary judgment to determine which party will be the moving party and which will be the opposing party on summary judgment. To the extent it is appropriate based on undisputed facts and controlling principles of law, the Court will *sua sponte* enter summary judgment in favor of the non–moving party pursuant to Rule 56(f). If any party believes this is one of the rare instances in which there is good cause to allow more than one summary judgment motion (including a cross–motion) or to increase page limits on the moving papers, the party shall seek leave from the court by a noticed motion setting forth good cause.

Counsel must provide chambers with Mandatory Chambers' Copies of the following:

1.  <u>Civil Matters</u>:  initial pleadings (complaints, counterclaims, cross–claims), Joint Rule 16(b)/26(f) Reports, motion papers (motions, oppositions,

replies, non–oppositions, and any related documents), trial documents (joint statement of the case, proposed voir dire questions, jury instructions, verdict form, exhibit list, witness list, and any related disputes), ex parte applications for temporary restraining orders, and presentation materials for patent cases.

      2.   <u>Criminal Matters</u>:  motion papers (motions, oppositions, replies, non–oppositions, and any related documents), plea agreement(s), and sentencing position papers.

Counsel should consult the Court's website at www.cacd.uscourts.gov, Judges' Procedures and Schedules, Honorable André Birotte Jr., for further information regarding chambers' copies and motion procedures.

**D.**    **Settlement Procedures (ADR Proceedings)**

Pursuant to Local Rule 16–15, the parties in every case must select a settlement procedure. The final meeting with the parties' settlement officer must take place no later than four weeks before the Final Pretrial Conference. Counsel shall file a Joint Report regarding the outcome of settlement discussions, the likelihood of possible further discussions and any help the Court may provide with regard to settlement negotiations not later than seven (7) days after the settlement conference.

If the parties desire to participate in an ADR procedure other than that elected in the Rule 26(f) Scheduling Report and Order, they shall file a stipulation with the Court. This request will not necessarily be granted.

No case will proceed to trial unless all parties, including the principals of all corporate parties, have appeared personally at a settlement conference.

**E.**    **Final Pretrial Conference/Proposed Pretrial Conference Order**

A final Pretrial Conference (PTC) date has been set pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16–8. STRICT COMPLIANCE WITH THE REQUIREMENT OF FED. R. CIV. P. 16, 26 AND LOCAL RULES ARE REQUIRED BY THE COURT.

1    Unless excused for good cause, each party appearing in this action shall be

2 represented at the PTC by the lead trial counsel for that party. Counsel should be

3 prepared to discuss streamlining the trial, including presentation of testimony by

4 deposition excerpts or summaries, time limits, stipulations as to undisputed facts,

5 and qualification of experts by admitted resumes.

6    The proposed Pretrial Conference Order (PTCO) shall be lodged fourteen

7 (14) days before the PTC. Adherence to this time requirement is necessary for

8 in–chambers preparation of the matter. The form of the proposed PTCO shall

9 comply with Appendix A to the Local Rules and the following:

10    1.    Place in "all caps" and in "bold" the separately numbered

11 headings for each category in the PTCO (e.g., "**1. <u>THE PARTIES</u>**" or

12 "**7. <u>CLAIMS AND DEFENSES OF THE PARTIES</u>**").

13    2.    Include a table of contents at the beginning.

14    3.    In specifying the surviving pleadings under section 1, state

15 which claims or counterclaims have been dismissed or abandoned, e.g., "Plaintiff's

16 second cause of action for breach of fiduciary duty has been dismissed." Also, in

17 multiple party cases where not all claims or counterclaims will be prosecuted

18 against all remaining parties on the opposing side, please specify to which party

19 each claim or counterclaim is directed.

20    4.    In specifying the parties' claims and defenses under section 7,

21 each party shall closely follow the examples set forth in Appendix A of the Local

22 Rules.

23    5.    In drafting the PTCO, the court also expects that the parties will

24 attempt to agree on and set forth as many non–contested facts as possible. The

25 court will usually read the uncontested facts to the jury at the start of trial. A

26 carefully drafted and comprehensively stated stipulation of facts will reduce the

27 length of trial and increase jury understanding of the case.

28 *///*

6.    In drafting the factual issues in dispute for the PTCO, the parties should attempt to state issues in ultimate fact form, not in the form of evidentiary fact issues. The issues of fact should track the elements of a claim or defense on which the jury will be required to make findings.

7.    Issues of law should state legal issues on which the court will be required to rule during the trial and should not list ultimate fact issues to be submitted to the trier of fact.

**The parties shall provide an electronic copy of the PTCO in Microsoft Word format to the chambers' e–mail at: AB_Chambers@cacd.uscourts.gov.**

## II.   TRIAL PREPARATION

STRICT COMPLIANCE WITH LOCAL RULE 16 IS REQUIRED. This Order sets forth some different and some additional requirements. Failure to comply with these requirements may result in the Final Pretrial Conference being taken off calendar or continued, or in other sanctions.

### A.   Pretrial Documents

All pretrial document copies shall be delivered to the Court "binder–ready" (three–hole punched on the left side, without blue–backs, and stapled only in the top left corner).

The filing schedule for pretrial documents is as follows:

1. At least 21 days before the Final Pretrial Conference:

- Memorandum of Contentions of Fact and Law
- Witness Lists
- Joint Exhibit List
- Motions *in limine*

2. At least 14 days before the Final Pretrial Conference:

- Proposed Final Pretrial Conference Order
- Proposed Jury Instructions
- Proposed Verdict Forms

- Statement of the Case

- Proposed additional voir dire questions, if desired

- Oppositions to motions *in limine*

3. <u>At least 7 days before trial</u>:

- Trial briefs, if desired

In addition to the requirements of Local Rule 16, the witness lists must include a brief description (one or two paragraphs) of the testimony, **what makes the testimony unique** from any other witness testimony, and a time estimate for both direct and cross–examination (separately stated). The Joint Exhibit List shall contain any objections to authenticity and/or admissibility to the exhibit(s) and the reasons for the objections.

**The parties shall provide electronic copies of the Memoranda of Contentions of Fact and Law, Witness List, and Exhibit List in Microsoft Word format to the chambers' e–mail at AB_Chambers@cacd.uscourts.gov.**

### B.   Motions *In Limine*

All motions and oppositions are limited to ten (10) pages in length. All motions *in limine* must be filed at least three weeks before the final pretrial conference; oppositions must be filed at least two weeks before the final pretrial conference; reply briefs will not be accepted. Counsel are to meet and confer with opposing counsel to determine whether opposing counsel intend to introduce the disputed evidence and to attempt to reach an agreement that would obviate the motion. The Court will rule on motions *in limine* at the final pretrial conference. Motions *in limine* should address specific issues (e.g., *not* "to exclude all hearsay"). Motions *in limine* should not be disguised motions for summary adjudication of issues.

### C.   Jury Instructions, Statement of the Case, and Voir Dire

Pursuant to Local Rule 16–2, lead trial counsel for each party are required to meet and confer in person. The Court expects strict compliance with Local Rule

16–2. Fourteen days before the Local Rule 16–2 meeting, the parties shall exchange their respective proposed jury instructions and special verdict forms. Ten days prior to the Local Rule 16–2 meeting, each shall serve objections to the other's instructions and verdict forms. Before or at the Rule 16–2 meeting, counsel are ordered to meet and confer and attempt to come to agreement on the proposed jury instructions and verdict forms.

Counsel shall file with the Court a JOINT set of jury instructions on which there is agreement. All blanks in standard forms should be filled in. The Court expects counsel to agree on the substantial majority of jury instructions, particularly when pattern or model instructions provide a statement of applicable law. If one party fails to comply with the provisions of this section, the other party must file a unilateral set of jury instructions.

Each party shall also file its proposed jury instructions that are objected to by any other party. Each disputed instruction must have attached a short statement (one or two paragraphs), including points and authorities, in support of the instruction and a brief statement, including points and authorities, in support of any objections. If applicable, a proposed alternative instruction must be provided.

When the *Manual of Model Jury Instructions for the Ninth Circuit* provides an applicable jury instruction, the parties should submit the most recent version, modified and supplemented to fit the circumstances of this case. Where California law applies, counsel should use the current edition of the *Judicial Council of California Civil Jury Instructions* ("CACI"). If neither is applicable, counsel should consult the current edition of O'Malley, et al., *Federal Jury Practice and Instructions*. Each requested instruction shall (a) cite the authority or source of the instruction, (b) be set forth in full, (c) be on a separate page, (d) be numbered, (e) cover only one subject or principle of law, and (f) not repeat principles of law contained in any other requested instruction. Counsel may submit alternatives to these instructions only if counsel has a reasoned argument that they do not properly

state the law or they are incomplete.

Counsel must provide an index of all instructions submitted, which must include the following:

   a.   the number of the instruction;

   b.   the title of the instruction;

   c.   the source of the instruction and any relevant case citations; and

   d.   the page number of the instruction.

For example:

| Number | Title | Source | Page Number |
|--------|-------|--------|-------------|
| 1 | Trademark–Defined (15.U.S.C. § 1127) | 9th Cir. 8.5.1 | 1 |

During the trial and before argument, the Court will meet with counsel and settle the instructions, and counsel will have an opportunity to make a further record concerning their objections.

*At the time of filing the proposed final pretrial conference order*, counsel should file a jointly prepared one– or two–page statement of the case to be read by the Court to the prospective panel of jurors before commencement of voir dire.

The Court will conduct the voir dire. The Court provides a list of basic questions, and may provide a list of additional questions to jurors before voir dire. (This is not a questionnaire to be completed by jurors.) Counsel may, but are not required to, file and submit (electronically to the chambers' e–mail and in paper form) a list of proposed case–specific voir dire questions at the time they file the proposed final pretrial conference order.

In most cases the Court will conduct its initial voir dire of 14 prospective jurors who will be seated in the jury box. Generally the Court will select eight jurors. Each side will have three peremptory challenges. If fourteen jurors are seated in the box and all six peremptory challenges are exercised, the remaining eight jurors will constitute the jury panel. If fewer than six peremptory challenges

are exercised, the eight jurors in the lowest numbered seats will be the jury. The Court will not necessarily accept a stipulation to a challenge for cause. If one or more challenges for cause are accepted, and all six peremptory challenges are exercised, the Court may decide to proceed with six or seven jurors.

**Counsel must provide the proposed jury instructions and voir dire to the chambers' e−mail at <u>AB_Chambers@cacd.uscourts.gov</u> in Word format.**

### D.   Trial Exhibits

Exhibits must be placed in three−ring binders indexed by exhibit number with tabs or dividers on the right side. Counsel shall submit to the Court an original and one copy of the binders. The spine portion of the binder shall indicate the volume number *and* contain an index of each exhibit included in the volume.

The Court requires that the following be submitted to the Courtroom Deputy Clerk ("CRD") on the *first day of trial*:

a.   The party's witness list in the order in which the witnesses may be called to testify.

b.   The joint exhibit list in the form specified in Local Rule 16−5 (Civil), which shall be sent in Word format to the chambers' e−mail no later than noon on the Monday before trial.

c.   All of the exhibits (except those to be used for impeachment only), with official exhibit tags attached and bearing the same number shown on the exhibit list. Exhibits shall be numbered 1, 2, 3, etc., NOT 1.1, 1.2, etc. The defense exhibit numbers shall not duplicate plaintiff's numbers. If a "blow−up" is an enlargement of an existing exhibit, it shall be designated with the number of the original exhibit followed by an "A." These items (and the items listed in d and e below) shall be provided on the first day of trial.

d.   The binder of *original exhibits* with the Court's exhibit tags, yellow tags for plaintiff and blue tags for defendant, stapled to the front of the exhibit at the upper right−hand corner with the case number, case name, and exhibit

number placed on each tag.

       e.     A three–ring binder containing a copy of all exhibits that can be reproduced, and a copy of the witness list. Each exhibit shall be tabbed with the exhibit number for easy referral.

       f.     A three–ring binder containing a copy of all exhibits for use by witnesses.

A copy of the exhibit list with all *admitted exhibits* will be given to the jury during deliberations. Counsel shall review and approve the exhibit list with the CRD before the list is given to the jury.

Where a significant number of exhibits will be admitted, the Court encourages counsel, preferably by agreement, to consider ways in which testimony about exhibits may be made intelligible to the jury while it is being presented. Counsel should consider such devices as overhead projectors, jury notebooks for admitted exhibits or enlargements of important exhibits. [The Court has an Elmo and other equipment available for use during trial.] Information concerning training on the use of electronic equipment is available. Details are posted on the Court's website. To make reservations for training, call 213–894–3061. The Court does not permit exhibits to be "published" by passing them up and down the jury box. Exhibits may be displayed briefly using the screens in the courtroom, unless the process becomes too time–consuming.

All counsel are to meet not later than ten days before trial and to stipulate, so far as is possible, to foundation, to waiver of the best evidence rule and to those exhibits that may be received into evidence at the start of the trial. The exhibits to be so received will be noted on the Court's copy of the exhibit list.

**E.    Court Reporter**

Any party requesting special court reporter services for any hearing (i.e., real time transmission, daily transcripts) shall notify the reporter at least 2 weeks before the hearing date.

**F.    Jury Trial**

On the first day of trial, court will commence at 8:30 a.m. and conclude at approximately 4:30 p.m. with a one–hour lunch break. On the first day of trial, *counsel must appear at 8:30 a.m.* to discuss preliminary matters with the Court. After the first day of trial, trial days are Tuesday through Friday from 9:00 a.m. to approximately 4:30 p.m. with two fifteen–minute breaks and a one–hour lunch break.

On the first day of trial, the jury panel will be called when the Court is satisfied that the matter is ready for trial. Jury selection usually takes only a few hours. Counsel should be prepared to proceed with opening statements and witness examination immediately after jury selection.

**III.   CONDUCT OF ATTORNEYS AND PARTIES**

**A.    Opening Statements, Examining Witnesses, and Summation**

Counsel must use the lectern. Counsel must not consume time by writing out words, drawing charts or diagrams, etc. Counsel may prepare such materials in advance. The Court will honor (and may establish) reasonable time estimates for opening statements and closing arguments, examination of witnesses, etc.

**B.    Objections to Questions**

Counsel must not use objections for the purpose of making a speech, recapitulating testimony, or attempting to guide the witness.

When objecting, counsel must rise to state the objection and state only that counsel objects and the legal ground of objection. If counsel wishes to argue an objection further, counsel must ask for permission to do so.

**C.    General Decorum**

1.    Counsel should not approach the CRD or the witness box without specific permission and must return to the lectern when the purpose for approaching has been accomplished.

///

2.     Counsel should rise when addressing the Court, and when the Court or the jury enters or leaves the courtroom, unless directed otherwise.

3.     Counsel should address all remarks to the Court. Counsel are not to address the CRD, the court reporter, persons in the audience, or opposing counsel. If counsel wish to speak with opposing counsel, counsel must ask permission to do so. Any request for the re–reading of questions or answers shall be addressed to the Court. Requests may not be granted.

4.     Counsel should not address or refer to witnesses or parties by first names alone, with the exception of witnesses under 14 years old.

5.     Counsel must not offer a stipulation unless counsel have conferred with opposing counsel and have verified that the stipulation will be acceptable.

6.     While Court is in session, counsel must not leave counsel table to confer with any person in the back of the courtroom unless permission has been granted in advance.

7.     Counsel shall not make facial expressions, nod, or shake their heads, comment, or otherwise exhibit in any way any agreement, disagreement, or other opinion or belief concerning the testimony of a witness. Counsel shall admonish their clients and witnesses not to engage in such conduct.

8.     Counsel should not talk to jurors at all, and should not talk to co–counsel, opposing counsel, witnesses, or clients where the conversation can be overheard by jurors. Each counsel should admonish counsel's own clients and witnesses to avoid such conduct.

9.     Where a party has more than one lawyer, only one may conduct the direct or cross–examination of a particular witness, or make objections as to that witness.

**D.    Promptness of Counsel and Witnesses**

1.     Promptness is expected from counsel and witnesses. Once

counsel are engaged in trial, this trial is counsel's first priority. The Court will not delay the trial or inconvenience jurors.

2.   If a witness was on the stand at a recess or adjournment, counsel who called the witness shall ensure the witness is back on the stand and ready to proceed when trial resumes.

3.   Counsel must notify the CRD in advance if any witness should be accommodated based on a disability or for other reasons.

4.   No presenting party may be without witnesses. If a party's remaining witnesses are not immediately available and there is more than a brief delay, the Court may deem that party to have rested.

5.   The Court attempts to cooperate with professional witnesses and will, except in extraordinary circumstances, accommodate them by permitting them to be called out of sequence. Counsel must anticipate any such possibility and discuss it with opposing counsel. If there is an objection, counsel must confer with the Court in advance.

**E.   Exhibits**

1.   Each counsel should keep counsel's own list of exhibits and should note when each has been admitted into evidence.

2.   Each counsel is responsible for any exhibits that counsel secures from the CRD and must return them before leaving the courtroom at the end of the session.

3.   An exhibit not previously marked should, at the time of its first mention, be accompanied by a request that it be marked for identification. Counsel must show a new exhibit to opposing counsel before the court session in which it is mentioned.

4.   Counsel are to advise the CRD of any agreements with respect to the proposed exhibits and as to those exhibits that may be received without further motion to admit.

5.      When referring to an exhibit, counsel should refer to its exhibit number. Witnesses should be asked to do the same.

6.      Counsel must not ask witnesses to draw charts or diagrams nor ask the Court's permission for a witness to do so. Any graphic aids must be fully prepared before the court session starts.

**F.   Depositions**

1.      All depositions to be used at trial, either as evidence or for impeachment, must be lodged with the CRD on the first day of trial or such earlier date as the Court may order. Counsel should verify with the CRD that the relevant deposition is in the CRD's possession.

2.      In using depositions of an adverse party for impeachment, either one of the following procedures may be adopted:

a.      If counsel wishes to read the questions and answers as alleged impeachment and ask the witness no further questions on that subject, counsel shall first state the page and line where the reading begins and the page and line where the reading ends, and allow time for any objection. Counsel may then read the portions of the deposition into the record.

b.      If counsel wishes to ask the witness further questions on the subject matter, the deposition shall be placed in front of the witness and the witness told to read the relevant pages and lines silently. Then counsel may either ask the witness further questions on the matter and thereafter read the quotations, or read the quotations and thereafter ask further questions. Counsel should have an extra copy of the deposition for this purpose.

3.      Where a witness is absent and the witness's testimony is offered by deposition, counsel may (a) have a reader occupy the witness chair and read the testimony of the witness while the examining lawyer asks the questions, or (b) have counsel read both the questions and answers.

///

### G.   Using Numerous Answers to Interrogatories and Requests for Admission

Whenever counsel expects to offer a group of answers to interrogatories or requests for admissions extracted from one or more lengthy documents, counsel should prepare a new document listing each question and answer and identifying the document from which it has been extracted. Copies of this new document should be given to the Court and opposing counsel.

### H.   Advance Notice of Unusual or Difficult Issues

If any counsel have reason to anticipate that a difficult question of law or evidence will necessitate legal argument requiring research or briefing, counsel must give the Court advance notice. Counsel are directed to notify the CRD at the day's adjournment if an unexpected legal issue arises that could not have been foreseen and addressed by a motion in limine. See Fed. R. Evid. 103. Counsel must also advise the CRD at the end of each trial day of any issues that must be addressed outside the presence of the jury, so that there is no interruption of the trial. THE COURT WILL NOT KEEP JURORS WAITING.

**This Court does not exempt parties appearing *pro se* from compliance with the Federal Rules of Civil Procedure or the Local Rules. (Local Rule 83–2.2.3.)**

IT IS SO ORDERED.

Dated: June 16, 2017

_____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

,
                  Plaintiff(s),

vs.

,
                  Defendant(s),

_____)

)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV      AB (  x)

**EXHIBIT LIST**

*Sample Format*

| EX. No. | Description | Identified | Admitted |
|---------|-------------|------------|----------|
|         |             |            |          |
|         |             |            |          |
|         |             |            |          |
|         |             |            |          |
|         |             |            |          |
|         |             |            |          |
|         |             |            |          |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| , | ) | CASE NO. CV        AB (  x) |
| Plaintiff(s), | ) | **WITNESS LIST** |
| | ) | |
| vs. | ) | *Sample Format* |
| , | ) | |
| Defendant(s), | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

| | **Dates of Testimony** |
|---|---|
| **Witnesses for Plaintiff** | |
| | *(to be filled in during trial)* |
| | |
| | |
| **Witnesses for Defendant** | |
| | |
| | |

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| NOMADIX, INC., <br><br>          Plaintiff, <br><br>      v. <br><br> GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., <br><br>          Defendant. | Case No. 2:16-CV-08033-AB-FFM <br><br> ~~[PROPOSED]~~ **ORDER REGARDING CASE SCHEDULE** |

1        Having reviewed the Parties' Joint Report Re: Case Schedule, IT IS

2 HEREBY ORDERED THAT the case management schedule is amended as

3 follows:

| | Original Date (D.I. 56) | Nomadix's Proposed Date | Guest-Tek's Proposed Date | Court-ordered Date |
|---|---|---|---|---|
| Exchange of terms for claim construction | None | None | 5/31/2019 | [consistent with substantive requirements of N.D. Cal. P.L.R.s]<br><br>4/26/2019 |
| Exchange proposed claim constructions and any extrinsic evidence | None | None | 6/21/2019 | [N.D. Cal. P.L.R.s apply]<br><br>5/24/2019 |
| Joint Claim Construction and Prehearing Statement | None | None | 7/17/2019 | [N.D. Cal. P.L.R.s apply]<br><br>6/7/2019 |
| Opening Claim Construction Brief | None | None.  Any claim construction briefing shall be part of any motion for summary judgment. | 8/26/2019 | [simultaneous – 30 pages max]<br><br>7/12/2019 |
| Responsive Claim Construction Brief | None | None.  Any claim construction briefing shall be part of any motion for summary judgment. | 9/9/2019 | [simultaneous – 20 pages max]<br><br>7/26/2019<br><br>[filing of claim construction demonstrative materials due] |

|  | Original Date (D.I. 56) | Nomadix's Proposed Date | Guest-Tek's Proposed Date | Court-ordered Date |
|---|---|---|---|---|
| Reply Claim Construction Brief | None | None. Any claim construction briefing shall be part of any motion for summary judgment. | 9/16/2019 | None. |
| Claim Construction Hearing | None | None. Any claim construction shall be heard at the same time as the hearing on motions for summary judgment. | Approx. 9/30/2019 | 8/16/2019 at 11:00 a.m. |
| Non-expert Discovery Cut-Off | 5/31/2018 | 6/28/2019 | 9/30/2019 | 8/30/2019 |
| Expert Disclosure (Initial) | 6/29/2018 | 7/12/2019 | 11/8/2019 | 9/27/2019 |
| Expert Disclosure (Rebuttal) | 7/27/2018 | 8/9/2019 | 12/6/2019 | 10/25/2019 |
| Expert Discovery Cut-off | 8/27/2018 | 9/13/2019 | 1/10/2020 | 11/22/2019 |
| Last Day to Hear Motions | 8/27/2018 | 10/18/2019 | 1/10/2020 | 1/10/2020 |
| Last Day to Conduct ADR Proceeding | 9/10/2018 | 10/11/2019 | 1/31/2020 | 1/3/2020 |

| | Original Date (D.I. 56) | Nomadix's Proposed Date | Guest-Tek's Proposed Date | Court-ordered Date |
|---|---|---|---|---|
| File Memorandum of Contentions of Fact and Law, Exhibit and Witness Lists, Status Report regarding settlement, and all Motions in *Limine* | 10/15/2018 | 2/14/2020 | | 2/14/2020 |
| Lodge Pretrial Conference Order, file agreed set of Jury Instructions and Verdict Forms, file statement regarding Disputed Instructions and Verdict Forms, and File Oppositions to Motions in *Limine* | 10/22/2018 | 2/28/2020 | | 2/28/2020 |
| Final Pretrial Conference and Hearing on Motions in *Limine* | 11/5/2018 | 3/13/2020 | | 3/13/2020 at 11:00 am |
| Trial Date | 12/4/2018 | 4/14/2020 | | 4/14/2020 at 8:30 am |
| Trial Duration | 4 Days | 4-6 Days | 6-8 Days | 4-6 Days |

Dated:    March 18, 2019

_____
Hon. André Birotte Jr.
United States District Judge