Douglas G. Muehlhauser (SBN 179495)
doug.muehlhauser@knobbe.com
Payson LeMeilleur (SBN 205690)
payson.lemeilleur@knobbe.com
Mark Lezama (SBN 253479)
mark.lezama@knobbe.com
Alan G. Laquer (SBN 259257)
alan.laquer@knobbe.com
Alexander J. Martinez (SBN 293925)
alex.martinez@knobbe.com
Justin J. Gillett (SBN 298150)
justin.gillett@knobbe.com
James F. Smith (SBN 313015)
james.smith@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile: 949-760-9502

Attorneys for Plaintiff
NOMADIX, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GUEST-TEK INTERACTIVE ENTERTAINMENT LTD.,<br><br>Defendant. | Case No.<br>CV16-08033 AB (FFMx)<br><br>**NOMADIX'S OPENING BRIEF ON ITS MOTION FOR SUMMARY JUDGMENT ON GUEST-TEK'S DEFENSES OF INVALIDITY AND MISUSE**<br><br>HEARING:<br>December 13, 2019<br>10:00 a.m.<br>Courtroom 7B<br>Honorable André Birotte Jr. |

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    LEGAL STANDARD ............................................................................2

III.   BACKGROUND ...................................................................................2

       A.    The parties settle by entering into the License
             Agreement ...................................................................................3

       B.    The License Agreement obligates Guest-Tek to
             pay royalties for properties with Guest-Tek devices
             that incorporate the licensed technology.................................3

       C.    The License Agreement includes an agreement not
             to challenge the licensed patents .............................................4

       D.    Nomadix files the present action to enforce the
             License Agreement and recover royalties owed
             under the contract .....................................................................5

IV.    THE MATERIAL FACTS ARE UNDISPUTED .........................................6

V.     NOMADIX IS ENTITLED TO SUMMARY
       JUDGMENT ON GUEST-TEK'S DEFENSES .............................................6

       A.    The License Agreement bars Guest-Tek's defenses
             of patent invalidity and misuse ...............................................6

       B.    An allegation of breach of the License Agreement
             cannot trigger the exception to the No Challenge
             Clause because otherwise the exception would
             swallow the rule .........................................................................8

VI.    CONCLUSION ....................................................................................11

1
2

<h1 align="center">TABLE OF AUTHORITIES</h1>

3
4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................2

5
6

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
    637 F.3d 939 (9th Cir. 2011) ..........................................................................2

7
8

*Senza-Gel Corp. v. Seiffhart*,
    803 F.2d 661 (Fed. Cir. 1986) ........................................................................6

9
10

*SRAM, LLC v. Hayes Bicycle Group, Inc.*,
    973 F. Supp. 2d 894 (N.D. Ill. 2013).........................................................7, 8

11

**Statutes and Rules**

12

35 U.S.C. § 282(a) ...............................................................................................2

13

Fed. R. Civ. P. 56(a) .............................................................................................2

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.  INTRODUCTION

In 2010, Nomadix and Guest-Tek settled a patent-infringement suit in part by entering into a Confidential License Agreement. In exchange for the license it received, Guest-Tek unambiguously agreed not to "challenge the validity or enforceability . . . of any of the Licensed Patents . . . ." That agreement appears in clause 2.10 (the "No Challenge Clause"). Yet after Nomadix brought this suit to recover royalties under the License Agreement, Guest-Tek asserted its Eleventh and Fifteenth Affirmative Defenses of patent invalidity and patent misuse. Because the unambiguous language of the No Challenge Clause bars Guest-Tek from challenging the validity or enforceability of the licensed patents, Nomadix is entitled to summary judgment on Guest-Tek's affirmative defenses of invalidity and misuse.

Guest-Tek argues it falls within the exception to the No Challenge Clause, which provides that Guest-Tek will not be bound by the No Challenge Clause in the event that Nomadix "asserts" the licensed patents against Guest-Tek. According to Guest-Tek, the present action to enforce the License Agreement constitutes an "assertion" of the licensed patents and thereby nullifies the No Challenge Clause. Guest-Tek's reading of "asserts" contradicts the fundamental premise of the License Agreement and renders the No Challenge Clause meaningless.

This issue is appropriate for summary judgment. The parties have concluded all discovery that could bear on whether the No Challenge Clause permits Guest-Tek to challenge validity or enforceability, and they do not dispute any material facts. Whether Guest-Tek's defenses are permitted is a legal question the Court should decide now to narrow the issues for trial. Since Nomadix is entitled to judgment as a matter of law that the No Challenge Clause bars Guest-Tek from challenging the licensed patents, the Court should grant Nomadix summary judgment on Guest-Tek's invalidity and misuse defenses.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). At trial, Guest-Tek bears the burden of establishing its affirmative defenses of patent invalidity and misuse. 35 U.S.C. § 282(a). Accordingly, to show that the material facts are not genuinely disputed, Nomadix need not present any affirmative evidence negating Guest-Tek's defense and may instead point out to the Court that Guest-Tek cannot produce admissible evidence of any fact that is both material and disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986). When a defense fails as a matter of law, summary judgment in the plaintiff's favor on that defense is appropriate. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948–49 (9th Cir. 2011).

## III.  BACKGROUND

Nomadix uses the following abbreviations to cite portions of the record in this case and in *Nomadix, Inc. v. Hewlett-Packard Co. et al.*, No. CV09-08441 (C.D. Cal.), which Nomadix requests the Court take judicial notice of as needed:

| Source | Citation Form | Notes |
| --- | --- | --- |
| Plaintiff's Exhibit 1: *Confidential License Agreement* | Agmt. | See also Levy Depo Tr. (Lezama Decl. Ex. 2) 121:14–123:9 |
| *Guest-Tek's Second Amended Answer* (Dkt. No. 167) (filed under seal) | 2d Am. Ans. ¶ *x* | Compare to *Amended Complaint for Breach of Contract* (Dkt. No. 32) to see admission with respect to paragraph *x* |
| *Nomadix, Inc. v. Hewlett-Packard Co. et al.*, No. CV09-08441 (C.D. Cal.) Dkt. No. *x* | 2009 Litig. Dkt. No. *x* | Available on PACER/ECF |

**A.     The parties settle by entering into the License Agreement**

In November 2009, Nomadix filed suit in this judicial district against Guest-Tek for infringement of several Nomadix patents. (2d Am. Ans. ¶ 12; 2009 Litig. Dkt. No. 1.) Guest-Tek responded with counterclaims for declaratory judgment of noninfringement and invalidity of Nomadix's patents. (2d Am. Ans. ¶ 12; 2009 Litig. Dkt. No. 101.)

The parties litigated that 2009 patent-infringement case for over a year. (2d Am. Ans. ¶¶ 12–13.) Guest-Tek and Nomadix then settled their claims at the end of December 2010, ultimately dismissing the litigation with prejudice. (2d Am. Ans. ¶ 13; 2009 Litig. Dkt. No. 251.)

As part of that settlement, the parties entered into the License Agreement on December 30, 2010. (2d Am. Ans. ¶ 13.) Under the License Agreement, Nomadix granted Guest-Tek a limited, nonexclusive license to Nomadix patents in exchange for ongoing quarterly royalty payments. (*See generally* Agmt. § 2.) The patents licensed under the agreement fall into at least two categories: the so-called "Licensed Patents" and the "Bandwidth Management Patents." (*Id.* §§ 2.1, 2.2.)

**B.     The License Agreement obligates Guest-Tek to pay royalties for properties with Guest-Tek devices that incorporate the licensed technology**

The License Agreement provides that Guest-Tek owes quarterly royalties for "each Guest-Tek Property in the United States." (Agmt. § 2.4.1.) Guest-Tek Properties include hotels with a Guest-Tek device that includes structure or functionality on which at least one claim of the Licensed Patents reads. (*See, e.g.*, *id.* §§ 1.13, 1.21.) The License Agreement similarly provides that Guest-Tek owes additional quarterly, per-property royalties for any incorporation of the technology claimed in the Bandwidth Management Patents. (*See, e.g.*, *id.* §§ 1.3, 2.4.2.)

## C.   The License Agreement includes an agreement not to challenge the licensed patents

Nomadix refers to clause 2.10 of the License Agreement in this brief as the "No Challenge Clause." That clause reads:

> 2.10   Covenant Not To Challenge Licensed Patents. Each Guest-Tek Entity withdraws any allegations that any of the Licensed Patents, the Bandwidth Management Patents, and U.S. Patent No. 6,788,110 is invalid or unenforceable. Each Guest-Tek Entity agrees that it will not, during the time period between the Effective Date and the date that the License Agreement expires or is otherwise terminated, challenge the validity or enforceability, or seek a declaration of noninfringement, of any of the Licensed Patents, Bandwidth Management Patents, and U.S. Patent No. 6,788,110, whether before a court, before the U.S. Patent and Trademark Office, or in any other manner. Each Guest-Tek Entity also agrees that it will not, during that same period, assist any other entity (including any natural person) in challenging the validity or enforceability, or seeking a declaration of noninfringement, of any of the Licensed Patents whether before a court, before the U.S. Patent and Trademark Office, or in any other manner. Nothing in this clause 2.10 prohibits any Guest-Tek Entity from obeying any lawful request, subpoena or order by any court or any federal, state, or foreign governmental agency. Should a Guest-Tek Entity act in violation of the terms of this clause 2.10, then the royalties specified in clause 2.4 will automatically double, and the Guest-Tek Entities will be responsible for reimbursing Nomadix for its legal fees and costs to enforce this Agreement. This increase in the royalty amount shall be without prejudice to any other remedies that Nomadix may otherwise seek pursuant to the terms of this Agreement. The Guest-Tek Entities shall not be bound to the

provisions of this clause 2.10 in the event that Nomadix later asserts any of the Licensed Patents, the Bandwidth Management Patents, or U.S. Patent No. 6,788,110 against any Guest-Tek Entity.

(Agmt. § 2.10.)

## D.  Nomadix files the present action to enforce the License Agreement and recover royalties owed under the contract

Nomadix filed the present lawsuit in 2016, alleging Guest-Tek had breached the License Agreement and owed over $10 million in unpaid royalties. (*See generally* Dkt. Nos. 1, 32.)

As its Eleventh Affirmative Defense, Guest-Tek alleges it owes no royalties "because any claim of any patent licensed under the License Agreement, that Nomadix contends encompasses a Guest-Tek product or service, or any feature or functionality thereof, is invalid." (2d Am. Ans. ECF Page ID 6280.) As its Fifteenth Affirmative Defense, Guest-Tek alleges Nomadix's breach claims "are barred by reason of patent misuse" because "Nomadix has misused the Licensed Patents." (*Id.* ECF Page ID 6281.) In both cases, Guest-Tek alleges its defense is "proper" because Nomadix has supposedly "asserted" licensed patents in this action, allegedly resulting in Guest-Tek not being bound by clause 2.10 of the License Agreement. (*Id.* ECF Page ID 6280–81.)

To prove its claims for breach of the License Agreement and recover the royalties Guest-Tek owes, Nomadix intends to present evidence at trial that Guest-Tek's devices include functionality falling within the scope of several claims of the licensed patents. In particular, Nomadix will present evidence that Guest-Tek's devices incorporate technology claimed in U.S. Patent Nos. 8,266,266, 8,725,899, 8,606,917, 7,953,857, 8,626,922, and 6,868,399, each of which is either a Licensed Patent or Bandwidth Management Patent under the License Agreement. Moreover, at Guest-Tek's request, the Court ordered claim-construction briefing addressing

the scope of the claims of these licensed patents. (Dkt. No. 342.) The Court has conducted a claim-construction hearing and issued an order construing several terms from various claims of the licensed patents. (*See* Dkt. Nos. 406, 420.)

## IV.  THE MATERIAL FACTS ARE UNDISPUTED

The only fact directly material to whether the No Challenge Clause permits Guest-Tek's invalidity and misuse defenses is that the parties entered into the License Agreement, which the parties do not dispute. (*See* 2d Am. Ans. ¶ 13.) In any event, all other facts that might bear on this motion are set forth in the preceding Background, and they are not in dispute.

## V.  NOMADIX IS ENTITLED TO SUMMARY JUDGMENT ON GUEST-TEK'S DEFENSES

### A.    The License Agreement bars Guest-Tek's defenses of patent invalidity and misuse

In response to Nomadix's breach-of-contract claims, Guest-Tek pleaded two defenses to a patent-infringement action. In its Eleventh and Fifteenth Affirmative Defenses, Guest-Tek contends that the licensed patents are invalid and that Nomadix has misused the licensed patents. An allegation of misuse is an allegation that the patent is unenforceable. *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 667 n.8, 668 n.10 (Fed. Cir. 1986).

The No Challenge Clause of the License Agreement precludes Guest-Tek from challenging the validity or enforceability of the licensed patents. Titled "Covenant Not To Challenge Licensed Patents," the clause begins by providing that Guest-Tek "**withdraws any allegations that any of the Licensed Patents, the Bandwidth Management Patents, and U.S. Patent No. 6,788,110 is invalid or unenforceable**." (Agmt. § 2.10 (emphasis added).) Cementing that withdrawal, the No Challenge Clause next includes an express and affirmative agreement by Guest-Tek not to "**challenge the validity or enforceability**" of any of the Licensed Patents or Bandwidth Management Patents, "**whether before a court,**

1  **before the U.S. Patent and Trademark Office, or in any other manner**." (*Id.*
2  (emphases added).)

3      In *SRAM, LLC v. Hayes Bicycle Group, Inc.*, 973 F. Supp. 2d 894 (N.D. Ill.
4  2013), the district court granted summary judgment that a contractual provision
5  highly similar to clause 2.10 here barred a patent invalidity defense. SRAM and
6  Answer Products had settled a patent-infringement suit, entering into a settlement
7  and license agreement that included a license to SRAM's patents. *SRAM*, 973 F.
8  Supp. 2d at 896–97. Defendant Hayes Bicycle eventually took over Answer's
9  business. *Id.* When a dispute between SRAM and Hayes arose, SRAM sued to
10  recover royalties under the contract or, in the alternative, for infringement of a
11  licensed patent. Hayes alleged patent invalidity as a defense. After concluding that
12  Hayes had assumed Answer's obligations under the agreement, the district court
13  considered whether a no-challenge provision barred Hayes's invalidity defense. *Id.*
14  at 904.

15      The court stated: "The unambiguous language of the Agreement dictates the
16  answer: yes." *Id.* In particular, the agreement provided: "Answer agrees not to take
17  any action whatsoever to attack the validity or enforceability of any of the
18  [licensed patents] . . . ." *Id.* (emphasis removed). The court concluded: "This
19  language specifically, clearly, and unambiguously prohibits Answer and its assigns
20  from challenging [a licensed patent] under all circumstances." *Id.* at 905 (citing
21  *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1364 (Fed. Cir. 2001)). "Because
22  Hayes is bound by the terms of the Settlement Agreement, including the no-
23  challenge provision," the court continued, "Hayes cannot challenge the validity of
24  the [licensed patent], even as a defense to the present lawsuit." *Id.* The court
25  therefore granted SRAM summary judgment as to Hayes's invalidity defense.

26      The contractual language in the present case is likewise unambiguous.
27  Guest-Tek expressly withdrew all allegations of invalidity and unenforceability
28  and affirmatively agreed not to "challenge the validity or enforceability" of any of

the Licensed Patents or Bandwidth Management Patents. (Agmt. § 2.10.) And just like the language in *SRAM*, the License Agreement here prohibits challenges of any kind: Guest-Tek agreed not to challenge validity or enforceability, "whether before a court, before the U.S. Patent and Trademark Office, or in any other manner." (*Id.*) Therefore, unless the exception to the No Challenge Clause applies, Nomadix is entitled to summary judgment on Guest-Tek's Eleventh and Fifteenth Affirmative Defenses.

**B.    An allegation of breach of the License Agreement cannot trigger the exception to the No Challenge Clause because otherwise the exception would swallow the rule**

The final sentence of the No Challenge Clause sets forth an exception: "The Guest-Tek Entities shall not be bound to the provisions of this clause 2.10 in the event that Nomadix later asserts any of the Licensed Patents, the Bandwidth Management Patents, or U.S. Patent No. 6,788,110 against any Guest-Tek Entity." (Agmt. § 2.10.) Guest-Tek alleges in its Second Amended Answer that its Eleventh and Fifteenth Affirmative Defenses are "proper" because this exception to the No Challenge clause applies. (2d Am. Ans. ECF Page ID 6280–81.) In particular, Guest-Tek contends that, by enforcing its contractual rights under the License Agreement, Nomadix has "asserted" its patents so as to trigger the exception to the No Challenge Clause. (*Id.*)

The sole question for the Court on this motion is how to interpret "asserts" in the No Challenge Clause. More specifically, the Court need only decide whether, as Guest-Tek urges, "asserts" should be interpreted such that the License Agreement frees Guest-Tek of its obligations under the No Challenge Clause as soon as Nomadix asserts Guest-Tek owes royalties under the contract.

The No Challenge Clause cannot be read in a vacuum. It appears as part of a license agreement imposing on Guest-Tek a contractual obligation to pay royalties for properties with a Guest-Tek product incorporating technology claimed in the

licensed patents. (*E.g.*, Agmt. §§ 2.4 & 1.13, 1.21, 1.22.) The No Challenge Clause thus arises in the context of a contract whose enforcement involves comparing Guest-Tek's products to the licensed patents. (*Id.*)

It is in that context that the final sentence of the No Challenge Clause refers to a mere possibility that Nomadix might assert the licensed patents against Guest-Tek. It reads: "**in the event** that Nomadix later asserts any of [the licensed patents] against any Guest-Tek Entity." It does not suggest any certainty. For example, the No Challenge Clause does not read: "**when** Nomadix asserts [a licensed patent] against a Guest-Tek Entity." Given the context of a licensing arrangement where royalties depend on the licensed patents, and given that the exception to the No Challenge Clause arises only in the potential event that Nomadix *might* "assert" a licensed patent against the other parties to the contract, the exception cannot be read to arise when, working within the framework of the contract, Nomadix compares the licensed patents to Guest-Tek's products for the purpose of enforcing the contract. Instead, the final sentence of the No Challenge Clause merely clarifies that, in the event Nomadix ever went *outside* the contractual framework and sued Guest-Tek for *infringing* any of the licensed patents, Guest-Tek would not be bound by the No Challenge Clause. A claim of patent infringement invokes a different legal framework than a claim for breach of contract and opens up a whole new set of remedies, such as the possibility of treble damages for willful infringement and damages going back six years, in contrast to the four-year statute of limitations for breach of a written contract in California. *Compare, e.g.*, 35 U.S.C. §§ 284, 286 *with* Cal. Civ. Code § 337(a). It is understandable that, in the event Nomadix sued for infringement, Guest-Tek might want to preserve traditional defenses to patent infringement.

Guest-Tek would have the Court interpret the phrase "in the event that Nomadix later asserts [any licensed patent]" as encompassing assertions by Nomadix that Guest-Tek owes royalties under the contract for using the licensed

patents. But Guest-Tek's use of the licensed patents is the fundamental premise of the License Agreement. Indeed, the agreement arose out of litigation premised on the allegation that Guest-Tek was using Nomadix's patents. (2d Am. Ans. ¶¶ 12–13.) Therefore, when the No Challenge Clause employs the conditional language "**in the event** that Nomadix later asserts any of [the licensed patents] against any Guest-Tek Entity," the potential "assert[ion]" of the licensed patents that *might* occur cannot refer to the very allegation that was the genesis of the License Agreement and the linchpin to enforcing the contract.

Interpreting "asserts" as Guest-Tek urges would deprive provisions in the License Agreement of utility. After litigating patent infringement and validity, the parties reached a settlement that included the License Agreement. (2d Am. Ans. ¶¶ 12–13.) At its core, the contractual framework under which the parties agreed to operate was straightforward. In exchange for a limited, nonexclusive license to Nomadix's patents, Guest-Tek agreed not to challenge the validity or enforceability of the licensed patents and agreed to pay royalties based on whether its products incorporated the licensed patents. (Agmt. §§ 2.1, 2.2, 2.4, 2.10.)

The License Agreement thus assumes that, to enforce Guest-Tek's royalty obligations, Nomadix would compare Guest-Tek's products to the licensed patents. (Agmt. §§ 2.4 & 1.13, 1.21, 1.22.) But Guest-Tek contends it is no longer bound by the No Challenge Clause as soon as Nomadix asserts that, for purposes of calculating royalties under the contract, any Guest-Tek product falls within the scope of any licensed patent. Under Guest-Tek's interpretation of "asserts," Nomadix would not be able to hold Guest-Tek to its royalty obligations without losing the benefit of the No Challenge Clause. Guest-Tek's interpretation of the License Agreement would thus operate to deprive Nomadix of the full benefit of the bargain it struck.

The License Agreement even expressly states that, "for purposes of calculating royalties under this Agreement," certain versions of Guest-Tek's

products "shall be deemed to be subject to royalty obligations with respect to" certain licensed patents. (Agmt. § 2.5.2.6.) The agreement thus has a built-in provision that Guest-Tek products fall within the scope of licensed patents. Since the License Agreement expressly states that certain Guest-Tek products are deemed to fall within the scope of licensed patents (*id.*), the agreement itself constitutes an "assertion" of the licensed patents under Guest-Tek's interpretation. Guest-Tek's interpretation therefore dooms the No Challenge Clause to be ineffective from the outset. Since Guest-Tek's interpretation effectively deprives the No Challenge Clause of any utility, the Court should reject it.

## VI.  CONCLUSION

Since Nomadix's enforcement of the License Agreement does not trigger the No Challenge Clause's exception, the No Challenge Clause bars Guest-Tek from challenging the validity or enforceability of the Licensed Patents. The Court should therefore grant Nomadix summary judgment on Guest-Tek's affirmative defenses of patent invalidity and misuse.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 8, 2019      /s/ *Mark Lezama*

Douglas G. Muehlhauser
Payson LeMeilleur
Mark Lezama
Alan G. Laquer
Alexander J. Martinez
Justin J. Gillett
James F. Smith

31641203

- 11 -