UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.:   CV 16-08033-AB (FFMx) | Date:   March 30, 2020 |
|---|---|

Title:   *Nomadix, Inc. v. Guest-Tek Interactive Entmt. Ltd.*

Present: The Honorable   **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

Proceedings:      **[In Chambers] ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE 5, DENYING PLAINTIFF'S MOTIONS IN LIMINE 3, 4, 6, 7, 8, 9, AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION IN LIMINE 1, 2.**

Before the Court are Plaintiff Nomadix's ("Nomadix") motions *in limine* one through nine. (Dkt. Nos. 540, 542, 544, 546, 548, 550, 552, 554, 556.) Defendant Guest-Tek Interactive Entertainment LTD ("Guest-Tek") opposes each motion.

1. **Nomadix's Motion in Limine No. 1 is GRANTED in part and DENIED in part.**

Nomadix seeks to preclude Guest-Tek from calling (1) Peter Warrick, (2) Marine LaTour, (3) Gerry Grenier, (4) Al Bryska, (5) Abbiy Razvi, (6) Edward Knightly, (7) Hans Rupp, (8) Michael Swope, and (9) Mark Lezama on the ground that Guest-Tek failed to timely disclose each individual as a witness. (Dkt. No. 540.)

Under Federal Rule of Civil Procedure 37, a party may not call a witness at trial where that party failed to identify the witness as required by Rule 26(a) or (e), unless the failure was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).

First, Nomadix seeks to exclude Peter Warrick, Guest-Tek's Chief Technology Officer, on the ground that Guest-Tek failed to disclose Mr. Warrick as a witness until the last day of fact discovery, August 30, 2019. (Dkt. No. 541 at 2.) However, Guest-Tek states in opposition that it disclosed Mr. Warrick as a witness only after Nomadix provided its second supplemental infringement contentions, which cited Guest-Tek source code for the first time. (Dkt. No. 603-1 at 3). Further, Guest-Tek has shown that Mr. Warrick was disclosed as an individual with relevant information concerning Guest-Tek's source code during a deposition on August 6, 2019. *Cf. Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 9900617, at *2 (N.D. Cal. Oct. 26, 2015) ("[D]eposition testimony identifying individuals as witnesses with relevant information is sufficient to discharge the duty to supplement."). Given Guest-Tek's justification for its belated disclosure of Mr. Warrick, and Guest-Tek's prior identification of Mr. Warrick as an individual with information concerning Guest-Tek's source code, the Court concludes that Guest-Tek's belated disclosure was substantially justified or harmless. The Court accordingly declines to exclude Mr. Warrick as a trial witness.

Second, Nomadix seeks to exclude Al Bryska, Guest-Tek's Director of Software Development, and Marnie Latour, Guest-Tek's Vice President of Financial Analysis, on the ground that Guest-Tek failed to timely disclose these individuals as witnesses (Dkt. No. 541.) However, Guest-Tek shows in opposition that it disclosed Mr. Bryska after Nomadix's October 1, 2019 disclosure as to how OneView Internet ("OVI") allegedly infringed the call accounting record format limitation of U.S. Patent No. 6,868,399. (Dkt. No. 603-1 at 4.) Additionally, Guest-Tek shows that it disclosed Ms. Latour as soon as it became aware that Ms. Latour's testimony was needed, after Nomadix filed a discovery motion concerning Guest-Tek's reporting of customer properties. (*Id.* at 3–4.) Accordingly, the Court concludes that Guest-Tek's belated disclosure of these witnesses was substantially justified. The Court therefore declines to exclude Ms. Latour or Mr. Bryska as trial witnesses.

Third, Nomadix seeks to exclude Abbiy Razvi, Guest-Tek's Director of Client Programs, on the ground that Guest-Tek failed to timely disclose Mr. Razvi as a witness. (Dkt. No. 541). In opposition, Guest-Tek argues that it disclosed Mr. Razvi after Nomadix provided its October 2019 opening technical expert report,

which Guest-Tek claims disclosed for the first time that Nomadix was accusing each OVI of infringement. (Dkt. No. 603-1 at 5–6.) However, the record clearly shows that Nomadix has consistently argued that each OVI gateway infringed its patents. (*See* Dkt. No. 605-17 at 27:12–17); *see also infra* at 4–5. Accordingly, the Court concludes that Guest-Tek has not shown that its belated disclosure of Mr. Razvi was either substantially justified or harmless. The Court accordingly **GRANTS** Nomadix's motion to exclude Mr. Razvi as a trial witness.[1]

Fourth, Nomadix seeks to exclude Gerard Grenier, Dr. Edward Knightly, and Dr. Hans Bjorn Rupp on the ground that each individual was not timely disclosed as a witness. (Dkt. No. 541.) First, Guest-Tek argues that its disclosure of Mr. Grenier was timely, because Guest-Tek disclosed Mr. Grenier as part of its petitions for *inter partes* review in November 2018. However, whether Mr. Grenier was identified in the petition for *inter partes* review is irrelevant. Rather, "[w]hat matters here is whether [Guest-Tek] provided sufficient notice that [it] would call [Mr. Grenier] in *this case*." *Finjan, Inc.*, 2015 WL 9900617, at *3. Because Guest-Tek offers no other justification for its belated disclosure of Mr. Grenier, Guest-Tek has not met its burden of showing that its untimely disclosure of Mr. Grenier was substantially justified or harmless. The Court accordingly **GRANTS** Nomadix's motion to exclude Mr. Grenier as a trial witness.

With respect to Dr. Knightly and Dr. Rupp, Guest-Tek shows that it added Dr. Rupp and Dr. Knightly as witnesses after it was able to reach these individuals for the first time. *See Galen v. Ave. of the Stars Assocs.*, LLC, No. 09-4738, 2011 WL 837785, at *6 (C.D. Cal. Mar. 1, 2011) (holding that belated disclosure of witnesses was justified where the party disclosed the witness after receiving the witness's contact information for the first time). The Court accordingly concludes that Guest-Tek has shown that its belated disclosure of Dr. Knightly and Dr. Rupp was substantially justified. The Court accordingly declines to exclude Dr. Knightly and Dr. Rupp as trial witnesses.

Finally, Nomadix moves to exclude Michael Swope and Mark Lezama as trial witnesses, arguing that Guest-Tek failed to disclose these individuals as witnesses until serving its trial witness list at the end of January 2020. (Dkt. No. 541). In opposition, Guest-Tek provides no justification for these belated

---

[1] Nomadix has cited no authority requiring that Guest-Tek's expert witnesses be prohibited from providing expert testimony based on the information provided to them by Mr. Razvi. Accordingly, the Court declines to exclude portions of Guest-Tek's expert witness reports that rely on factual information provided by Mr. Razvi.

disclosures, instead arguing that Nomadix knew that Mr. Swope was involved in negotiating the License Agreement, and stating that it does not intend to call Mr. Lezama "[a]t this point." (Dkt. No. 603-1 at 7.) Because Guest-Tek has failed to substantially justify its belated disclosure of Mr. Swope and Mr. Lezama, the Court **GRANTS** Nomadix's motion to exclude Mr. Swope and Mr. Lezama as trial witnesses.

In sum, the Court **GRANTS in part** Nomadix's motion and excludes Mr. Razvi, Mr. Grenier, Mr. Swope, and Mr. Lezama as trial witnesses. The Court **DENIES in part** Nomadix's motion and declines to exclude Mr. Warrick, Ms. Latour, Mr. Bryska, Dr. Knightly, and Dr. Rupp as trial witnesses.

## 2. Nomadix's Motion in Limine No. 2 is GRANTED in part and DENIED in part.

Nomadix seeks to preclude Guest-Tek from offering 128 exhibits at trial on the basis that they were not timely disclosed during fact discovery. (Dkt. No. 543 at 2.) Nomadix further seeks to preclude Guest-Tek's experts from presenting expert opinions that are based on some of these materials. (*Id.* at 1.) Nomadix breaks its request into four parts.

Exhibit 2045 is a document that Guest-Tek states it created in October 2019. (Dkt. No. 629-1 (sealed opposition) at 2.) It includes a list of Guest-Tek customer properties where "Guest-Tek supposedly configured its OneView Internet (OVI) devices to turn off some of the features that Nomadix contends trigger a royalty under the parties' license agreement." (Dkt. No. 543 at 2.) Guest-Tek argues that it was created "in response to Nomadix's belatedly disclosed contentions" that each OVI gateway infringes the asserted patents, regardless of configuration. (Dkt. No. 629-1 at 2.) Guest-Tek cites portions of Nomadix's technical expert's opening report in support of its assertion that Nomadix provided "belated[ ] . . . contentions" to this effect. (*Id.* (citing Expert Report of Stuart Stubblebine, Dkt. No. 525-3 at ECF3–ECF276 at Ex. 4 ("'399 Patent and OVI," ECF79–ECF141) ¶¶ 58, 113; *id.* at Ex. 5 ("'857 Patent and OVI," ECF142–ECF190) ¶ 63.))

At a hearing before the Magistrate Judge in July 2019, Guest-Tek stressed that it would be a heavy burden for Guest-Tek to determine the way OVI was specifically implemented in each hotel during the relevant royalty period. (Dkt. No. 605-17 at 25:13–19 ("They were always asking us to go back thousands of hotels, thousands and thousands of quarters, thousands of them, and tell them how they can make the box work like it worked in that hotel . . . And it's just the burden

of doing that is incredible, if we could even do it.").) Although Guest-Tek was not ordered to do so, the Magistrate Judge also warned Guest-Tek that if it had noninfringement theories based on OVI configurations, it would need to disclose them. (*Id.* at 27:2–11, 28:7–12.) Guest-Tek emphasized that Nomadix bears the burden to prove infringement and that "[a]ll that we're able to do is give them, you know, what we can and what we have." (*Id.* at 28:1–3.)

Guest-Tek fails to provide an adequate basis for its delayed preparation and disclosure of Exhibit 2045. Guest-Tek's argument that late preparation of this document was warranted by Nomadix's "belated contentions" is not persuasive. The record instead shows that Nomadix has consistently argued the position that the "presence within the device of functionality that is infringing" is sufficient under the License Agreement to trigger royalties. (*Id.* at 27:12–17.) But moreover, the record suggests that Guest-Tek was specifically asked by Nomadix to provide such a disclosure of its configuration contentions during fact discovery, waited to do so until expert discovery, and did so solely in a manner to support its own defense. Exclusion is appropriate under these circumstances. Nomadix's motion *in limine* no. 2 is **GRANTED in part** as to Exhibit 2045.

Although the Court finds exclusion of Exhibit 2045 appropriate, it is not persuaded that exclusion of all of Guest-Tek's expert's opinions "based on" Exhibit 2045 are warranted. The Court notes that neither Gottesman nor Riley will be permitted to, essentially, read the contents of Exhibit 2045 into the record for the jury's consideration.[2]  To the extent Exhibit 2045 appears as an exhibit to those expert's reports, it will not be permitted as an exhibit at trial. But the Court will not grant a wholesale exclusion of Gottesman's timely-disclosed expert opinions on the issue of the configuration of OVI at various Guest-Tek properties at this time. *See also infra* at § 3 (finding Guest-Tek's "theory" regarding OVI configurations will not be excluded from trial).   The Court reminds ***both*** parties that experts will be limited to opinions that they timely disclosed during the course of expert discovery, except as otherwise permitted by the Court in this Order and other previous Orders. (*See, e.g.* Expert Report of Dr. Oded Gottesman, Dkt. No. 623 at ECF1–ECF29 ¶ 34.)

Exhibits 2262 and 2282 are "executable software relating to the OVI administration console and a product called GlobalNet." (Dkt. No. 629-1 at 3.) Nomadix asserts that even up until the filing date of its motion, Guest-Tek had not actually produced these exhibits to Nomadix. Guest-Tek states that it "added the

---

[2] At the hearing, Guest-Tek appeared to agree that it would not seek to do so.

[OVI administration console] executable files to its exhibit list when Nomadix revealed that it was accusing '[e]ach OVI gateway' of infringement, regardless of configuration." (*Id.* at 3–4.) Guest-Tek argues that "Nomadix knows that GlobalNet is a prior-art Guest-Tek product cited in Guest-Tek's invalidity contentions." (*Id.* at 4.) Guest-Tek argues that, in addition, its expert "should not be precluded from testifying about the executable files used for OVI testing in his response to Nomadix's opening expert report" because "he simply ran the files to open OVI . . . on a test server that Nomadix has long known about but declined to inspect." (*Id.* at 5.)

Guest-Tek should have produced the GlobalNet executable file if it intended to rely on the file to support its invalidity claim. Guest-Tek raised a prior art invalidity argument involving GlobalNet in its final invalidity contentions, served in September 2019. The Court finds that the GlobalNet executable file was not (and never has been) timely disclosed and is inadmissible at trial for that reason. The same determination applies to the OVI administration console. At the very least, even if Guest-Tek learned of some new basis for relying on these executables after receiving Nomadix's opening expert report, it should have attempted to properly produce these exhibits to Nomadix at a more appropriate time. (*See also* No. 543 at 9–15 ("Appendix A" to Nomadix's motion, showing that Guest-Tek indeed produced other documents to Nomadix after the fact discovery cut-off).) Guest-Tek's argument that Nomadix's discovery responses did not call for production of these files is a *non sequitur*. If Guest-Tek intended to rely on the files to support its defense, it was obligated to produce them. The Court, however, declines to find at this time that Guest-Tek's expert is similarly precluded from presenting opinions relating to these files. At least on the current record and particularly as to the OVI administration console, Guest-Tek has presented arguments to show that Gottesman solely ran the file in order to open OVI on a test server. (Dkt. No. 629-1 at 5.) There does not appear to be a basis for a finding of harm to Nomadix in permitting testimony relating to Gottesman's testing, particularly because Gottesman's opinions are themselves fully disclosed. Nomadix's motion is **GRANTED in part** and **DENIED in part** as to these exhibits and Gottesman's opinions relating to them.

Nomadix also moves for exclusion of various exhibits representing source code that Guest-Tek produced for alleged prior art products on the last day of fact discovery. (Dkt. No. 543 at 6.) Guest-Tek explained in timely-served final invalidity contentions how it intended to rely on the exhibits to form an invalidity theory relating to one of its earlier OVI/GlobalNet products. (*Id.*; *see also* Dkt. No. 629-1 at 6.) The Court agrees with Guest-Tek that these exhibits were adequately

and timely disclosed, and that Nomadix failed to timely object to the allegedly new invalidity theory relating to them. Nomadix's motion is **DENIED in part** as to these exhibits.

Nomadix's sweeping bid for exclusion of 90 additional documents is also rejected. Nomadix concedes that at least some of the documents were served on the last day of fact discovery. Nomadix's "Appendix A" to its motion notates the production date for all the documents challenged by Nomadix's motion. (*See* Dkt. No. 543 at 9–15.) Although it shows that some of the documents were produced as recently as January 30 and 31 of 2020, there is insufficient information provided by Nomadix to evaluate whether this late disclosure was substantially justified or harmless under Rule 37(c). Nomadix's motion is **DENIED in part** as to these exhibits.

### 3.  Nomadix's Motion in Limine No. 3 is DENIED

Nomadix moves for exclusion of "theories" that Guest-Tek allegedly failed to timely disclose during fact discovery. (Dkt. No. 545.) Nomadix specifically argues that three of Guest-Tek's theories should be excluded.

First, Nomadix argues that Guest-Tek failed to timely raise a "hotel-specific configuration theory" in interrogatory responses. (Dkt. No. 545 at 2–3.) Nomadix specifically refers to Guest-Tek's response to its Interrogatory No. 24. (*See* Guest-Tek's Responses to Nomadix's Seventh Set of Interrogatories, Dkt. No. 623 at ECF256–ECF264.) Nomadix's Interrogatory No. 4 requested:

> For each Customer Property and License Quarter, to the extent that
> you will rely on any Configuration Information to contend that you
> did not owe royalties under the License Agreement for that property
> in that quarter, explain in detail how to find in your document
> production the specific configuration settings and matching
> configured values for that property and quarter you will rely on.

(*Id.* at ECF260; *see also* Dkt. No. 557-18 at 2, 3 (defining for purposes of Interrogatory No. 24 "Customer Property" as "a property in the United States that has used a Guest-Tek Product" and "Configuration Information" as "any configuration information, including, for example, the configuration 'parameters' alluded to in your response to interrogatory 5, any configuration files, and any boot.xml files.")). Guest-Tek responded to the interrogatory by stating that "the answer to this interrogatory may be determined, with substantially the same burden

for either party, by examining, auditing, compiling, abstracting, or summarizing the following documents: ovi_audited_features_history.csv." (Dkt. No. 623 at ECF261.) Guest-Tek then referred to six settings in "column F of ovi_audited_features_history.csv" and stated how modifying those settings would impact functioning of OVI. (*Id.* at ECF261–ECF262.)

Guest-Tek argues that Nomadix's Interrogatory No. 24 did not call for Guest-Tek to explain its theories for how OVI could be configured not to infringe the asserted patents. (Dkt. No. 629-2 at 2.) Guest-Tek states that the interrogatory instead "called for an explanation of how to find relevant 'configuration settings' in Guest-Tek's overall 'document production.'" (*Id.*) Guest-Tek alternatively argues the following:

    (1)    Nomadix has known that OVI was configurable and asked Guest-Tek witnesses about its configurability during depositions;

    (2)    Nomadix has previously acknowledged that 'certain configurations' of OVI were relevant to the question of whether Guest-Tek owed royalties (citing Hearing Tr., July 9, 2019, Dkt. No. 605-17), and

    (3)    Guest-Tek "mentioned, in other interrogatory responses, that OVI was configurable in the identified ways."

(*Id.* at 3.) Guest-Tek also cites Stubblebine's expert report to support the assertion that Nomadix waited until the last day of discovery to disclose that it was accusing each OVI gateway of infringement, regardless of configuration. (*Id.* at 3–4.)

Nomadix's Interrogatory No. 24 could have been phrased more artfully. Despite that, the Court does not agree with Guest-Tek's characterizations of Nomadix's interrogatory. In order to fully answer Nomadix's interrogatory, Guest-Tek had to necessarily disclose the configuration settings and "matching configured values for [a] property" that would support a noninfringement position for that property. Guest-Tek's argument that Nomadix knew OVI was configurable and that "certain configurations" were relevant does not excuse Guest-Tek's failure to disclose during discovery the specific configurations it would argue to support noninfringement. (*See also* Dkt. No. 605-17 at 27:8–11 (Magistrate Judge, stating at a discovery hearing, "it may be that's not even going to be a defense that various hotels had it configured differently. But if it is, then you're going to need to explain how it was configured since that – it is a defense.").) Despite this, the Court is not persuaded that excluding Guest-Tek's theory is itself appropriate. It is

not clear Nomadix has been prejudiced by the timing of Guest-Tek's disclosure in a way that warrants exclusion. Nomadix did not re-raise an argument regarding prejudice on this topic at the hearing. Nomadix had the opportunity to procedurally challenge Guest-Tek's theory when responding to Guest-Tek's summary judgment motion, but chose not to do so. Instead, it argued the merits. On the current record, the Court **DENIES in part** Nomadix's motion *in limine* on this basis.

Second, Nomadix argues that Guest-Tek failed to timely disclose certain invalidity theories. Nomadix's challenge specifically includes invalidity theories related to Guest-Tek's "GlobalNet" and "GlobalMeeting" systems that Guest-Tek disclosed in its timely-served final invalidity contentions. The Court has rejected Nomadix's bid in its motion *in limine* no. 2 to exclude certain exhibits that Guest-Tek disclosed by the fact discovery deadline relating to Guest-Tek's final invalidity contentions. The Court also rejects Nomadix's late bid for exclusion of the disclosed invalidity theories themselves. Nomadix delayed too long in bringing a challenge to the invalidity theories disclosed in Guest-Tek's final invalidity contentions, and has not established prejudice caused by the timing of their disclosure.

Nomadix also argues that Guest-Tek should not be permitted to argue that Linux cbq is invalidating prior art. (Dkt. No. 545 at 4–5.) Nomadix argues that it was not until Guest-Tek's expert's rebuttal report that "Guest-Tek disclosed an invalidity theory based on Linux's cbq code." (*Id.* at 5.) Guest-Tek argues that it "had no reason to cite that code until Nomadix cited a later version of the code for the first time in its opening technical expert report." (Dkt. No. 629-2 at 5.) At the hearing, Nomadix argued that it had disclosed the relevant source code forming the basis for its infringement arguments as part of an interrogatory response years earlier, such that Guest-Tek's delay was not substantially justified. But Nomadix's generalized interrogatory response simply listed source code file names without any supporting analysis as to specific limitations of the licensed patents. (Dkt. No. 625 at ECF189–ECF194 (an exhibit to Nomadix's responses to Guest-Tek's First Set of Interrogatories, listing without analysis source code file names for each of the relevant licensed patents).) This earlier disclosure is insufficient to support Nomadix's argument for exclusion of Guest-Tek's Linux cbq invalidity theory. The Court agrees with Guest-Tek that its expert's late disclosure is substantially justified. On the current record, the Court **DENIES in part** Nomadix's motion as to Guest-Tek's allegedly untimely invalidity theories.

Third, Nomadix argues that Guest-Tek's damages expert should not be permitted to opine that Nomadix double or triple counted Guest-Tek properties in

preparing a royalty calculation. (Dkt. No. 545 at 8–9.) Nomadix argues that Guest-Tek's supplemental interrogatory response attached and incorporated "quarterly active client reports (ACRs)" and Guest-Tek "never mentioned or otherwise suggested that its identification of Customer Properties in its ACRs contained 'duplicate' entries." (*Id.* at 9.) The Court agrees with Guest-Tek that it was Nomadix's responsibility to conduct its own accurate accounting based on Guest-Tek's interrogatory response. As Guest-Tek notes, as required by Nomadix's interrogatory, Guest-Tek's response included unique hotel identifiers that Nomadix could use in conducting its property counting. Nomadix's Interrogatory No. 1 was not phrased such that it required a perfect one-to-one correspondence between a Guest-Tek property and a line in an excel spreadsheet. (*See* Dkt. No. 623 at ECF284 (Page from Guest-Tek's Fourth Supplemental Objections and Responses to Nomadix's First Set of Interrogatories).) Guest-Tek is permitted to challenge Nomadix's counting now. Nomadix's motion *in limine* is **DENIED in part** as to this issue.

### 4. Nomadix's Motion in Limine No. 4 is DENIED.

Nomadix seeks to preclude Guest-Tek from relying on the February 7, 2020 supplemental report of expert Dr. Oded Gottesman, on the ground that it was not timely produced, and that its belated disclosure is not substantially justified or harmless. (Dkt. No. 546).

In opposition to Nomadix's motion, Guest-Tek argues that the February 7, 2020 supplement from Dr. Gottesman concerned errata Dr. Gottesman made in his October 30, 2019 responsive expert report. (Dkt. No. 603-4). According to Dr. Gottesman, he corrected the line numbers of source code, and corrected errors copying and pasting source code. (Dkt. No. 603-21 at ¶ 1.) Although Nomadix argues that these errata changed Dr. Gottesman's expert opinions, Nomadix fails to identify any changed opinion provided by Dr. Gottesman,[3] and Dr. Gottesman avers that none of the errata change his expert opinions. *Id.* Accordingly, the Court concludes that the February 7, 2020 supplemental report addresses only clerical errors made by Dr. Gottesman, which may be properly corrected in an errata. *See Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998, 2018 WL 620156, at *3 (N.D. Cal. Jan. 30, 2018) (holding that an errata is proper where an expert does not seek to offer substantive revisions or new opinions or conclusions).

---

[3] Although Nomadix argues that Dr. Gottesman included new source code ("time=time+expires") that was never produced in this case, Guest-Tek shows that this text, time=time+expires, is a comment in the document, not source code.

The Court therefore **DENIES** Nomadix's motion to preclude Guest-Tek from relying on the February 7, 2020 supplemental report of Dr. Gottesman.

**5. Nomadix's Motion in Limine No. 5 is GRANTED.**

Nomadix seeks to preclude Guest-Tek from introducing evidence relating to decisions from *inter partes* review proceedings filed in the U.S. Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB") against certain Nomadix patents. (Dkt. No. 548.) Nomadix also seeks to preclude Guest-Tek from introducing evidence relating to decisions from pending litigation in Canada and Delaware between the parties. (*Id.*)

First, because Guest-Tek does not oppose Nomadix's motion to exclude evidence relating to decisions from pending litigation in Canada and Delaware, (Dkt. No. 604), Nomadix's motion to exclude this evidence is **GRANTED**.

Second, Nomadix seeks to exclude evidence relating to PTAB decisions on the ground that it is not logically relevant and is unfairly prejudicial. Here, the PTAB has instituted *inter partes* review proceedings on two of Nomadix's patents: U.S. Patent Nos. 7,953,857 and 8,626,922. However, the PTAB has yet to render a final decision on the merits of the validity of these patents. Because petitioners in the PTAB need only show "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition" to institute *inter partes* review of a patent, 35 U.S.C. § 314(a), courts have held that the institution of *inter partes* review has little probative value in an action to determine a patent's validity. *See Ivera Med. Corp. v. Hospira, Inc.*, No. 14-cv-1345, 2015 WL 11529819, at *1 (S.D. Cal. July 21, 2015) (comparing the standard for instituting *inter partes* review with the presumption of patent validity in litigation to hold that institution based on a different standard and without a final decision has little probative value). Additionally, "[t]elling the jury that the patent has been called into question by the Patent Office may influence the jury's application of the presumption of validity and prejudice [Nomadix]." *Id.* Accordingly, the Court concludes that any probative value of evidence relating to the PTAB's institution of *inter partes* review of U.S. Patent Nos. 7,953,857, and 8,626,922 is substantially outweighed by a risk of unfair prejudice to Nomadix.[4]

---

[4] The cases cited by Guest-Tek in opposition are inapposite. Both cases cited by Guest-Tek, *StoneEagle Servs., Inc. v. Pay-Plus Solutions, Inc.*, No. 13-cv-2240, 2015 WL 3824208, at *9 (M.D. Fl. June 19,

Because evidence relating to the PTAB decisions to institute *inter partes* review proceedings of U.S. Patent Nos. 7,953,857 and 8,626,922 is of little probative value, and risks substantially prejudicing the jury, the Court **GRANTS** Nomadix's motion to exclude such evidence.

### 6. Nomadix's Motion in Limine No. 6 is DENIED.

Nomadix seeks to exclude evidence of any statements made in the course of mediation between Nomadix and Guest-Tek. (Dkt. No. 550.) In particular, Nomadix seeks to exclude evidence of "any communications made between Nomadix and Guest-Tek during the April 16, 2014 meditations, including any alleged statement by Nomadix that it would not sue Guest-Tek for breach of the License Agreement." (*Id.* at. 3.)

The Court finds that Nomadix's requested motion *in limine* is both overbroad and vague, seeking to exclude broad categories of evidence rather than making a particular objection to a particular piece of evidence. *See Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. 08-cv-8525, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) ("[M]otions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial.") The Court accordingly **DENIES** Nomadix's motion to exclude evidence of any statements made in the course of meditation between Nomadix and Guest-Tek.

### 7. Nomadix's Motion in Limine No. 7 is DENIED.

Nomadix seeks to exclude evidence of any drafts and negotiations of the December 30, 2010 License Agreement between the parties, on the ground that such extrinsic evidence is barred by California's parole evidence rule. (Dkt. No. 552.)

In opposition, Guest-Tek argues that it intends to introduce evidence of the parties' drafts and comments made in preparing Section 2.10 of the License

---

2015), and *Universal Elec., Inc. v. Universal Remote Control, Inc.*, No. 12-cv-00329, 2014 WL 8096334, at *7 (C.D. Cal. Apr. 21, 2014) address motions to exclude evidence of *denials* of requests to institute inter partes review proceedings, rather than motions to exclude evidence of institution of those proceedings. Where a party seeks to introduce evidence of a denial of *inter partes* review proceedings, such evidence does not pose the same risk of prejudicing the jury's application of the presumption of patent validity. Accordingly, the holdings of these cases do not guide the Court's application of the Federal Rules of Evidence in this case.

Agreement, the No-Challenge provision. (Dkt. No. 603-6 at 1.) The Court previously found on summary judgment that the phrase "asserts any of the [patents]" in Section 2.10 of the License Agreement is ambiguous. (Dkt. No. 522. at 4-6.) Under California contract law, where a court decides that the language in a contract "is fairly susceptible of either one of the two interpretations contended for . . . extrinsic evidence relevant to prove either of such meanings is admissible," even where a contract is integrated. *See Gerdlund v. Elec. Dispensers Intl.*, 235 Cal. Rptr. 279 (Ct. App. 1987) (citing *Pac. Gas & Elec. Co. v. G.W. Thomas Dryage & Rigging Co.*, 442 P.2d 641, 644 (Cal. 1968)) (internal quotation marks omitted). Thus, to the extent Nomadix seeks to preclude Guest-Tek from introducing extrinsic evidence as to the meaning of Section 2.10 of the License Agreement, Nomadix's motion *in limine* is **DENIED**.

### 8. Nomadix's Motion in Limine No. 8 is DENIED.

Nomadix seeks to preclude Guest-Tek from introducing any evidence at trial inconsistent with this Court's ruling that the arbitration provision in Section 7.2 of the License Agreement was satisfied. (Dkt. No. 554.)

The Court finds that this requested motion in limine is both overbroad and vague, seeking to exclude broad categories of evidence rather than making a particular objection to a particular piece of evidence. *See Colton Crane Co.*, 2010 WL 2035800, at *1 ("[M]otions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial.") The Court accordingly **DENIES** Nomadix's motion to exclude any evidence inconsistent with this Court's ruling that the arbitration provision in Section 7.2 of the License Agreement was satisfied.

### 9. Nomadix's Motion in Limine No. 9 is DENIED.

Nomadix seeks to preclude Guest-Tek's designated expert witness, Michele Riley, from offering expert testimony on: (1) Guest-Tek's fees and costs for *inter partes* review petitions and district court litigation, and (2) post-2015 royalty rates. (Dkt. No. 559-1.) Nomadix argues that Ms. Riley's opinions are speculative and are not the result of reliable principles or methods. (*Id*.)

Under Federal Rule of Evidence 702, a person qualified as an expert may testify in the form of an opinion if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or

determine a fact in issue, (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702.

First, Nomadix seeks to preclude Ms. Riley from offering expert opinion on Guest-Tek's fees and costs for *inter partes* review petitions and district court litigation. In particular, Nomadix argues that Ms. Riley's opinion that "it is more likely than not that the dispute between [Nomadix and Guest-Tek] would have been resolved earlier" had Guest-Tek been able to engage in alternative dispute resolution is speculative. (Dkt. No. 559-1 at 2) (quoting Dkt. No. 559-6 at ¶ 45.) However, Nomadix's argument rests on a mischaracterization of Ms. Riley's expert report. Ms. Riley does not state that it is her expert opinion that the dispute between Nomadix and Guest-Tek would have been resolved earlier had Guest-Tek been able to engage in alternative dispute resolution. Rather, Ms. Riley states that she "understand[s] Guest-Tek's position is that, had it not been deprived of the opportunity to arbitration, or to engage in the MOU's provision of having a neutral expert evaluate the Guest-Tek design-arounds . . . it is more likely than not that the dispute between the parties would have been resolved earlier." (Dkt. No. 559-6 at ¶ 45.) Based on this asserted position from Guest-Tek, which Guest-Tek intends to show independently through other evidence at trial, (*see* Dkt. No. 603-8 at 2), Ms. Riley calculates the fees and expenses Guest-Tek incurred in both the *inter partes* review proceedings and the district court litigation less the amount Guest-Tek would have spent in alternative dispute resolution. (Dkt. No. 559-6 at ¶ 45.) Accordingly, Nomadix has not shown that Ms. Riley's opinions as to the fees and expenses Guest-Tek incurred is speculative. The Court accordingly declines to prohibit Ms. Riley's expert testimony on the fees and expenses Guest-Tek incurred in *inter partes* review proceedings and district court litigation.

Second, Nomadix seeks to preclude Ms. Riley from testifying as to her opinions on post-2015 royalty rates. In particular, Nomadix seeks to preclude Ms. Riley from testifying that: (1) all royalties Guest-Tek has paid after 2015 should be fully refunded, and (2) Guest-Tek is entitled to a refund for the amount of royalties that Guest-Tek paid above the rates that the parties would have agreed to during the course of proper negotiations. (Dkt. No. 559-1 at 4.) However, Ms. Riley does not state that it is her expert opinion that all royalties Guest-Tek has paid after 2015 should be refunded. Rather, Ms. Riley offers calculations for the *amount* of royalty payments that Guest-Tek has made, which could form the basis for damages. (*See* Dkt. No. 559-6 at ¶¶ 26–28). Additionally, Nomadix has failed to show that Ms. Riley's inclusion of Guest-Tek's proposed royalty rates for the

Licensed Patents was based on an unreliable principle or methodology, as Guest-Tek has shown that its proposed royalty rates were within the realm of possible outcomes for negotiations between the parties. (*See* Dkt. No. 603-8 at 7.) Finally, Guest-Tek has shown that the funds it placed in escrow for Nomadix may form the basis for damages for post-2015 royalty payments Guest-Tek made. (*Id.* at 7–8.) Accordingly, the Court declines to find that Ms. Riley's opinion as to the amount of funds placed into an escrow account is overstated, inaccurate, or misleading.

In sum, Nomadix's motion to preclude Ms. Riley from offering expert testimony on: (1) Guest-Tek's fees and costs for IPRs and district court litigation, and (2) post-2015 royalty rates is **DENIED**.

**IT IS SO ORDERED**.