1           UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3       HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5   NOMADIX, INC.,                    )
                                      )
6                  PLAINTIFF,         )
                                      )
7             vs.                     ) No. CV 16-8033-AB
                                      )
8   GUEST-TEK INTERACTIVE             )
    ENTERTAINMENT LTD.,               )
9                                     )
                   DEFENDANT.         )
10  _____ )

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14               FRIDAY, MARCH 13, 2020

15                   10:39 A.M.

16             LOS ANGELES, CALIFORNIA

17

18

19

20

21

22  _____

23        **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
          FEDERAL OFFICIAL COURT REPORTER
24        350 WEST FIRST STREET, ROOM 4311
          LOS ANGELES, CALIFORNIA 90012
25             cmjui.csr@gmail.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:

 3        KNOBBE MARTENS
          BY:  DOUGLAS G.MUEHLHAUSER, ATTORNEY AT LAW
 4        AND  MARK LEZAMA, ATTORNEY AT LAW
          AND  PAYSON LeMEILLEUR, ATTORNEY AT LAW
 5        2040 MAIN STREET
          14TH FLOOR
 6        IRVINE, CALIFORNIA 92614
          949-760-0404
 7

 8   FOR THE DEFENDANT:

 9        BAKERHOSTETLER
          BY:  WILLIAM W. OXLEY, ATTORNEY AT LAW
10        11601 WILSHIRE BOULEVARD
          SUITE 1400
11        LOS ANGELES, CALIFORNIA 90025-0509
          310-979-8894
12
          BAKERHOSTETLER
13        BY:  MEGHAN ROHLING KELLY, ATTORNEY AT LAW
          AND JEFFREY W. LESOVITZ, ATTORNEY AT LAW
14        AND KEVIN M. BOVARD, ATTORNEY AT LAW
          2929 ARCH STREET
15        CIRA CENTRE, 12TH FLOOR
          PHILADELPHIA, PENNSYLVANIA 19104-2891
16        215-564-2727

17

18

19

20

21

22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; FRIDAY, MARCH 13, 2020

 2                           10:39 A.M.

 3                             - - -

 4              THE CLERK:  Calling CV 16-8033, Nomadix, Inc.,

 5   versus Guest-Tek Interactive Entertainment, Ltd.

 6              Counsel, please step forward and state your

 7   appearances.

 8              MR. MUEHLHAUSER:  Good morning, Your Honor.

 9   Doug Muehlhauser for the plaintiff, Nomadix.  My partners,

10   Payson LeMeilleur and Mark Lezama, are here with me.

11              THE COURT:  Good morning to you all.

12              MR. OXLEY:  Good morning, Your Honor.  Bill Oxley

13   from the BakerHostetler on behalf of Guest-Tek.  My first

14   time in your courtroom, and it's a pleasure to meet you.

15              THE COURT:  I appreciate -- I was wondering that.

16   You didn't look familiar, and I assume Mr. Warren didn't

17   make any travels from Ohio and so welcome.

18              Who else do we have here?

19              MS. KELLY:  Good morning, Your Honor.

20   Meghan Kelly.  I'm also new to your court in this case.

21   It's nice to meet you, Your Honor.

22              THE COURT:  Ms. Kelly, have we met before or no?

23              MS. KELLY:  I don't believe so, Your Honor.

24              THE COURT:  Oh, all right.  Well, nice to meet

25   you.  You look familiar.  That's all.  Okay.
```

```
1              MS. KELLY:  Thank you.
2              THE COURT:  Or my condolences for getting assigned
3     this case, but that's another story.
4              MR. LESOVITZ:  And Jeff Lesovitz from
5     BakerHostetler also on behalf of Guest-Tek.  And you've seen
6     me --
7              THE COURT:  Many times.
8              MR. LESOVITZ:  Yes.
9              MR. BOVARD:  Good morning, Your Honor.
10    Kevin Bovard from BakerHostetler also on of behalf
11    Guest-Tek.
12             THE COURT:  All right.  So we've got some things
13    to discuss, but I'll be candid with you all.  In light of
14    what's going on throughout the country, this trial is in
15    flux.  You may or may not have heard, Massachusetts, the
16    state of Washington, Connecticut have all vacated all trials
17    for the next month and a half.
18             I'm going to be candid with you all.  That may
19    happen here.  I'm just being honest with you.  Just given
20    what has happened, there's definitely a push to consider
21    what is going to happen with civil trials in light of the
22    pandemic that exists.
23             But be that as it may, I wanted to at least try to
24    deal with some of the motions in limine, some of the
25    preliminary matters to let you know as far as the trial
```

```
 1   estimates.
 2            I don't plan on going through the jury
 3   instructions today.  And so I'm hoping -- perhaps I've now
 4   jinxed myself by saying this -- that this will be a
 5   relatively short hearing, but we'll see.
 6            I have issued tentatives in the case.  Have the
 7   parties had a chance to review them?  I think we left them
 8   in the attorney rooms in the back.  Have the parties had a
 9   chance to review?
10            For the plaintiff?
11            MR. MUEHLHAUSER:  Yes, we have, Your Honor.
12            THE COURT:  All right, Mr. Muehlhauser.
13            MR. OXLEY:  Yes, we have.
14            THE COURT:  All right.  And I'm sorry, I'm just
15   going -- if you could state your name for the record just
16   because I want to make sure the record is clear.
17            MR. OXLEY:  Sure.  It's Bill Oxley.  And, yes, we
18   have read them, Your Honor.  Thank you.
19            THE COURT:  Okay.  Let's see.
20            MR. OXLEY:  I have cards for all of us too,
21   if you --
22            THE COURT:  If you could just -- in the interest
23   of what's going on, just leave them at the table, and we'll
24   deal with them later.  All right?
25            MR. OXLEY:  That's a good point, Your Honor.
```

```
 1              THE COURT:  I mean, I don't have to worry about
 2   it, but I've got to worry about everyone else here.  So --
 3              MR. OXLEY:  Of course.
 4              THE COURT:  Okay.  So let me get my notes for this
 5   case.
 6              All right.  Let's first talk about the time limits
 7   and the trial.  You may or may not know I typically give
 8   hours for the trial.  I have a chess clock up here.
 9   Whenever you're up at the lectern, the clock is running
10   against your time and vice versa.
11              You all have estimated anywhere from six to eight
12   days.  We're not going eight days in this trial.  I'm not
13   going to -- just not going to happen.
14              I am proposing that each side get 15 hours to
15   present evidence.  If we average five hours a day in trial,
16   given with other issues that go on, that should make the
17   trial about six or seven days.
18              As far as opening statements, my proposal's that
19   each side -- I'm thinking 30 minutes for opening, but I am
20   open for discussion as to whether or not you think more time
21   would be required, given the nature of this case, and an
22   hour for closing.  Since the plaintiff has the burden, they
23   get an additional 20 minutes for rebuttal.
24              So that's my proposal.  Any heartburn, issues,
25   concerns about those proposed time limits?
```

 1            From the plaintiff?

 2            MR. MUEHLHAUSER:  Yes.  Would you like me to --

 3            THE COURT:  Yes, please.

 4            MR. MUEHLHAUSER:  So, Your Honor, thank you for

 5   considering the time limits.  Nomadix is generally agreeable

 6   to those, but I would say that we believe that, with a

 7   little bit of time and effort, we could cooperate with

 8   Guest-Tek and be able to present the case in, say, 12 hours

 9   each.

10            THE COURT:  I need to mark and date this because I

11   have never in my five years on this bench, never had a

12   lawyer say we want less time.  So --

13            MR. MUEHLHAUSER:  I think that we can do that.  I

14   would say a five- to six-day estimate would be better,

15   something we could live with.  I would say 30 days should be

16   sufficient for opening statement.

17            THE COURT:  Thirty minutes, you mean.

18            MR. MUEHLHAUSER:  I'm sorry.  That's 30 minutes.

19            I also would say that -- if we can have some

20   discussion about the contents of the pretrial conference

21   order today, I think that there -- through that discussion,

22   I think we'll find ways that we'll be able to narrow and

23   streamline the case.

24            THE COURT:  Okay.

25            Mr. Oxley.

```
 1              MR. OXLEY:  Thank you, Your Honor.  I believe in
 2   shorter trials but --
 3              THE COURT:  But --
 4              MR. OXLEY:  -- I don't know --
 5              THE COURT:  Back to reality.
 6              MR. OXLEY:  Certainly.  Exactly.  Back to reality.
 7   I mean, given the time estimates for the witnesses, I don't
 8   see it being able to be done in a shorter amount of time.
 9   But if we can, we absolutely do want to do that.
10              In terms of the other time limits that the Court
11   suggested, I'm thinking for openings maybe 45 minutes, but
12   maybe that's something we can discuss as we get closer so
13   that then I could tell you for sure here's why as opposed to
14   just "I don't want to do it in 30 minutes" kind of a thing.
15              With respect to the closing arguments, as the
16   Court's aware, Guest-Tek also has counterclaims in the case.
17   And so I would ask that the period of time for closing
18   arguments be equal per side as opposed to giving the
19   plaintiffs additional time, given that both sides have the
20   burden of proof.
21              THE COURT:  Okay.  I'll consider that.  So for
22   now, let's leave it at the 15 hours.  As we get closer to
23   trial, I'll -- I would consider 45 minutes for each side.
24              I will tell you -- I mean, I've heard this
25   argument before, Mr. Oxley, about defense saying it's unfair
```

```
 1   that the plaintiffs get -- nothing has persuaded me to
 2   change that analysis.  But I will give it some thought in
 3   this case and, certainly as we get closer to trial, if you
 4   can come up with any additional reasons why, I will consider
 5   those.
 6             MR. OXLEY:  And having read those transcripts,
 7   Your Honor, that's why I focused more on we also have the
 8   burden of proof on our counterclaims.
 9             THE COURT:  Right.
10             MR. OXLEY:  But I am aware of the Court's previous
11   rulings on that as well.
12             THE COURT:  All right.  Thank you.
13             So let's try to go through these motions in
14   limine.  I assume both sides have something to say about the
15   motions in limine.  Who wishes to be heard?
16             Let's start with Nomadix.  Who wishes to be heard
17   as it relates to the motions in limine?
18             Mr. Lezama, you've drawn the short straw once
19   again, apparently.
20             MR. LEZAMA:  Yes.
21             I guess more precisely, with the Court's
22   permission, we might divide the argument a bit on some of
23   the motions.  Is that okay?
24             THE COURT:  That's fine.
25             MR. LEZAMA:  Thank you.
```

```
 1              Okay.  I want to start with what might be an easy
 2   one.
 3              THE COURT:  Okay.
 4              MR. LEZAMA:  On the tentative regarding
 5   Guest-Tek's motions --
 6              THE COURT:  All right.  Let me pull up the
 7   documents here.  Bear with me one second.  Guest-Tek's --
 8   all right.
 9              MR. LEZAMA:  On page 5, there's the discussion of
10   Guest-Tek's Motion in Limine Number 5.  And I think,
11   consistent with the Court's summary judgment ruling that it
12   entered yesterday, the substance is that -- and the final
13   sentence is that "The motion is denied" but the heading is
14   "Motion is granted" and in the -- on page 1 --
15              THE COURT:  It was -- oh, we put 5 is granted in
16   part and denied in part.  Is that what you're talking about?
17              MR. LEZAMA:  Oh, no.  On Number 5, the final
18   sentence of the Court's analysis is, you know, for these
19   reasons and the reasons stated in the Court's summary
20   judgment order, the Court denies Guest-Tek's Motion in
21   Limine Number 5, but the heading -- heading Number 5, you
22   know, above the prior paragraph says that the motion is
23   granted.
24              THE COURT:  I -- we may be looking at a
25   different -- because my heading says Guest-Tek's Motion in
```

 1   Limine Number 5 is denied.  You're saying it says granted?

 2            MR. LEZAMA:  My copy of the tentative does.

 3            THE COURT:  Oh, I'm sorry.  Then we may have given

 4   you the wrong -- because I -- mine says denied.  So --

 5            MR. LEZAMA:  Okay.  Okay.

 6            THE COURT:  Yeah.

 7            MR. LEZAMA:  Great.  And then just -- yeah, on my

 8   copy as well, the -- on page 1, the kind of summary of the

 9   proceedings, sort of, title of the order has 5 in the

10   granted section.

11            THE COURT:  Granted in part and denied in part.  I

12   saw that.  Yeah.  That is an error.  So we can change that.

13            MR. LEZAMA:  Okay.  Great.  Thank you.

14            THE COURT:  Is that it?  Thank you for coming.

15   No.

16            MR. LEZAMA:  Okay.  Let me move to the other

17   tentative on Nomadix's motion, and maybe I can start with

18   Number 1.

19            THE COURT:  All right.

20            MR. LEZAMA:  And this is the one on the --

21            THE COURT:  With respect to Mr. Warrick?

22            MR. LEZAMA:  Yes.  Okay.  So what Guest-Tek argued

23   and what the Court has in its tentative is that the last day

24   disclosure of Mr. Warrick is justified because Nomadix

25   supposedly provided -- cited Guest-Tek's source code for the

```
 1    first time only on the last day of discovery, the second
 2    supplemental contentions.  And that's just a -- that's a
 3    false premise.  We actually cited the source code back
 4    in 2017, two years to the day before the close of fact
 5    discovery.  And --
 6              THE COURT:  Say that one more time.  You cited the
 7    source code two years ago?
 8              MR. LEZAMA:  Two years earlier in August 2017
 9    before the close of fact discovery.  And so -- you know,
10    that's a statement that appears a number of times in
11    Guest-Tek's motions and oppositions that the reason that,
12    you know, X was late or the reason that this was justified
13    is that Nomadix didn't cite source code until its second
14    supplemental contentions.
15              And the truth is that we cited them -- well, we
16    cited source code back in August 2017, two years to the day
17    before the close of fact discovery.  And where that appears
18    in the record is actually in our Exhibit 14 to our
19    oppositions to Guest-Tek's motions, combination of our
20    Exhibit 14 and Exhibit 8.
21              So, you know, we -- you know, the need to put it
22    in the record came up, you know, only because we saw their
23    arguments on their motions.
24              THE COURT:  Okay.
25              MR. LEZAMA:  So that's where it is in the record.
```

```
1            THE COURT:  All right.
2            MR. LEZAMA:  So just want to -- wanted to point
3   that out.
4            In addition, the -- you know, the other reason
5   that the Court mentions is that, you know, he was mentioned
6   during a deposition as someone with relevant information
7   concerning Guest-Tek's source code.  But, you know, that was
8   on August 6th, just a couple weeks before the close of fact
9   discovery.
10           That's -- I mean, first of all, you know, I do
11  note that the Court has a case here citing -- you know,
12  finding that at least in that case deposition testimony, you
13  know, could be sufficient to discharge the duty to
14  supplement.
15           But I think there are several cases going the
16  other way, and I think it's really fact dependent.  And, you
17  know, it's not like he was held out as, you know, the person
18  that, you know, has all the answers.
19           You know, to the contrary, you know, we served an
20  interrogatory very early in the case asking for the
21  programmers most knowledgeable about Guest-Tek source code.
22  They did not identify Mr. Warrick in response to that
23  interrogatory.
24           The interrogatory -- let me see if I can hold that
25  up here.
```

```
 1            Okay.  So the interrogatory -- going back to

 2   Nomadix's motions in limine, Exhibit 16 there, is Nomadix's

 3   first set of interrogatories.  And so it's

 4   Interrogatory Number 4.  And so I can -- I can call it a

 5   docket number.  So it's Docket Number 557-16.

 6            THE COURT:  Okay.  I'll take a look at that again.

 7            MR. LEZAMA:  And the ECF page number is 20839.

 8   Alternatively, you know, Exhibit 16, page 343 of the

 9   sequentially numbered exhibits.

10            And so that one asks for them to identify, you

11   know, the persons knowledgeable about the source code.  We

12   don't have their response in the record.  I've got a copy

13   here if that would be helpful to hand out.

14            THE COURT:  No.  That's okay.

15            MR. LEZAMA:  I don't think they're going to

16   dispute that they didn't identify the response to that

17   interrogatory.

18            And so, you know, the late disclosure is quite

19   prejudicial.  You know, even if you credit the

20   August 6th, you know, mention in passing during the

21   seven-hour deposition -- I mean, might not have been seven

22   hours but, you know, for the --

23            THE COURT:  Lengthy deposition.

24            MR. LEZAMA:  Yeah, lengthy deposition.  You know,

25   it's still prejudicial at that point.  You know, fact
```

```
 1    discovery closed on August 30th.  We don't -- you know, we
 2    didn't have time at that -- and even if we had known that,
 3    you know, he was someone that was going to be called as a
 4    witness, we had no time to ensure that Guest-Tek had
 5    produced all the documents that were in his custody that
 6    would be relevant to his testimony, and, you know, this is
 7    their CTO.
 8            This is someone they should have identified on
 9    Day 1.  And so it's not any kind of mystery that he's going
10    to have knowledge about their products to them.  Right?  I
11    mean -- and the operation of their products has been the
12    central issue in this case since Day 1.
13            THE COURT:  And Mr. Lezama, both sides, I
14    neglected to mention.  I have to leave at 11:30.  I
15    mentioned earlier we have this emergency meeting that will
16    likely impact this trial that I --
17            MR. LEZAMA:  Okay.
18            THE COURT:  -- have to be at.  So just --
19            MR. LEZAMA:  Absolutely.
20            THE COURT:  Just want to make sure both sides
21    know.
22            MR. OXLEY:  Your Honor, may I -- I'm sorry to
23    interrupt.  May I suggest time limits on this for both
24    sides?
25            THE COURT:  Well, I was going to propose each side
```

 1   gets 15 minutes so that we -- I can get out of here by

 2   11:30.

 3           MR. OXLEY:  That works for us, Your Honor.

 4           THE COURT:  All right.  So just --

 5           MR. LEZAMA:  Okay.

 6           THE COURT:  All right.

 7           MR. LEZAMA:  I guess just -- I'll be much more

 8   brief on the next couple ones.

 9           For Bryksa, the proffered reason is that we

10   disclosed late to call a county record format contentions.

11   That is moot now by the Court's summary judgment order

12   yesterday.  So there is no other proffered reason -- no

13   other reason justifying the late disclosure of Mr. Bryksa.

14   You know, that testimony will be irrelevant now because --

15   due to the Court's summary judgment order yesterday.

16           THE COURT:  Okay.

17           MR. LEZAMA:  And, you know, the same thing

18   applies.  It's prejudicial.  We had no time to ensure that

19   they have produced all the documents necessary to test his

20   knowledge and so forth.

21           For Ms. Latour, you know, they said we're -- let

22   me see.  Okay.  Guest-Tek -- yeah.  So the tentative says

23   Guest-Tek shows it disclosed Ms. LaTour as soon as it became

24   aware that Ms. Latour's testimony was needed after Nomadix

25   filed a discovery motion concerning Guest-Tek's reporting of

```
 1    customer properties.

 2            But the reporting of customer properties has been

 3    an issue since Day 1.  I mean, that was a very -- you know,

 4    her declaration is on a very narrow topic.  It's, like, two

 5    paragraphs long and -- and addresses only the issue of, you

 6    know, migrating one system from iBAHN to Guest-Tek.  iBAHN

 7    was a company that Guest-Tek acquired.  You know, the --

 8    what they have her down on the witness list as is that she's

 9    going to testify about sales of Guest-Tek products,

10    properties at which the solutions are located, and

11    Guest-Tek's reporting and payments relating to license

12    agreement.

13            All those issues are central issues in this case

14    since Day 1.  That can't be the -- you know, this one motion

15    that we filed, to say that the discovery response was

16    inadequate can't be the justification for identifying her on

17    the last day of fact discovery.

18            Okay.  Moving on quickly, with respect to

19    Dr. Knightly and Dr. Rupp, the tentative says that the

20    justification is that -- and so these are just -- these --

21    just to be clear, these individuals were disclosed

22    December 13th, 2019, long after discovery had closed -- even

23    expert discovery had closed after the last deposition in

24    this case.

25            The reasoning is that Guest-Tek had shown that it
```

1    was unable to reach these individuals until November 2019.

2    That's still not very diligent if they were able to contact

3    them in November 2019.

4         And more importantly, Your Honor, there's really

5    nothing in the record, I would respectfully submit, nothing

6    in the record that really shows diligence during the fact

7    discovery period.  There's a single statement in a

8    declaration of Mr. Lesovitz that he attempted to contact

9    these individuals in November 2018, which was during the

10   fact discovery period, and then that he got in touch with

11   them in November 2019, a year later after fact discovery had

12   closed.  There's no showing of any kind of diligence from

13   November 2018 to the close of fact discovery, you know, to

14   get in touch with these people.

15        It's a single statement.  We don't know what he

16   did.  There's really nothing in the record there, so we

17   would respectfully submit that that's not sufficient.

18        Okay.  Let me move on to Number 2, to Motion in

19   Limine Number 2 and just -- on Exhibit 2045.  So that was --

20   that was granted in our favor.  And I just wanted -- so,

21   obviously, not complaining about that.

22        THE COURT:  You want to use your now ten minutes

23   to talk about this?

24        MR. LEZAMA:  I -- what I want to understand is --

25   so first of all, it's -- I assume that any copies of exhibit

1    that are duplicates on the exhibit list will also, you know,

2    not be allowed.  And one reason this comes up elsewhere on

3    the exhibit list is that it's Exhibit 10 to Dr. Gottesman's

4    report.

5             And the Court doesn't explicitly address whether

6    Dr. Gottesman is allowed to talk about Exhibit 2045 and

7    present his opinions on it.  We had asked that that be

8    stricken as well.

9             And really this kind of ties in as well with

10   Motion in Limine Number 3 and the first part about excluding

11   their configuration theories that were not timely disclosed.

12            So what the Court has found is that Mr. Razvi will

13   be precluded from being a witness because he was disclosed

14   too late.  The Court has found that -- tentatively, that

15   Exhibit 2045 is out, and 2045 is a document that Mr. Razvi

16   prepared showing the properties at which certain

17   configurations, you know, supposedly prevent a royalty

18   allegation.

19            And then in Motion in Limine Number 3, the Court

20   has found that -- or tentatively said that, you know,

21   Guest-Tek has not persuasively argued why it did not

22   disclose the configuration information in its response to

23   Interrogatory Number 24.

24            And so our concern is that there's all this late

25   disclosure, and all of that is the basis -- is really the

```
 1   sole basis for Dr. Gottesman's argument that the 635
 2   properties listed in Exhibit 2045 are not covered by the
 3   patents.  And it seems like, if he is allowed to present
 4   testimony on that, that's an end run around all these
 5   findings that the Court has made.
 6          And so -- and then this is really -- it's really
 7   prejudicial on a number of levels.  There's a total bait and
 8   switch here.  You know, we had this interrogatory, been
 9   asking them throughout the entire discovery period, "Tell us
10   all your reasons why you're not covered by the patents.
11   Give us the configuration information."  We had to -- you
12   know, we gave them the specific interrogatory on
13   configuration information.
14          They told us, "Here are the values that we're
15   relying on."  And then as the bait and switch, after fact
16   discovery is closed, after Dr. Stubblebine has presented his
17   opening report on why the patents covered Guest-Tek's
18   devices, they say, "Here's this other configuration
19   information that we're going to rely on."
20          And the Court is now saying the exhibit is out,
21   Mr. Razvi is out, but Dr. Gottesman has also needs to be
22   precluded from presenting that information that he learned
23   only from Exhibit 2045 and from talking to Mr. Razvi.
24          And that is -- I can just give the Court a
25   citation here.  So Exhibit 8 -- it's paragraph 34 of
```

```
 1    Dr. Gottesman's expert report.  And he basically explains
 2    what is his -- it's his understanding that certain hotels
 3    are configured certain ways and his basis for that
 4    understanding is talking to Mr. Razvi, who's precluded, and
 5    Exhibit 10, which is the same thing as Exhibit 2045.
 6             Okay.  And I think with that, I'll turn it over to
 7    my co-counsel if --
 8             THE COURT:  All right.
 9             MR. LEZAMA:  -- they have anything else they want
10    to mention.
11             MR. MUEHLHAUSER:  So I have a couple of brief
12    comments on the Court's tentative denying Nomadix's Motion
13    in Limine Number 6 and Number 8.
14             THE COURT:  All right.
15             MR. MUEHLHAUSER:  Just a quick question.  Should
16    we be using our time -- if I -- I have some comments also on
17    the pretrial conference order.  Should I just move into
18    those comments when I finish with the --
19             THE COURT:  Yes, please.
20             MR. MUEHLHAUSER:  Okay.  Will do.
21             So I understand that the reason for denying both
22    of those motions in limine is really the same between both
23    of them, that essentially Nomadix was requesting relief that
24    was too broad and vague and seeking to exclude in blanket
25    form rather than focusing on a specific piece of evidence.
```

1    And so I understand that ruling.  I want to make sure that,

2    when we have the trial going in --

3              THE COURT:  I mean, look, yeah.  Once we get to --

4    I don't -- the question I had in my written notes was what

5    is it that you're seeking to exclude?  I just wasn't sure.

6              This doesn't mean you can't raise it again at the

7    time you see the evidence.  If you could give me a heads-up,

8    that would be appreciated.  But just looking at the motion,

9    I wasn't sure what it is exactly you're trying to exclude.

10             MR. MUEHLHAUSER:  Okay.  Thank you.  So as long as

11   the objection, they can still be made at trial --

12             THE COURT:  Yes.

13             MR. MUEHLHAUSER:  -- based on -- these are

14   mediation communications.  There are no exception that these

15   can come in in a legal proceeding.  I can make an objection

16   on that basis if that's about what's to be introduced.

17             THE COURT:  Yes.

18             MR. MUEHLHAUSER:  Okay.  Thank you.

19             I will say that in Guest-Tek's opposition to both

20   of those motions in limine, there was something somewhat

21   troubling that came up in both of them which -- it appears

22   that Guest-Tek is attempting to bring in now a defense to

23   the case that's been stricken by the Court already, and it's

24   Docket 151.

25             I believe this is at page 11 where the Court has

```
 1   struck the defense that -- that Nomadix can't make out its
 2   breach of contract claim because Nomadix has breached by
 3   failing to retain an expert under the parties' MOU
 4   agreement, a separate agreement.
 5           Now, that defense has been stricken.  It was very
 6   clear that it was stricken.  And in both oppositions to
 7   Nomadix's Motion in Limine Number 6 and Number 8, Guest-Tek
 8   is offering that it needs the mediation communications or
 9   evidence related to the Court's ruling regarding the
10   arbitration requirement, it needs information in both of
11   those areas in order to make out this defense.
12           So that's troubling.  And that's going to lead me
13   into the comments that I have about the final pretrial --
14           THE COURT:  All right.  Go ahead.
15           THE CLERK:  -- conference order.
16           So we really need to have a pretrial conference
17   order that's going to be the framework or the backbone for a
18   fair and efficient trial.  And I think we need to identify
19   with specificity what are the issues that are going to be
20   presented before the Court, before the jury.
21           And so just to start with the defense that I was
22   just mentioning, I'm looking at the -- the proposed final
23   pretrial conference.  That's Docket 587.  And I'm looking on
24   page 12 where we have a -- a recitation of Guest-Tek's
25   defenses.  And so I'm going to be looking at Guest-Tek's
```

```
 1   Defense Number 3, and it's labeled "Waiver of Royalties."

 2   And this is the defense that -- where Guest-Tek is saying

 3   Nomadix's own breach based on a supposed failure to

 4   negotiate royalty rates under the license agreement is a

 5   defense to Nomadix's breach of contract claim against

 6   Guest-Tek for royalties.  They're saying Nomadix's breach is

 7   a defense against Nomadix's claim for breach.

 8            The Court has already stricken this defense.  This

 9   was pleaded by Guest-Tek as Defense Number 10, and the Court

10   struck this.

11            Again, looking at Docket 151 -- and this is at

12   page 9 -- we would say that, reviewing the Court's order,

13   it's law of the case now that Guest-Tek's obligation to pay

14   royalties is not dependent on any Nomadix obligation that

15   Guest-Tek says has been breached.

16            So this defense really should not be permitted to

17   come back into the case.  It's already been stricken.

18            THE COURT:  Okay.

19            MR. MUEHLHAUSER:  And then next, moving to the

20   Defense Number 4.

21            THE COURT:  Estoppel?

22            MR. MUEHLHAUSER:  This is -- well, it's their --

23   Guest-Tek is labeling this failure to mitigate.

24            THE COURT:  I'm sorry.  Yes.

25            MR. MUEHLHAUSER:  Failure to mitigate.  This is
```

 1   what I was referring to as the defense based on supposed

 2   failure to retain an expert witness under the MOU.

 3            This is a defense that has been stricken again in

 4   the Court's order on Nomadix's motion to dismiss Docket 151.

 5   This is at page 11.

 6            The Court's ruled that obligations under the

 7   Memorandum of Understanding, what we've been calling the

 8   MOU, are independent from the obligations under the license

 9   agreement.

10            And so it appears that Guest-Tek is trying to pull

11   this back in now as Defense Number 4.  We think that's

12   improper, shouldn't be permitted.  It's been stricken.

13            THE COURT:  All right.  Okay.  Thank you.

14            MR. MUEHLHAUSER:  Then just to move on, I just

15   have a couple more comments.

16            It really seems to Nomadix that we don't have

17   enough specificity in the pretrial conference order with

18   respect to the defenses of patent invalidity that Guest-Tek

19   is raising.

20            And looking at the pretrial conference order,

21   Docket 587, starting at page 16, we have the beginning of

22   the recitation of all of the invalidity defenses that

23   Guest-Tek is proposing could be tried in the case.

24            And Guest-Tek introduces the list of defenses,

25   which is long -- and I'll cover a little bit of that -- but

```
 1    they introduce the very first sentence after the heading,

 2    "Guest-Tek's Counterclaim Number 3, Declaration of No

 3    Coverage," they say "a non-exhaustive summary of Guest-Tek's

 4    invalidity positions follows."

 5           And so that -- there's already, I would say,

 6    dozens and dozens of theories identified here.  But to think

 7    that that's non-exhaustive is a little bit troubling.  We

 8    should have more specificity in this document.

 9           But just to move on and just have a little bit of

10    a discussion about what are the theories that are being

11    raised here, if we look on page 17, where Guest-Tek is

12    addressing the '266 and '899 patent claims, there are

13    several bullet points.

14           So there are a couple of bullet points regarding

15    prior art references that relate to supposed anticipation

16    theories.  Then there are three bullet points below that

17    that talk about a number of possible combinations that

18    Guest-Tek is raising here relating to the obviousness of the

19    patent claims.  But there's probably more than 20

20    combinations just listed in those three bullets.

21           THE COURT:  Your ultimate concern is that you're

22    worried you're going to get barraged, blindsided -- well,

23    not blindsided, I mean, that it's all going to come out.

24    You don't know what you're fighting against.

25           MR. MUEHLHAUSER:  Exactly.  It's a little bit of
```

```
 1   hide the ball at this stage, and I don't think it's
 2   appropriate.  We really ought to have specificity.
 3   Guest-Tek should be able to identify what are the best
 4   theories, what are the best items of prior art.  Maybe it's
 5   two theories per patent claim, maybe it's two pieces of
 6   prior art per patent, something like that, to give us
 7   specificity about what really we should be prepared for and
 8   what we're -- you know, what we can expect to face at a
 9   trial rather than just any of the possible combinations that
10   we're listing in these bullets.
11           And then the same thing is true on the next -- in
12   the next page 19, again, the list of bullets.  Probably --
13   there on page 19, the bullets comprise probably more than 20
14   different combinations for obviousness.
15           You know, it's really difficult to know what
16   Guest-Tek intends to put on, not -- I really I don't think
17   it's all of them.
18           THE COURT:  Okay.
19           MR. MUEHLHAUSER:  So I think that's probably all
20   that I -- that I'll point out now.  If there are additional
21   questions, maybe I could come up and just address those --
22           THE COURT:  All right.
23           MR. MUEHLHAUSER:  -- in a minute or two later.
24           THE COURT:  All right.  Thank you.
25           Let's hear from the Guest-Tek.
```

```
 1              MS. KELLY:  Thank you, Your Honor.

 2              THE COURT:  I'm sorry.  Again, the name just

 3   because I just -- I have a bad memory.  So --

 4              MS. KELLY:  It's fine, Your Honor.  Meghan Kelly.

 5              THE COURT:  Meghan Kelly.  Okay.  That shouldn't

 6   be too hard to remember.

 7              MS. KELLY:  Now, if I was blonde, it would be a

 8   little easier but --

 9              THE COURT:  Oh, okay.

10              MS. KELLY:  Your Honor, I'll start with Motion in

11   Limine 1.  I'm not going to respond to everything Mr. Lezama

12   said.

13              But in terms of Mr. Warrick, while the plaintiffs

14   may have cited source code in 2017, the source code in the

15   explanation of what they were intending to use it for was

16   first disclosed to us in their second supplemental

17   infringement contentions.

18              I think most importantly what Mr. Lezama said

19   was -- I believe what he said is it's not a mystery that

20   Mr. Warrick was going to have information and knowledge of

21   the operation of the products at issue in this case.

22              And that's exactly our point.  Mr. Warrick was

23   disclosed.  He wasn't briefly mentioned in Mr. Levy's

24   deposition.  Mr. Levy was asked who is the person who

25   oversaw Guest-Tek's design around program.  The design
```

1    arounds are obviously a key issue here, as I am sure

2    Your Honor is more than familiar with.  And who Mr. Levy

3    identified was Mr. Warrick.

4         Mr. Warrick appears on Guest-Tek's website, as

5    Mr. Lezama said, as the chief technology officer.  We know

6    plaintiffs know that because they cited in their

7    Complaint -- paragraph 8 of their original Complaint cites

8    to Guest-Tek's website.

9         So the idea that they did not know or that there

10   was some harm from Mr. Warrick's inclusion on our

11   supplemental disclosures in August is simply not true.

12        Continuing on with Motion in Limine 1, I'd like to

13   discuss the Court's ruling on Mr. Swope, Mike Swope, who was

14   counsel for Guest-Tek.  Rule 26(e) requires supplementation,

15   Your Honor, only when that information is not otherwise made

16   known to the party during discovery.

17        Nomadix here certainly knew about Mr. Swope, and

18   he was clearly identified during discovery as an individual

19   with information concerning the parties' negotiations here.

20        Mr. Swope appears in the license agreement.  His

21   name appears in the license agreement as the person to whom

22   Nomadix should send the notices required under the

23   agreement.

24        He e-mailed -- dozens of e-mails are produced from

25   Mr. Swope as part of our discovery.  Mr. Swope wrote two

 1   declarations in this case in 2017.  In April, he filed a

 2   declaration in support of Guest-Tek's motion to dismiss.

 3           In that he discusses the knowledge he has about

 4   correspondence between the parties and states that he, in

 5   fact, represented Guest-Tek at the mediation in 2014 that

 6   resulted in the MOU.

 7           So the idea that Nomadix was not made aware of

 8   Mr. Swope, the knowledge he had and his relevance to this

 9   case during discovery is simply not supported by the facts.

10   And Guest-Tek was not required under Rule 26(e) to

11   supplement because Nomadix had otherwise been made known of

12   Mr. Swope.

13           Additionally, Your Honor, Rule 37 requires that

14   the failure to supplement either be justified or harmless.

15   Here it's clearly harmless that Mr. Swope was not included

16   earlier in Guest-Tek's disclosures.

17           THE COURT:  Because of his extensive involvement?

18   Is that --

19           MS. KELLY:  Yes, Your Honor, and precisely because

20   he's going to testify about conversations he had with

21   Nomadix.

22           Nomadix knows what he said during these

23   conversations because he was having them with Mr. Lezama,

24   Mr. Muehlhauser, and their partner, Mr. Shreve.  So they

25   know and they have the e-mail and they have the documents

 1    and they -- those lawyers were on those phone calls,

 2    Your Honor.  They know what he said and what he will say.

 3           To the extent, Your Honor, that plaintiffs don't

 4    believe they have a full understanding of what those

 5    conversations were or what Mr. Swope will say, we will

 6    certainly be happy to make him available for a deposition,

 7    if they would like, at their convenience and where they

 8    would like it.

 9           But we believe, Your Honor, that they have all

10    that information.  They know that because these are

11    communications that he will testify about that were with the

12    Knobbe lawyers who represented Nomadix.

13           THE COURT:  Okay.

14           MS. KELLY:  Additionally, Your Honor, I think I

15    can't overstate the prejudice to Guest-Tek that would exist

16    from the exclusion of Mr. Swope.  Plaintiffs have their

17    counsel who was involved in negotiation, Mr. Shreve, on

18    their witness list.

19           The counsel for Guest-Tek who can talk about these

20    negotiations is Mr. Swope and only Mr. Swope.  He drafted

21    the license agreement on behalf of Guest-Tek.  He attended

22    the mediation and the Memorandum of Understanding, and he

23    had direct communications during those negotiations which

24    are critical given that Your Honor has already ruled that

25    there is ambiguity in the license agreement.  Right?

 1          So Your Honor found that whether or not what

 2     "asserts" mean is ambiguous.  You also determined in your

 3     summary judgment ruling the clause about functionality is

 4     ambiguous.

 5          Mr. Swope is the person for Guest-Tek who can

 6     explain what discussions happened around those clauses

 7     between Guest-Tek and Nomadix's counsel during the drafting

 8     process.  He's the person who was on the e-mail.  He's the

 9     person who prepared the redline.

10          And those e-mails and redlines make it clear and

11     reference phone conversations that Mr. Swope was having with

12     Mr. Shreve and others at Knobbe as they were trading these

13     drafts back and forth and what they were talking about.

14          So the fact that these phone calls existed is

15     going to be in evidence.  These are documents on plaintiff's

16     own exhibit list.  And not having Guest-Tek to have the

17     witness who can talk about what the content of that is and

18     who can explain to the jury what the evidence is that shows

19     what the parties agreed for these ambiguous terms is

20     severely prejudicial to Guest-Tek.

21          So for those reasons, Your Honor, we think that

22     Mr. Swope -- it was harmless to the plaintiffs, given their

23     knowledge and their extreme prejudice to Guest-Tek, to not

24     allow Mr. Swope to testify.  So we would ask that Your Honor

25     reconsider your position in the tentative on that.

```
 1            THE COURT:  All right.

 2            MS. KELLY:  Briefly, Your Honor, on Motion in

 3   Limine 2, Mr. Lezama stated that Dr. Gottesman should not be

 4   allowed to rely on the 2045, the exhibit that you've

 5   excluded, and his conversations.

 6            Rule 703 explicitly contemplates, Your Honor, that

 7   an expert can rely on things that are not admissible.

 8   Obviously, he's is not going to parrot hearsay -- that's not

 9   his role as an expert -- but these are documents and

10   conversations that he relied on for his opinion.  They were

11   timely disclosed as the bases for those opinions, as were

12   his opinions under the Court's orders, scheduling orders

13   related to expert discovery.  For the same reasons that

14   Your Honor allowed him to rely on his testing and the

15   executable software, that you've excluded the software but

16   you have allowed him to testify about his testing,

17   Dr. Gottesman and Ms. Riley should also be allowed to

18   testify for their opinions based on 2045, the listing of

19   hotels and the conversations that they had.

20            Briefly, Your Honor, on Nomadix's Motion in

21   Limine 5, which is to exclude the IPRs, I understand

22   Your Honor's ruling that the Patent Board's decision to

23   institute to grant the IPR petitions is out.  What I would

24   ask, Your Honor, is that plaintiffs have included the denial

25   of petitions on their exhibit list.  We would ask that those
```

```
 1    should be out.

 2           Frankly, Your Honor, Guest-Tek will stipulate to

 3    the fact that we filed IPRs and the dates that we filed

 4    IPRs, which is what plaintiffs need for their breach of

 5    contract claim related to the no challenge clause.

 6           To the extent that Your Honor is excluding some of

 7    the evidence of IPRs, we believe the whole thing should be

 8    out.  The stipulation, we can work with Nomadix to get what

 9    they need in terms of that evidence.

10           But for the reasons that the granting should be

11    out, all of the evidence should be out, and we shouldn't be

12    picking and choosing what parts of the IPR decisions come in

13    and what don't.

14           THE COURT:  Okay.

15           MS. KELLY:  Briefly, Your Honor, on the -- what

16    Mr. Muehlhauser raised on the pretrial conference --

17           THE COURT:  Right.

18           MS. KELLY:  -- I think that the plaintiffs

19    misunderstand our waiver of royalties defense.  This is

20    related to plaintiff's failure to negotiate the renewal

21    rates.

22           So the original license expired in December 2015.

23    The parties under that original agreement were required to

24    negotiate rates for the renewal term of the license which

25    began January 1st.
```

```
 1              It's Guest-Tek's position that Nomadix did not do

 2     that, and so this claim is really limited to -- this defense

 3     is limited to a waiver of damages and royalties from 2016

 4     forward because the parties never agreed on the renewal rate

 5     as they were required to under the contract.

 6              THE COURT:  So now I appreciate that clarification

 7     or response.  I guess does it beg the question that maybe a

 8     conversation between the two of you might narrow some of the

 9     issues that Mr. Muehlhauser raised in relation to the final

10     pretrial conference order?

11              MS. KELLY:  Yes, Your Honor.  And I think that

12     I've -- we've had some meet and confers with Mr. Muehlhauser

13     and his team, and I think, hopefully, you're happy with the

14     number of agreed-upon jury instructions.

15              THE COURT:  No.  But I rarely am in civil cases,

16     but be that as it may.

17              MS. KELLY:  We made some progress.  We are

18     certainly happy to sit down and discuss with Mr. Muehlhauser

19     and try to work together to provide the clarity that he's

20     looking for.

21              I will say in response to his request that we

22     provide more specificity of invalidity defenses, the

23     local rules require that this pretrial order -- it's our key

24     evidence related to it moreover --

25              THE COURT:  Right.  But in fairness, I mean, when
```

```
 1   you do what lawyers do, non-exhaustive lists, I think anyone
 2   on the other side of that is, like, okay.  What -- A, I
 3   think what you -- I mean, Nomadix is saying, "A, what you've
 4   put is too broad; B, but you've also put in this catchall
 5   phrase, you know, 'non-exhaustive.'  What else is coming
 6   down the pike?"
 7           Again, maybe I am wrong on this, but at this stage
 8   or as we get closer and closer to trial, there shouldn't be
 9   that many secrets.  And so why not -- look, I come from a
10   different school of thought.  Like, when it's showtime, when
11   the battle has to be fought in these trials, everyone should
12   know what's going to -- know what's out there just press the
13   play button and let the jury decide.
14           MS. KELLY:  And I absolutely agree with you, Your
15   Honor, which is why Mr. Muehlhauser and I had a conversation
16   yesterday about making sure we were disclosing witnesses and
17   documents be introduced in advance.  We don't -- we're not
18   looking for a trial by surprise.
19           That said, Your Honor, there are five patents at
20   issue and 18 claims.
21           THE COURT:  Right.
22           MS. KELLY:  We requested that the plaintiff
23   likewise narrow the claims that they are really bringing in
24   what's going to be a 15-hour case that they're putting on,
25   and they didn't.
```

```
1            So to the extent that there needs to be this

2   narrowing, which we agree with absolutely, we think it

3   needs --

4            THE COURT:  For both sides.

5            MS. KELLY:  Absolutely, Your Honor.

6            THE COURT:  And so I don't know if you guys were

7   here this morning, but I had a mandatory injunction hearing

8   where the parties were asking me to order, in essence, the

9   other side to meet and confer, which I couldn't do in the

10  injunction context.  But I do need to do that to accomplish

11  that here?

12           MS. KELLY:  Not from us, Your Honor.  I'm happy to

13  meet and confer, and we can sit down and have a conversation

14  and narrow things.  I don't see that being an issue,

15  Your Honor, with the understanding that it's reciprocal.

16           THE COURT:  And, Mr. Muehlhauser, you've seemed

17  eminently reasonable during the proceedings, not to say

18  Mr. Lezama hasn't, but you have been.

19           I mean, you raised some legitimate issues.  I

20  mean, no one wants trial by surprise.  Does it make sense

21  for you to meet and confer to discuss those concerns and

22  perhaps with an eye towards resubmitting this final pretrial

23  conference order?

24           Because look.  I'm going to tell you this meeting

25  in five minutes, I anticipate -- I don't have any inside
```

```
 1  information, but I anticipate we will probably go the way of
 2  New York, Massachusetts, and other states, which will mean
 3  that this trial will not happen when -- it was scheduled for
 4  April 14th.  This trial is not going -- there's a high
 5  probability that this trial will not happen on April 14th.
 6  It could, but at least, if things are going the way they
 7  are, it's not going to happen, which would give more time
 8  for you all at least -- at a minimum, as it relates to this
 9  issue, to try to narrow the issues down so that we know what
10  we're going to have a fight about.
11          MR. MUEHLHAUSER:  Yeah, absolutely, Your Honor.
12  This is Doug Muehlhauser, for the record.  Absolutely we're
13  willing to sit down, meet and confer, try to narrow and
14  streamline the issues for a fair and efficient trial.
15  Absolutely.
16          THE COURT:  All right.
17          Mr. Oxley, you were standing up.  Oh --
18          MR. OXLEY:  Your Honor.
19          THE COURT:  -- thank you, Ms. Kelly.
20          MS. KELLY:  Thank you.
21          THE COURT:  I remembered this time.
22          MR. OXLEY:  Thank you, Your Honor.  Bill Oxley for
23  Guest-Tek.
24          With respect to the Motions in Limine that
25  Mr. Muehlhauser talked about, 4 and 6, I don't really have
```

1   any comments about the Court's tentative.  I think it's very

2   clear, as were the Court's summary judgment orders.

3       The one thing I did want to comment on is this

4   thing that keeps getting repeated that I think we're going

5   to hear more of, which is, in our view, the wrong idea that

6   the Court's orders previously about compelling arbitration

7   did anything more than what those orders actually said.

8   What those orders said was, Guest-Tek, you can't any more

9   say that the plaintiffs were supposed to go to arbitration

10  first, and you can't say that because what happened was that

11  arbitration agreement was replaced by a different procedure

12  that was carried forward in the MOU, which is to jointly

13  retain an expert who would evaluate the patents, provide

14  input to the parties so that they could then mediate within

15  a 12-month standstill period.  And it's undisputed that

16  Nomadix never did that alternate procedure.

17      So what we have told the plaintiffs and the Court

18  is that what we intend to do is to bring forward all of that

19  evidence for two reasons.  One, is it shows the plaintiffs

20  did not do what's required in their case in chief, which is

21  to prove in the words of CACI 303 that they did all or

22  substantially all of the significant things that the

23  contract required it to do.  They can't prove that, in our

24  view, and we intend to present that evidence.  They want to

25  erase it from the case, but we don't think they can do that.

```
 1          And that's set forward in our pretrial conference
 2    statement as well as our motions in limine.  And it is the
 3    same thing that supports Guest-Tek's claims against Nomadix.
 4          They didn't do those things, as the Court said,
 5    when it issued those orders on the arbitration provision,
 6    and it suggests that Nomadix is in breach of that amendment
 7    to the license agreement otherwise known as the MOU.
 8          And I just wanted to make sure that that was
 9    responded to because we're being very upfront about what we
10    intend to do in the trial.
11          Thank you very much, Your Honor.  I appreciate it.
12          THE COURT:  Okay.
13          All right, Counsel.
14          Mr. Lezama.
15          MR. LEZAMA:  Thank you.  I will be quite brief
16    here.
17          Just, first of all, there was a lot of emphasis on
18    allowing Mr. Swope to testify.  That would be very
19    prejudicial.  He was trial counsel.  He's argued motions in
20    this case.  And, you know, if he was so important, they
21    should have known to disclose him at the very outset of the
22    case.  The whole point --
23          THE COURT:  But in fairness, it's not like you
24    didn't know.  I mean, you knew his involvement, I mean,
25    early on in the case; right?
```

```
 1            MR. LEZAMA:  Yeah, we know who Mr. Swope is.

 2            THE COURT:  I know you know who he is, but you

 3    know his involvement.

 4            MR. LEZAMA:  Yes.  We know he negotiated the

 5    license agreement.  That was not unknown to us.

 6            But the point is that -- you know, it's not even

 7    like he was disclosed on the last day of fact discovery.  He

 8    wasn't disclosed on any of their initial disclosures.  The

 9    first time we knew about him as potential trial witness is

10    on January 31st, 2020, when they disclosed their trial

11    witness list.

12            THE COURT:  Okay.

13            MR. LEZAMA:  And, you know, the whole point of

14    Rule 26(a)(1) is to take the guesswork out of who you need

15    to depose, what discovery you need to take.  And, I mean, to

16    allow him to come in when he wasn't disclosed at any point

17    during the discovery and doesn't come -- doesn't appear for

18    the first time until their trial witness list would be

19    extremely prejudicial.

20            I also just wanted to very quickly point out that

21    there are a few more parts on the motions in limine where

22    the argument is that, you know, we hadn't cited source code.

23    So on page 9 of the tentative on Nomadix's motions in

24    limine --

25            THE COURT:  Okay.
```

```
 1              MR. LEZAMA:  -- on Number 3 with respect to the
 2    cbq, again, we did this in 2017.  It's Exhibit 14.  On our
 3    oppositions to their motions in limine, the htb -- the Linux
 4    htb code is cited in that exhibit.
 5              And then real quickly, on the following page,
 6    page 10 for Motion in Limine Number 4 -- this is on the
 7    Gottesman errata.
 8              THE COURT:  Right.
 9              MR. LEZAMA:  You know, he totally did change the
10    basis for his opinion.  This is not -- I mean, this was not
11    a typo.  It's not a clerical error.
12              And the Court is pointing to -- you know, I think
13    was -- misunderstood what the Guest-Tek was saying about
14    comments.
15              These are not -- you know, source code files have
16    comments.  The source code files have, you know, code that
17    is actually operated on, and then there can be programmer
18    comments in there that help explain what the source code is.
19              But for all intents and purposes, it's like the
20    text in the book; right?  And so he was relying on one book,
21    essentially, for his opinion, and now they've said, "Oh,
22    it's this other copy."
23              And by the way, that other book that he's now
24    relying on has never been produced.  And the code that we
25    pointed to -- you know, what they're calling comments, that
```

1    is text in the file.  It shows that he's relying on

2    something totally different, never been produced.

3           And then the final thing that -- if I could just

4    briefly switch and ask a question about the 2019 case.

5           THE COURT:  Okay.  Go ahead.

6           MR. LEZAMA:  We just got the briefing schedule

7    yesterday --

8           THE COURT:  Okay.

9           MR. LEZAMA:  -- and -- on the permanent injunction

10   issue.  And I would just respectfully ask if we could change

11   the wording of that slightly.  Right now, the briefing is

12   scheduled -- is keyed off of the date of yesterday's order.

13          THE COURT:  Okay.

14          MR. LEZAMA:  And we would -- it gives Guest-Tek 14

15   days, essentially, from Nomadix's opening brief to file an

16   opposition, then gives us seven days.  But it's all keyed

17   off of yesterday's date.  So 14 days and 28 days, 35 days.

18          THE COURT:  Okay.

19          MR. LEZAMA:  Could we just make it 14 days after

20   Nomadix files its opening brief so that we could accelerate

21   that a bit?  Because it's really important for us --

22          THE COURT:  I'll think about it.  I mean, look.

23   Again, this will get -- may get mooted.  I mean, I'm just

24   going to be -- so I'll think about what you're requesting.

25          Ms. Kelly, you obviously have a --

```
 1           MS. KELLY:  Extremely briefly, Your Honor.
 2  Mr. Swope is not trial counsel for Guest-Tek in this case.
 3           THE COURT:  No.  I think he was -- I thought he
 4  was saying he was earlier or that he had appeared in the
 5  case.  But I'm assuming the fact that you're both here,
 6  you're not just here for a sunny weekend vacation in
 7  Los Angeles.
 8           MS. KELLY:  A rainy weekend.  And I think
 9  Mr. Lesovitz just needs to respond to what --
10           THE COURT:  Okay.
11           MR. LESOVITZ:  Your Honor, I can do this very
12  quickly.
13           Just to respond to Mr. Lezama's comments on Motion
14  in Limine Number 3 -- that's Nomadix's motion in limine --
15  he said that, I believe, the htb code was cited previously
16  in Nomadix's interrogatory responses.  Yes, it was cited,
17  but it was cited as one document among thousands and
18  thousands of pages.
19           And the more important point is that, in Nomadix's
20  interrogatory responses, they never explained what exactly
21  they were relying on in the htb code.  So when it came
22  point -- the point for our expert to submit his expert
23  report, the first time that a cbq code became relevant was
24  during expert discovery.
25           Now, just to quickly address Mr. Lezama's comments
```

1   on Motion in Limine Number 4 -- and that's the motion in

2   limine to strike Dr. Gottesman's errata -- Mr. Lezama made

3   the claim that Dr. Gottesman, I think he said, was relying

4   on one book in his expert report and then he changed to

5   another book in his errata.  That's absolutely untrue.

6          Dr. Gottesman cited the same source code file in

7   his expert report that was also cited in the errata.  The

8   source code file was never changed.  It's not -- so he was

9   relying on the same exact file in his errata.  It was simply

10  an errata, as Dr. Gottesman himself explained.

11         And then Mr. Lezama also made the claim that there

12  were certain source code that was not produced.  That's also

13  incorrect.  All the source code that Dr. Gottesman relied on

14  was also relied on by Nomadix's own expert, Dr. Stubblebine.

15  And it was all produced or disclosed during discovery,

16  including it was made available to Nomadix during discovery.

17  And all the source code was also identified in response

18  to -- in Guest-Tek's response to Interrogatory Number 5.  I

19  can get a cite for that interrogatory --

20         THE COURT:  You don't need a cite for that.

21         MR. LESOVITZ:  Okay.

22         THE COURT:  I don't need a cite to that.  All

23  right.

24         MR. LESOVITZ:  That's all I have, Your Honor.

25         THE COURT:  And then I guess I'll ask at the risk

```
 1   of prolonging.
 2          Mr. Lezama, your request is not something that you
 3   could work out with counsel?  You just feel like you -- and
 4   that's with respect to the briefing.  Is that the issue?
 5   Have you talked about this with opposing counsel?
 6          MR. LEZAMA:  We have not had an --
 7          THE COURT:  So why don't you try that first, and,
 8   if it doesn't work, then let the Court know.
 9          MR. LEZAMA:  Okay.
10          THE COURT:  All right.  So again, my apologies.  I
11   do have to run to this meeting.  So I've taken a lot of
12   notes about what has happened.  I'm going to try to -- I'm
13   going to endeavor to try to resolve these issues this
14   weekend or early next week.  But again, as I've said
15   earlier, this may get somewhat put in flux if in fact Courts
16   are starting to shut down.  But we'll cross that bridge if
17   and when we need to deal with it.
18          Thank you all for coming in.  Safe travels back to
19   your respective homes.  Be safe, please, and have a
20   wonderful weekend.
21          THE CLERK:  All rise.  This Court is in recess.
22      (Proceedings concluded at 11:38 A.M.)
23                       --oOo--
24
25
```

```
1                          CERTIFICATE

2

3        I hereby certify that pursuant to Section 753,

4   Title 28, United States Code, the foregoing is a true and

5   correct transcript of the stenographically reported

6   proceedings held in the above-entitled matter and that the

7   transcript page format is in conformance with the

8   regulations of the Judicial Conference of the United States.

9

10  Date:  March 31, 2020.

11

12

13

14                      ___/S/ CHIA MEI JUI _____

15                      Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA